**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| SEVEN NETWORKS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:17-cv-00442-JRG |
| | ) | |
| GOOGLE INC. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |

## GOOGLE INC.'S MOTION TO TRANSFER VENUE
## TO THE NORTHERN DISTRICT OF CALIFORNIA

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     PROCEDURAL HISTORY ................................................................2

II.    BACKGROUND .............................................................................2

    A.    The Majority of Key Witnesses and Evidence Are Located in or Near the Northern District of California, Not this District ................................2

        1.    SEVEN, the Named Inventors, and SEVEN's Products that Allegedly Practice the Asserted Patents ...................................2

        2.    Google ........................................................................4

        3.    Third Parties ..................................................................6

III.    LEGAL STANDARD ......................................................................8

IV.    THIS ACTION COULD HAVE BEEN FILED IN THE NORTHERN DISTRICT .........9

V.    THE PRIVATE INTEREST FACTORS HEAVILY FAVOR TRANSFER ....................9

    A.    Easier Access to Sources of Proof Strongly Favors the Northern District of California ................................................................................9

    B.    The Availability of Compulsory Process in the Northern District of California, But Not From This Court, Heavily Favors Transfer ...........................11

    C.    Witnesses Would Incur Substantially Less Expense Attending Trial and Other Proceedings in the Northern District of California ......................................13

    D.    There Are No Practical Problems With Transferring This Case ..........................15

VI.    THE PUBLIC INTEREST FACTORS FAVOR TRANSFER ..........................................16

    A.    The Northern District Has a Greater Interest in this Case ....................................16

    B.    The Remaining Public Interest Factors Are Neutral ..............................................18

CONCLUSION.......................................................................................................19

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

## TABLE OF AUTHORITIES

**Page**

### Cases

*Adaptix, Inc. v. HTC Corp.*,
  937 F. Supp. 2d 867 (E.D. Tex. 2013) .................................................................. 11

*Affinity Labs of Tex. v. Samsung Elecs. Co., Ltd.*,
  968 F. Supp. 2d 852 (E.D. Tex. 2013) .................................................................. 17

*In re Genentech*,
  566 F.3d 1338 (Fed. Cir. 2009).............................................................. 10, 11, 13, 18

*GeoTag, Inc. v. Aromatique, Inc.*,
  No. 2:10-cv-570, 2013 WL 8349856 (E.D. Tex. Jan. 14, 2013) ........................ 12, 16

*In re Google Inc.*,
  No. 2017-107, 2017 WL 977038 (Fed. Cir. Feb. 23, 2017) .................................... 15

*In re Hoffman-La Roche Inc.*,
  587 F.3d 1333 (Fed. Cir. 2009)..................................................................... 9, 11, 16, 17

*LT Tech, LLC v. FrontRange Solutions USA Inc.*,
  No. 3:13-cv-1901, 2013 WL 6181983 (N.D. Tex. Nov. 26, 2013) ......................... 15

*Neil Bros. Ltd. v. World Wide Lines, Inc.*,
  425 F. Supp. 2d 325 (E.D.N.Y. 2006) .................................................................. 13

*In re Nintendo Co.*,
  589 F.3d 1194 (Fed. Cir. 2009)............................................................................ 9

*Semiconductor Corp. v. Hynix Semiconductor, Inc.*,
  No. 6:09-cv-390, 2010 WL 3855520 (E.D. Tex. Sept. 30, 2010).............................. 9

*In re Toyota Motor Corp.*,
  747 F.3d 1338 (Fed. Cir. 2014)................................................................... 8, 9, 10, 14

*In re TS Tech USA Corp.*,
  551 F.3d 1315 (Fed. Cir. 2008).............................................................. 8, 17, 18

*Van Dusen v. Barrack*,
  376 U.S. 612 (1964).................................................................................... 15

*In re Verizon Bus. Network Servs. Inc.*,
  635 F.3d 559 (Fed. Cir. 2011).............................................................................. 13

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

*Vigilos, LLC v. Sling Media, Inc.*,
   No. 2:11-cv-112, Dkt. 50 (E.D. Tex. July 25, 2011) .............................................................. 17

*Volkswagen I*,
   371 F.3d 201 (5th Cir. 2004) ................................................................................................... 14

*In re Volkswagen of Am.*
   545 F.3d 304 (5th Cir. 2008) ................................................................................ 8, 13, 14, 17

*Wireless Recognition Techs. LLC v. A9.com, Inc.*,
   No. 2:10-CV-364-JRG, 2012 WL 506669 (E.D. Tex. Feb. 15, 2012) ............................. 16, 18

*Worldwide Fin. LLP v. Kopko*,
   No. 1:03-cv-428, 2004 WL 771219 (S.D. Ind. Mar. 18, 2004) .............................................. 11

## <u>Statutory Authorities</u>

28 U.S.C. § 1400(b) ..................................................................................................................... 9

28 U.S.C. § 1404(a) ......................................................................................................... 1, 11, 19

35 U.S.C. § 299 ........................................................................................................................... 15

## <u>Rules and Regulations</u>

Fed. R. Civ. P. 45(c) .................................................................................................................. 11

Fed. R. Civ. P. 45(c)(1)(B)(ii) .................................................................................................... 12

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

Defendant Google Inc.[1] ("Google") respectfully moves to transfer this action to the Northern District of California (the "Northern District") pursuant to 28 U.S.C. § 1404(a) and Local Rule CV-7.  This action should be transferred to the Northern District because it is clearly more convenient than the Eastern District of Texas (the "Eastern District") for the parties, for the witnesses, and in light of the evidence likely to be presented in this case.

This action is centered on the Northern District.  Google was founded in the Northern District and remains headquartered there to this day.  The witnesses and evidence related to the accused Google products are also located in the Northern California.  The Plaintiff, SEVEN Networks, LLC ("SEVEN"), was founded in the Northern District and based there until December 2015.  Nearly all of the allegedly inventive activity occurred before SEVEN opened its office in this District and each of the 10 asserted patents allegedly stem from patents applications that were filed while SEVEN was in Northern California.  Indeed, the founders, SEVEN's current management team, and many of the inventors are still based in the Northern District of California.  SEVEN has also tried to license and/or sell its patents to entities in the Northern District.  On top of that, much of the prior art that Google expects to assert in this case has ties to the Northern District.  In sum, the witnesses, evidence, and events that matter to this case largely reside in the Northern District.

In contrast, this case's only ties to this District appears to be stem from SEVEN's relocation of its alleged headquarters to this District in December 2015 from Northern California, where it was headquartered for nearly 15 years.  SEVEN's alleged headquarters in this District, however, appears to be made up of a handful of employees, none of whom are named inventors

---

[1]   On September 30, 2017, Google Inc. filed a Certificate of Conversion with the Delaware Secretary of State, in which Google Inc. converted from a corporation to a limited liability company and changed its name to Google LLC.  For the purposes of this motion, "Google" applies equally to Google Inc. and Google LLC.  *See* Ex. 1 (Certificate of Conversion).

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

on the asserted patents.  Many of SEVEN's current and prior employees remain in the Northern District, including SEVEN's President and CEO, Dr. Ross Bott, and SEVEN's SVP of Analytics and Market Development and named inventor, Ari Backholm.  Thus, this action should be transferred to the Northern District of California.

## I.      PROCEDURAL HISTORY

SEVEN initiated three separate patent infringement actions against ZTE (USA) Inc. and ZTE Corp. (collectively, "ZTE"), Samsung Electronics America, Inc. and Samsung Electronics Co., Ltd. (collectively, "Samsung"), and Google in the Eastern District of Texas on May 17, 2017.  Case Nos. 2:17-cv-00440 (E.D. Tex.); 2:17-cv-00441 (E.D. Tex.); 2:17-cv-00442 (E.D. Tex.).  SEVEN voluntarily dismissed its complaint against ZTE and re-filed its complaint against ZTE in the Northern District of Texas on June 6, 2017.  No. 3:17-cv-01495 (N.D. Tex.).  The Court consolidated the actions against Samsung and Google on August 22, 2017.  (Dkt. No. 36.)

Google filed its Motion to Dismiss on August 8, 2017 (Dkt. No. 25) but withdrew it on August 22, 2017 (Dkt. No. 35) in light of SEVEN's filing of its Amended Complaint that same day (Dkt. No. 34), and re-filed its Motion to Dismiss on September 12, 2017.  (Dkt. No. 49.)

## II.     BACKGROUND

### A.     The Majority of Key Witnesses and Evidence Are Located in or Near the Northern District of California, Not this District

#### 1.     SEVEN, the Named Inventors, and SEVEN's Products that Allegedly Practice the Asserted Patents

SEVEN was founded in San Mateo county in the Northern District of California in 2000 and was based there until at least December 2015.  (Exs. A, B.)  Both members of SEVEN's current "management team"—SEVEN's President and CEO, Dr. Ross Bott, and SEVEN's SVP of Analytics and Market Development and named inventor, Ari Backholm—appear to reside and work in the Northern District of California.  (Exs. C-E.)  SEVEN also appears to have

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

approximately 5 employees in this District (Exs. F-I)[2] and 19 in the Northern District of

California.  (Exs. J-T)[3].  Although SEVEN alleges that its principal place of business is at 2600

East End Boulevard South, Marshall, Texas 75762, which is also the address for the Center for

Applied Technology ("CAT Center"), the CAT Center does not list SEVEN as one of its current

tenants.  (Ex. U.)

The 10 asserted patents in this case identify a total of 24 inventors, 20 of whom are

identified on the patents as being located in the Northern District of California.  (Complaint, Exs.

A-J.)  The other inventors are identified as being from Oregon, China, and Finland.  (*Id*.)  Many

of the named inventors that do not work for SEVEN anymore remain in Northern California and

include at least Trevor Fiatal (Ex. V), Scott M. Burke (Ex. W), William Alvarado (Ex. Z), Juan

Benitez (Ex. AA), Michael Luna (Ex. BB), Sungwook Yoon (Ex. CC), Jay Sutaria (Ex. FF),

Abhay Nirantar (Ex. II), and Steve Petersen (Ex. JJ).  Three of the named inventors, Ruth Lin

(Ex. PP), Brian Gustafson (Ex. X), and Robert Paul van Gent (Ex. GG), also reside in the

Northern District and currently work at Google.  The others appear to reside in Oregon

(Merriwhether (Ex. OO) and Boynton (Ex. KK)), India (Raj (Ex. Y)), Finland (Alisawi (Ex. LL),

Seleznyov (Ex. MM)), or China (Wei (Ex. NN), Li (Ex. EE), A. Hu (Ex. DD)).[4]  Google is

unaware of any inventors residing in or near the Eastern District of Texas.

Additionally, the purported inventions and alleged practicing products would have

stemmed from work that was largely or exclusively carried out in Northern California.  All the

---

[2]   Google is unable to access the LinkedIn profile of a SEVEN employee working as a software
engineer and residing in Tyler, Texas.  Nevertheless, Google has included the potential employee
for purposes of this motion.

[3]   Google is unable to access the LinkedIn profiles of some SEVEN employees currently
residing in the San Francisco Bay Area, including the VP of Finance, the Facilities Manager, a
Vice President, an engineer, a SW engineer, and 3 QA engineers.  Nevertheless, Google has
included these potential employees for purposes of this motion.

[4] Inventors Backholm, A. Hu, and Li appear to still work at SEVEN.  (Exs. E, DD, EE.)

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

asserted patents claim priority to applications filed while SEVEN was headquartered in San Mateo county.  (Exs. A, B.)  SEVEN also alleges that its "Open Channel and AdClear products" "practice one or more of the inventions claimed by the patents-in-suit."  (P.R. 3-1 & 3-2 Disclosures to Google at 12.)  Open Channel was launched in January 2011, while SEVEN was still headquartered in the Northern District of California.  (Ex. QQ.)  AdClear was offered at least by December 2015, the same month that SEVEN moved from Northern California to Marshall, Texas.  (Ex. RR.)

    **2.**    **Google**

Google is headquartered in Mountain View, California, in the Northern District.  (King[5] Decl. ¶ 6.)  SEVEN accuses Google's products and services, including features and applications (such as Doze and Gmail) found on Google's "mobile devices (such as mobile phones and tablets)," "the Google Play Store," and "Google's 2-Step Verification" of infringement (collectively, the "Accused Google Products").  (*See, e.g.*, P.R. 3-1 & 3-2 Disclosures to Google at 6-7, Ex. A at 8 Ex. B at 3.)  The Accused Google Products are predominantly developed at Google's offices in the Northern District.  (King Decl. ¶ 10.) ██████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████

---

[5]  The King Declaration will be filed separately under seal concurrently with this motion.

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

Google Play Platform team).  (*Id.* ¶ 12.)  Most employees with knowledge of the marketing of the accused products, including Charlotte Will (Senior Product Marketing Manager on the Android team), work in the Northern District.  Firman, Smetters, Hackborn, Sadler, Poiesz, and Will have 74 direct or indirect reports who work in the Northern District of California and none work in this District.  (*Id.*)  Ms. Hackborn also has two reports who works in the United Kingdom, one in Switzerland, and one in Colorado.  (*Id.*)  Ms. Will also has two reports that work in New York and one report who works in Hamburg, Germany.  (*Id.*)  The finance team responsible for the accused products is entirely located in the Northern District, and a witness speaking on finance topics would therefore be located in the Northern District of California. (*Id.*)

Similarly, the vast majority of Google's documents and records related to the Accused Google Products are hosted in secure servers managed from its Northern California offices.  (*Id.* ¶ 11.)  Further, given that most of the employees with relevant knowledge of the Accused Google Products are based in the Northern District, any hard copies of documents and employee notebooks that might exist would likely be located there.  (*Id.* ¶¶ 10-13.)  In addition, Google's litigation support team responsible for collecting, reviewing, and producing documents in litigation is located in the Northern District.  (*Id.* ¶ 11.)  All documents produced during discovery in this case will accordingly be processed at Google's Northern District headquarters. (*Id.*)

Google has no offices in this District.  (*Id.* ¶ 14.)  Consequently, Google has no employees who work at any Google offices in this District.  (*Id.*) ██████████████████

████████████████████████████████████████████████

██████████████████████████████████████████

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

### 3.    <u>Third Parties</u>

The majority of known third parties with potentially relevant witnesses and evidence are located in Northern California.  In addition to the inventors that no longer work at SEVEN (and do not currently work at Google), SEVEN's original founders, Bill Nguyen and Trevor Fiatal (also an inventor), currently reside in the Northern District of California.  (Exs. SS, V.)  Several of SEVEN's funders, including Fortress Investment Group LLC, Greylock, M/C Venture Partners, and Saints, are headquartered or have offices in the Northern District.  (Ex. TT.) Individuals from these investors, such as Eran Zur (Head of the Intellectual Property Finance Group at Fortress Investment Group LLC (Ex. UU)) and David Sze (a Senior Managing Partner at Greylock (Ex. VV)), potentially have relevant knowledge relating to the value of the asserted patents and the corporate structure of SEVEN.  Google understands that SEVEN's President and CEO, Dr. Ross Bott, a Northern District of California resident, entered into a relationship with RPX Corporation—a patent risk solutions provider—in 2014 to evaluate, license, and/or potentially sell SEVEN's patent portfolio.  RPX Corporation is headquartered in the Northern District and may have relevant witnesses and evidence regarding the licensing and potential enforcement of the patents-in-suit reside there.  (Ex. WW.)

Google has identified a range of potentially relevant prior art systems developed in the Northern District of California.  Each of these prior art systems implicates witnesses and evidence residing in Northern California.  The Palm operating system (also known as Garnet OS) and its successor the Palm WebOS are a prior art mobile operating systems released by Palm, Inc. of Sunnyvale, California (in the Northern District).  (Exs. XX, YY.)  These operating systems featured powerful power management capabilities and are prior art to the asserted patents.  Palm was acquired by Hewlett-Packard, another company based in the Northern District

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

of California.  At least Andy Grignon, residing in the Northern District of California, is a likely witness with relevant knowledge of these prior art systems.  (Ex. ZZ.)

Apple—another Northern District of California company—is the source of additional prior art.  (Ex. AAA.)  Apple's iOS, which originally launched in 2007, included robust power management capabilities and is prior art to at least the some of the asserted patents.  Apple Engineering Manager Ray Chang, who was formerly a Senior iOS Power Management Manager, resides in Cupertino, California in the Northern District and likely has pertinent information about Apple iOS's prior art power management capabilities.  (Ex. BBB.)

NVIDIA also possesses potentially relevant prior art and is headquartered in the Northern District.  One relevant NVIDIA prior art is U.S. Patent No. 9,474,022 to Lin et al. ("the '022 patent"), which teaches aligning wakeup events after the mobile device enters into a standby mode in order to reduce power consumption.  (Ex. CCC.)  This patent, filed on December 2, 2013, is also prior art to at least the '254 patent.  Many of the inventors, including Liangchuan Mi, Shail Dave, and Karthik Samynathan, currently reside in the Northern District and likely have relevant knowledge regarding this invention, including their motivation behind the invention.  (Exs. DDD-FFF.)

U.S. Pat. App. Pub. 2006/0190616 to Mayerhofer et al. ("the '616 Publication") describes a content aggregation, delivery and sharing system.  (Ex. GGG.)  This patent publication, which was published in August 2006, is prior art to at least the '433 patent.  The first named inventor of the '616 Publication, John Mayerhofer, likely has relevant knowledge regarding the system's operation and reduction to practice and currently resides in Northern California.  (Ex. HHH.)

Another company in the Northern District, Vasco, has prior art relevant to two-factor authentication.  Vasco Data Security, Inc. is the current assignee of U.S. Pat. App. Pub.

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

2003/0204726 to Kefford et al. ("the '726 Publication"), which discloses a system of sending

secured messages based on unique identifier and encryption keys.  (Ex. III.)  This patent

publication was filed in April 25, 2002 and is prior art to at least the '812 patent.  Vasco likely

has relevant documents related to the conception and reduction to practice of the invention

described in the '726 Publication.

## III.  <u>LEGAL STANDARD</u>

A case should be transferred to another district if it could have been brought in that

district and would be "clearly more convenient" to resolve in that district.  *In re Genentech*, 566

F.3d 1338, 1342 (Fed. Cir. 2009) (citing *In re Volkswagen of Am.* ("*Volkswagen II*"), 545 F.3d

304, 315 (5th Cir. 2008) (en banc)).  The determination does not require that the "transferee

forum is far more convenient."  *In re Toyota Motor Corp*., 747 F.3d 1338, 1341 (Fed. Cir. 2014).

Whether another district is sufficiently more convenient is determined by analyzing "private"

and "public" interest factors.  *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008).

The private interest factors are:  (1) the relative ease of access to sources of proof; (2) the

availability of compulsory process to secure the attendance of witnesses; (3) the cost of

attendance for willing witnesses; and (4) all other practical problems that make a trial easy,

expeditious, and inexpensive.  *Id.*  The public interest factors are: (1) the administrative

difficulties flowing from court congestion; (2) the local interest in having localized interests

decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4)

the avoidance of unnecessary problems of conflicts of law or in the application of foreign law.

*Id.* (quoting *Volkswagen II*, 545 F.3d at 315).  Where several factors favor transfer but no factor

weighs against transfer, the transferee forum is "clearly more convenient" and transfer is

warranted.  *In re Toyota Motor Corp.*, 747 F.3d 1338, 1341 (Fed. Cir. 2014).

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

The proposed transferee forum is "clearly more convenient" where, as here, most potential witnesses and relevant evidence are concentrated in the transferee district. *In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009); *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336-37 (Fed. Cir. 2009).  The presence of witnesses and evidence outside both forums does not factor into the transfer analysis. *Toyota*, 747 F.3d at 1340.  Nor does plaintiff's choice of venue carry any weight. *Nintendo*, 589 F.3d at 1200; *TS Tech*, 551 F.3d at 1320.

## IV.   THIS ACTION COULD HAVE BEEN FILED IN THE NORTHERN DISTRICT

Under 28 U.S.C. § 1400(b), there is no dispute that this action could have been brought in the Northern District of California.  Indeed, it is the proper venue for this litigation.  (*See* Dkt. No. 49.)  SEVEN's allegations of infringement are applicable nationwide (*see, e.g.*, Complaint ¶ 5 (alleging infringement through Google's "online store")), and Google has a "regular and established place of business" in Mountain View, California, the location of its headquarters. (King Decl. ¶¶ 6, 8; *see also* Complaint ¶ 2.)  Accordingly, the transfer analysis turns on weighing the private and public interest factors. *Volkswagen II*, 545 F.3d at 312.

## V.   THE PRIVATE INTEREST FACTORS HEAVILY FAVOR TRANSFER

### A.   Easier Access to Sources of Proof Strongly Favors the Northern District of California

The "relative ease of access to sources of proof" factor "turn[s] upon which party . . . will most probably have the greater volume of documents relevant to the litigation and their presumed location in relation to the transferee and transferor venues." *On Semiconductor Corp. v. Hynix Semiconductor, Inc.*, No. 6:09-cv-390, 2010 WL 3855520, at*2 (E.D. Tex. Sept. 30, 2010) (citations omitted).  Additionally "[t]he comparison between the transferor and transferee forums is not altered by the presence of other witnesses and documents in places outside both forums. *In re Toyota Motor Corp.*, 747 F.3d 1338, 1340 (Fed. Cir. 2014).

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

Turning first to the Northern District, as is true in most patent infringement cases, the majority of the relevant evidence in this case will come from the defendant, Google.  *Genentech*, 566 F.3d at 1345.  As detailed above, much of the evidence relating to the Accused Google Products is located in or maintained by Google's Northern California offices.  (*Supra*, Background § II.A.2.)

In addition, sources of evidence related to the asserted patents are concentrated in the Northern District of California.  Many of the inventors, as well as SEVEN's original founders, are located in Northern California.  Thus, highly relevant and unique information relating to the conception, reduction to practice, any reasonable diligence between conception and reduction to practice of the claimed inventions would be found there.  These inventors may also have critical information regarding claim interpretation, infringement, and the validity of the asserted patents.  Indeed, because all the asserted patents claim priority to applications filed while SEVEN was headquartered in San Mateo county (Exs. A, B), the purported inventions would have stemmed from work that was largely or exclusively carried out in Northern California and the bulk of relevant evidence would still located in Northern California.  SEVEN's original founders would also possess unique knowledge regarding the founding, structure, and operation of SEVEN as well as knowledge of its early technology, product development, marketing, sales, and current and former employees.  Similarly, SEVEN's funders in the Northern District likely have relevant evidence relating to the value of the asserted patents.

Key documentary evidence regarding prior art, including evidence relating to the Palm's Garnet OS and WebOS, Apple's iOS, NVIDIA's '022 patent, Mayerhofer's '616 Publication, and Vasco's '726 Publication are also likely located in the Northern District, given the

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

connection of these systems to the Northern District discussed above.  (*Supra*, Background § II.A.3.)

Turning to this District, Google is unaware of any sources of evidence in this District, and in particular, any sources that would outweigh the volume of potential evidence in the Northern District.  Accordingly, this factor weighs heavily in favor of transfer.  *Genentech*, 566 F.3d at 1345-46.

### B. The Availability of Compulsory Process in the Northern District of California, But Not From This Court, Heavily Favors Transfer.

"The fact that the transferee venue is a venue with usable subpoena power . . . weighs in favor of transfer, and not only slightly."  *Genentech*, 566 F.3d at 1345.  "Transfer is favored when a transferee district has absolute subpoena power over a greater number of non-party witnesses" than the transferor district.  *Adaptix, Inc. v. HTC Corp.*, 937 F. Supp. 2d 867, 874 (E.D. Tex. 2013).  A court has "absolute subpoena power" over a witness when that court can compel that witness to attend both depositions and trial.  *Hoffman La-Roche*, 587 F.3d at 1337-38.  A court may compel a non-party witness to attend depositions or trial within 100 miles from his or her residence.  *Id.*; *see also* Fed. R. Civ. P. 45(c).  If trial is more than 100 miles from a non-party witness's residence, but within the state, the court may compel attendance so long as the witness would not incur "substantial expense."  *Id.*  A trial by deposition is not generally an adequate substitute for live witness trial testimony, and § 1404(a) is the vehicle for minimizing the risk of such a trial by deposition.  *Worldwide Fin. LLP v. Kopko*, No. 1:03-cv-428, 2004 WL 771219, at *3 (S.D. Ind. Mar. 18, 2004) ("Parties may use Rule 45 of the Federal Rules of Civil Procedure to conduct discovery all over the United States, so the principal concern [under § 1404(a)] is to make non-party witnesses available for trial.  The aim is to minimize the risk of 'trial by deposition.'" (collecting cases)); *see also, e.g.*, *GeoTag, Inc. v. Aromatique, Inc.*, No.

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

2:10-cv-570, 2013 WL 8349856, at *3 (E.D. Tex. Jan. 14, 2013) ("Transfer is favored when a transferee district has absolute subpoena power over a greater number of non-party witnesses. Absolute subpoena power means the power to compel attendance at both depositions and trial.").

Here, as discussed above, there are many non-party witnesses in each of these categories located in the Northern District of California. There are at least 9 third party inventors that no longer work at SEVEN and remain in Northern California.  (Exs. V-W, Z-CC, FF, II-JJ.) SEVEN's original founders, Bill Nguyen and Trevor Fiatal, no longer work at SEVEN but are located the Northern District of California.  (Exs. SS, V.)  SEVEN's funders (Fortress Investment Group LLC, Greylock, M/C Venture partners, and Saints), who are not parties to this litigation, are also located in the Northern District of California (Exs. JJJ-LLL).  For example, David Sze, a Senior Managing Partner at Greylock (Ex. VV), was a member of the Board of Directors at SEVEN.  (Ex. MMM.)  Eran Zur, Head of the Intellectual Property Finance Group at Fortress Investment Group LLC, is also located in Northern California.  (Ex. UU.)  And as detailed above in Section II.A.3, numerous prior artists, such as Grignon, Chang, Price, Gopalakrishnan, Lau, Lin, Mayerhofer, and Kefford also reside in the Northern District.  On the other hand, Google is not aware of any third party witnesses who reside or work in this District.

These witnesses would be subject to a trial subpoena from the Northern District of California, but not from this Court.  Fed. R. Civ. P. 45(c)(1)(B)(ii) (trial subpoenas may command attendance within the state where a person resides, is employed, or regularly transacts business).  No likely third-party witnesses identified to date reside in Texas.  Given the one-sided balance of witnesses within the respective subpoena powers of this District and the Northern District of California, both parties will be better equipped to present relevant evidence at trial if

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

this case proceeds in the latter district—this factor weighs heavily in favor of transfer.
*Volkswagen II*, 545 F.3d at 316-17; *Genentech*, 566 F.3d at 1345.

> ### C.   Witnesses Would Incur Substantially Less Expense Attending Trial and Other Proceedings in the Northern District of California

"The convenience of the witnesses is probably the single most important factor in transfer analysis."  *Genentech*, 566 F.3d at 1343 (citing *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 329 (E.D.N.Y. 2006)).  "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled."  *See Volkswagen II*, 545 F.3d at 317.  Here, the Northern District of California is more convenient for the vast majority of potential party and non-party witnesses, and this important factor thus weighs heavily in favor of transfer.  *In re Verizon Bus. Network Servs. Inc.*, 635 F.3d 559, 561 (Fed. Cir. 2011) (granting mandamus and ordering transfer where there was a "stark contrast in convenience and fairness with regard to the identified witnesses").

As described with respect to the prior factor, Google has identified numerous third party witnesses in the Northern District of California, including at least nine inventors, the original founders, funders, and prior artists.  On the other hand, Google is not aware of any third party witnesses who reside or work in this District.

The Northern District of California is also more convenient for likely party witnesses.

█████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

███████████████████████████████████████████████████████████████

██████████████████████████████   Each of these witnesses will face a real and

avoidable burden should he or she be required to travel to Marshall, Texas for a trial in this

case—a burden not limited to the monetary expense and lost productivity costs incurred by

Google, but also including time unnecessarily spent away from spouses, children, and

community commitments for these individuals.  *Volkswagen II*, 545 F.3d at 317 (recognizing that

witnesses suffer "personal costs associated with being away from work, family, and

community").   In contrast, Google has no offices in this District, and no Google witness who

works in this District.  (King Decl. ¶¶ 13-14.)  SEVEN also has current employees who are

located in the Northern District of California, including both of SEVEN's executives, one of

whom is also a named inventor.  (*Supra*, Background § II.A.1.)

As demonstrated, the most of the known potential witnesses are located in the Northern

District of California, and by contrast, none are in the Eastern District.  While some may be

located outside of the Northern District and this District, the presence of witnesses and evidence

outside both forums does not factor into the transfer analysis.  *Toyota*, 747 F.3d at 1340.  Even if

the convenience of those witnesses were relevant—it is not—the Northern District would be

more convenient.  For example, there are two inventors in Oregon (Exs. KK, OO) and six

inventors outside of the United States (Exs. Y, DD-EE, LL-NN. ).  These witnesses are either

closer to Northern California (*e.g.*, Oregon, India or China) or in locations where travel is more

convenient with the Northern District of California (*e.g.*, Finland).  Thus, taking all of the

relevant witnesses into consideration, this factor weighs heavily in favor of transfer.  *See*

*Volkswagen I*, 371 F.3d 201, 204-05 (5th Cir. 2004).

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

### D.      There Are No Practical Problems With Transferring This Case

There are no practical problems with transferring this case because this case, including discovery, is in its infancy.  The existence of a co-pending case in this District accusing Samsung Electronics Co., Ltd., et al. (Case No. 2:17-cv-441) of infringing a subset of the patents asserted in this matter carries little, if any weight, in light of the other factors that favor the Northern District of California.  *See In re Google Inc.*, No. 2017-107, 2017 WL 977038, at *2 (Fed. Cir. Feb. 23, 2017) ("the district court erred by resting on the two co-pending cases as the predominate reason for tipping the balance in Eolas's favor.")  Indeed, there is already another co-pending case outside of this District involving the same patents against ZTE (USA) Inc., et al. (Case No. 3:17-cv-1495)[6].

Moreover, the transfer analysis proceeds on an "individualized, case-by-case" basis.  *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964).  In the context of patent litigation, Congress reinforced this longstanding principle through "the recently enacted America Invents Act" ("AIA"), directing that "each patent case will be treated separately" for purposes of resolving venue questions.  *LT Tech, LLC v. FrontRange Solutions USA Inc.*, No. 3:13-cv-1901, 2013 WL 6181983, at *5 (N.D. Tex. Nov. 26, 2013).  Indeed, a primary purpose of the joinder provision of the AIA is to prevent a plaintiff from anchoring litigation in its chosen venue by suing multiple defendants whose businesses and salient evidence may be spread throughout the country.  35 U.S.C. § 299; H.R. Rep. 113-279 at 18-20.  Consistent with these principles, this Court has held that it "will not permit the existence of separately filed cases to sway its transfer analysis.  Otherwise, a plaintiff could manipulate venue by serially filling cases within a single district[,]

---

[6]   SEVEN filed its original complaint against ZTE on May 17, 2017 (the same day it filed complaints against Google and Samsung) in this District.  However, SEVEN voluntarily dismissed that action in this District on June 6, 2017 and re-filed the same complaint in the Northern District of Texas on the same day.

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

undermin[ing] the principals underpinning transfer law and the recently enacted America Invents Act." *GeoTag*, 2013 WL 8349856, at *5.  Thus, this factor is neutral.

## VI.   THE PUBLIC INTEREST FACTORS FAVOR TRANSFER

### A.   The Northern District Has a Greater Interest in this Case

As detailed above, Google's activities related to the Accused Google Products are primarily centered in the Northern District.  (*Supra*, Background § II.A.2.)  Because the allegations call into question the work and reputation of engineers responsible for work related to these products as well as Google's own reputation, the Northern District's interest in this case is significant.  *Hoffman-La Roche*, 587 F.3d at 1336 (finding that the proposed transferee district's "local interest in this case remains strong because the cause of action calls into question the work and reputation of several individuals residing in or near that district and who presumably conduct business in that community"); *Volkswagen I*, 371 F.3d at 206 ("[J]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation" (citation omitted)); *Wireless Recognition Techs. LLC v. A9.com, Inc.*, No. 2:10-CV-364-JRG, 2012 WL 506669, at *6 (E.D. Tex. Feb. 15, 2012) (granting transfer where, among other factors, "the residents of the Northern District of California have a particularized interest in the subject matter of this lawsuit because the majority of the Defendants [including Google] are headquartered there[,] . . . developed the allegedly infringing products in the Northern District of California[,] and collectively employ thousands of people residing there.").

SEVEN's Complaint points to Google's nationwide and global distribution of its services and products, which are not specifically unique to this District.  (*See, e.g.*, Complaint ¶¶ 5-7, 9, 11-28, 47, 49-51, 53-58, 60-65, 67-72, 74-79, 81, 82, 84-86, 88, 90-93, 95-100, 102-107, 109-113.)  These allegations "could apply virtually to any judicial district or division in the United States; it leaves no room for consideration of those actually affected—directly and indirectly—

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

by the controversies and events giving rise to a case." *Volkswagen II*, 545 F.3d at 318; *see also*

*Nintendo*, 589 F.3d at 1198.  The fact that Google makes its services and products available

nationally, including within this District, does not establish an interest in having the case tried

locally.  *TS Tech*, 551 F.3d at 1321; *Vigilos, LLC v. Sling Media, Inc.*, No. 2:11-cv-112, Dkt. 50

at 11 (E.D. Tex. July 25, 2011) ("[T]his case is not tied to the Eastern District in any manner that

would not apply to most other districts, including the Northern District.").

Moreover, SEVEN also has strong ties to the Northern District of California and was

headquartered there for 15 years and continues to avail itself of the courts in Northern

California.[7]  During that time, 20 of the 24 named inventors where in Northern California when

they filed for their patents and many still reside there.  *See, e.g.*, *Affinity Labs of Tex. v. Samsung

Elecs. Co., Ltd.*, 968 F. Supp. 2d 852, 855 (E.D. Tex. 2013) ("The Northern District of California

has an interest in protecting intellectual property rights that stem from research and development

in Silicon Valley."); *see also In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir.

2009).  SEVEN's original founders, current executives, and funders are all located in California,

not this District.  SEVEN only recently re-located its headquarters from the Northern District to

this District in December 2015, and it appears that SEVEN may only have five Texas employees

at this time.  (Exs. F-I.)[8]  Meanwhile, at the same time, it appears that SEVEN has at least 22

---

[7] To this day, SEVEN continues to require counterparties to its contracts, including those that use
SEVEN's products that allegedly practice the asserted patents, to submit to the "exclusive
jurisdiction of courts in California, including the Northern District of California.  (*See, e.g.*, Ex.
NNN (SEVEN's "Terms of Use" stating that "You and SEVEN agree to submit to the personal
and exclusive jurisdiction of the courts located within the county of San Mateo, California and/or
the U.S. District Court for the Northern District of California."); Ex. OOO (SEVEN's End User
Licensing Agreement ("You consent to the jurisdiction of competent courts in California for the
resolution of any dispute arising under or related to this EULA or the Products").)
[8]   *See supra* note 2.

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

employees, including its CEO, Dr. Ross Bott, and Chief Technology Officer, Ari Backholm, who currently work and reside in the Northern District.  (Exs. D, E, J-T.)[9]

SEVEN's limited presence in this District, particularly when compared with this case's ties to the Northern District of California and the number of potential witnesses there, does not tip this factor in favor of this District.  *See Wireless Recognition Techs. LLC v. A9.com, Inc.*, No. 2:10-CV-364-JRG, 2012 WL 506669, at *6 (E.D. Tex. Feb. 15, 2012) (finding that "the 'local interest' factor weighs in favor of transfer to the Northern District of California," where the plaintiff was headquartered in this District with only 9 employees).  Thus, this factor weighs in favor of the Northern District of California.

### B.     The Remaining Public Interest Factors Are Neutral

The remaining public interest factors are neutral.  Court congestion is neutral.  This district has 718 pending cases per judge compared to 600 in the Northern District of California, and both have comparable times for resolving cases from filing to disposition.  (Ex. 2.)  While time to trial is shorter in this District, it should given little weight given the speculative nature of this factor.  See *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009) ("We note that this factor appears to be the most speculative . . . .  Without attempting to predict how this case would be resolved and which court might resolve it more quickly, we merely note that when, as here, several relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all of those other factors.")  Both districts are familiar with and can apply the federal patent laws to this patent infringement case, and no conflict of laws problems are expected to arise in either district.  *TS Tech*, 551 F.3d at 1320.

---

[9]  *See supra* note 3.

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

## <u>CONCLUSION</u>

For the foregoing reasons, Google respectfully requests that this Court transfer this case

to the Northern District of California pursuant to 28 U.S.C. § 1404(a).

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

Dated:   October 2, 2017

Respectfully submitted,

*/s/ Sean S. Pak*

Charles K. Verhoeven
charlesverhoeven@quinnemanuel.com
Sean S. Pak
seanpak@quinnemanuel.com
Brian E. Mack
brianmack@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: 415-875-6600
Fax: 415-875-6700

Patrick D. Curran
patrickcurran@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Tel: 212-849-7000
Fax: 212-849-7100

Michael E. Jones
State Bar No. 10929400
mikejones@potterminton.com
POTTER MINTON LLP
110 N. College Avenue, Suite 500
Tyler, TX 75702
Telephone: (903) 597-8311
Facsimile: (903) 593-0846

*Attorneys for Google Inc.*

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who have consented to electronic service are being served with a copy of this document via electronic mail on October 2, 2017.  I also hereby certify that all counsel of record who have consented to electronic service are being served with a notice of filing of this document, under seal, pursuant to L.R. CV-5(a)(7) on October 2, 2017.

*/s/ Brian Mack*

## <u>CERTIFICATE OF CONFERENCE</u>

The undersigned hereby certifies that counsel for Google has complied with the meet and confer requirement in Local Rule CV-7(h).  The personal conference required by Local Rule CV-7(h) was conducted on October 2, 2017 via telephonic conference with the following participants:  Lance Yang for Google and Max Ciccarelli for SEVEN.  This motion is opposed.

*/s/ Brian Mack*

## <u>CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL</u>

I hereby certify that the foregoing document and all supporting declarations and exhibits thereto are being file contemporaneously with Defendant's Motion for Leave to File Under Seal Its Motion to Transfer Venue to the Northern District of California, Declarations, and Exhibits in accordance with Local Rule CV-5(a)(7).

*/s/ Brian Mack*