# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | |
|---|---|
| SEVEN NETWORKS, LLC, | |
| Plaintiff, | CIVIL ACTION NO. 2:17-CV-442-JRG LEAD CASE |
| v. | PATENT CASE |
| GOOGLE INC., | JURY TRIAL DEMANDED |
| Defendant. | |
| v. | |
| SAMSUNG ELECTRONICS AMERICA, INC. AND SAMSUNG ELECTRONICS CO., LTD., | CIVIL ACTION NO. 2:17-CV-441-JRG CONSOLIDATED CASE |
| Defendants. | |

# RESPONSE TO GOOGLE INC.'S MOTION TO DISMISS (ECF NO. 49)

## TABLE OF CONTENTS

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iiiii

Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

   A. SEVEN is a software company based in Marshall, Texas. . . . . . . . . . . . . . . . 1

   B. Google is in the business of delivering information. . . . . . . . . . . . . . . . . 2

      1. Google delivers information through its Edge Network. . . . . . . . . . . . . 2

      2. Google delivers information to residents of this District
         through Edge servers in Tyler and Sherman, Texas. . . . . . . . . . . . . 4

Legal Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

   A. Burden. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

   B. Acts of Infringement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

   C. Regular and Established Place of Business . . . . . . . . . . . . . . . . . . . 7

Arguments. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

   A. Acts of Infringement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      1. SEVEN's First Amended Complaint alleges that
         Google infringes each of the patents-in-suit in this
         District. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      2. SEVEN's infringement allegations establish venue in
         this District. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

         a. Google's acts of infringement in this District do not
            need be tied to its regular and established place of
            business in the District. . . . . . . . . . . . . . . . . . . . 10

         b. Google committed acts of infringement in this
            District by performing at least one step of each of
            the asserted method claims in the District. . . . . . . . . . . 11

         c. SEVEN's indirect-infringement claims are not
            limited to Google's post-suit infringement. . . . . . . . . . . 12

   B. Regular and Established Place of Business . . . . . . . . . . . . . . . . . . . 13

      Google owns Edge servers in Tyler and Sherman that it
      uses to store and distribute Google's product—i.e.,
      data—to residents of the District.. . . . . . . . . . . . . . . . . . . . 13

   C. Alternative Requests . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

TABLE OF AUTHORITIES

## Cases

*Am. Cyanamid Co. v. Nopco Chem. Co.*,
    268 F. Supp. 506 (W.D. Va. 1967) . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Braspetro Oil Servs. Co. v. Modec (USA), Inc.*,
    240 F. App'x 612 (5th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 13

*Clasen v. Nat'l Bd. of Osteopathic Med. Examiners, Inc.*,
    No. 4:15-CV-625-DBB, 2015 WL 9489507 (E.D. Tex. Dec. 30, 2015) . . . . . . . . . . 7, 13

*Datascope Corp. v. SMEC, Inc.*,
    561 F.Supp. 787 (D.N.J. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*,
    135 S. Ct. 2028 (2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*EnviroGLAS Prods., Inc. v. EnviroGLAS Prods., LLC*,
    705 F. Supp. 2d 560 (N.D. Tex. 2010) . . . . . . . . . . . . . . . . . . . . . . . . 7

*Faberge, Inc. v. Schick Elec., Inc.*,
    312 F. Supp. 559 (D. Del. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Fed. Elec. Prods. Co. v. Frank Adam Elec. Co.*,
    100 F. Supp. 8 (S.D.N.Y. 1951) . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Fourco Glass Co. v. Transmirra Prods. Corp.*,
    353 U.S. 222 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Gaddis v. Calgon Corp.*,
    449 F.2d 1318 (5th Cir. 1971) . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10

*In re Cordis Corp.*,
    769 F.2d 733 (Fed. Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 14

*In re Cray Inc.*,
    — F.3d —, 2017 WL 4201535 (Fed. Cir. Sept. 21, 2017) . . . . . . . . . . . 7, 8, 14, 15, 16

*Kranos IP Corp. v. Riddell, Inc.*,
    No. 2:17-CV-443-JRG, 2017 WL 3704762 (E.D. Tex. Aug. 28, 2017) . . . . . . . . . . . . 6

*Noble Linear Irr., Inc. v. Valmont Indus., Inc.*,
    No. 81-1210, 1982 WL 51054 (D. Idaho May 26, 1982) . . . . . . . . . . . . . . . . 15

*NTP, Inc. v. Research in Motion, Ltd.*,
    418 F.3d 1282 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*OMI Int'l Corp. v. MacDermid, Inc.*,
    648 F. Supp. 1012 (M.D.N.C. 1986) . . . . . . . . . . . . . . . . . . . . . . . . 15

*Raytheon Co. v. Cray, Inc.*,
    — F. Supp. 3d —, 2017 WL 2813896 (E.D. Tex. June 29, 2017) . . . . . . . . . . 6, 7, 9, 10

*Roach v. Bloom*,
    No. CIV.A. 3:08-CV-439-L, 2009 WL 667218 (N.D. Tex. Mar. 16, 2009) . . . . . . . . . . 6

*San Shoe Trading Corp. v. Converse Inc.*,
    649 F. Supp. 341 (S.D.N.Y. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*TC Heartland LLC v. Kraft Foods Group Brands LLC*,
    137 S. Ct. 1514 (2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

## Statutes

28 U.S.C. § 1400(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5, 8, 9, 10, 13, 14, 17

28 U.S.C. § 1406(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

35 U.S.C. § 271 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 11

Google's business is delivering information. It regularly conducts that business in this District with computer hardware and software owned by Google that is housed in facilities in Tyler and Sherman, Texas. The hardware and software function as data warehouses that Google uses to store and deliver content to residents in the District. Google has also infringed each of the patents-in-suit by committing acts of infringement in this District, as SEVEN alleges in its First Amended Complaint. For at least these reasons, Google has a regular and established place of business in the District. Venue is therefore proper under 28 U.S.C. § 1400(b), and Google's motion to dismiss should be denied.

## BACKGROUND

### A.  SEVEN is a software company based in Marshall, Texas.

Founded in 2000, SEVEN develops software for mobile devices and wireless networks.[1] SEVEN's software has been used on more than 100 million mobile devices, it has more than four hundred patents and patents pending, and it has earned significant industry recognition, including a GSMA Technology Breakthrough Award in 2011 and a Mobile Merit Award in 2013.[2] In 2015, SEVEN moved its corporate headquarters to Marshall, Texas, where its staff of engineers works on products that practice the patents-in-suit.[3]

---

[1]    *See* **Ex. A**: SEVEN Networks, Company Overview, https://www.seven.com/seven-networks-company.php.

[2]    *See* **Ex. B**: Ryan Wagoner, *New tech company moves to Marshall*, The Marshall News Messenger, Sept. 27, 2017, https://www.marshallnewsmessenger.com/news/2015/dec/02/new-tech-company-heading-to-marshall/; **Ex. C**:  GSMA, *The GSMA Announces Winners of the Annual Global Mobile Awards*, Feb. 15, 2011, https://www.gsma.com/newsroom/press-release/the-gsma-announces-winners-of-the-annual-global-mobile-awards/; **Ex. D**: Business Wire, *2013 Mobile Merit Awards Winners Announced!*, Sept. 5, 2013, http://www.businesswire.com/news/home/20130905006358/en/2013-Mobile-Merit-Awards-Winners-Announced%21.

[3]    *See* **Ex. B**: Ryan Wagoner, *New tech company moves to Marshall*.

**B.   Google is in the business of delivering information.**

Google is a multinational technology company in the business of storing, organizing, and distributing data. More precisely, "Google is an information company."[4] Its vision is "to provide access to the world's information in one click," and its mission is "to organize the world's information and make it universally accessible and useful."[5] Indeed, making information available to people wherever they are and as quickly as possible is critical to Google's business. As Google's CEO, Sundar Pichai explains, "We want to make sure that no matter who you are or where you are or how advanced the device you are using—Google works for you."[6] To meet this goal, Google developed what it calls the Edge Network.

**1.   Google delivers information through its Edge Network.**

Google's Edge Network has three elements: Core Data Centers; Edge Points of Presence; and Edge Nodes.[7] The Core Data Centers (there are eight in the United States) are used for computation and backend storage.[8] Information from the Data Centers is delivered to users through the Edge Points of Presence and Edge Nodes. Edge Nodes are the layer of the network closest to users, and they are recognized as "one of Google's most important pieces of

---

[4]   *See* **Ex. E**: Sundar Pichai, *Founder's Letter* (2016), https://www.blog.google/topics/inside-google/this-years-founders-letter/.

[5]   *See* **Ex. E**: *Founder's Letter*; **Ex. F**: Andrew Thompson, *Google's Vision Statement & Mission Statement*, PanMore Institute (Jan. 28, 2017), http://panmore.com/google-vision-statement-mission-statement.

[6]   **Ex. E**: *Founder's Letter*.

[7]   **Ex. G**: Google Edge Network, Our Infrastructure, https://peering.google.com/#/infrastructure.

[8]   **Ex. G**: Google Edge Network, Our Infrastructure.

infrastructure."[9] They include physical equipment (like servers) and function as local data warehouses, much like a shoe manufacturer might have warehouses around the country. Instead of requiring residents of the Eastern District to obtain information from distant Core Data Centers, which would introduce delay, Google stores information in Edge Nodes throughout the country—including in Tyler—to provide people with quick access to the data.

The local warehousing of data is critical to Google's effort to provide information quickly. As Google explains, "Static content that is very popular with the local . . . user base, including YouTube and Google Play, is temporarily cached on Edge nodes."[10] When an end user requests such content, if it is stored in the node's local cache, the node "will serve the content . . . to the end user, improving the user experience and saving bandwidth."[11] If the content is not already stored on the node, "the node will retrieve it from Google, serve it to the user, and store it for future requests."[12] Google markets this system to local network operators and Internet service providers—including those in this District—with a claim that it "enables your company to optimize network infrastructure costs associated with delivering Google and YouTube content to your users by serving this content from inside your network."[13]

---

[9]    **Ex. H**: Speedchecker Ltd., Demystifying Google Global Cache, http://blog.speedchecker.xyz/2015/11/30/demystifying-google-global-cache/; *see also* http://www.speedchecker.xyz/ (explaining that Speedchecker Ltd. is an internet performance monitoring company that helps users get a better understanding of their internet connections and gain an understanding of their own and competitor's networks, and analyze coverage).

[10]    **Ex. G**: Google Edge Network, Our Infrastructure.

[11]    **Ex. I**: Google Edge Network, FAQ, https://peering.google.com/#/learn-more/faq.

[12]    **Ex. I**: Google Edge Network, FAQ.

[13]    **Ex. J**: Google Partner Request, https://isp.google.com/partner_request/?data.request_ type=Caches%20(GGC).

**2. Google delivers information to residents of this District through Edge servers in Tyler and Sherman, Texas.**

When a local network operator or Internet service provider, such as Suddenlink Communications in Tyler or Cable One in Sherman, agrees to host a Google Edge server, the parties enter into a Global Cache Service Agreement.[14] Under these agreements, Google provides: hardware and software to be housed in the host's facilities; technical support; service management of the hardware and software; and content distribution services, including content caching, video streaming, and reverse proxy.[15] The host provides, among other things: a physical building, rack space where Google's computer hardware is mounted, power, and network interfaces.[16] The Global Cache Service Agreement further states that "[a]ll ownership rights, title, and intellectual property rights in and to the Equipment [i.e., the hardware and software provided by Google] shall remain in Google and/or its licensors."[17] In other words, Google owns the physical equipment located in Tyler on which Google maintains products (information) specifically for the convenience of and use by residents of this District.

Suddenlink Communications and Cable One are companies that provide internet service to cities in the Eastern District.[18] Both have entered into Global Cache Service Agreements with

---

[14]   *See* **Ex. J**: Google Partner Request.

[15]   **Ex. K**: Beta Service Agreement: Google Global Cache (GGC) Service ¶ 1(a) (available at https://slideblast.com/confidential-beta-service-agreement-googie-global-cache-ggc-_595b4d451723dda9c36370b6.html).

[16]   **Ex. K**: Beta Service Agreement ¶ 1(b).

[17]   **Ex. K**: Beta Service Agreement ¶ 11.

[18]   **Ex. L**: Suddenlink, Areas We Serve, https://www.suddenlink.com/our-company/areas-we-serve/texas/lufkin; https://www.suddenlink.com/our-company/areas-we-serve/texas/marshall; https://www.suddenlink.com/our-company/areas-we-serve/texas/sherman; https://www.suddenlink.com/our-company/areas-we-serve/texas/tyler; Get the High-Speed

Google. Suddenlink Communications hosts a Google Edge Server in Tyler,[19] and Cable One

hosts one in Sherman.[20]

### LEGAL STANDARD

"Any civil action for patent infringement may be brought in the judicial district where the

defendant resides, or where the defendant has committed acts of infringement and has a regular

and established place of business." 28 U.S.C. § 1400(b); *see TC Heartland LLC v. Kraft Foods*

*Group Brands LLC*, 137 S. Ct. 1514, 1519 (2017) ("[Section] 1400(b) 'is the sole and exclusive

provision controlling venue in patent infringemenSt actions.'") (quoting *Fourco Glass Co. v.*

*Transmirra Prods. Corp.*, 353 U.S. 222, 229 (1957)). A domestic corporation resides only in its

state of incorporation. *TC Heartland*, 137 S. Ct. at 1517. If a domestic corporation does not reside

in the district the case is filed, venue is still proper if it committed acts of infringement in the

district and had a regular and established place of business in the district when the cause of action

accrued. *See San Shoe Trading Corp. v. Converse Inc.*, 649 F. Supp. 341, 344 (S.D.N.Y. 1986)

(citing *Datascope Corp. v. SMEC, Inc.*, 561 F.Supp. 787, 790 (D.N.J. 1983), *aff'd in relevant part*,

776 F.2d 320 (Fed. Cir. 1985)).

### A. Burden

"Circuit courts, district courts, and scholars have reached different answers in allocating

---

Internet You've Been Looking for in Sherman, http://www.cableone.net/internet-provider/sherman-tx.

[19]    *See* **Ex. M**: Speedchecker Ltd., Demystifying Google Global Cache, https://www.google.com/maps/d/viewer?mid=18FeuDz0xtVnpvLiFz9HsPk7ZTDg&ll=22.227907849928926%2C-32.2206625&z=3; *see also* **Ex. Q**: Google Edge Network, Our Infrastructure.

[20]    *See* **Ex. N**: Speedchecker Ltd., Demystifying Google Global Cache, https://www.google.com/maps/d/viewer?mid=18FeuDz0xtVnpvLiFz9HsPk7ZTDg&ll=32.95089792427094%2C-96.22701015625&z=9; *see also*, **Ex. Q**: Google Edge Network, Our Infrastructure.

the burden of proof in venue disputes." *Raytheon Co. v. Cray, Inc.*, — F. Supp. 3d —, 2017 WL 2813896, at *2 (E.D. Tex. June 29, 2017) (overruled on other grounds). As this Court noted in *Cray*, "[w]here the burden of sustaining venue is placed on the plaintiff, courts often rely on older authority recognizing a plaintiff's burden in establishing jurisdictional facts." *Id.* at *3 (declining to rule on this issue since the parties did not dispute who bore the burden). But the distinction between establishing jurisdiction and maintaining a chosen venue is significant, and there is no reason to assume that the plaintiff bears the burden in both contexts. On the contrary, as Judge Lindsay of the Northern District of Texas explained, there is every reason to place the burden on defendants to show venue is improper:

> When asserting a 12(b)(3) motion, a defendant does not question the court's jurisdiction to hear the case; the only question is whether the case should be heard in the district in which it was originally filed. Such motion is a privilege unique to defendants and is used as an affirmative defense. As with any affirmative defense, it is waived if not properly raised. Further, the burden of establishing an affirmative defense rests with the party asserting it. Accordingly, the court sees *no logical reason why Defendants in this case should not be required to establish that venue is improper* and that the action should be dismissed or transferred to another district.

*Roach v. Bloom*, No. CIV.A. 3:08-CV-439-L, 2009 WL 667218, at *2 (N.D. Tex. Mar. 16, 2009) (emphasis added); *see also Kranos IP Corp. v. Riddell, Inc.*, No. 2:17-CV-443-JRG, 2017 WL 3704762, at *3 (E.D. Tex. Aug. 28, 2017) ("Recent case law from this District . . . has found that the burden lies with the defendant who seeks to protect the privilege of having its case heard in a convenient forum.").

    In any event, although the courts may not all agree about which party bears the burden, there is no question that "[o]n a Rule 12(b)(3) motion to dismiss for improper venue, *the court must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff*." *Braspetro Oil Servs. Co. v. Modec (USA), Inc.*, 240 F. App'x 612, 615 (5th Cir. 2007) (emphasis

added); *see also EnviroGLAS Prods., Inc. v. EnviroGLAS Prods., LLC*, 705 F. Supp. 2d 560,

567–68 (N.D. Tex. 2010) (quoting same). Further, "[t]o prevail on a motion to dismiss for

improper venue, a defendant must present facts that will defeat a plaintiff's assertion of venue."

*Clasen v. Nat'l Bd. of Osteopathic Med. Examiners, Inc.*, No. 4:15-CV-625-DBB, 2015 WL

9489507, at *3 (E.D. Tex. Dec. 30, 2015), *report and recommendation adopted*, 6:15-CV-625, 2016

WL 890675 (E.D. Tex. Mar. 9, 2016) (citing *Braspetro*, 240 F. App'x at 615).

## B.  Acts of Infringement

"[C]ourts have consistently held that an *allegation* of infringement is itself sufficient to

establish venue and the plaintiff is not required to demonstrate actual infringement by the

defendant." *Cray*, 2017 WL 2813896 at *4 (emphasis added) (quotation marks and brackets

omitted). A separate issue is whether the alleged acts of infringement must be related to the

defendant's regular and established place of business. Although the Federal Circuit has not

addressed this issue, this Court has stated that it "considers it proper to follow the courts that

have held that the statute creates no relationship between the act of infringement and the regular

and established place of business." *Id.* at *7 (citing *Gaddis v. Calgon Corp.*, 449 F.2d 1318, 1320

(5th Cir. 1971)).

## C.  Regular and Established Place of Business

"Section 1400(b) requires that 'a defendant has' a 'place of business' that is 'regular' and

'established.'" *In re Cray Inc.*, — F.3d —, 2017 WL 4201535, at *5 (Fed. Cir. Sept. 21, 2017).

Accordingly, venue is proper if three elements are met: (i) there is a physical place in the district;

(ii) that is a regular and established place of business; and (iii) is the place of the defendant. *Id.*

at *4. "While the 'place' need not be a 'fixed physical presence in the sense of a formal office or

store,' there must still be a physical, geographical location in the district from which the business

of the defendant is carried out. *Id.* at *5 (quoting *In re Cordis Corp.*, 769 F.2d 733, 737 (Fed. Cir. 1985)). A business is "regular" if it "operates in a "steady, uniform, orderly, and methodical manner." *Id.* (quotation marks and brackets omitted). To be "established," the place of business must be "settled certainly, or fixed permanently." *Id.* at *6 (quotation marks and brackets omitted). Finally, "it must be a place of the defendant, not solely a place of the defendant's employee." *Id.* "Thus, the defendant must establish or ratify the place of business," for example by listing it on a website or in a telephone or other directory. *Id.*

### ARGUMENTS

Venue is proper under § 1400(b) because Google has committed acts of infringement in this District and has a regular and established place of business in this District.

## A. Acts of Infringement

### 1. SEVEN's First Amended Complaint alleges that Google infringes each of the patents-in-suit in this District.

SEVEN's First Amended Complaint alleges with specificity that Google has infringed at least one claim of each patent-in-suit in this District. The allegations include, among other things, the following:

- **¶ 47**: "Google infringes at least claim 10 of the '158 Patent under at least 35 U.S.C. § 271(a). Google, for example, practices every step of at least claim 10 in the United States, including steps that it practices in this District.";

- **¶ 51**: "Google infringes at least claim 26 of the '952 Patent under 35 U.S.C. § 271(a), (b), and (c). Google makes, uses, sells, offers to sell, or imports into the United States products, such as the Pixel, that meet every limitation of at least claim 26. At least some of that infringing activity takes place in this District.";

- **¶ 58**: "Google infringes at least claim 1 of the '019 Patent under at least 35 U.S.C. § 271(a), (b) and (c). Google makes, uses, sells, offers to sell, or imports into the United States products, such as the Pixel, that meet every limitation of at least claim 1. At least some of that infringing activity takes place in this District.";

- **¶ 65**: "Google infringes at least claim 7 of the '600 Patent under at least 35 U.S.C.

§ 271(a), (b) and (c). Google makes, uses, sells, offers to sell, or imports into the United States products, such as the Pixel, that meet every limitation of at least claim 7. At least some of that infringing activity takes place in this District.";

- **¶ 72**: "Google infringes at least claim 1 of the '254 Patent under at least 35 U.S.C. § 271(a), (b), and (c). Google makes, uses, sells, offers to sell, or imports into the United States products, such as the Pixel, that meet every limitation of at least claim 1. At least some of that infringing activity takes place in this District.";

- **¶ 79**: "Google infringes at least claims 1 and 16 of the '433 Patent under at least 35 U.S.C. § 271(a) and (b). Google makes, uses, sells, offers to sell, or imports into the United States the Google Play store which meets every limitation of at least claim 1. Further, Google, for example, practices every step of claim 16 in the United States, including steps that it practices in this District.";

- **¶ 86**: "Google infringes at least claims 1 and 10 of the '812 Patent under at least 35 U.S.C. § 271(a) and (b). Google, for example, practices every step of at least claim 1 in the United States, including steps that it practices in this District. Further, Google makes, uses, sells, offers to sell, or imports into the United States servers that meet every limitation of at least claim 10.";

- **¶ 93**: "Google infringes at least claim 10 of the '127 Patent under at least 35 U.S.C. § 271(a), (b) and (c). Google makes, uses, sells, offers to sell, or imports into the United States products, such as its Pixel, that meet every limitation of at least claim 10. At least some of that infringing activity takes place in this District.";

- **¶ 100**: "Google infringes at least claim 1 of the '129 Patent at least under 35 U.S.C. § 271(a), (b), and (c). Google makes, uses, sells, offers to sell, or imports into the United States products, such as the Pixel, that meet every limitation of at least claim 1. At least some of that infringing activity takes place in this District."; and

- **¶ 107**: "Google infringes at least claim 9 of the '816 Patent under at least 35 U.S.C. § 271(a), (b), and (c). Google makes, uses, sells, offers to sell, or imports into the United States products, such as the Pixel, that meet every limitation of at least claim 9. At least some of that infringing activity takes place in this District."

These allegations are sufficient to support the "acts-of-infringement" prong of § 1400(b).

*See, e.g.*, *Cray*, 2017 WL 2813896 at *4 ("[A]n allegation of infringement is itself sufficient to establish venue and the plaintiff is not required to demonstrate actual infringement by the defendant.").

**2. SEVEN's infringement allegations establish venue in this District.**

Google does not deny that SEVEN has alleged infringement in this District. Rather, it claims the allegations are insufficient because they do not allege: (i) a nexus between the acts of infringement and Google's regular and established place of business in the District; (ii) for the method claims, that *all* of the method steps occur in the District; and (iii) for certain indirect-infringement claims, that Google had notice of the patents before the suit was filed. Google is wrong on all counts.

### a.  Google's acts of infringement in this District do not need be tied to its regular and established place of business in the District.

As set forth above, this Court has stated that it agrees with the majority view that there is no nexus requirement. *Cray*, 2017 WL 2813896 at *7. The plain language of the statute supports this position. Section 1400(b) provides that venue is proper "where a defendant has committed acts of infringement *and* has a regular and established place of business." 28 U.S.C. § 1400(b) (emphasis added). It does not state that the defendant must have committed acts of infringement "arising from" a regular and established place of business in the district. As long as the two requirements are satisfied in a particular district—i.e., as long as the defendant has committed acts of infringement in the district and has a regular and established place of business in that same district—venue is proper. Google's "re-writing of the statute, plain on its face, is an example of lawmaking as distinguished from statutory interpretation that is beyond the power of the courts." *See Gaddis*, 449 F.2d at 1319 (reversing dismissal for improper venue where the defendant had a regular and established place of business in the district unrelated to the alleged infringement); *see also, e.g., E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 135 S. Ct. 2028, 2033 (2015) ("The problem with this approach is the one that inheres in most incorrect interpretations of statutes: It asks us to add words to the law to produce what is thought to be a desirable result. That is

Congress's province.").

### b.  Google committed acts of infringement in this District by performing at least one step of each of the asserted method claims in the District.

Google contends that SEVEN did not "sufficiently allege that Google has committed acts of infringement in this District with respect to [the '158, '433, and '812 Patents]." Mtn. at 15–16. The claims at issue are method claims. SEVEN explicitly alleged that at least one step of each of the claims is performed in this District. Citing *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1317–18 (Fed. Cir. 2005), Google argues that a method claim cannot be infringed in this District unless *all* of its steps are performed here. Google reads too much into *NTP*.

In *NTP*, the Federal Circuit held there was *no act of infringement* under 35 U.S.C. § 271(a) because at least one of the method steps at issue was performed outside the United States. *Id.* at 1318; *see* 35 U.S.C. § 271(a) ("[W]hoever without authority . . . uses . . . any patented invention, *within the United States* . . . infringes the patent." (emphasis added). The issue, in other words, concerned the court's subject-matter jurisdiction over the claims. In stark contrast, the issue here concerns venue. There is no question that all the steps are performed within the United States and that SEVEN has therefore pled acts of infringement within the United States. Google does not deny this. Instead, Google tries to stretch *NTP* to stand for the proposition that infringement of a method occurs only in a district in which all the steps are carried out. That is not a fair reading of *NTP*.

The Federal Circuit did not hold, and has never held, that when a defendant carries out the steps of a method claim in multiple districts, there can be no act of infringement in any of them. Indeed, such a ruling would be nonsensical, as it would mean that an act of infringement could occur within the United States without taking place in any district in the United States. Based on

– 11 –

the allegations in the First Amended Complaint, at least some of the method steps are performed in this District. Even if other steps might be performed in other districts, the result in each case is an act of infringement. That the infringement occurred across multiple districts does not mean, as Google claims, that it occurred in none of them. On the contrary, it must mean that acts of infringement occurred in all of them. It necessarily follows that if Google has performed at least one infringing step of a method claim in this District, it has committed an act of infringement here.

### c. SEVEN's indirect-infringement claims are not limited to Google's post-suit infringement.

Google further contends SEVEN has not sufficiently alleged infringement in this District with respect to system claims in the '433 and '812 Patents. For those claims, SEVEN alleges that Google induces infringement by encouraging users of the Google Play Store, including users in this District, to put the systems into use. According to Google, those allegations do not support venue because SEVEN allegedly claimed only post-filing indirect infringement. Mtn. at 16–17. Google is mistaken.

In each case, SEVEN alleged that "Google has had notice of the ['433/'812] Patent and its infringement since *at least* as early as the filing of this lawsuit." First Amended Complaint ¶¶ 85, 92 (emphasis added). "At least as early as" does not mean "on," as Google contends. It means "on or before." *See, e.g.*, *U.S. v. Alvarado-Guzman*, 927 F.2d 610 (Fed. Cir. 1991) (holding that an indictment charging a conspiracy "beginning 'at least as early as August 1986'" included "a conspiracy beginning before August 1986"). Further, Google never states that it learned about the patents only when the suit was filed—and in fact, Google made them available to the public

well before that.[21] Attorney argument alone, which is all Google offers on this point, cannot

defeat SEVEN's assertion of venue. *See, e.g.*, *Braspetro*, 240 F. App'x at 615 ("[T]he court must

accept as true all allegations in the complaint."); *Clasen*, 2015 WL 9489507, at *3 ("[A]

defendant must present facts that will defeat a plaintiff's assertion of venue.").

Accordingly, for each of the asserted patents, SEVEN's First Amended Complaint alleges

that Google has committed an act of infringement in this District.

## B.  Regular and Established Place of Business

Google does not deny the following allegations in SEVEN's First Amended Complaint:

- Google owns and controls servers located in this District that provide Google services to users in this District. (*See* Complaint ¶ 24; Mtn. at 14); and
- Google uses hardware and software it owns and controls in this District for content caching, video streaming, and reverse proxy. (*See* Complaint ¶ 27; Mtn. at 14).

These allegations alone, which "the court must accept as true," support SEVEN's contention

that Google has a regular and established place of business in this District. *See Braspetro*, 240 F.

App'x at 615.

> ### Google owns Edge servers in Tyler and Sherman that it uses to store and distribute Google's product—i.e., data—to residents of the District.

Google repeatedly claims that it does not own or lease any *real* property in this District. *See*

Mtn. at 1, 12, 14, 19, 20. Section 1400(b), however, does not state that the defendant must own or

lease *real* property. And Google never denies that it owns other forms of property in the District.

In fact, it admits that it owns Edge servers that are located in places leased from an Internet

service provider:

---

[21]    *See* **Ex. O**: Declaration of Max Ciccarelli ¶¶ 2–4 (describing how quickly after issue Google makes patents, including the patents-in-suit available on the Google Patents website.

> As part of the Google Global Cache ('GGC') program, Google has a small number of Edge network caching servers at locations owned by Internet service providers ('ISPs'), with whom Google has a contractual relationship. These GGC systems only cache static content, such as portions of YouTube videos.

Mtn. at 14 (internal citations omitted). At least two of Google's Edge servers are located in this District—in Tyler and Sherman, to be precise.[22]

Applying Google's own legal standard, the Edge servers in Tyler and Sherman are regular and established places of business. According to Google, the "'regular and established place of business' provision in § 1400(b) contains three textual elements." Mtn. at 4. First, the presence must be in a physical "place." *Id.*; *but see In re Cray*, 2017 WL 4201535, at *5. ("[T]he 'place' need not be a 'fixed physical presence in the sense of a formal office or store.'") (quoting *In re Cordis Corp.*, 769 F.2d 733, 737 (Fed. Cir. 1985)). "Second, the place of business must be 'established,'" not temporary. Mtn. at 4. And third, the business must be carried out regularly, not merely temporarily." *Id.* at 5. By Google's own admissions, the Edge servers meet all three elements. They are physical objects housed at physical locations; they are kept and maintained in those locations continuously; and they regularly serve data to Google users in the District.[23]

Further, serving that data to users is Google's core business, as its mission is "to organize the world's information and make it universally accessible and useful" as quickly as possible.[24] And as explained above, Edge servers are the layer of Google's infrastructure closest to its users. They store popular content, such as YouTube videos that have gone viral, so that it can be served

---

[22]  *See* **Ex. Q**: Google Edge Network, Our Infrastructure.

[23]  *See* Mtn. at 14; *see also* **Ex. G**: Google Edge Network, Our Infrastructure.

[24]  *See* **Ex. E**: *Founder's Letter*; **Ex. F**: Andrew Thompson, *Google's Vision Statement & Mission Statement*.

to users more efficiently.[25] In effect, the servers are digital warehouses for Google's product—i.e., information—storing data for distribution within the District. Courts have long recognized that warehousing products in a district is enough to establish venue.

In *Federal Electric Products Co. v. Frank Adam Electric Co.*, 100 F. Supp. 8 (S.D.N.Y. 1951), for example, the court held that a Missouri corporation had a regular and established place of business in New York City because it owned a building there that it used to stockpile products for more expeditious shipment along the Atlantic seaboard. *Id.* at *10–11. Although sales were technically invoiced in St. Louis, orders were filled directly from the New York warehouse. *Id. See also In re Cray*, 2017 WL 4201535, at *5 (citing "distribution centers, storing inventory that . . . employees then directly t[ake] to . . . clients" as an example of "places" in which defendants conduct regular and established business).[26]

The only difference between the brick-and-mortar warehouses at issue in the older cases and Google's Edge servers is the nature of the products being stored in them—the brick-and-mortar warehouses held tangible commodities, whereas the Edge servers store data. But as Google itself has argued, that distinction is meaningless because data are "things" and the servers on which data reside are "places." *In re Search Warrant No. 16-960-M-1 to Google* was a case in which the United States Department of Justice issued search warrants to Google in accordance with § 2703 of the Stored Communications Act (SCA). The warrants required

---

[25]   Google contends it is not using the edge servers to do business because they store static, rather than dynamic, content. The argument is a red herring. What matters is that the servers store data for distribution to users. Whether it is static or dynamic is irrelevant.

[26]   *See also, e.g.*, *OMI Int'l Corp. v. MacDermid, Inc.*, 648 F. Supp. 1012, 1016 (M.D.N.C. 1986); *Noble Linear Irr., Inc. v. Valmont Indus., Inc.*, No. 81-1210, 1982 WL 51054, at *2 (D. Idaho May 26, 1982); *Faberge, Inc. v. Schick Elec., Inc.*, 312 F. Supp. 559, 562 (D. Del. 1970); *Am. Cyanamid Co. v. Nopco Chem. Co.*, 268 F. Supp. 506, 510 (W.D. Va. 1967), *aff'd*, 388 F.2d 818 (4th Cir. 1968).

Google to disclose information to the FBI that was related to certain Google accounts. Google objected, arguing that the warrants required it to produce data stored on servers outside the United States, which, according to Google, would be an unlawful extraterritorial application of the SCA. Specifically, Google argued:

> The government seeks . . . the equivalent of requiring a bank to search, seize, and retrieve to the United States documents its customer has stored in a safe deposit box in a foreign branch or requiring a hotel chain to search, seize, and retrieve to the United States luggage or correspondence a customer has stored in a room in a foreign hotel. . . . [A] warrant cannot require a search of a foreign *place* and the seizure of *things* stored therein.[27]

Google therefore equates the intangible data stored on its servers with documents stored in safe deposit boxes and luggage held in hotel valet closets. Indeed, it refers to the data as "things" and says those things are stored in "places." Applying Google's analogy to the facts of this case, the content stored in Google's Edge servers in Tyler and Sherman are "things" stored in "places." The nature of those things may be different than physical commodities stored in brick-and-mortar warehouses, but they are no less products being held for distribution as part of Google's business.

Further, Google has "establish[ed] or ratif[ied] the place[s] of business" in Tyler and Sherman by listing it on its website. *See In re Cray*, 2017 WL 4201535, at *6. Google has a series of web pages devoted to explaining its network infrastructure. The page devoted to Edge servers has a "map of metros where at least one Edge node (GGC) is present." As shown below, the map

---

[27] **Ex. P**: Br. of Google Inc. in Support of Objections to Magistrate Judge's Order Granting the Government's Motions to Compel at 9–10, *In re Search Warrant No. 16-960-M-1 to Google*, No. 2:16-mj-00960-JS (E.D. Penn. Mar. 10. 2017), ECF No. 53 (emphases added; internal citations omitted).

marks Tyler and Sherman as two of those metros (arrows pointing to the Edge servers added).[28]

 

In sum, Google's Edge servers in Tyler and Sherman satisfy not only Google's regular-and-established-place-of-business standard, but also, and more importantly, the Federal Circuit's standard. They are physical places owned by Google and housed in physical facilities; Google regularly and continuously uses them to conduct the business of storing and delivering information to residents of this District; they are "settled certainly" in their locations; and Google has ratified them as places of business. Google's Edge servers in Tyler and Sherman are therefore regular and established places of business that establish venue in this District under § 1400(b).

## C. Alternative Requests

Concurrently with filing of this response, SEVEN is filing a Contingent Motion for Leave to Conduct Expedited Venue Discovery in case the Court determines that it needs additional information to rule on Google's motion. As set forth in SEVEN's motion for venue discovery,  if the Court entertains any doubts about whether Google has a regular and established place of

---

[28]  **Ex. Q**: Google Edge Network, Our Infrastructure.

business in this District, SEVEN has good cause to conduct expedited venue discovery aimed at resolving that issue.

If, however, the Court determines that venue is improper, SEVEN requests that the Court allow additional briefing to address the question whether, and if so where, the case should be transferred. [29]

## CONCLUSION

SEVEN's First Amended Complaint alleges that Google has committed acts of infringement in this District and that Google has a regular and established business in this District. Google has not shown otherwise. Venue is proper.

Accordingly SEVEN respectfully requests that the Court deny Google's motion to dismiss.

---

[29]   Although Google contends it should be transferred to the Northern District of California, venue is also proper in the Northern District of Texas, which is: (i) much closer to SEVEN's business, employees, and records in Marshall; (ii) where Google conducts business in an office in Addison, Texas[29]; and (iii) where SEVEN has asserted claims against ZTE Corp. in a case currently pending before Judge Lynn, that involves seven of the patents-in-suit here.[29] The case, therefore, could have been brought in the Northern District of Texas, and the Court can transfer it there, where it could be consolidated with SEVEN's related case against ZTE. *See* 28 U.S.C. § 1406(a). Additional briefing would allow the Court to determine whether the most appropriate transferee court would be in the Northern District of California or the Northern District of Texas.

Dated: October 11, 2017

Respectfully submitted by:

*/s/ Bruce Sostek*

Bruce S. Sostek
    State Bar No. 18855700
    Bruce.Sostek@tklaw.com
Max Ciccarelli
    State Bar No. 00787242
    Max.Ciccarelli@tklaw.com
Vishal Patel
    State Bar No. 24065885
    Vishal.Patel@tklaw.com
Austin Teng
    State Bar No. 24093247
    Austin.Teng@tklaw.com
Matt Cornelia
    State Bar No. 24097534
    Matt.Cornelia@tklaw.com
THOMPSON & KNIGHT LLP
One Arts Plaza
1722 Routh St., Suite 1500
Dallas, Texas 75201
214.969.1700
214.969.1751 (Fax)

Samuel F. Baxter
    Texas State Bar No. 01938000
    sbaxter@mckoolsmith.com
MCKOOL SMITH, P.C.
104 E. Houston Street, Suite 300
Marshall, Texas 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

Theodore Stevenson, III
    Texas State Bar No. 19196650
    tstevenson@mckoolsmith.com
Eric S. Hansen
    Texas State Bar No. 24062763
    ehansen@mckoolsmith.com
MCKOOL SMITH, P.C.
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone: (214) 978-4000
Telecopier: (214) 978-4044

**ATTORNEYS FOR PLAINTIFF SEVEN NETWORKS LLC**

**CERTIFICATE OF SERVICE**

I certify that on October 11, 2017, I electronically filed the foregoing document with the

Clerk of the Court using CM/ECF, which sent notification of such filing to all counsel of record.

*/s/ Max Ciccarelli*
Max Ciccarelli