# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| SEVEN Networks, LLC, <br><br> Plaintiff, <br><br> v. <br><br> Google Inc., <br><br> Defendant. | Civil Action No. 2:17-cv-442-JRG <br> Lead Case <br><br> Patent Case <br><br> Jury Trial Demanded |
| v. <br><br> Samsung Electronics America, Inc. and Samsung Electronics Co., Ltd., <br><br> Defendants. | Civil Action No. 2:17-cv-441-JRG <br> Consolidated Case |

# SEVEN Networks' Contingent Motion for Leave to Conduct Expedited Venue Discovery

Google filed a Rule 12(b)(3) motion to dismiss, claiming venue is improper (ECF No. 49). SEVEN disputes that venue is improper and has filed a response to Google's motion. SEVEN believes the publicly available information presented in its response provides ample evidence for the Court to find venue is proper. Nevertheless, if the Court is unable to determine that venue is proper based on that evidence, SEVEN seeks leave to conduct expedited discovery to obtain information supporting its allegation that Google has a regular and established place of business in this District.

## LEGAL STANDARDS

### A. Expedited Discovery

Federal Rule of Civil Procedure 26(d)(1) provides that "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)" unless the Court orders otherwise. Fed. R. Civ. P. 26(d); *see also Uniloc USA, Inc. v. Apple Inc.*, 2:17-CV-00258-JRG, 2017 WL 3382806, at *2 (E.D. Tex. July 21, 2017). "An increasing majority of district courts, including several in the Fifth Circuit, have adopted a 'good cause' standard to determine whether to permit such expedited discovery." *Id.* (quoting *OrthoAccel Techs, Inc. v. Propel Orthodontics*, No. 4:16–cv–360, 2016 WL 3747222, at *3 (E.D. Tex. July 13, 2016); *see also id.* at *2 ("This Court applies the "good cause" standard, being the procedural standard most often implemented within the Fifth Circuit."). Courts typically consider five factors when determining if good cause exists: "(1) whether a preliminary injunction is pending[1]; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Uniloc USA, Inc. v. Apple Inc.*, No. 2:17-cv-2585-JRG, 2017 WL 3382806, at *1 (E.D. Tex. July 21, 2017) (citing *St. Louis Grp., Inc. v. Metals & Additives Corp.*, 275 F.R.D. 236, 239 (S.D. Tex. 2011)).

### B. Venue

"Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b); *see TC Heartland LLC v. Kraft Foods*

---

[1] This factor does not appear to be applied in cases where the requested discovery is not related to injunctive relief. Thus, it is not relevant here.

*Group Brands LLC*, 137 S. Ct. 1514, 1519 (2017) ("[Section] 1400(b) 'is the sole and exclusive provision controlling venue in patent infringement actions.'") (quoting *Fourco Glass Co. v. Transmirra Prods. Corp.*, 353 U.S. 222, 229 (1957)). If, as here, a domestic corporation does not reside in the district the case is filed, venue is still proper if it committed acts of infringement in the district and had a regular and established place of business in the district when the cause of action accrued. *See San Shoe Trading Corp. v. Converse Inc.*, 649 F. Supp. 341, 344 (S.D.N.Y. 1986) (citing *Datascope Corp. v. SMEC, Inc.*, 561 F.Supp. 787, 790 (D.N.J. 1983), *aff'd in relevant part*, 776 F.2d 320 (Fed. Cir. 1985)).

Thus, "Section 1400(b) requires that 'a defendant has' a 'place of business' that is 'regular' and 'established.'" *In re Cray Inc.*, — F.3d —, 2017 WL 4201535, at *5 (Fed. Cir. Sept. 21, 2017). "While the 'place' need not be a 'fixed physical presence in the sense of a formal office or store,' there must still be a physical, geographical location in the district from which the business of the defendant is carried out." *Id.* at *5 (quoting *In re Cordis Corp.*, 769 F.2d 733, 737 (Fed. Cir. 1985)). A business is "regular" if it "operates in a "steady, uniform, orderly, and methodical manner." *Id.* (quotation marks and brackets omitted). To be "established," the place of business must be "settled certainly, or fixed permanently." *Id.* at *6 (quotation marks and brackets omitted). Finally, "it must be a place of the defendant, not solely a place of the defendant's employee." *Id.*

## ARGUMENTS

### A. SEVEN's discovery is narrowly drawn to determine whether Google has regular and established place of business in the District.

Venue is proper if Google owns or controls a physical place in this District from which it regularly conducts an established business. *See In re Cray*, 2017 WL 4201535, at *4. SEVEN's proposed discovery is narrowly focused on this issue.

SEVEN, for example, seeks information about physical property that Google owns or controls in the District. In its motion to dismiss, Google carefully denies that it owns any *real* property in the District. It pointedly fails to deny that it owns and controls other forms of property in the District, apparently assuming that the statutory "place of business" must be real property. There is no such requirement. *See, e.g.*, *In re Cray*, 2017 WL 4201535, at *5 ("[T]he 'place' need not be a 'fixed physical presence in the sense of a formal office or store.'") (quoting *In re Cordis Corp.*, 769 F.2d 733, 737 (Fed. Cir. 1985)). Without question, Google owns and controls property in the District, including at least the equipment associated with its Edge servers in Tyler and Sherman, but potentially much more.[2]

As explained in SEVEN's response to Google's motion to dismiss, publicly available information, including information on Google's own web site, shows that Google uses the Edge servers as data warehouses for storing and distributing content to residents of the District. If the Court determines this is not enough to establish venue, SEVEN's proposed discovery seeks to provide additional details about how Google uses the equipment—for instance, how much data is stored in the Edge servers and how much data is distributed from them to residents of the District. Further, SEVEN seeks to determine what other physical property Google owns and

---

[2] *See* SEVEN's Response to Google Inc.'s Motion to Dismiss, at 2–5, 13–17.

controls in the District, where it is located, how long it has been there, how it is used, and who uses it.

Courts also consider the presence of employees in the district when determining whether a defendant has a regular and established place of business. *See, e.g.*, *In re Cray*, 2017 WL 4201535, at *5 (citing *In re Cordis Corp.*, 769 F.2d 733, 735 (Fed. Cir. 1985)). SEVEN's proposed discovery, therefore, also seeks information about Google's employees in the District. Here again, Google carefully chose its words in its motion to dismiss, as it denied that it has any employees "who work at any Google offices in this district." Mtn. at 12. Google, does not, however, deny that it has employees in the District who work in something other than a Google office. Google's artful phrasing, as well as various LinkedIn accounts, strongly suggest that Google does have employees in the District.[3] Thus, SEVEN's proposed discovery seeks information about Google's employees in the District: who they are, what work they do for Google, where and how they perform that work, and how long they have worked for Google.

Next, SEVEN seeks information about agreements Google has entered into with businesses in the District. Google does not deny that it is party to such agreements. Google, for example, entered into so-called Google Global Cache agreements with Suddenlink Communications and Cable One, under which Suddenlink and Cable One provide housing for Google's Edge server

---

[3] *See* **Ex. A**: LinkedIn profiles. By focusing only on employees who work in Google offices, Google comes close to engaging in the kind of "gamesmanship" this Court has criticized. *See Raytheon Co. v. Cray, Inc.*, No. 2:15-cv-1554-JRG, 2017 WL 2813896, at *12 n.9 (E.D. Tex. June 29, 2017) ("Drawing such a technical distinction invites gamesmanship and would require the court and the parties to waste substantial resources on determining whether the facts surrounding a particular employee support a conclusion that he or she is an employee, an independent contractor, an agent, or otherwise.") (reversed on other grounds).

equipment.[4] Google is also in a data-sharing partnership with the Genesis Group, a software company based in Tyler, Texas.[5] Together, Google (specifically Google's Waze navigation business) and the Genesis Group created a software product called PULSE that provides "greater efficiency, increased situational awareness for emergency personnel, [and] deeper insights and safer roads for citizens in communities [including Tyler] where the Genesis PULSE is in use."[6] Google touts the importance of this Tyler-based partnership in its marketing:

> Genesis PULSE, an emergency response center software provider, integrated Waze data into its system to provide first responders with real-time, Wazer-reported crash alerts.
>
> 70% of the time, crashes are reported by Waze users an average of 4.5 minutes before they are called into emergency response centers through 9-1-1 or equivalent channels. According the FCC, a 1 minute decrease in the average ambulance response time saves more than 10,000 lives in the US annually.[7]

Through its partnership with the Genesis Group, Google provides services to emergency responders in at least the following cities in this District: Longview, Texarkana, and Tyler.[8] Again, Google has not denied that it has entered into these agreements. SEVEN seeks additional information about the agreements and how Google meets it obligations under them, as well as information about agreements Google may have with other businesses in the District.

---

[4] *See* SEVEN's Response to Google Inc.'s Motion to Dismiss, at 4–5.

[5] *See* **Ex. B**: Genesis, *The Heart of Genesis*, https://genesisworld.com/about/.

[6] *See* **Ex. C**: Genesis PULSE, *The Genesis Group Joins Waze Connected Citizens Program* (Oct. 6, 2015), https://genesispulse.com/2015/10/06/the-genesis-group-joins-waze-connected-citizens-program/.

[7] **Ex. D**: Waze: Connected Citizens Program, CCPCaseStudies, https://docs.google.com/gview?url=https%3A%2F%2Fs3-eu-west-1.amazonaws.com%2Fwaze-partner-assets%2FCCPCaseStudies.pdf.

[8] *See* **Ex. E**: waze, *Connected Citizens Program*, https://wiki.waze.com/wiki/Connected_Citizens_Program.

Finally, SEVEN seeks information related to Google's marketing and advertisements, to determine whether Google represents that it has a place of business in the District. This information is relevant to venue because "[m]arketing and advertisements also may be relevant [if] they indicate that [Google] itself holds out a place for its business." *See In re Cray*, 2017 WL 4201535, at *6.

SEVEN has prepared a limited number of requests for production and deposition topics, attached here as Exhibits F and G, aimed at obtaining information related to each of these issues. If the Court grants SEVEN leave to serve Google with this discovery, the information gained will allow the Court to determine whether Google has "a physical, geographical location in the district from which the business of [Google] is carried out"; whether that business "operates in a steady, uniform, orderly, and methodical manner"; whether the place of business is "settled certainly, or fixed permanently"; and whether it is "a place of [Google]." *See In re Cray*, 2017 WL 4201535, at *5. In other words, it will shed further light on why venue is proper.

**B. SEVEN has good cause for seeking leave to conduct expedited venue discovery.**

The relevant good-cause factors favor granting SEVEN leave to conduct venue-related discovery. As to the first—"the breadth of the discovery requests"—SEVEN's requests are tightly focused on one issue; namely, whether Google has a regular and established place of business in the District. *See Uniloc*, 2017 WL 3382806, at *1. Accordingly, this factor favors SEVEN. Next, SEVEN seeks the discovery to provide the Court with information needed to decide whether venue is proper under the guidelines established by *In re Cray*. So the second factor—"the purpose for requesting the expedited discovery"— also favors SEVEN. *See id.* Because the proposed discovery is limited in scope, "the burden on [Google] to comply with the requests," factor number three, is minimal. *See id.* The final factor—"how far in advance of the

typical discovery process the request was made"—is neutral. Although this case is in its early stages and typical discovery is still weeks, if not months, away, Google made the proposed discovery necessary by filing its motion to dismiss for allegedly improper venue (necessary, that is, if the Court determines that it otherwise lacks enough information to rule on Google's motion).

Accordingly, the relevant good-faith factors weigh strongly in favor of granting SEVEN leave to conduct expedited venue discovery.

## Conclusion

For the reasons set forth in its response to Google's motion to dismiss, filed concurrently with this motion, venue is proper in this District. But if the Court entertains any doubts about whether Google has a regular and established place of business in this District, SEVEN has shown it has good cause to conduct expedited venue discovery aimed at resolving that issue.

Therefore, SEVEN respectfully requests the Court to grant this motion and allow SEVEN to conduct expedited venue discovery in the form of the requests for production and deposition request attached as Exhibits F and G.

| | |
|---|---|
| Dated: October 11, 2017 | Respectfully submitted by:<br><br>*/s/ Bruce Sostek*<br>Bruce S. Sostek<br>    State Bar No. 18855700<br>    Bruce.Sostek@tklaw.com<br>Max Ciccarelli<br>    State Bar No. 00787242<br>    Max.Ciccarelli@tklaw.com<br>Vishal Patel<br>    State Bar No. 24065885<br>    Vishal.Patel@tklaw.com<br>Austin Teng<br>    State Bar No. 24093247<br>    Austin.Teng@tklaw.com<br>Matt Cornelia<br>    State Bar No. 24097534<br>    Matt.Cornelia@tklaw.com<br>THOMPSON & KNIGHT LLP<br>One Arts Plaza<br>1722 Routh St., Suite 1500<br>Dallas, Texas 75201<br>214.969.1700<br>214.969.1751 (Fax)<br><br>Samuel F. Baxter<br>    Texas State Bar No. 01938000<br>    sbaxter@mckoolsmith.com<br>MCKOOL SMITH, P.C.<br>104 E. Houston Street, Suite 300<br>Marshall, Texas 75670<br>Telephone: (903) 923-9000<br>Facsimile: (903) 923-9099<br><br>Theodore Stevenson, III<br>    Texas State Bar No. 19196650<br>    tstevenson@mckoolsmith.com<br>Eric S. Hansen<br>    Texas State Bar No. 24062763<br>    ehansen@mckoolsmith.com<br>MCKOOL SMITH, P.C.<br>300 Crescent Court, Suite 1500<br>Dallas, Texas 75201<br>Telephone: (214) 978-4000<br>Telecopier: (214) 978-4044<br><br>**ATTORNEYS FOR PLAINTIFF SEVEN NETWORKS LLC** |

## Certificate of Conference

I certify that on October 10 and 11, 2017, I communicated with Peter Curran, counsel for Google, by email and telephone regarding the relief sought in this contingent motion. Mr. Curran informed me that Google opposes the motion and discovery as drafted. Although Mr. Curran indicated that Google is willing to consider narrower discovery, SEVEN believes it is entitled to all of the discovery it seeks in the motion, and the motion is therefore being submitted to the Court for determination.

*/s/ Max Ciccarelli*
Max Ciccarelli

## Certificate of Service

I certify that on October 11, 2017, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which sent notification of such filing to all counsel of record.

*/s/ Max Ciccarelli*
Max Ciccarelli
