# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| SEVEN NETWORKS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | CIVIL ACTION NO. 2:17-CV-442-JRG<br>LEAD CASE<br><br>PATENT CASE<br><br>JURY TRIAL DEMANDED |
| v.<br><br>SAMSUNG ELECTRONICS AMERICA, INC. AND SAMSUNG ELECTRONICS CO., LTD.,<br><br>Defendants. | CIVIL ACTION NO. 2:17-CV-441-JRG<br>CONSOLIDATED CASE |

# RESPONSE TO GOOGLE'S MOTION TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF CALIFORNIA (ECF NO. 61)

## TABLE OF CONTENTS

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

SEVEN Is at Home in This District  . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

Legal Standard  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

Arguments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

    A.  The private-interest venue factors weigh against transfer . . . . . . . . . . . . . . .  3

        1.  Transferring the case would impose a significant and
unnecessary burden on SEVEN to transport documents
from Marshall to California, and Google has failed to
identify any evidence that must be transported from
California to this District . . . . . . . . . . . . . . . . . . . . . . . . .  3

            a.  Google has not identified any of its own documents
that are located in California . . . . . . . . . . . . . . . . . . . . .  3

            b.  Google has not identified any third-party documents
that must be transported to this District from the
Northern District of California . . . . . . . . . . . . . . . . . . .  5

            c.  SEVEN's documents and records are located in this
District, and they are voluminous.  . . . . . . . . . . . . . . . . .  6

        2.  Google has not identified any individuals who are likely
to testify at trial and are outside of this Court's
subpoena power. . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

            a.  Google has not shown that any inventors who live in
California are likely to testify at trial . . . . . . . . . . . . . . . .  8

            b.  Google has not shown that SEVEN's founders are
likely to testify at trial.. . . . . . . . . . . . . . . . . . . . . . . .  10

            c.  Google has not shown that SEVEN's funders are
likely to testify at trial.. . . . . . . . . . . . . . . . . . . . . . . .  10

            d.  Google has not shown that any "prior artists" who
live in California are likely to testify at trial.  . . . . . . . . . . .  11

            e.  Third-party witnesses who live in this District are
likely to testify at trial.. . . . . . . . . . . . . . . . . . . . . . . .  13

        3.  Transferring this case to the Northern District of
California would be a burden on third-party witnesses
and SEVEN's employee witnesses. . . . . . . . . . . . . . . . . . .  14

            a.  Transferring the case to the Northern District of
California would be a burden on third-party
witnesses who live and work in this District . . . . . . . . . . . .  14

b.  Transferring the case to the Northern District of California would be a burden on SEVEN's employees who live and work in this District.  . . . . . . . . . . . . . . . .  15

4.  Judicial economy would be served by refusing to transfer because another case is pending in this Court that involves seven of the ten patents at issue here and many of the same issues.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

B.  The public-interest venue factors weigh against transfer.  . . . . . . . . . . . . . . . .  18

1.  The time to trial is shorter in this District than in the Northern District of California.  . . . . . . . . . . . . . . . . . . . . . . . . .  18

2.  This Court has a strong interest in protecting SEVEN's intellectual-property rights.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

3.  The remaining public-interest factors are neutral.  . . . . . . . . . . . . . . . . . .  19

Conclusion  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

Certificate of Service  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

## TABLE OF AUTHORITIES

### Cases

*Allergan Sales, LLC v. UCB, Inc.*,
  No. 215-cv-01001-JRG-RSP, 2016 WL 8201783 (E.D. Tex. Nov. 2, 2016) . . . . . . . . 9, 12

*Eolas Techs., Inc. v. Adobe Sys., Inc.*,
  No. 6:09-CV-446, 2010 WL 3835762 (E.D. Tex. Sept. 28, 2010) . . . . . . . . . . . . 3, 18

*Frederick v. Advanced Fin. Sols., Inc.*,
  558 F. Supp. 2d 699 (E.D. Tex. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . 14

*In re Apple, Inc.*,
  743 F.3d 1377 (Fed. Cir. 20014) . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*In re EMC Corp.*,
  501 F. App'x 973 (Fed. Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*In re Radmax, Ltd.*,
  720 F.3d 285 (5th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*In re Vistaprint Ltd.*,
  628 F.3d 1342 (Fed. Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*In re Volkswagen of Am., Inc.*,
  545 F.3d 304 (5th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*In re Volkswagen of Am., Inc.*,
  566 F.3d 1349 (Fed. Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*J2 Global Commc'ns, Inc. v. Protus IP Sols., Inc.*,
  No. 6:08-cv-211, 2009 WL 440525 (E.D. Tex. Feb. 20, 2009) . . . . . . . . . . . . . 6

*Jones v. Total Transp. of Miss., LLC*,
  No. 2:12-cv-38-JRG, 2013 WL 1003447 (E.D. Tex. Mar. 13, 2013) . . . . . . . . . . 15

*Kranos IP Corp. v. Riddell, Inc.*,
  No. 2:17-CV-443-JRG, 2017 WL 3704762 (E.D. Tex. Aug. 28, 2017) . . . . . . . . . . 3, 6

*PersonalWeb Techs. LLC v. NEC Corp. of Am., Inc.*,
  No. 6:11-cv-655-LED, 2013 WL 9600333 (E.D. Tex. Mar. 21, 2013) . . . . . . . . . . 13

*Realtime Data LLC v. Dropbox, Inc.*,
  No. 6:15-cv-465-RWS-JDL, 2016 WL 153860 (E.D. Tex. Jan 12, 2016) . . . . . . . . . . 9

*Realtime Data, LLC v. Rackspace US, Inc.*,
  No. 6:16-cv-00961 RWS-JDL, 2017 WL 772653 (E.D. Tex. Feb. 28, 2017) . . . . . . . 12

*Regents of the Univ. of Cal. v. Eli Lilly & Co.*,
  119 F.3d 1559 (Fed. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Rembrandt Patent Innovations, LLC v. Apple, Inc.*,
  No. 2:14-CV-0015-JRG, 2014 WL 3835421 (E.D. Tex. Aug. 1, 2014) . . . . . . . . . . 8

*Trover Grp., Inc. v. Tyco Int'l, Ltd.*,
     No. 2:13-CV-0052-WCB, 2014 WL 12596722 (E.D. Tex. Apr. 11, 2014) . . . . . . . . . . . 5

*Uniloc USA, Inc. v. Google, Inc.*,
     No. 2:16-cv-00566-JRG, Order Denying Defendant's Motion to
      Transfer Pursuant to 28 U.S.C. § 1404(a)
     (E.D. Tex. May 15, 2017), ECF No. 75. . . . . . . . . . . . . . . . 2, 3, 7, 8, 11, 14, 15, 18, 19

Google is correct that this case could have been brought in the Northern District of California. Beyond that, Google has not shown that any of the private and public venue factors favor transfer. In fact, those factors weigh strongly against transfer. SEVEN therefore requests that the Court exercise its discretion to deny Google's motion.

## SEVEN IS AT HOME IN THIS DISTRICT

As an initial matter, SEVEN must respond to Google's contention that SEVEN's presence in this district is "limited." Far from having a limited presence here, SEVEN is well established in Marshall and is a respected and valued member of the community. Its business is also important to the local economy, as demonstrated by its success in developing and marketing software for mobile devices and wireless networks. SEVEN's products have been installed on more than 100 million mobile devices, it has more than 440 patents and patents pending, and it has earned significant industry recognition.[1]

Though SEVEN's predecessor, Seven Networks, Inc., was Silicon Valley, SEVEN moved to Marshall in 2015.[2] It did so for several reasons, including the relatively low cost of doing business here. Recruiting and keeping employees in Silicon Valley was also becoming increasingly difficult given the intense competition for engineers. Texas was attractive because of its many technology schools, and SEVEN had successful experiences with Texas engineering resources in the past. The decision to come to Marshall, in particular, was strongly influenced by the recruiting efforts of MEDCO, the Marshall Economic Development Corporation. SEVEN's connection to MEDCO continues, as SEVEN works with MEDCO to attract people with high-tech skills to settle and work in Marshall and to recruit more businesses to move here. SEVEN

---

[1]  **Ex. A**: Declaration of Ross Bott (Bott Decl.) ¶ 4.

[2]  **Ex. A**: Bott Decl. ¶¶ 5–13 (supporting each of the facts stated in this paragraph).

also works with Texas State Technical College (TSTC) to develop courses that provide students the skills required to work in high-tech industries. In addition, SEVEN gives TSTC students real-world experience as interns and has hired a number of them as full-time engineers when they graduated. Indeed, SEVEN is committed to hiring locally; it employs nine individuals in Marshall, including some who were raised and educated in this District or live in this District. SEVEN's commitment to its employees and to the community have been recognized, as it was selected as the regional nominee for the Texas Small Employer of the year award in 2017 (the state winner is to be announced in December). This nomination speaks volumes about SEVEN's strong presence in Marshall, as the award

> honors one private-sector employer with fewer than 500 employees whose efforts and initiatives resulted in an **extraordinary impact on the state of Texas** . . . . The award focuses on employer excellence and operational results that benefit employers, workers, and the local community, and assumes a close partnership with and successful use of Texas workforce system services.[3]

SEVEN is an established, productive, and respected resident of this District.

## LEGAL STANDARD

SEVEN's arguments are based on the legal standards governing motions to transfer set forth by this Court, for example, in the Order Denying Defendant's Motion to Transfer Pursuant to 28 U.S.C. § 1404(a) at 2–4, *Uniloc USA, Inc. v. Google, Inc.*, No. 2:16-cv-00566-JRG (E.D. Tex. May 15, 2017), ECF No. 75 (*Uniloc*).

## ARGUMENTS

Because this action could have been brought in the Northern District of California, the issue is whether the private and public factors favor transfer. They do not.

---

[3]   Texas Workforce Commission, Employer Awards, http://www.twc.state.tx.us/ employer-awards#smallEmployerOfTheYear (emphasis added).

## A.  The private-interest venue factors weigh against transfer.

### 1.  Transferring the case would impose a significant and unnecessary burden on SEVEN to transport documents from Marshall to California, and Google has failed to identify any evidence that must be transported from California to this District.

The first private-interest factor considers where evidence is stored. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 316 (5th Cir. 2008) (*Volkswagen II*). "Courts analyze this factor in light of the distance that documents, or other evidence, must be transported from their existing location to the trial venue." *Eolas Techs., Inc. v. Adobe Sys., Inc.*, No. 6:09-CV-446, 2010 WL 3835762, at *3 (E.D. Tex. Sept. 28, 2010), *aff'd In re Google, Inc.*, 412 F. App'x 295 (Fed. Cir. 2011). "Although witnesses are 'sources of proof' in a sense," they are not relevant to this factor as they are considered "under the factors that focus on the availability of compulsory process and the cost of attendance for willing witnesses." *Kranos IP Corp. v. Riddell, Inc.*, No. 2:17-CV-443-JRG, 2017 WL 3704762, at *10 n.10 (E.D. Tex. Aug. 28, 2017); *see also Uniloc*, at 4 ("When considering the relative ease of access to sources of proof, a court looks to where documentary evidence, such as *documents and physical evidence*, are stored." (emphasis added)).

Google has not identified any documents or other physical evidence that must be transported from California—or from anywhere else—to this District. In stark contrast, SEVEN's records and documents are stored and maintained in this District, either in hard copy at SEVEN's Marshall office or electronically on servers in the same office.[4]

### a.  Google has not identified any of its own documents that are located in California.

For this factor, Google relies primarily on the location of its electronic records, as it states that "the vast majority of Google's documents and records related to the Accused Google Products are hosted in secure servers managed from its Northern California offices." Mtn. at 5.

---

[4]  **Ex. A**: Bott Decl. ¶ 14.

What's missing from this statement is telling. Google is careful not to say that the servers hosting its records and documents are actually *in* the Northern District of California—because they are likely in Google's data centers, all of which are located outside California and can be accessed from anywhere.[5] Rather, it says the servers are *managed from* its offices in that district. That allegedly relevant electronic documents can be managed from the Northern District of California does not mean they are stored there, which is the relevant question for this factor. *See, e.g.*, *In re EMC Corp.*, 501 F. App'x 973, 975 (Fed. Cir. 2013) (upholding denial of transfer motion where potential sources of proof were located outside of the transferee venue).

Google explains that it stores relevant information on servers in so-called "data centers": "The Google applications and services named in the Complaint are provided by Google servers in Google *data centers* located outside this District; there are no Google data centers located in this District." Mtn. at 5 (emphasis added). Even assuming this is true, it does not support Google's position because there are also no Google data centers in the Northern District of California. On its website, Google lists eight "data center locations" in the United States, none of which is in California.[6] The burden of "transporting" information from Google data centers— wherever they may be located—to this District is therefore no greater than the burden of transporting the same information to the Northern District of California. In fact, Google's servers are accessible from anywhere, as long has one as the proper credentials and a secure

---

[5]   *See* notes 6 and 7 below and accompanying text.

[6]   *See* **Ex. S**: Google Data Center, *Data center locations*, https://www.google.com/about/ datacenters/inside/locations/index.html (listing the following data-center locations in the United States: South Carolina, Iowa, Georgia, Alabama, North Carolina, Oklahoma, Tennessee, and Oregon).

network connection.[7]

Google's arguments regarding physical evidence are equally flawed. According to Google, "any hard copies of documents and employee notebooks that *might exist* would likely be located [in the Northern District of California]." Mtn. at 5 (emphasis added). That some unidentified documents "might exist" in the Northern District of California is mere speculation that does not support transfer. *See Trover Grp., Inc. v. Tyco Int'l, Ltd.*, No. 2:13-CV-0052-WCB, 2014 WL 12596722, at *3 (E.D. Tex. Apr. 11, 2014) ("[T]he speculative assertion that some evidence from Dallas may turn out to be relevant at trial is not a sufficient basis for the Court to conclude that access to sources of proof would be facilitated by transfer to the Northern District."); *In re Apple, Inc.*, 743 F.3d 1377, 1379 (Fed. Cir. 20014) ("[I]n light of Apple's vague assertions and unknown relevance and location of potential sources, the district court was unable to weigh the relative ease of access to sources of proof factor in its transfer analysis, because the weighing of this factor would be merely speculative." (quotation marks omitted)). If any such documents exist, they are in Google's possession and Google could have identified them, but it did not.

### b. Google has not identified any third-party documents that must be transported to this District from the Northern District of California.

Google also asserts that allegedly relevant third-party evidence is in the Northern District of California. Mtn. at 5. But here again, Google's arguments are speculative. It claims, for example, that inventors in the Northern District of California "*may*" have "information regarding claim interpretation, infringement, and the validity of the asserted patents." Mtn. at 10 (emphasis added). Likewise, it states that "SEVEN's funders in the Northern District *likely* have relevant

---

[7] *See* Declaration of Brian King ¶ 11, filed under seal in support of Google's motion (ECF No. 63).

evidence" and that "[k]ey documentary evidence regarding prior art . . . [is] also *likely located* in the Northern District." Mtn. at 10 (emphasis added). That evidence *may* exist or is *likely to* exist is not sufficient, especially since Google fails to identify any specific documents. *See J2 Global Commc'ns, Inc. v. Protus IP Sols., Inc.*, No. 6:08-cv-211, 2009 WL 440525, at *2 (E.D. Tex. Feb. 20, 2009) ("A movant must identify sources of proof with enough specificity that a court can determine whether transfer will increase the convenience of the parties."); *see also id.* at *3 (denying motion to transfer because "other than generally referring to documents, [defendants] have not identified any specific evidence, physical or otherwise").

Google further claims this factor favors transfer because "SEVEN's original founders would also possess unique knowledge" that is allegedly relevant. Mtn. at 10. But even assuming SEVEN's founders have such knowledge (and they do not[8]), it is immaterial. This factor is concerned with documents and physical evidence, not a person's alleged knowledge. *See Kranos*, 2017 WL 3704762, at *10 n.10 ("Although witnesses are 'sources of proof' in a sense," they are not relevant to this factor.").

Accordingly, Google has not shown that any third-party documents or evidence must be transported to this District.

### c.  SEVEN's documents and records are located in this District, and they are voluminous.

Unlike Google, SEVEN's documents—both electronic and hard copy—are located in this District. SEVEN, for example, has 249 bankers boxes of company records at its headquarters in Marshall.[9] Those documents are relevant to the litigation and have been made available for

---

[8]  *See* note 15, below, and accompanying text.

[9]  **Ex. A**: Bott Decl. ¶ 14.

Google's inspection.[10] These records include information about SEVEN's corporate structure, accounts and finances, taxes, human resources, payroll, presentations to the board of directors, patent prosecution, patents, customer and vendor agreements, software licenses, legal matters, and other records regarding SEVEN's operations.[11]

SEVEN also maintains its electronic records at its headquarters in Marshall.[12] Technical documentation related to the design, development, and operation of SEVEN's products, including source code, analytics, debugging information, and support data reside on SEVEN's severs in Marshall. SEVEN's servers in Marshall also handle email traffic and store electronic records related to SEVEN's operation, finances, sales, human resources, engineering, intellectual property, corporate facilities, marketing, operations, product management, and legal activities. Evidence related to the conception, reduction to practice, and diligence regarding the inventions claimed by the patents-in-suit is also located in Marshall.

In sum, Google has not identified any evidence that is located in the Northern District of California. SEVEN, on the other hand, not only "manages" its records in this District but also stores them here. It would be improper "to summarily discount the presence of relevant documents in this District merely because Google has speculated that hard-copy documents *might* exist within the desired forum." *Uniloc*, at 6 (emphasis in original). As in *Uniloc*, "[t]ransferring the case would impose a significant and unnecessary burden on [SEVEN] to transport documents from [Marshall] to the Northern District of California, and Google has

---

[10]   **Ex. T**: Letter from Vishal Patel, counsel for SEVEN, to Brian Mack, counsel for Google, and Pete Guarnieri, counsel for Samsung (Oct. 11, 2017).

[11]   **Ex. A**: Bott Decl. ¶ 15.

[12]   **Ex. A**: Bott Decl. ¶¶ 15, 16 (supporting each of the facts stated in this paragraph).

failed to show any evidence of documents that would need to be transported from the Northern District of California to this District." *Uniloc*, at 6.

This factor weighs strongly against transfer.

### 2.   Google has not identified any individuals who are likely to testify at trial and are outside of this Court's subpoena power.

"This factor instructs the Court to consider the availability of compulsory process to secure the attendance of witnesses, particularly non-party witnesses whose attendance may need to be secured by a court order." *Uniloc*, at 6. In this regard, "Federal Rule of Civil Procedure 45 . . . makes compulsory process for deposition effectively nationwide." *Rembrandt Patent Innovations, LLC v. Apple, Inc.*, No. 2:14-CV-0015-JRG, 2014 WL 3835421, at *2 (E.D. Tex. Aug. 1, 2014). The focus of this factor, therefore, is on witnesses for whom compulsory process to attend trial might be necessary. *Id.* More specifically, the focus is on third-party witnesses that the parties expect to call at trial, since "*party witnesses* do not require compulsory process for trial and are not given much weight in this factor." *Id.* (emphasis added).

Google asserts that four classes of third-party witnesses who live in California have allegedly relevant information: (i) inventors of the patents-in-suit; (ii) SEVEN's founders; (iii) SEVEN's funders; and (iv) alleged "prior artists." Google does not, however, say that any are likely to testify at trial. For this reason, as well as others set forth below, Google has not shown that this factor favors transfer.

### a.   Google has not shown that any inventors who live in California are likely to testify at trial.

Google identifies nine third-party inventors who allegedly live in the Northern District of California. According to Google, these inventors are "potentially relevant witnesses" who "may" have "critical information." Mtn. at 6, 10. Whether they are "relevant witnesses" or

have "critical information," however, is not the issue. The issue is whether it is likely they will testify at trial: "[F]or the Court to meaningfully assess the weight that should be attached to a third-party witness, *it is incumbent upon the advancing party to demonstrate the likelihood of that witness actually testifying at trial.*" *Realtime Data LLC v. Dropbox, Inc.*, No. 6:15-cv-465-RWS-JDL, 2016 WL 153860, at *7 (E.D. Tex. Jan. 12, 2016) (emphasis added). Google does not contend the inventors will likely be called to testify at trial. And even assuming for the sake of argument that the inventors have relevant information, Google can get that information by deposing them in California.[13] Although "there may be intangible benefits to live testimony over testimony by deposition," Google "has not specifically addressed how it would be prejudiced by presenting testimony from [the inventors'] deposition[s] in lieu of live testimony." *See Allergan Sales, LLC v. UCB, Inc.*, No. 215-cv-01001-JRG-RSP, 2016 WL 8201783, at *4 (E.D. Tex. Nov. 2, 2016).

Further, three of the inventors on Google's list—Steve Petersen, Michael Luna, and Trevor Fiatal—have agreed to come to Texas if their testimony is necessary.[14] Another—David Merriwether—who lives in Portland, Oregon, is also willing to testify at trial if necessary.[15] And Ari Backholm is a party witness who will attend the trial and who is also an inventor. With those five inventors willing to appear at trial in this District, there is at least one inventor from each of the patents-in-suit who can attend trial here. Google has not shown, or even attempted to show, why any particular inventor is more or less important than another or why multiple inventors for

---

[13]    As Google notes, under Rule 45, this Court can compel a witness to provide deposition testimony anywhere in the United States. *See* Mtn. at 11.

[14]    **Exs. B, C, and D**: Declaration of Michael Luna and Declaration of Trevor Fiatal.

[15]    **Ex. E**: Declaration of David Merriwether.

any of the patents would be necessary to testify at trial.

There is no basis for transferring the case based on an alleged lack of inventor testimony.

### b.   Google has not shown that SEVEN's founders are likely to testify at trial.

Google next says that Bill Nguyen and Trevor Fiatal, SEVEN's founders, "would . . . possess unique knowledge regarding the founding, structure, and operation of SEVEN as well as knowledge of its early technology, product development, marketing, sales, and current and former employees." Mtn. at 10. Here, again, Google fails to state the likelihood that either will testify at trial or how Google would be prejudiced by presenting the founders' testimony by deposition. Further, Google carefully avoids saying that their testimony would be relevant— "unique knowledge" is not necessarily relevant knowledge. In fact, Messrs. Nguyen and Fiatal left SEVEN more than five and seven years ago, respectively, so whatever "unique knowledge" they may have about the early days of SEVEN has no bearing on any questions at issue in this case.[16]

There is no basis for transferring the case based on an alleged lack of the founders' testimony.

### c.   Google has not shown that SEVEN's funders are likely to testify at trial.

According to Google, "funders in the Northern District likely have relevant evidence relating to the value of the asserted patents." Mtn. at 10.[17] Specifically, Google identifies two

---

[16]   **Ex. A**: Bott Decl. ¶ 17. Further, as noted above, Mr. Fiatal has agreed to come to Texas if his testimony is necessary.

[17]   *See also* Mtn. at 6 (alleging that funders "potentially have relevant knowledge relating to the value of the asserted patents and the corporate structure of SEVEN").

alleged individual funders: Eran Zur and David Sze.[18] Like its arguments regarding the inventors and founders, however, Google says nothing about the likelihood that Messrs. Zur and Sze will testify at trial. That they may have allegedly relevant evidence or knowledge is not enough. In fact, the type of potentially relevant information they allegedly possess—i.e., knowledge related to the value of the patents—is typically presented at trial by a party's damages expert. So it is actually unlikely Messrs. Zur and Sze will testify at trial.[19] Further, Google does not explain how the amount a funder invests in a company is relevant to damages, which are usually based on an expert's consideration of royalty rates in the industry.

There is no basis for transferring the case based on an alleged lack of the funders' testimony.

### d. Google has not shown that any "prior artists" who live in California are likely to testify at trial.

Finally, Google contends that certain "prior art systems implicate[] witnesses . . . residing in Northern California." Mtn. at 6. According to Google, those witnesses include: "[Andy] Grignon, [Ray] Chang, Price, Gopalakrishnan, Lau, [Li] Lin, [John] Mayerhofer, and [Mark] Kefford." Mtn. at 12. This list of alleged "prior artists" is problematic for several reasons. First, three of the names appear only on the list identified on page 12 of Google's motion. Google does not mention Price, Gopalakrishnan, or Lau anywhere else in its motion or in any of the exhibits,

---

[18]   Google also states that M/C Venture Partners and Saints Capital are funders. It does not, however, identify any individuals within those companies as potential witnesses, so there is no way to tell whether such witnesses actually live in the Northern District of California. *See Uniloc*, at 9–10 ("As Google has not identified who would be the nonparty witness representing Acacia, the Court cannot determine whether this witness is a resident of California, or somewhere else.").

[19]   In any event, at least Mr. Zur has agreed to attend trial in the unlikely event he may be needed. **Ex. F**: Declaration of Eran Zur.

so it is unclear how they may be related to any alleged prior art or whether they live in the Northern District of California.

Second, for the others, Google again fails to state that they are likely to testify at trial. It claims that: Ray Chang "likely has pertinent information"; John Mayerhofer "likely has relevant knowledge"; Mark Kefford is the named inventor on an allegedly prior-art patent application[20]; an allegedly prior-art patent issued "to Lin et al."; and Andy Grignon "is a likely witness with relevant knowledge of these prior art systems." Mtn. at 7. Google therefore does not allege that any of these individuals is likely to testify at trial. It comes closest with Mr. Grignon, but even with him, there is no reason to assume his deposition testimony would be inadequate. *See Allergan Sales*, 2016 WL 8201783, at *4.

Third, Google has not shown that any of the alleged prior art is relevant. It simply claims that certain technologies are generally related to the inventions claimed by the patents-in-suit and that those technologies existed before the priority dates of the patents. Google, however, never contends the prior art reads on any claims of the patents or that it is invalidating. It is not enough that prior art is prior to the patents. Prior art is relevant only if it supports Google's invalidity contentions, and Google has not shown or even stated that it will rely on any of the prior art cited in the motion against the patents-in-suit.

Fourth, prior-art witnesses are "entitled to little, if any, weight in [the § 1404] analysis" because they "rarely, if ever, actually testify at trial." *See Realtime Data, LLC v. Rackspace US, Inc.*, No. 6:16-cv-00961 RWS-JDL, 2017 WL 772653, at *8 (E.D. Tex. Feb. 28, 2017) (citation

---

[20]   Google states that Mr. Kefford's company, Vasco Data Security, Inc., "likely has relevant documents," but this is not relevant to the question whether he is likely to testify at trial. Mtn. at 8.

and quotation marks omitted); *see also Dropbox*, 2016 WL 153860, at *3 ("[I]t is true that

'inventors of prior art rarely, if ever, actually testify at trial.'") (quoting *PersonalWeb Techs. LLC*

*v. NEC Corp. of Am., Inc.*, No. 6:11-cv-655-LED, 2013 WL 9600333, at *8 n.13 (E.D. Tex. Mar.

21, 2013)).

For each of these reasons, there is no basis for transferring the case based on a lack of prior-

art testimony.

### e.   Third-party witnesses who live in this District are likely to testify at trial.

SEVEN expects that the following third-party witnesses who live and work in this District

will testify at trial because they are integral to SEVEN's story of why SEVEN is in Marshall and

what SEVEN is doing here.

- Rusty Howell: Mr. Howell is the current Vice Chairman and former Chairman of MEDCO. He will testify that MEDCO was created to facilitate business and industry growth in Marshall and Harrison County. One of its primary goals has been to establish a network of high-tech companies in Marshall. In pursuit of that goal, MEDCO successfully recruited SEVEN to Marshall, and SEVEN has demonstrated that it is an important community partner and model business for the area.[21]

- Donna Maisel: Ms. Maisel is the Executive Director of MEDCO. She will testify that MEDCO has been working closely with SEVEN since July 2015, and that SEVEN has established an ongoing and viable presence in Marshall. Further, she will testify that SEVEN has benefited Marshall by establishing and maintaining training and education partnerships with local colleges and universities, retaining people with high-level skills in mathematics and technology, and working with MEDCO to recruit more high-tech companies to Marshall.[22]

- Barton Day: Mr. Day is Provost of the Marshall Campus of the Texas State Technical College (TSTC). Mr. Day will testify that SEVEN has actively worked with TSTC to "help[] Texas meet the high-tech challenges of today's global economy." More specifically, he will testify that working together, SEVEN and TSTC have benefited the community by: developing and implementing curricula that meet the needs of high-tech industries; giving students real-life work

---

[21]   **Ex. G**: Declaration of Rusty Howell.

[22]   **Ex. H**: Declaration of Donna Maisel.

experience as interns at SEVEN while attending TSTC; and providing full-time employment for TSTC students when they graduate.[23]

Because these third-party witnesses are outside the subpoena power of courts in the Northern District of California, this factor weighs against transfer.

### 3. Transferring this case to the Northern District of California would be a burden on third-party witnesses and SEVEN's employee witnesses.

The third private-interest factor is the cost of attendance for willing witnesses, and the focus is on third-party witnesses. As this Court has noted, "[t]he convenience of *party* witnesses is given little weight." *Uniloc*, at 10 (emphasis in original) (citing *Frederick v. Advanced Fin. Sols., Inc.*, 558 F. Supp. 2d 699, 704 (E.D. Tex. 2007) ("The availability and convenience of party-witnesses is generally insignificant because a transfer based on this factor only shifts the inconvenience from movant to nonmovant.")).

### a. Transferring the case to the Northern District of California would be a burden on third-party witnesses who live and work in this District.

Google here relies on its arguments regarding the second factor—availability of compulsory process—to support its claim that trial in California would be more convenient for third-party witnesses: "As described with respect to the prior factor, Google has identified numerous third party witnesses in the Northern District of California, including at least nine inventors, the original founders, funders, and prior artists." Mtn. at 13. But as set forth above, Google has not shown that any of those third parties is likely to testify at trial.

SEVEN, on the other hand, has identified at least three third-party witnesses who it expects to call live at trial and who would be significantly burdened if the case were transferred to the Northern District of California. As explained above, they are Rusty Howell, Donna Maisel, and

---

[23]  **Ex. I**: Declaration of Barton Day.

Barton Day.

Accordingly, this factor weighs against transfer.

**b. Transferring the case to the Northern District of California would be a burden on SEVEN's employees who live and work in this District.**

Although "the convenience of party witnesses is given little weight," *Uniloc*, at 10, if the Court considers it, this too weighs against transfer. Google identifies seven individual employees who allegedly work and live in the Northern District of California and generally have "knowledge of" the accused products or Google's marketing and finances. Mtn. at 13–14.[24] This is all Google says about why it contends they are "likely employee witnesses." *See id.* Google provides only broad generalities about the subject matter of their testimony or why it is likely they would testify at trial.

Google also ignores the following nine individuals who work for SEVEN in this District and have information about SEVEN's products that practice the inventions, SEVEN's finances, and SEVEN's business.[25]

- Colby Adams: Mr. Adams is a Software Engineer who has knowledge regarding the design, development, operation, or testing of SEVEN products that incorporate one or more of the technologies disclosed by the patents-in-suit.[26]

- Sofiya Glazova: Ms. Glazova is a Software Engineer who has knowledge regarding the design, development, operation, or testing of SEVEN products that

---

[24]   Google also contends that an unidentified "witness from Google's finance team" is a "likely witness." Mtn. at 14. Naming a class of employees, rather than a specific individual within the class, does not support transfer. *See Jones v. Total Transp. of Miss., LLC*, No. 2:12-cv-38-JRG, 2013 WL 1003447, at *2 (E.D. Tex. Mar. 13, 2013).

[25]   Google's contention that SEVEN has nineteen employees in the Northern District of California is false. SEVEN has no offices in California and only two people affiliated with SEVEN—Ross Bott, SEVEN's President and CEO, and Ari Backholm, SEVEN's Chief Technology Officer—live there. **Ex. A**: Bott Decl. ¶ 18. In other words, nearly 78% of SEVEN's U.S. workforce is in this District.

[26]   **Ex. J**: Declaration of Colby Adams.

incorporate one or more of the technologies disclosed in the patents-in-suit.[27]

- <u>Dustin Morgan</u>: Mr. Morgan is a Software Engineer with SEVEN who has knowledge regarding the design, development, operation, or testing of SEVEN products that incorporate one or more of the technologies disclosed in the patents-in-suit.[28]

- <u>Silas Okoh</u>: Mr. Okoh is a Quality Assurance Engineer who has knowledge regarding the testing of SEVEN products that incorporate one or more of the technologies disclosed in the patents-in-suit.[29]

- <u>Chastity Rhodes</u>: Ms. Rhoades is a Customer Support Engineer who has knowledge regarding the operation, testing, or analysis of use of SEVEN products that incorporate one or more of the technologies disclosed in the patents-in-suit. [30]

- <u>Keyvan Shahrdar</u>: Mr. Shahrdar is SEVEN's Director of Product Management and has knowledge regarding the design, development, operation, testing, use, or distribution of SEVEN products that incorporate one or more of the technologies disclosed in the patents-in-suit.[31]

- <u>Tony Martens</u>: Mr. Martens is SEVEN's controller and has knowledge regarding the company's finances.[32]

- <u>Travis Venable</u>: Mr. Venable is SEVEN's Manager of IT Operations and has knowledge regarding the operation of SEVEN's data center used in conjunction with SEVEN's products that incorporate one or more of the technologies disclosed in the patents-in-suit.[33]

- <u>Nathan Cowart</u>: Mr. Cowart is an intern at SEVEN working to become a software engineer. He has knowledge regarding the testing of SEVEN products that incorporate one or more of the technologies disclosed in the patents-in-suit.[34]

Each of these nine individuals has material and relevant information, making it likely that

SEVEN will call some, if not all of them, to testify at trial. So even accepting, for the sake of

---

[27]   **Ex. K**: Declaration of Sofiya Glazova.

[28]   **Ex. L**: Declaration of Dustin Morgan.

[29]   **Ex. M**: Declaration of Silas Okoh. Technically, Mr. Okoh is an independent contractor. But because he effectively works full time for SEVEN, he is being treated as a party witness rather than a third-party witness for the purpose of this response.

[30]   **Ex. N**: Declaration of Chastity Rhodes.

[31]   **Ex. O**: Declaration of Keyvan Shahrdar.

[32]   **Ex. P**: Declaration of Tony Martens.

[33]   **Ex. Q**: Declaration of Travis Venable.

[34]   **Ex. R**: Declaration of Nathan Cowart.

argument, that seven Google employees are likely witnesses, this factor weighs against transfer.

**4. Judicial economy would be served by refusing to transfer because another case is pending in this Court that involves seven of the ten patents at issue here and many of the same issues.**

The final private-interest factor considers "all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013). Judicial economy, for example, may counsel against transferring a case when it would result in overlapping issues being simultaneously adjudicated in different districts. *In re Vistaprint Ltd.*, 628 F.3d 1342, 1345 (Fed. Cir. 2010). Indeed, the Federal Circuit has held that "the existence of multiple lawsuits involving the same issues is *a paramount consideration* when determining whether a transfer is in the interest of justice." *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009) (emphasis added). In such cases, "consideration of the interest of justice, which includes judicial economy, may be determinative to a particular transfer motion, even if the convenience of the parties and witnesses might call for a different result." *Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997).

Google acknowledges that a similar case is pending before this Court. Specifically, SEVEN is asserting seven of the ten patents at issue here against Samsung. *See* Complaint for Patent Infringement, *SEVEN Networks, LLC v. Samsung Elecs. Am. Inc.*, No. 2:17-cv-00441-JRG (E.D. Tex. May 17, 2017), ECF No. 1. Although the accused products in that case are different, many of the issues will be the same due to the overlap in patents. The accused Samsung mobile devices, for example, run the same infringing Android operating system that is accused here. Thus, at the very least, the two cases will share many infringement, invalidity, and claim-construction issues.

Google disregards all this, claiming "[t]he existence of a co-pending case in this District . . . carries little, if any, weight in light of the other factors that favor the Northern District of

California." Mtn. at 15. Google's argument rests on the unfounded assumption that the other

factors favor transfer. But as discussed above, they do not, so judicial economy weighs strongly

against transfer. *See, e.g.*, *Eolas Techs.*, 2010 WL 3835762, at *6 ("Practical problems include

those that are rationally based on judicial economy. Particularly, the existence of *duplicative suits*

*involving the same or similar issues* may create practical difficulties that will weigh heavily in favor

or against transfer.") (emphasis added).[35]

## B.  The public-interest venue factors weigh against transfer.

### 1.  The time to trial is shorter in this District than in the Northern District of California.

Although Google acknowledges that "time to trial is shorter in this District"[36] than in the

Northern District of California, it nonetheless contends this factor is neutral. But as this Court

has held, the shorter time to trial in this District does weigh against transfer. *See Uniloc*, at 14.

And even if this were a neutral factor, transfer would still be improper because where "the

transferee venue is not *clearly more convenient* than the venue chosen by the plaintiff, the

plaintiff's choice should be respected." *Volkswagen II*, 545 F.3d at 315 (emphasis added).

### 2.  This Court has a strong interest in protecting SEVEN's intellectual-property rights.

Google discounts SEVEN's presence in this District as "limited" and contends the

Northern District of California has a greater interest in this case. Mtn. at 16. SEVEN's presence

in this District, however, is not limited. On the contrary, SEVEN's headquarters is in Marshall;

---

[35]   Google notes that SEVEN also sued ZTE (USA) in the Northern District of Texas asserting infringement of the same patents that are at issue in the suit against Samsung. It is, however, still more economical to have suits in two courts rather than three.

[36]   *See Uniloc*, at 13 ("[T]his Court has consistently found that median time to trial in this District is several months faster than the Northern District of California."); *see also id.* ("[E]ven considering the average time to trial, this Court has found that average time to trial in this District is several months faster than the Northern District of California.").

it employs nine people here; its records are stored and maintained here; and research, development, production, testing, and marketing related to its products—at least one of which practices one or more of the asserted patents—are carried out here. Further, as set forth above, SEVEN actively cooperates with local educators and leaders to enrich the community and grow its economy.[37] There is no basis for Google's claim that SEVEN's presence here is limited.

SEVEN is an active and established part of this community, and as this Court has held, the "District has a significant interest in protecting the intellectual property rights of its residents." *Uniloc*, at 14. This factor weighs strongly against transfer.

### 3. The remaining public-interest factors are neutral.

The final two public-interest factors are neutral. There are no conflict-of-law issues, and both courts are equally familiar with patent law.

### CONCLUSION

For the reasons set forth above, Google has not met its burden to show that the Northern District of California is "clearly more convenient" than this District. *Volkswagen II*, 545 F.3d at 315. SEVEN therefore respectfully requests that the Court deny Google's motion. SEVEN also requests any further relief to which it may be entitled.

---

[37] *See* notes 1–3, above, and accompanying text.

Dated: October 24, 2017

Respectfully submitted,

/s/ Max Ciccarelli
_____
**Bruce S. Sostek**
  State Bar No. 18855700
  Bruce.Sostek@tklaw.com
**Max Ciccarelli**
  State Bar No. 00787242
  Max.Ciccarelli@tklaw.com
**Herbert J. Hammond**
  State Bar No. 08858500
  Herbert.Hammond@tklaw.com
**Richard L. Wynne Jr.**
  State Bar No. 24003214
  Richard.Wynne@tklaw.com
**Adrienne E. Dominguez**
  State Bar No. 00793630
  Adrienne.Dominguez@tklaw.com
**Vishal Patel**
  State Bar No. 24065885
  Vishal.Patel@tklaw.com
**Nadia E. Haghighatian**
  State Bar No. 24087652
  Nadia.Haghighatian@tklaw.com
**Austin Teng**
  State Bar No. 24093247
  Austin.Teng@tklaw.com
**Matthew Cornelia**
  State Bar No. 24097534
  Matt.Cornelia@tklaw.com
**THOMPSON & KNIGHT LLP**
One Arts Plaza
1722 Routh St., Suite 1500
Dallas, Texas 75201
214.969.1700
214.969.1751 (Fax)

**ATTORNEYS FOR PLAINTIFF**
**SEVEN NETWORKS, LLC.**

**Samuel F. Baxter**
  Texas State Bar No. 01938000
  sbaxter@mckoolsmith.com
**MCKOOL SMITH, P.C.**
104 E. Houston Street, Suite 300
Marshall, Texas 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

**Theodore Stevenson, III**
  Texas State Bar No. 19196650
  tstevenson@mckoolsmith.com
**Eric S. Hansen**
  Texas State Bar No. 24062763
  ehansen@mckoolsmith.com
**MCKOOL SMITH, P.C.**
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone: (214) 978-4000
Telecopier: (214) 978-4044

**ATTORNEYS FOR PLAINTIFF**
**SEVEN NETWORKS, LLC.**

**CERTIFICATE OF SERVICE**

I certify that on October 24, 2017, I electronically filed the foregoing document with the

Clerk of the Court using CM/ECF, which sent notification of such filing to all counsel of record.

/s/ Max Ciccarelli
Max Ciccarelli