**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| SEVEN NETWORKS, LLC, | |
| Plaintiff, | Civil Action No. 2:17-cv-00442-JRG |
| v. | LEAD CASE |
| GOOGLE LLC, | FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER |
| Defendant. | |
| SEVEN NETWORKS, LLC, | |
| Plaintiff, | Civil Action No. 2:17-cv-441-JRG |
| v. | CONSOLIDATED CASE |
| SAMSUNG ELECTRONICS CO., LTD. AND SAMSUNG ELECTRONICS AMERICA, INC. | |
| Defendants. | |

**DEFENDANT GOOGLE LLC'S SECOND RENEWED MOTION TO DISMISS OR, IN THE ALTERNATIVE, TRANSFER UNDER 28 U.S.C. § 1406 FOR IMPROPER VENUE**

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

## TABLE OF CONTENTS

Page

I.    PROCEDURAL HISTORY ................................................................................2

II.   VENUE IS NOT PROPER IN THE EASTERN DISTRICT OF TEXAS ........................3

    A.   Google Does Not Reside In This District ..................................................3

    B.   SEVEN Cannot Show That Google Has A "Regular And Established Place Of Business" In This District......................................................................3

        1.   The Law On Venue And *In re Cray*'s Three Factor Test ............................4

        2.   Google Does Not Have A Regular And Established Place Of Business In This District ...................................................................7

            (a)   Google Global Cache (GGC) Servers Are Not A Place of Business Under *Cray* ..................................................7

            (b)   SEVEN's Remaining Allegations Fall Entirely Outside of the *Cray* Test And Are Therefore Legally Insufficient To Show Venue ...................................................13

    C.   SEVEN Failed To Establish That Google Committed Acts Of Infringement In This District ..................................................................17

III.  THE COURT MUST DISMISS OR, IN THE ALTERNATIVE, TRANSFER ...............20

    A.   This Case Could Have Been Brought In Northern California ...............................21

    B.   Relevant Witnesses And Evidence Are In Northern California ...........................21

    C.   Local Interest In The Case .......................................................25

IV.   CONCLUSION...............................................................................25

i

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### <u>CASES</u>

*Adaptix, Inc. v. HTC Corp.*,
  937 F. Supp. 2d 867 (E.D. Tex. 2013)...................................................................... 23

*Affinity Labs of Tex. v. Samsung Elecs. Co., Ltd.*,
  968 F. Supp. 2d 852 (E.D. Tex. 2013)...................................................................... 25

*Agrosciences, LLC v. Bates*,
  No. 5:01-cv-331, 2002 WL 1205143 (N.D. Tex. Mar. 12, 2002)................................ 5

*Am. Gen. Life Ins. Co. v. Rasche*,
  273 F.R.D. 391 (S.D. Tex. 2011)................................................................................ 5

*Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*,
  551 F.2d 784 (9th Cir. 1977)...................................................................................... 5

*AMP Inc. v. Burndy of Midwest, Inc.*,
  340 F. Supp. 21 (N.D. Ill. 1971) ................................................................................ 4

*Bartholomew v. Va. Chiropractors Ass'n*,
  612 F.2d 812 (4th Cir. 1979)...................................................................................... 5

*BMC Software, Inc. v. Cherwell Software, LLC*,
  No. 1:17-cv-1074, Dkt. 55 (E.D. Va. Dec. 21, 2017) ............................................... 9

*Caldwell v. Palmetto State Sav. Bank of S.C.*,
  811 F.2d 916 (5th Cir. 1987) .................................................................................... 20

*Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*,
  576 F.3d 1348 (Fed. Cir. 2009)................................................................................ 18

*Cordis Corp. v. Cardiac Pacemakers*,
  599 F.2d 1085 (1st Cir. 1979).................................................................................... 5

*Datascope Corp. v. SMEC, Inc.*,
  561 F. Supp. 787 (D.N.J. 1983) ............................................................................... 18

*Digital Equip. Corp. v. Elec. Memories & Magnetics Corp.*,
  452 F. Supp. 1262 (D. Mass. 1978) ............................................................. 17, 18, 19

*Fourco Glass Co. v. Transmirra Prods. Corp.*,
  353 U.S. 222 (1957)................................................................................................... 4

*Gen. Radio Co. v. Superior Elec. Co.*,
  293 F.2d 949 (1st Cir. 1961).................................................................................... 13

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

*Grantham v. Cook Bros., Inc.*,
  420 F.2d 1182 (7th Cir. 1969) ........................................................ 5

*Gulf Ins. Co. v. Glasbrenner*,
  417 F.3d 353 (2d Cir. 2005)........................................................... 5

*Herman v. Cataphora, Inc.*,
  730 F.3d 460 (5th Cir. 2013) ........................................................ 21

*Hoffmann-La Roche Inc.*,
  587 F.3d 1333 (Fed. Cir. 2009)..................................................... 25

*HomeBingo Network, Inc. v. Chayevsky*,
  428 F. Supp. 2d 1232 (S.D. Ala. 2006).......................................... 11

*In re Cray Inc.*,
  871 F.3d 1355 (Fed. Cir. 2017)............................................... passim

*Jeffrey Galion, Inc. v. Joy Mfg. Co.*,
  323 F. Supp. 261 (N.D. W. Va. 1971) ........................................... 20

*Kalvar Corp. v. Memorex Corp.*,
  386 F. Supp. 273 (E.D. La. 1974).................................................. 18

*Knapp-Monarch Co. v. Casco Prod. Corp.*,
  342 F.2d at 622 (7th Cir. 1965)..................................................... 13

*Kranos IP Corp. v. Riddell Inc.*,
  No. 2:17-cv-443-JRG, 2017 WL 3704762 (E.D. Tex. Aug. 28, 2017) ............................ 5

*Langton v. Cbeyond Commc'n, L.L.C.*,
  282 F. Supp. 2d 504 (E.D. Tex. 2003) ............................................. 5

*Leroy v. Great W. United Corp.*,
  443 U.S. 173 (1979) ...................................................................... 4

*LoganTree LP v. Garmin Int'l, Inc.*,
  No. 17-cv-0098, 2017 WL 2842870 (W.D. Tex. June 22, 2017) ................................. 5, 13

*Magee v. Coca-Cola Refreshments USA, Inc.*,
  833 F.3d 530 (5th Cir. 2016) ........................................................ 11

*Manville Boiler Co. v. Columbia Boiler Co. of Pottstown*,
  269 F.2d 600 (4th Cir. 1959) ........................................................ 13

*Med. Designs, Inc. v. Orthopedic Tech., Inc.*,
  684 F. Supp. 445 (N.D. Tex. 1988) ........................................... 19, 20

*Mink v. AAAA Dev. LLC*,
  190 F.3d 333 (5th Cir. 1999) ........................................................ 15

iii

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

*Moran v. Smith*,
    No. 5:15-cv-1121, 2016 WL 4033268 (W.D. Tex. July 27, 2016)...................................21

*Myers v. Am. Dental Ass'n*,
    695 F.2d 716 (3d Cir. 1982)..............................................................................................5

*NTP, Inc. v. Research in Motion, Ltd*.,
    418 F.3d 1282 (Fed. Cir. 2005)........................................................................................18

*Payne v. Grayco Cable Servs., Inc.*,
    No. 1:11-cv-487, 2011 WL 13076902 (E.D. Tex. Dec. 8, 2011) ....................................20

*Personal Audio, LLC v. Google, Inc.*,
    No. 1:15-cv-350, 2017 WL 5988868 (E.D. Tex. Dec. 1, 2017) ...............................passim

*Pierce v. Shorty Small's of Branson Inc.*,
    137 F.3d 1190 (10th Cir. 1998) .........................................................................................5

*Pure Oil Co. v. Suarez*,
    384 U.S. 202 (1966)............................................................................................................4

*Raytheon Co. v. Cray, Inc.*,
    No. 2:15-cv-01554-JRG, 2017 WL 2813896 (E.D. Tex. June 29, 2017) ..........................3

*Scaramucci v. FMC Corp.*,
    258 F. Supp. 598 (W.D. Okla. 1966) ..........................................................................19, 20

*Schnell v. Peter Eckrich & Sons, Inc.*,
    365 U.S. 260 (1961)............................................................................................................4

*Schroeder v. Owens-Corning Fiberglas Corp.*,
    326 F. Supp. 594 (C.D. Cal. 1971) ..................................................................................18

*Surgical Laser Tech., Inc. v. Cooper Lasersonics, Inc.*,
    No. 87-cv-10651, 1988 WL 40961 (N.D. Ill. Apr. 26, 1988)...........................................4

*TC Heartland LLC v. Kraft Foods-Group Brand LLC*,
    137 S. Ct. 1514 (2017).....................................................................................................1, 3

*Transamerica Adjusters, Inc. v. Huntington Nat'l Bank*,
    No. 2:13-cv-668-JRG, 2014 WL 12685938 (E.D. Tex. Aug. 5, 2014) .............................5

*Vomastek v. AXA Equitable Life Ins. Co.*,
    No. 5:15-cv-50-JRG, 2016 WL 3771278 (E.D. Tex. Feb. 17, 2016) ................................5

*Watts v. L-3 Commc'ns. Corp.*,
    No. 2:12-cv-28-JRG, 2012 WL 4480721 (E.D. Tex. Sept. 26, 2012) ...............................5

<u>STATUTES & RULES</u>

28 U.S.C. § 1391.......................................................................................................................5

iv

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

28 U.S.C. § 1400.................................................................................................. passim

28 U.S.C. § 1404.................................................................................................. 2, 21

28 U.S.C. § 1406.................................................................................................. 1, 20, 21

Fed. R. Civ. P. 12.................................................................................................. 1, 2

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

Pursuant to Federal Rule of Civil Procedure 12(b)(3) and the Court's Venue Discovery Orders (Dkts. 107, 115), Google LLC[1] ("Google") renews its motion to dismiss the First Amended Complaint (Dkt. 34, "Complaint" or "Compl.") filed by SEVEN Networks, LLC ("SEVEN") for improper venue. Venue is not proper in this District under 28 U.S.C. § 1400(b). Under the Supreme Court's *TC Heartland* decision, venue in a patent infringement case is only proper: (1) where the defendant is incorporated, or (2) in a district where the defendant has a regular and established place of business and has committed acts of infringement. Neither prong applies to Google in the Eastern District of Texas. SEVEN's Complaint should therefore be dismissed.

Google Inc. was incorporated in Delaware, not in Texas. Google's headquarters and principal place of business is in the Northern District of California and Google does not have any place of business in this District, much less one that is regular and established. As the Federal Circuit in *Cray* explained, in order for a defendant to have "a regular and established place of business . . . (1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." *In re Cray Inc*., 871 F.3d 1355, 1360 (Fed. Cir. Sept. 21, 2017). But Google has no real estate, offices, or other real property in this District.

SEVEN has compiled a list of irrelevant and facially insufficient allegations concerning Google's purported contacts with this District. These allegations are not tied to any Google place of business and insufficient to establish venue under *TC Heartland* and *Cray*. This case must therefore

---

[1] On September 30, 2017, Google Inc. filed a Certificate of Conversion with the Delaware Secretary of State, in which Google Inc. converted from a corporation to a limited liability company and changed its name to Google LLC. (Dkt. 67.) The Court granted Google's motion to reflect this name change. (Dkt. 82.)

1

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

be dismissed for improper venue. In the alternative, Google requests that the Court transfer the case to the Northern District of California pursuant to 28 U.S.C. § 1406(a).

## I.    PROCEDURAL HISTORY

SEVEN filed this case against Google on May 17, 2017. (Dkt. 1.) On August 8, 2017, Google filed a Motion to Dismiss under Rule 12(b)(3). (Dkt. 25.) In response, SEVEN filed an Amended Complaint that is the subject of the present motion. (Dkt. 34.) On September 12, 2017, Google filed a Renewed Motion to Dismiss ("Second Motion to Dismiss"), again under Rule 12(b)(3). In opposing Google's Second Motion to Dismiss, SEVEN abandoned all but one of the venue theories pled in its Complaint, namely its allegation that a Google Global Cache (GGC) server, which is installed, hosted, and maintained by third-party Internet Service Providers (ISPs), constituted a "regular and established place of business" of Google under Section 1400(b). (Dkt. 76 at 13-17.) SEVEN also filed a Contingent Motion for Leave to Conduct Venue Discovery, despite discovery already being open. (Dkt. 77.)

On October 3, 2017, Google also filed a Motion to Transfer Venue to the Northern District of California ("Motion to Transfer") pursuant to 28 U.S.C. § 1404. (Dkt. 61.) As Google explained therein, all or nearly all of the relevant documents, witnesses, source code, and prior art is located in the Northern District of California. Google also moved to stay proceedings pending resolution of both the Second Motion to Dismiss and the Motion to Transfer. (Dkt. 99.)

On December 22, 2017, the Court entered a Venue Discovery Order, which directed the parties to conduct discovery on Google's venue motions by February 22, 2018 and directed Google to refile its venue motions no later than two weeks after the close of venue discovery. (Dkt. 107.) The Court then granted the parties' motion to extend venue discovery to March 1, 2018. (Dkt. 115.) After over two months of discovery—during which Google produced over 1,200 pages of

2

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

documents, three corporate witnesses for depositions, and over a hundred thousand lines of source code—the undisputed facts establish that Google has no place of business in this District and SEVEN has yet to advance a legally sufficient theory of venue.

## II.    VENUE IS NOT PROPER IN THE EASTERN DISTRICT OF TEXAS

In a patent case, venue lies only "in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b).  Google does not meet either requirement.

### A.    Google Does Not Reside In This District

Venue is assessed as of the time of filing of the complaint.  *See, e.g.*, *Raytheon Co. v. Cray, Inc.,* No. 2:15-cv-01554-JRG, 2017 WL 2813896, at *3 (E.D. Tex. June 29, 2017); *Personal Audio, LLC v. Google, Inc.,* No. 1:15-cv-350, 2017 WL 5988868, at *7 (E.D. Tex. Dec. 1, 2017).  When this action was filed, Google was incorporated in Delaware (Compl. ¶ 2) and therefore "resided" in Delaware, not in Texas.  *See TC Heartland LLC v. Kraft Foods-Group Brand LLC,* 137 S. Ct. 1514, 1521 (2017).  Thus, Google's residence cannot provide a basis for venue in this District.

### B.    SEVEN Cannot Show That Google Has A "Regular And Established Place Of Business" In This District

Google does not have a "regular and established place of business" in this District, nor do SEVEN's allegations support a finding that it does.  In contrast, Google does have a "regular and established place of business" in the Northern District of California, the location of its headquarters, where it has numerous buildings hosting over 20,000 employees.  (King Decl.[2] ¶¶ 6, 8; *see also* Compl. ¶ 2.)  SEVEN does not dispute this.  Rather, SEVEN's Complaint merely alleges that Google has purported contacts with this District and fails to allege sufficient facts—because it cannot—

---

[2]  Citations to "King Decl." refer to the Declaration of Brian King in Support of Google Inc.'s Motion to Transfer Venue to the Northern District of California. (Dkt. 63.)

3

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

showing that Google has a "regular and established place of business" in this District. SEVEN points only to actions that are irrelevant and insufficient to identifying a regular and established place of business for Google in this District, because, at most, they merely suggest that Google is "doing business" in this District—which, as discussed below, is not sufficient to constitute a "regular and established place of business" under Section 1400(b).

### 1.    The Law On Venue And *In re Cray*'s Three Factor Test

Venue, unlike personal jurisdiction, "protect[s] the ***defendant*** against the risk that a plaintiff will select an unfair or inconvenient place of trial." *Leroy v. Great W. United Corp.*, 443 U.S. 173, 183-84 (1979) (emphasis in original). Venue is not available everywhere a defendant has satisfied "minimum contacts." Venue in patent cases is only proper under Section 1400(b) when a defendant maintains an "established place of business" in the district. Congress enacted Section 1400(b) providing for a more "narrow venue" to avoid the mistaken view that "patent infringers could be sued wherever they might be found." *Pure Oil Co. v. Suarez*, 384 U.S. 202, 207 (1966); *see also AMP Inc. v. Burndy of Midwest, Inc.*, 340 F. Supp. 21, 22 (N.D. Ill. 1971). The Supreme Court has also held that the venue requirements of Section 1400(b) are "specific and unambiguous; it is not one of those vague principles which, in the interest of some overriding policy, is to be given a 'liberal' construction." *Schnell v. Peter Eckrich & Sons, Inc.*, 365 U.S. 260, 264 (1961). Thus, even if a corporation has "a multiplicity of contacts with a district" such that it is clearly "doing business" or subject to personal jurisdiction there, "the contacts still may be of such a nature that they do not demonstrate a 'regular and established place of business'" under the specific requirements of Section 1400(b).[3]

---

[3]  *Surgical Laser Tech., Inc. v. Cooper Lasersonics, Inc.*, No. 87 C 10651, 1988 WL 40961, at *2 (N.D. Ill. Apr. 26, 1988); *see also In re Cray Inc.*, 871 F.3d 1355, 1361 (Fed. Cir. Sept. 21, 2017) ("[T]he regular and established place of business standard requires more than the minimum contacts

4

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

The plaintiff has the burden of establishing venue.[4]  The majority of circuit courts agree.[5]  This Court recently noted that "a deep divide exists with respect to which party bears the burden in improper venue disputes."  *See Kranos IP Corp. v. Riddell Inc.*, No. 2:17-cv-443-JRG, 2017 WL 3704762, at *3 (E.D. Tex. Aug. 28, 2017) (declining to address the question of burden).  But this Court has agreed with the Tenth Circuit that allegations in a complaint are accepted as true "only to the extent that such facts are uncontroverted by [a] defendant's affidavit."  *Id.* at *2 (quoting *Pierce v. Shorty Small's of Branson Inc.*, 137 F.3d 1190, 1992 (10th Cir. 1998)).

---

necessary for establishing personal jurisdiction or for satisfying the doing business standard of the general venue provision, 28 U.S.C. § 1391(c)."); *Fourco Glass Co. v. Transmirra Prods. Corp.*, 353 U.S. 222, 226 (1957) (noting Congress' intent to "make corporations [not] suable, in patent infringement cases, where they are merely 'doing business'").

[4]  *See, e.g.*, *Vomastek v. AXA Equitable Life Ins. Co.*, No. 5:15-cv-50-JRG, 2016 WL 3771278, at *2 (E.D. Tex. Feb. 17, 2016) ("When an objection to venue is raised, the burden is on the plaintiff to establish that the district he chose is a proper venue.") (Gilstrap, J.); *Transamerica Adjusters, Inc. v. Huntington Nat'l Bank*, No. 2:13-cv-668-JRG, 2014 WL 12685938, at *2 (E.D. Tex. Aug. 5, 2014) ("Once a defendant challenges venue under Rule 12(b)(3), the plaintiff bears the burden of demonstrating that its choice of venue is proper.") (Gilstrap, J.) (citing *Watts v. L-3 Commc'ns. Corp.*, No. 2:12-cv-28-JRG, 2012 WL 4480721, at *1 (E.D. Tex. Sept. 26, 2012)); *Personal Audio, LLC v. Google, Inc.*, No. 1:15-cv-350-RC, 2017 WL 5988868, at *6 (E.D. Tex. Dec. 1, 2017) (noting "[t]he consistent assignment of burden of proof to the plaintiff in § 1400(b) cases decided by circuit and district courts" and holding that plaintiff bears the burden of showing that venue is proper); *LoganTree LP v. Garmin Int'l, Inc.*, No. 17-CA-0098, 2017 WL 2842870, at *1 (W.D. Tex. June 22, 2017) ("Plaintiff has the burden of proving venue is proper in the Western District of Texas."); *Am. Gen. Life Ins. Co. v. Rasche*, 273 F.R.D. 391, 396 (S.D. Tex. 2011); *Langton v. Cbeyond Commc'n, L.L.C.*, 282 F. Supp. 2d 504, 508 (E.D. Tex. 2003) ("[T]he burden of sustaining venue lies with the plaintiff."); *Agrosciences, LLC v. Bates*, No. 5:01-cv-331, 2002 WL 1205143, at *2 (N.D. Tex. Mar. 12, 2002) ("The plaintiff has the burden of establishing that venue is proper in the district selected.").

[5]  The First, Second, Fourth, Seventh, and Ninth Circuits all hold that the plaintiff bears the burden of showing venue.  *See, e.g.*, *Cordis Corp. v. Cardiac Pacemakers*, 599 F.2d 1085, 1086 (1st Cir. 1979); *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357-58 (2d Cir. 2005); *Bartholomew v. Va. Chiropractors Ass'n*, 612 F.2d 812, 816 (4th Cir. 1979); *Grantham v. Cook Bros., Inc.*, 420 F.2d 1182, 1184 (7th Cir. 1969); *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 790 n.9 (9th Cir. 1977).  Only the Third and Eighth Circuits have placed the burden on the defendant and the Third Circuit based its decision on FED. R. CIV. P. Form 2, which has since been abrogated.  *See Myers v. Am. Dental Ass'n*, 695 F.2d 716, 724-25 (3d Cir. 1982).

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

No matter where the burden lies, Google does not have any "regular and established place of business" within the Eastern District of Texas.[6]  For a defendant to have "a regular and established place of business . . . (1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant."  *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. Sept. 21, 2017).  Applying this test, the defendant must have a "physical place in the district."  A physical place is exactly that—it is "a building or a part of a building set apart for any purpose" or "quarters of any kind."  *Id.* at 1362.  For venue, "there must [] be a physical, geographical location in the district."  *Id.*  The Federal Circuit provided examples of physical locations such as a "formal office or store," a "distribution center, storing inventory that the employees then directly took to [] clients" or "a secretarial service physically located in the district to perform certain tasks."  *Id.*  And under *Cray*, the "regular and established place of business" standard "cannot be read to refer merely to a virtual space or to electronic communications."  *Id.*

Second, the alleged place of business must be "regular and established."  This requires a showing that the alleged place of business "operates in a steady, uniform, orderly, and methodical manner" while also being a place that is "settled certainly, or fixed permanently."  *Id.* at 1362-63 (quotations and ellipse omitted).  "While a business can certainly move its location, it must for a meaningful time period be stable, established."  *Id.* at 1363.

Third, *Cray* requires that the alleged place of business is a "place of the defendant."  "Relevant considerations include whether the defendant owns or leases the place, or exercises other attributes of possession or control over the place."  *Id.*  "Marketing or advertisements also may be relevant, but only to the extent they indicate that the defendant itself holds out a place for its

---

[6] As described in more detail below, for at least some of the patents, SEVEN also does not sufficiently allege "acts of infringement" in this District.  This is an independent reason why SEVEN's Complaint must be dismissed.

6

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

business." *Id.* For example, if a defendant "lists the alleged place of business on a website, or in a telephone or other directory; or places its name on a sign associated with or on the building itself," that could support a finding that this factor is met. *Id.* at 1363-64. "But the mere fact that a defendant has advertised that it has a place of business or has even set up an office is not sufficient; the defendant must actually engage in business from that location." *Id.* at 1364.

### 2.     Google Does Not Have A Regular And Established Place Of Business In This District

After nearly eight months—during which SEVEN has filed two complaints, completed a full round of briefing on venue, and conducted over two months of venue discovery in this case, as well as having had the benefit of recent venue discovery produced by Google in another case in this District[7]—SEVEN cannot reasonably dispute that Google does not own or lease "a building or a part of a building set apart for any purpose" or "quarters of any kind" in this District. *Cray*, 871 F.3d at 1362. ███████████████████████████████████ ████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████ ██████████████ SEVEN's Complaint does not allege to the contrary. Thus, venue in this District is improper as to Google.

### (a)     Google Global Cache (GGC) Servers Are Not A Place of Business Under *Cray*

SEVEN's venue allegations point to servers that are allegedly "located in this District" and "owned and controlled by Google." (Compl. at ¶ 12.) These servers, called Google Global Cache

---

[7] *Personal Audio, LLC v. Google, Inc.*, No. 1:15-cv-350-RC (E.D. Tex.).
[8] Citations to "Lim Decl." refer to the Declaration of Sallie Lim in Support of Google Inc.'s Motion to Dismiss or, in the Alternative, Transfer for Improper Venue. (Dkt. 49-2.)
[9] Google's Dallas office is located in Addison, Texas.

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

("GGC") servers, were the sole basis for SEVEN's flawed theory of venue in opposing Google's

Second Motion to Dismiss.  (*See* Dkts. 76 and 92.) ████████████████████████

████████████████████████████████████████████████████████



(Ex. 2 (Product Sheet for Dell PowerEdge R720 Server).)

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████

---

[10]  Citations to "Clark Decl." refer to the Declaration of Donald Clark in Support of Google Inc.'s Motion to Dismiss or, in the Alternative, Transfer for Improper Venue.  (Dkt. 49-7.)
█ ████████████████████████████████████████████
████████████████████████████

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**



The GGC servers are not regular and established places of business. First, GGC servers are not "physical places of business." A physical place is: "a building or a part of a building set apart for any purpose" or "quarters of any kind." *In re Cray Inc.*, 871 F.3d 1355, 1362 (Fed. Cir. Sept. 21, 2017). A server is a piece of hardware or equipment, not a place. SEVEN itself has described the servers as "physical objects housed at physical locations" (Dkt. 76 at 14), which is exactly right. The servers are objects; the locations where they are stored are the places.

As another court in this District has already held, the GGC servers at issue here "are not a building or physical quarters of any kind . . . . The GGC servers are not 'places' under the meaning of the [venue] statute." *Personal Audio, LLC v. Google, Inc*., No. 1:15-cv-350, 2017 WL 5988868, at *10 (E.D. Tex. Dec. 1, 2017); *see also BMC Software, Inc. v. Cherwell Software, LLC*, No. 1:17-cv-1074, Dkt. 55 at 4 (E.D. Va. Dec. 21, 2017) (holding that "[s]ervers are not real property; they are

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

personal property" and thus not places of business for venue).  Indeed, even SEVEN's Director of

Product Development, Keyvan Shahrdar, ███████████████████

███████████████████████

████████████████

████████████████████████

█████

███████████████████████████████

██████

████

███████████████████████

██████

███

█████████████████████

██████████████

███████████████████

██████████

███████████████████████████

██████

(Ex. 3 (Shahrdar Deposition Transcript) at 202:7-203:10 (objections omitted).)  SEVEN thus fails to

meet the first *Cray* requirement.

Even if the GGC servers were "places"—they are not—SEVEN fails to provide a basis to

conclude that these servers are "places of businesses," let alone regular and established places of

business of Google.  ████████████████████████████████████

█████████████████████████████ Servers are pieces of equipment, like slot

10

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

machines or vending machines, and do not rise to the level of being places ***of business***.  *See, e.g.*,

*HomeBingo Network, Inc. v. Chayevsky*, 428 F. Supp. 2d 1232, 1250 (S.D. Ala. 2006) ("That an

individual may be a part owner of a piece of equipment (in this case, a slot machine) located in a

judicial district does not render the situs of that equipment his regular and established place of

business for venue purposes."); *see also Magee v. Coca-Cola Refreshments USA, Inc*., 833 F.3d 530,

534 (5th Cir. 2016) (finding that "vending machines are not 'sales establishments,'" where

"establishment" was "a place of business or residence with its furnishings and staff.").  As the court

in *Personal Audio* found:

> It might be true that part of Google's business relies on these servers, but that does
> not amount to Google's business being carried out from them. To conclude that
> Google's business was being carried out by these servers would have far-reaching
> consequences that distort the scope of the statute; for example, every single AT&T
> tower would then possibly become a place of business for AT&T. Maybe even every
> handheld device sold by Verizon would become a place of business for Verizon
> because the end-user signed an agreement with Verizon regarding Verizon's
> exclusive control of the device.

*Personal Audio*, 2017 WL 5988868, at \*10.  ███████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████

████████████  *Cray* requires that the alleged place of business is a "place of the defendant." ████████

11

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████  As another court in this District has found, these rooms "are not Google property" and the rooms "are not rooms from which the business of Google is conducted."  *Personal Audio*, 2017 WL 5988868, at *10.

███████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████  Thus, neither these GGC servers nor the rooms that hold them are "places of Google."

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

Thus, the GGC servers cannot provide a legally sufficient basis for venue under *Cray*.

> **(b)** **SEVEN's Remaining Allegations Fall Entirely Outside of the *Cray* Test And Are Therefore Legally Insufficient To Show Venue**

SEVEN's remaining scattershot allegations are largely irrelevant to the venue inquiry and should not be given any weight. None of these allegations identify a Google place of business in this District because none exist. Not surprisingly, SEVEN has not identified any "marketing or advertisements . . . [that would] indicate that [Google] holds out a place for its business" in this District because there are none. *Cray*, 871 F.3d at 1363.

For example, allegations that Google distributes and sells the accused instrumentalities (Pixel and Nexus phones and applications running thereon) are insufficient to establish venue in this District because the mere distribution of an accused product cannot establish venue. *See, e.g.*, *LoganTree LP v. Garmin Int'l, Inc.*, No. 17-CA-98, 2017 WL 2842870, at *2 (W.D. Tex. June 22, 2017) (Kansas defendants' website that "allow[s] viewers to access a list of San Antonio/Austin distributors" does not provide venue in the Western District of Texas); *see also Cray*, 871 F.3d at 1364 (holding that mere sales to "customers [present] in the District" were not, absent more, relevant to venue analysis).[13]

SEVEN's allegations regarding "Google Maps Street View" in the district (*see, e.g.*, Compl. ¶¶ 19, 21) similarly miss the mark. Vehicles occasionally driving through this District are the

---

[13] *See also, e.g.*, *Knapp-Monarch Co. v. Casco Prod. Corp.*, 342 F.2d 622, 624-25 (7th Cir. 1965) (Connecticut defendant that had authorized dealers of its product in Illinois, had a local telephone number, and attended a trade show in Illinois for "many years" did not have a "regular and established place of business" in Illinois); *Gen. Radio Co. v. Superior Elec. Co.*, 293 F.2d 949, 950-51 (1st Cir. 1961) (Connecticut defendant did not have a "regular and established place of business" in Massachusetts even though it maintained a sales office there that forwarded orders to Connecticut); *Manville Boiler Co. v. Columbia Boiler Co. of Pottstown*, 269 F.2d 600, 606-07 (4th Cir. 1959) (Pennsylvania defendant did not have a "regular and established place of business" in Virginia by selling accused products to Virginia sales office for Virginia customers).

13

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

epitome of a transient, irregular presence that is not "regular," "established," or a "place of

business." ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████ ████████████

      SEVEN's allegation of alleged recruitment of Local Guides likewise do not establish venue;

████████████████████████████████████████████████████████████████

████████████████████████████████████ ████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████

      SEVEN also points to Google's use of base stations in the Eastern District of Texas for

Google's Project Fi.  (Compl. ¶ 20.) █████████████████████████████████

██████████████████████████████████████████████ █████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████ Even if Sprint, T-Mobile, or U.S. Cellular were thought to have a fixed place of

---

[14] Citations to "Data Decl." refer to the Declaration of Joe Data in Support of Google Inc.'s Motion to Dismiss or, in the Alternative, Transfer for Improper Venue.  (Dkt. 49-3.)

[15] Citations to "Chomsky Decl." refer to the Declaration of Mara Chomsky in Support of Google Inc.'s Motion to Dismiss or, in the Alternative, Transfer for Improper Venue.  (Dkt. 49-5.)

[16] Citations to "Arscott Decl." refer to the Declaration of Simon Arscott in Support of Google Inc.'s Motion to Dismiss or, in the Alternative, Transfer for Improper Venue.  (Dkt. 49-4.)

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

████████████████████████████████████████████████████████

████████████████████████

SEVEN's claim that "Google operates its Google Express business and services in this District by ***making deliveries of products from stores in this district***" is also incorrect.  (Compl. ¶ 22 (emphasis added).) ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

SEVEN alleges that Google is in a partnership with Genesis Group in Tyler, Texas to share data in order to "optimiz[e] response times for emergency responders in this District."  (Compl. ¶ 10.)  But the Genesis Group is part of Waze's Connected Citizens Program, which shares traffic data with Google over the Internet.  (*See* Dkt. 49-9 (Genesis Press Release) at 1; Dkt. 49-10 (Waze FAQ) at 2.) ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████ Exchanging data over the Internet does not create a regular and established place of business in this District.

---

[17]  Using nationwide telephone wires or networks such as the Internet would not establish venue in any district where those wires are present; the same is true of nationwide cellular networks. *Cf. Mink v. AAAA Dev. LLC*, 190 F.3d 333, 337 (5th Cir. 1999) (finding that a website that does no more than "passive advertisement" is insufficient to subject company to personal jurisdiction).

[18]  Citations to "Wu Decl." refer to the Declaration of Judy Wu in Support of Google Inc.'s Motion to Dismiss or, in the Alternative, Transfer for Improper Venue.  (Dkt. 49-6.)

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

While SEVEN next alleges "Google has employees who live and conduct business for Google in this District" (Compl. ¶ 30), SEVEN does not even allege these employees are ***in any way*** associated with the manufacture, sale, distribution, or use of products or functionalities accused of infringement in this case.  Moreover, the mere presence of employees' personal residences within a District is insufficient to support a finding of venue.  Under *Cray*, a "regular and established place of business . . . must be a place *of the defendant*, not solely a place of the defendant's employee. Employees change jobs. Thus, the defendant must establish or ratify the place of business. It is not enough that the employee does so on his or her own."  *In re Cray Inc.*, 871 F.3d 1355, 1363 (Fed. Cir. Sept. 21, 2017) (emphasis in original).  The facts of *Cray* are instructive in this regard.  In *Cray*, the defendant had an employee that resided within the District.  *Id.* at 1364.  The employee's home, however, "was not listed in any business directories or websites" and did not contain any "product literature or products" at home.  *Id.*  Nor did the defendant pay any part of the employee's home or rent or store any products there.  *Id.*  On these facts, the Federal Circuit found that venue was improper under Section 1400(b).

16

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

█████████████████████████████████████████████████

████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████    None of SEVEN's allegations implicate any physical Google presence in this District.

For all these reasons, SEVEN's Complaint should be dismissed for improper venue.

### C.    SEVEN Failed To Establish That Google Committed Acts Of Infringement In This District

SEVEN's Complaint must also be dismissed because SEVEN fails to allege sufficient facts to establish that Google "has committed acts of infringement" in this district for at least some of the asserted patents.  *See* 28 U.S.C. § 1400(b).  A plaintiff must "establish proper venue *as to each patent* allegedly infringed."  *Digital Equip. Corp. v. Elec. Memories & Magnetics Corp*., 452 F. Supp. 1262, 1266 (D. Mass. 1978) (emphasis added); *see also Datascope Corp. v. SMEC, Inc*., 561 F. Supp. 787, 789 (D.N.J. 1983); *Kalvar Corp. v. Memorex Corp*., 386 F. Supp. 273, 278-79 (E.D. La. 1974); *Schroeder v. Owens-Corning Fiberglas Corp*., 326 F. Supp. 594, 597 (C.D. Cal. 1971).

17

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

This bright-line rule is meant to avoid "the difficulties potentially involved in determining whether, in a given instance, two patents are sufficiently interrelated or share a sufficiently similar technology so as to bind them together for venue purposes." *Digital Equip. Corp.*, 452 F. Supp. at 1266.  Based on the allegations in the Complaint, SEVEN fails to meet this standard for at least U.S. Patent Nos. 8,078,158 ("the '158 Patent"), 9,386,433 ("the '433 Patent"), and 9,444,812 ("the '812 Patent").

SEVEN alleges that Google infringes certain method claims of the '158 Patent (claim 10), the '433 Patent (claim 16), and the '812 Patent (claim 1).  (Compl. ¶¶ 49, 84, 88.)  On its face, the Complaint is deficient because SEVEN only specifically identifies a single step purportedly performed by Google in this District for each of the asserted method claims for the '158, '433, and '812 Patents.  (*See* Compl. ¶ 49 ("Google Play provisions the application on the mobile device, for example on a mobile device in this District"); ¶ 84 ("Google owns and operates servers in this District that perform at least this step of the method"); ¶ 88 ("Google queries the user, including queries in this District).)  SEVEN has failed to plead that Google performs *each* step of the method claim in this District, which is required to show that Google has committed an act of infringement in this District.  *See, e.g.*, *NTP, Inc. v. Research in Motion, Ltd*., 418 F.3d 1282, 1317-18 (Fed. Cir. 2005) (ruling that "[i]t is well established that a patent for a method or process is not infringed unless all steps or stages of the claimed process are utilized" and that a process "cannot be used within" a place "unless each of the steps is performed within" that place); *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc*., 576 F.3d 1348, 1365 (Fed. Cir. 2009) (finding non-infringement based in-part of patentee's failed to allege that all the steps of a method claim "are carried out in the United States").  In fact, SEVEN asserts that Google infringes each method claim through its Play Store or "registration and 2-Step Verification process" (Compl. ¶¶ 49, 84, 88); but, Google has no data

18

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

centers in this District (*see* King Decl. ¶ 15) and the GGC servers in this District only cache static content (*see* Ex. 1 at 62:4-12). Google cannot infringe these method claims in this District.

SEVEN also asserts a system claim of the '433 Patent (claim 1), which recites "a first server" and "a second server." (Compl. ¶ 80.) While SEVEN alleges "[c]ertain Google Play servers" may perform the recited functionality, it does not allege that any of these servers are in this District, that the servers or the accused functionality was made, designed, or developed in this District, or that Google has committed acts of infringement in this District. (*Id.* ¶ 81.)

Further, SEVEN's indirect infringement theory with respect to the '433 and '812 Patents cannot serve to establish venue, (Compl. ¶¶ 82, 91), as SEVEN only alleges post-filing indirect infringement. And for the '158 Patent specifically, SEVEN fails to allege any indirect infringement theory. Thus, SEVEN cannot establish that Google has committed "acts of infringement" in this District at the time of the Complaint filing, and SEVEN's Complaint must therefore be dismissed as to these patents. *See Digital Equip. Corp.*, 452 F. Supp. at 1266; *see also Lyda v. CBS Corp.*, 838 F.3d 1331, 1339 (Fed. Cir. 2016) (plausible acts of infringement must be pled in complaint).

Moreover, the acts of infringement alleged in SEVEN's Complaint are not tied or related to Google's purported "regular and established place of business" in this District as required by 28 U.S.C. § 1400(b). *See Scaramucci v. FMC Corp.*, 258 F. Supp. 598, 602 (W.D. Okla. 1966) ("[T]here must be some reasonable or significant relationship between the accused item and any regular and established place of business of the accused in the judicial district."); *see also Med. Designs, Inc. v. Orthopedic Tech., Inc.*, 684 F. Supp. 445, 446-47 (N.D. Tex. 1988) (dismissing for lack of venue where "Plaintiff [] d[id] not allege that Orthopedic manufactured or used of the accused product in this District"); *Jeffrey Galion, Inc. v. Joy Mfg. Co.*, 323 F. Supp. 261, 266-67 (N.D. W. Va. 1971). For at least U.S. Patent Nos. 8,811,952, 9,247,019, 9,325,600, 9,351,254,

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

9,516,127, 9,516,129, and 9,553,816, the alleged acts of infringement are directed to Pixel and Nexus mobile phones.  (Compl. ¶¶ 51-78, 93-113.)  These phones are not made at or sold from any Google facility or other Google presence within this District.  (*See* King Decl. ¶ 12; Lim Decl. ¶ 4.) Similarly, the alleged acts of infringement of the '158, '433, and '812 Patents relate to specific functions allegedly supported by the Google Play Store or 2-Step Verification servers, but Google has no data centers in this District.  (King Decl. ¶ 15.)  Because the alleged "acts of infringement" are completely untethered from any putative physical Google presence in this District, venue is improper in this District.  *See Scaramucci*, 258 F. Supp. at 602; *see also Med. Designs*, 684 F. Supp. at 446; *Jeffrey Galion,* 323 F. Supp. at 266-67.

Because SEVEN's Complaint does not allege sufficient facts to establish that venue is proper in this District, and Google does not have a "regular and established place of business" here, the Court should dismiss SEVEN's Complaint for improper venue under 28 U.S.C. § 1400(b).

## III.   THE COURT MUST DISMISS OR, IN THE ALTERNATIVE, TRANSFER

When venue is improper, as it is here, the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).  This Court has "broad discretion" in deciding whether to dismiss or transfer, but it must do one or the other.  *See Caldwell v. Palmetto State Sav. Bank of S.C.*, 811 F.2d 916, 919 (5th Cir. 1987); *Payne v. Grayco Cable Servs., Inc.*, No. 1:11-cv-487, 2011 WL 13076902, at *4 (E.D. Tex. Dec. 8, 2011) (without venue "the court *must* either dismiss this lawsuit or transfer it to a judicial district in which venue is proper under 28 U.S.C. § 1406(a)" (emphasis added)).

Should the Court exercise its discretion to transfer this case instead of dismissing it, Google requests that the Court transfer this case to the Northern District of California.  The Fifth Circuit has affirmed transfer "in the interest of justice" under Section 1406(a) when "'witnesses, evidence, the

20

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

underlying events, and both defendants are based [in the transferee district].'" *See Moran v. Smith*, No. 5:15-cv-1121, 2016 WL 4033268, at *2 (W.D. Tex. July 27, 2016) (quoting *Herman v. Cataphora, Inc.*, 730 F.3d 460, 466 (5th Cir. 2013)). While Google will separately be renewing its Motion to Transfer under 28 U.S.C. § 1404(a), it highlights below why transfer there is appropriate.

## A.    This Case Could Have Been Brought In Northern California

There is no dispute that under Section 1400(b), this case could have been brought in the Northern District of California. Many of SEVEN's allegations of infringement are applicable to the Northern District of California  (*see, e.g.*, Compl. ¶ 5 (alleging infringement through Google's "online store")), and Google has a "regular and established place of business" in Mountain View, California, the location of its headquarters. (King Decl. ¶¶ 6, 8; *see also* Compl. ¶ 2.)  The Northern District of California, therefore, is a proper venue for this action.

## B.    Relevant Witnesses And Evidence Are In Northern California

Almost all the relevant witnesses and evidence are located in Northern California. First, Google has identified at least eight witnesses with relevant knowledge based on SEVEN's allegations who work at Google's offices in the Northern District of California. (Ex. 8 (Google's Supplemental Initial Disclosures).) ███████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

21

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████

Further, almost all of SEVEN's relevant witnesses and evidence are located in Northern California. SEVEN was based in San Mateo county in the Northern District of California from its inception in 2000 until mid-2015. (Dkts. 49-11, 49-12.) Because all the patents-in-suit claim priority to applications filed during this time period, the purported inventions stem from work largely or exclusively carried out in the Northern District of California. Thus, the bulk of relevant evidence is likely still located in Northern California. Both members of SEVEN's current "management team"—SEVEN's President and CEO, Dr. Ross Bott, and SEVEN's CTO, Ari Backholm—also currently reside and work in the Northern District of California. (Dkts 49-13, 49-14.) Indeed, when Mr. Bott was deposed, he freely admitted ████████████████████████████

████████████████████████████████████████████████████

████████████████████████████ (Ex. 9 (Bott Deposition Transcript) at 7:22-8:2, 192:13-21.)

Likewise, █████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████

Moreover, there are several non-party witnesses located in the Northern District of California. "Transfer is favored when a transferee district has absolute subpoena power over a

22

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

greater number of non-party witnesses." *Adaptix, Inc. v. HTC Corp.*, 937 F. Supp. 2d 867, 874 (E.D. Tex. 2013). SEVEN's original founders, Bill Nguyen and Trevor Fiatal, currently reside in the Northern District of California. (Dkts. 49-16, 49-17.) These witnesses likely possess unique knowledge regarding the founding, structure, and operation of SEVEN as well as knowledge of its early technology, product development, marketing, sales, and current and former employees.

Many of the named inventors of the patents-in-suit who do not work for SEVEN anymore also currently reside in Northern California. (*See* Compl. Exs. A-J.) These inventors include at least Trevor Fiatal (Dkt. 49-17), Scott M. Burke (Dkt. 49-18), William Alvarado (Dkt. 49-19), Juan Benitez (Dkt. 49-20), Michael Luna (Dkt. 49-21), Sungwook Yoon (Dkt. 49-22), Jay Sutaria (Dkt. 49-23), Abhay Nirantar (Dkt. 49-24), and Steve Petersen (Dkt. 49-25). These inventors possess highly relevant and unique information relating to the purported conception and reasonable diligence in reduction to practice of the claimed inventions, as well as potentially critical information regarding claim interpretation, alleged infringement, and the validity of the patents-in-suit.

There are also several non-party witnesses located in the Northern District of California with potentially relevant knowledge relating to the value of the patents-in-suit. Several of SEVEN's funders, including Fortress Investment Group LLC, Greylock, M/C Venture Partners, and Saints, are headquartered or have offices in the Northern District. (Dkt. 49-26.) Employees at these funders have relevant knowledge of the value and commercialization of the patents-in-suit, which are both highly relevant to the appropriate measure of damages. And with respect to Fortress Investment Group, ███████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

23

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

██████████████████████████████████████████████

███████████████████████████

Finally, Google has identified a range of potentially relevant prior art systems developed in the Northern District of California.  Each of these prior art systems implicates witnesses and evidence residing in Northern California and Google currently expects that these prior artists will be potential trial witnesses.  NVIDIA, for example, possesses relevant prior art and is headquartered in the Northern District.  One relevant NVIDIA prior art reference is U.S. Patent No. 9,474,022 to Lin et al., which teaches aligning wakeup events after the mobile device enters into a standby mode in order to reduce power consumption.  (Dkt. 61-56.)  This patent, filed on December 2, 2013, is also prior art to at least the '127 patent.  Many of the inventors, including Liangchuan Mi, Shail Dave, and Karthik Samynathan, currently reside in the Northern District and likely have relevant knowledge regarding this invention, including their motivation behind the invention.  (Dkt. 61-57; Dkt. 61-58; Dkt. 61-59.)  Google issued a subpoena to NVIDIA for prior art documents and testimony on February 9, 2018.  (Ex. 10 (Subpoenas to NVIDIA).)

Another company in the Northern District, VASCO, has prior art relevant to two-factor authentication.  VASCO Data Security, Inc. is the current assignee of U.S. Pat. App. Pub. 2003/0204726 to Kefford et al., which discloses a system of sending secured messages based on unique identifier and encryption keys.  (Dkt. 61-62.)  This patent publication was filed in April 25, 2002 and is prior art to at least the '812 patent.  VASCO has relevant documents related to the invention described in this publication.  Google issued a subpoena to VASCO regarding this prior art reference on December 26, 2017.  (Ex. 11 (Subpoenas to VASCO).)

Johan Rydell (developer of the PortWise system) is another two-factor authentication prior artist residing in the Northern District.  Mr. Rydell has already provided documents and source code

24

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

to Google regarding the PortWise system from his office in San Francisco and Google is currently negotiating with SEVEN to add the PortWise system to Defendants' Invalidity Contentions. Google is also in the process of serving subpoenas on and receiving discovery from other prior artists located in the Northern District of California including, but not limited to, Hewlett-Packard (owner of prior art systems Garnet OS & Palm WebOS), Faith West (developer of the Moderati content provider applications), and Symantec (developer of functionality related to battery management).

All of the aforementioned non-party witnesses currently reside in the Northern District of California or developed prior art systems there. A plethora of relevant evidence and witnesses therefore reside in the Northern California. By contrast, Google is not aware of any non-party witnesses with relevant knowledge located in the Eastern District of Texas.

### C.      Local Interest In The Case

Given the significant Google presence in the Northern District of California and SEVEN's long-standing presence and purported conception and development of the technology at issue there, the Northern District of California has a strong interest in adjudicating this dispute. *See, e.g.*, *Affinity Labs of Tex. v. Samsung Elecs. Co., Ltd.*, 968 F. Supp. 2d 852, 855 (E.D. Tex. 2013) ("The Northern District of California has an interest in protecting intellectual property rights that stem from research and development in Silicon Valley."). Furthermore, this case "calls into question the work and reputation" of Google and its employees active in the community, which gives Northern California a unique interest. *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009).

## IV.     CONCLUSION

For these reasons, Google respectfully requests that the Court dismiss this action for improper venue or, in the alternative, transfer this action to the Northern District of California.

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

Dated: March 13, 2018

Respectfully submitted,

*/s/ Sean S. Pak*
Charles K. Verhoeven
charlesverhoeven@quinnemanuel.com
Sean S. Pak
seanpak@quinnemanuel.com
Brian E. Mack
brianmack@quinnemanuel.com
Jonathan Tse
jonathantse@quinnemanuel.com
QUINN    EMANUEL    URQUHART    &
SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: 415-875-6600
Fax: 415-875-6700

Patrick D. Curran
patrickcurran@quinnemanuel.com
QUINN    EMANUEL    URQUHART    &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Tel: 212-849-7000
Fax: 212-849-7100

Lance L. Yang
lanceyang@quinnemanuel.com
Miles D. Freeman
milesfreeman@quinnemanuel.com
QUINN    EMANUEL    URQUHART    &
SULLIVAN LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: 213-443-3000
Fax: 213-443-3100

Michael E. Jones
State Bar No. 10929400
mikejones@potterminton.com
POTTER MINTON LLP
110 N. College Avenue, Suite 500
Tyler, TX 75702
Telephone: (903) 597-8311

26

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

Facsimile: (903) 593-0846

*Attorneys for Google LLC*

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who have consented to electronic service are being served with a copy of this document via electronic mail on March 13, 2018. I also hereby certify that all counsel of record who have consented to electronic service are being served with a notice of filing of this document, under seal, pursuant to L.R. CV-5(a)(7) on March 13, 2018.

*/s/ Miles D. Freeman*
Miles D. Freeman

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that the foregoing document and all supporting declarations and exhibits thereto are being filed under seal pursuant to the terms of the Protective Order (Dkt. 88).

*/s/ Miles D. Freeman*
Miles D. Freeman

28