**FILED UNDER SEAL IN ACCORDANCE WITH PROTECTIVE ORDER**

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| SEVEN NETWORKS, LLC,<br><br>            Plaintiff,<br><br>v.<br><br>GOOGLE LLC,<br><br>            Defendant. | CIVIL ACTION NO. 2:17-CV-442-JRG<br><br>LEAD CASE<br><br>PATENT CASE<br><br>JURY TRIAL DEMANDED |
| v.<br><br>SAMSUNG ELECTRONICS AMERICA, INC. AND<br>SAMSUNG ELECTRONICS CO., LTD.,<br><br>            Defendants. | CIVIL ACTION NO. 2:17-CV-441-JRG<br>CONSOLIDATED CASE |

## RESPONSE TO GOOGLE LLC'S SECOND RENEWED MOTION TO DISMISS (ECF NO. 125)



FILED UNDER SEAL IN ACCORDANCE WITH PROTECTIVE ORDER

## TABLE OF CONTENTS

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

Exhibit List . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A. SEVEN is a software company based in Marshall, Texas. . . . . . . . . . . . . . . 1

    B. Google is in the business of delivering information, including digital content such as movies, music, apps, and advertising. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        1. Google delivers information through its Edge Network. . . . . . . . . . . . . . 2

        2. "*Caching and localization are vital* for [Google's] optimization of network resources." . . . . . . . . . . . . . . . . . . . . 4

        3. Just like brick-and-mortar stores, ██████████ ██████████████ ████████████ . . . . . . . . . . . . . . . . . 5

        4. ████████████████████████████ ██████████ . . . . . . . . . . . . . . . . 6

        5. Google GGC servers located in this District cache Google's products and deliver them to residents of this District. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Legal Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    A. Burden. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    B. Regular and Established Place of Business . . . . . . . . . . . . . . . . . . . . 9

    C. Acts of Infringement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Arguments. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    A. Regular and Established Place of Business . . . . . . . . . . . . . . . . . . . . 10

        1. Google's GGC servers are themselves places of business, and they are located in places of business. . . . . . . . . . . . . . . . . 12

            a. Google's GGC servers are *places*, and are in, *places*. . . . . . . . . . . . 12

            b. The places are places *of business*. . . . . . . . . . . . . . . . . . . 13

                i. Google delivers information to people in this District from GGC servers in the District, and it receives revenue from doing so.. . . . . . . . . . . . . . . . 13

                ii. Under the *Cray* standard, storage and delivery facilities are places of business. . . . . . . . . . . . . . . . . 14

                iii. The cases cited by Google are easily distinguished. . . . . . . . . . . . . . . . . . . . . . . 17

**FILED UNDER SEAL IN ACCORDANCE WITH PROTECTIVE ORDER**

2. Google's business in this District is regular and established. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

3. Google's GGC servers in this District—and the spaces where they are housed—are places "of Google." . . . . . . . . . . . . . 20

    a. Google leases the rack spaces that house its GGC servers. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

    b. Google controls its GGC servers and the spaces where they are housed. . . . . . . . . . . . . . . . . . . . 22

    c. Google has ratified Tyler and Sherman, Texas, as places where it conducts business. . . . . . . . . . . . . 23

B. Acts of Infringement . . . . . . . . . . . . . . . . . . . . . . . 24

1. SEVEN's First Amended Complaint alleges that Google infringes each of the patents-in-suit in this District. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

2. Google has not shown that SEVEN's allegations are insufficient to establish venue. . . . . . . . . . . . . . . . 26

    a. Google's acts of infringement in this District do not need be tied to its regular and established place of business in the District. . . . . . . . . . . . . . . . . . 26

    b. Google committed acts of infringement in this District by performing at least one step of each of the asserted method claims in the District. . . . . . . 27

    c. SEVEN's indirect-infringement claims are not limited to Google's post-suit infringement.. . . . . . . . 29

C. If the case must be transferred, it should be to the Northern District of Texas. . . . . . . . . . . . . . . . . . . . . . . . . 30

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Certificate of Authority to File Under Seal . . . . . . . . . . . . . . . . 32

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

FILED UNDER SEAL IN ACCORDANCE WITH PROTECTIVE ORDER

## TABLE OF AUTHORITIES

### Cases

*Am. Cyanamid Co. v. Nopco Chem. Co.*,
    268 F. Supp. 506 (W.D. Va. 1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Beitner v. Becker*,
    824 N.Y.S.2d 155 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Braspetro Oil Servs. Co. v. Modec (USA), Inc.*,
    240 F. App'x 612 (5th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11, 29

*E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*,
    135 S. Ct. 2028 (2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*EnviroGLAS Prods., Inc. v. EnviroGLAS Prods., LLC*,
    705 F. Supp. 2d 560 (N.D. Tex. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Faberge, Inc. v. Schick Elec., Inc.*,
    312 F. Supp. 559 (D. Del. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Fed. Elec. Prods. Co. v. Frank Adam Elec. Co.*,
    100 F. Supp. 8 (S.D.N.Y. 1951) . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Gaddis v. Calgon Corp.*,
    449 F.2d 1318 (5th Cir. 1971) . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 27

*Home Bingo Network, Inc. v. Chayevsky*,
    428 F. Supp. 2d 1232 (S.D. Ala. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Hsin Ten Enter. USA, Inc. v. Clark Enters.*,
    138 F. Supp. 2d 449 (S.D.N.Y. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*In re Cordis Corp.*,
    769 F.2d 733 (Fed. Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 12

*Intellectual Ventures II LLC v. Fed Ex Corp.*,
    No. 2:16-cv-980-JRG, 2017 WL 5630023 *4 (E.D. Tex. Nov. 22, 2017) . . . . . . . . . 9, 18

*Magee v. Coca-Cola Refreshments USA, Inc.*,
    833 F.3d 530 (5th Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*McNeary-Calloway v. JP Morgan Chase Bank, N.A.*,
    863 F. Supp. 2d 928 (N.D. Cal. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Noble Linear Irr., Inc. v. Valmont Indus., Inc.*,
    No. 81-1210, 1982 WL 51054 (D. Idaho May 26, 1982) . . . . . . . . . . . . . . . . . . 15

*NTP, Inc. v. Research in Motion, Ltd.*,
    418 F.3d 1282 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 28

*OMI Int'l Corp. v. MacDermid, Inc.*,
    648 F. Supp. 1012 (M.D.N.C. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . 15

FILED UNDER SEAL IN ACCORDANCE WITH PROTECTIVE ORDER

*Personal Audio, LLC v. Google, Inc.*,
  280 F. Supp. 3d 922 (E.D. Tex. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18, 21

*Raytheon Co. v. Cray, Inc.*,
  258 F. Supp. 3d 781 (E.D. Tex. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . 10, 26

*U.S. v. Alvarado-Guzman*,
  927 F.2d 610 (Fed. Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

## Statutes

28 U.S.C. § 1400(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

28 U.S.C. § 1406(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

35 U.S.C. § 271(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

N.Y. U.C.C. Law § 2-A-103(1)(j) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

## Other Authorities

*Black's Law Dictionary* (7th ed. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Webster's Ninth New Collegiate Dictionary* (1988) . . . . . . . . . . . . . . . . . . 12

**FILED UNDER SEAL IN ACCORDANCE WITH PROTECTIVE ORDER**

## EXHIBIT LIST

| | |
|---|---|
| **Exhibit A** | Declaration of Ross Bott (Oct. 24, 2017) |
| **Exhibit B** | Declaration of Ross Bott (Mar. 27, 2018) |
| **Exhibit C** | *Company Overview*, SEVEN Networks, https://www.seven.com/seven-networks-company.php |
| **Exhibit D** | Ryan Wagoner, *New tech company moves to Marshall*, The Marshall News Messenger (Sept. 27, 2017), https://www.marshallnewsmessenger.com/news/2015/dec/02/new-tech-company-heading-to-marshall/ |
| **Exhibit E** | *The GSMA Announces Winners of the Annual Global Mobile Awards*, GSMA (Feb. 15, 2011), https://www.gsma.com/newsroom/press-release/the-gsma-announces-winners-of-the-annual-global-mobile-awards/ |
| **Exhibit F** | *2013 Mobile Merit Awards Winners Announced!*, Business Wire (Sept. 5, 2013), http://www.businesswire.com/news/home/20130905006358/en/2013-Mobile-Merit-Awards-Winners-Announced%21 |
| **Exhibit G** | Sundar Pichai, *Founder's Letter* (2016), https://www.blog.google/topics/inside-google/this-years-founders-letter/ |
| **Exhibit H** | Andrew Thompson, *Google's Vision Statement & Mission Statement*, PanMore Institute (Jan. 28, 2017), http://panmore.com/google-vision-statement-mission-statement |
| **Exhibit I** | *Alphabet Q4 2017 Earnings Call* (Feb. 1, 2018) https://abc.xyz/investor/pdf/2017_Q4_Earnings_Transcript.pdf |
| **Exhibit J** | *YouTube for Press*, YouTube, https://www.youtube.com/intl/en-GB/yt/about/press/ |
| **Exhibit K** | Sandvine, *2016 Global Internet Phenomena: Latin America and North America* (2016), https://www.sandvine.com/hubfs/downloads/archive/2016-global-internet-phenomena-report-latin-america-and-north-america.pdf |
| ███████ | ██████████████████████████████████████ ████████████████████████████ |
| **Exhibit M** | *Our Infrastructure*, Google Edge Network, https://peering.google.com/#/infrastructure |
| ███████ | ████████████████████████████████ |
| ███████ | ████████████████████████████████████ |
| **Exhibit P** | *Demystifying Google Global Cache*, Speedchecker Ltd., http://blog.speedchecker.xyz/2015/11/30/demystifying-google-global-cache/ |
| **Exhibit Q** | Speedchecker, http://www.speedchecker.xyz/ |

**FILED UNDER SEAL IN ACCORDANCE WITH PROTECTIVE ORDER**

**Exhibit R**    Mike Axelrod, *The Value of Content Distribution Networks and Google Global Cache*, https://www.isoc.org/isoc/conferences/inet/08/docs/inet2008_kiagri.pdf

**Exhibit S**    *FAQ*, Google Edge Network, https://peering.google.com/#/learn-more/faq

**Exhibit V**    *Google Partner Request*, https://isp.google.com/partner_request/?data.request_type=Caches%20(GGC)

**Exhibit AA**    *Webster's Ninth New Collegiate Dictionary* (1988)

**Exhibit CC**    Shonah Ghosh, *Google has never revealed YouTube's revenue—but one analyst who thinks that's about to change says it's a $15 billion business*, Business Insider (Feb. 16, 2018), http://www.businessinsider.com/google-youtube-revenues-mystery-analyst-change-2018-2

**Exhibit DD**    Associated Press, *Google parent Alphabet rakes in profit, and YouTube is one of its rising stars*, Los Angeles Times (Oct. 27, 2016), http://www.latimes.com/business/technology/la-fi-tn-google-youtube-20161027-story.html

**Exhibit EE**    Br. of Google Inc. in Support of Objections to Magistrate Judge's Order Granting the Government's Motions to Compel

**Exhibit GG**    Declaration of Max Ciccarelli (Oct. 11, 2017)

FILED UNDER SEAL IN ACCORDANCE WITH PROTECTIVE ORDER

Google's business is organizing and delivering information. Google's product is data, including data in the form of digital content. ███████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████ Under these facts, Google has a regular and established place of business in the District. Because Google has also committed acts of infringement in the District, venue is proper.

Google's motion should be denied.

## BACKGROUND

### A.  SEVEN is a software company based in Marshall, Texas.[1]

Founded in 2000, SEVEN develops software for mobile devices and wireless networks.[2] SEVEN's products have been installed on more than 100 million mobile devices, it has more than 440 patents and patents pending, and it has earned significant industry recognition, including a GSMA Technology Breakthrough Award in 2011 and a Mobile Merit Award in 2013.[3] In 2015, SEVEN moved its corporate headquarters from California to Marshall, Texas, where its staff of

---

[1]    In addition to the references cited below, the statements in this section are supported by **Exs. A** and **B**: Declaration of Ross Bott (Oct. 24, 2017) ¶¶ 3–5 and Declaration of Ross Bott (Mar. 27, 2018) ¶¶ 4–16.

[2]    *See* **Ex. C**: *Company Overview*, SEVEN Networks, https://www.seven.com/seven-networks-company.php.

[3]    *See* **Ex. D**: Ryan Wagoner, *New tech company moves to Marshall*, The Marshall News Messenger (Sept. 27, 2017), https://www.marshallnewsmessenger.com/news/2015/dec/02/new-tech-company-heading-to-marshall/; **Ex. E**: *The GSMA Announces Winners of the Annual Global Mobile Awards*, GSMA (Feb. 15, 2011), https://www.gsma.com/newsroom/press-release/the-gsma-announces-winners-of-the-annual-global-mobile-awards/; **Ex. F**: *2013 Mobile Merit Awards Winners Announced!*, Business Wire (Sept. 5, 2013), http://www.businesswire.com/news/home/20130905006358/en/2013-Mobile-Merit-Awards-Winners-Announced%21.

FILED UNDER SEAL IN ACCORDANCE WITH PROTECTIVE ORDER

engineers works on products that practice the patents-in-suit.[4]

**B.  Google is in the business of delivering information, including digital content such as movies, music, apps, and advertising.**

Google is a multinational technology company in the business of storing, organizing, and distributing data. More precisely, "Google is an information company."[5] Its vision is "to provide access to the world's information in one click," and its mission is "to organize the world's information and make it universally accessible and useful."[6] Making information available to people wherever they are and as quickly as possible is critical to Google's business. As Google's CEO, Sundar Pichai, explains, "We want to make sure that no matter who you are or where you are or how advanced the device you are using—Google works for you."[7] To meet this goal, Google developed a content-delivery network that it calls the Edge Network.

**1.  Google delivers information through its Edge Network.**

Google provides web-based services, such as YouTube and Google Play,[8] to users throughout the world. These services are in high demand. Google reports that Google Play reaches more than 1 billion Android users and that YouTube serves over 1.5 billion users per month.[9] Studies show that YouTube alone is responsible for approximately 20% of all internet

---

[4]    *See* **Ex. D**: Ryan Wagoner, *New tech company moves to Marshall.*

[5]    *See* **Ex. G**: Sundar Pichai, *Founder's Letter* (2016), https://www.blog.google/topics/inside-google/this-years-founders-letter/.

[6]    *See* **Ex. G**: *Founder's Letter*; **Ex. H**: Andrew Thompson, *Google's Vision Statement & Mission Statement*, PanMore Institute (Jan. 28, 2017), http://panmore.com/google-vision-statement-mission-statement.

[7]    **Ex. G**: *Founder's Letter.*

[8]    Google Play is Google's online store where customers can purchase music, videos, apps, and other digital content.

[9]    **Ex. I**: *Alphabet Q4 2017 Earnings Call* (Feb. 1, 2018) at 6, https://abc.xyz/investor/pdf/2017_Q4_Earnings_Transcript.pdf; **Ex. G**: Founders Letter; **Ex. J**: *YouTube for Press*, YouTube, https://www.youtube.com/intl/en-GB/yt/about/press/

**FILED UNDER SEAL IN ACCORDANCE WITH PROTECTIVE ORDER**

traffic.[10] ███████████████████████████████████

█████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████

     Google addresses these challenges with its Edge Network, which has three elements: Core Data Centers, Edge Points of Presence, and Edge Nodes.[13] The Core Data Centers (there are eight in the United States) are used for computation and backend storage.[14] Edge Points of Presence are the middle tier of the Edge Network and connect the Data Centers to the internet.[15] Edge Nodes are the layer of the network closest to users.[16] ███████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

     Google Global Cache is recognized as "one of Google's most important pieces of

---

("YouTube has over a billion users—almost one-third of all people on the Internet—and each day those users watch a billion hours of video, generating billions of views.").

   [10]  *See* **Ex. K**: Sandvine, *2016 Global Internet Phenomena: Latin America and North America* 4 (2016), https://www.sandvine.com/hubfs/downloads/archive/2016-global-internet-phenomena-report-latin-america-and-north-america.pdf.

███████████████████████████████████████████████████

██████████████████████████████████████████████

   [13]  **Ex. M**: *Our Infrastructure*, Google Edge Network, https://peering.google.com/#/infrastructure.

   [14]  **Ex. M**: *Our Infrastructure*.

   [15]  **Ex. M**: *Our Infrastructure*.

   [16]  **Ex. M**: *Our Infrastructure*.

   [17]  *See, e.g.*, **Ex. M**: *Our Infrastructure*; ████████████████████

███████████████████████████████████████████████

FILED UNDER SEAL IN ACCORDANCE WITH PROTECTIVE ORDER

infrastructure,"[18] and Google uses it to conduct the business of providing access to the world's information. GGC servers in the Edge Nodes function as local data warehouses, much like a shoe manufacturer might have warehouses around the country. Instead of requiring people to obtain information from distant Core Data Centers, which would introduce delay, Google stores information in the local GGC servers to provide quick access to the data.

2. "*Caching and localization are vital* for [Google's] optimization of network resources."[19]

Because "hosting all content everywhere is inefficient, it makes sense to cache popular content and serve it locally."[20] Doing so brings delivery costs down for Google, network operators, and internet service providers.[21] Storing content locally also allows it to be delivered more quickly, which improves user experience: "Serving content from the edge of the network closer to the user improves performance [and] user happiness."[22] To achieve these benefits,

---

[18]   *See* **Ex. P**: *Demystifying Google Global Cache,* Speedchecker Ltd., http://blog.speedchecker.xyz/2015/11/30/demystifying-google-global-cache/; *see also* **Ex. Q**: *Speedchecker*, http://www.speedchecker.xyz/ (explaining that Speedchecker Ltd. is an internet-performance monitoring company that helps users get a better understanding of their internet connections and gain an understanding of their own and competitor's networks).

[19]   **Ex. R**: Mike Axelrod, *The Value of Content Distribution Networks and Google Global Cache* ("Axelrod") at 10 (page numbers added), https://www.isoc.org/isoc/conferences/inet/08/docs/inet2008_kiagri.pdf.

[20]   **Ex. R**: Axelrod at 4; *see also* ███████████████████████████████████████ ████████████████████████████████████████████████████████████

[21]   **Ex. S**: *FAQ*, Google Edge Network, https://peering.google.com/#/learn-more/faq (answering the question "Does hosting an edge node allow or require Google traffic to get preferential treatment on networks?").

[22]   **Ex. R**: Axelrod at 3; *see also id.* at 5 ("When content is served from the node [the] end user experiences improved performance."); **Ex. S**: *FAQ*, (stating that content delivery by the Edge Nodes provides "the optimal user experience and lowest cost delivery for both the operator and Google").

FILED UNDER SEAL IN ACCORDANCE WITH PROTECTIVE ORDER

Google has placed Edge Nodes throughout the United States, including in this District.[23] █████

████████████████████████████████████████████ ■

**3. Just like brick-and-mortar stores,** ████████████████████████
██████████████████████████

██████████████████████████████████████████████

████████████████████████ ■ █████████████████████████████

████████████████████████████████████████████████████

███████████████████████████ ■ ███████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████████

██████[27]

████████████████████████████████████████████

████████████████████ ■ ██████████████████████████

█████████████████████████████████████████████████

█████████████████ ■ █████████████████████████████

█████████████████████████████████████████████████

---

[23] *See* **Ex. M**: *Our Infrastructure*; ████████████████████

■ ████████████████████████████████████

■ ████████████████████████████████████████████

████████████████████████████

■ ██████████████████████████████████████████████████

████████████████████

■ ████████████████████████████████████

■ ██████████████████████████████

[29] **Ex. S**: *FAQ*; ████████████████████████████

FILED UNDER SEAL IN ACCORDANCE WITH PROTECTIVE ORDER



**4.**

---

[30] **Ex. S**: *FAQ.*

[33] **Ex. R**: Axelrod at 9; *see also*

[34] **Ex. R**: Axelrod; *see also id.* (Google Global Cache "[s]aves BW and money for ISPs that serve YouTube");

**FILED UNDER SEAL IN ACCORDANCE WITH PROTECTIVE ORDER**



**5. Google GGC servers located in this District cache Google's products and deliver them to residents of this District.**

Google does not dispute the following.

---

[35] *See* **Ex. V**: *Google Partner Request*, https://isp.google.com/partner_request/?data.request_type=Caches%20(GGC); *see also, e.g.,*

... **Ex. M**: *Our Infrastructure.*

FILED UNDER SEAL IN ACCORDANCE WITH PROTECTIVE ORDER





Filed Under Seal in Accordance With Protective Order

## Legal Standard

### A. Burden

"Although the burden to object to improper venue is definitively on the defendant, circuit courts, district courts, and scholars have reached different answers in allocating the ultimate burden of persuasion once a challenge to venue has been raised." *Intellectual Ventures II LLC v. Fed Ex Corp.*, No. 2:16-cv-980-JRG, 2017 WL 5630023, at *4 (E.D. Tex. Nov. 22, 2017) (citations omitted). This Court recently held that "opinions placing the burden on the defendant represent the better view." *Id.* at *5. The defendant therefore "bear[s] the burden to explain why its venue privilege is jeopardized in a particular case." *Id.*[46]; *see also Braspetro Oil Servs. Co. v. Modec (USA), Inc.*, 240 F. App'x 612, 615 (5th Cir. 2007) ("On a Rule 12(b)(3) motion to dismiss for improper venue, *the court must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff.*") (emphasis added); *EnviroGLAS Prods., Inc. v. EnviroGLAS Prods., LLC*, 705 F. Supp. 2d 560, 567–68 (N.D. Tex. 2010) (quoting same).

### B. Regular and Established Place of Business

"Section 1400(b) requires that 'a defendant has' a 'place of business' that is 'regular' and 'established.'" *In re Cray Inc.*, 871 F.3d 1355, 1362 (Fed. Cir. 2017). Accordingly, venue is proper if three elements are met: (i) there is a physical place in the district; (ii) that is a regular and established place of business; and (iii) is the place of the defendant. *Id.* at 1360. "While the 'place' need not be a 'fixed physical presence in the sense of a formal office or store,' there must still be a physical, geographical location in the district from which the business of the defendant is carried out. *Id.* at 1362 (quoting *In re Cordis Corp.*, 769 F.2d 733, 737 (Fed. Cir. 1985)). A business

---

[46] Ignoring and failing to cite *Intellectual Ventures*, Google argues that plaintiffs bear the ultimate burden of establishing venue is proper. *See* Mtn. at 5.

FILED UNDER SEAL IN ACCORDANCE WITH PROTECTIVE ORDER

is "regular" if it "operates in a "steady, uniform, orderly, and methodical manner." *Id.* (quotation marks and brackets omitted). To be "established," the place of business must be "settled certainly, or fixed permanently." *Id.* at 1363 (quotation marks and brackets omitted). Finally, "it must be a place of the defendant, not solely a place of the defendant's employee." *Id.* "Relevant considerations include whether the defendant owns or leases the place, or exercises other attributes of possession or control over the place." *Id.*

## C. Acts of Infringement

"[C]ourts have consistently held that an *allegation* of infringement is itself sufficient to establish venue and the plaintiff is not required to demonstrate actual infringement by the defendant." *Raytheon Co. v. Cray, Inc.*, 258 F. Supp. 3d 781, 788 (E.D. Tex. 2017), *rev'd on other grounds by Cray*, 871 F.3d 1355 (emphasis added) (quotation marks and brackets omitted). A separate issue is whether the alleged acts of infringement must be related to the defendant's regular and established place of business. Although the Federal Circuit has not addressed this issue, this Court has stated that it "considers it proper to follow the courts that have held that the statute creates no relationship between the act of infringement and the regular and established place of business." *Id.* at 791 (citing *Gaddis v. Calgon Corp.*, 449 F.2d 1318, 1320 (5th Cir. 1971)).

## ARGUMENTS

Venue is proper under § 1400(b) because Google has a regular and established place of business in this District and has committed acts of infringement in this District.

## A. Regular and Established Place of Business

Google does not deny the following allegations in SEVEN's First Amended Complaint:

- Google owns and controls servers located in this District that provide Google

FILED UNDER SEAL IN ACCORDANCE WITH PROTECTIVE ORDER

services to users in this District[47]; and

- Google uses hardware and software it owns and controls in this District for content caching, video streaming, and reverse proxy.[48]

These allegations alone, which "the court must accept as true," support SEVEN's contention that Google has a regular and established place of business in this District. *See Braspetro*, 240 F. App'x at 615. But there's more.



Google argues that these undisputed facts and allegations do not create venue because Google does not have real estate, an office, or employees in this District. But that is not the test for venue. As the Federal Circuit held in *Cray*, the test is whether: (i) there is a *physical place* in the district; (ii) that is a *regular and established* place of business; and (iii) is the *place of the defendant*. *Cray*, 871 F.3d at 1360. Under that test, venue is proper.

---

[47] *See* Complaint (ECF No. 34) ¶ 24;

[48] *See* Complaint ¶ 27;



[50] *See* **Ex. R**: Axelrod at 10.

FILED UNDER SEAL IN ACCORDANCE WITH PROTECTIVE ORDER

1. **Google's GGC servers are themselves places of business, and they are located in places of business.**

Google admits ███████████████████████████████████████████████████

███████████████[5] Nonetheless, it contends the first element of the *Cray* test is not met because (i) servers are not "places" and (ii) serving content stored in the servers to people in the District is not a "business" of Google. Mtn. at 9–11. Google is wrong on both points.

   a. **Google's GGC servers are *places*, and are in, *places*.**

The issue here is the meaning of "place." Google contends venue is improper because its GGC servers are "objects," and "places" must be real estate. Mtn. at 9 ("A server is a piece of hardware or equipment, not a place."); *id.* ("GGC servers are not 'physical places of business.' A physical place is : 'a building or a part of a building set apart for any purpose' or 'quarters of any kind.'" (quoting *Cray*, 871 F.3d at 1362)). *Cray*, however, does not require that a place of business must be real estate. On the contrary, the Federal Circuit explained that a place of business "*need not be* a 'fixed physical presence *in the sense of a formal office* or store.'" *See Cray*, 871 F.3d at 1362 (emphases added) (quoting *In re Cordis*, 769 F.2d at 737). All that's required is that there must be "a physical, geographical location in the district from which the business of the defendant is carried out." *Id.*

Google's Edge servers meet this requirement. *First*, they are themselves objects that enclose space—i.e., they are places.[56] And the physical things that occupy that space are the

---

███ ████████████████████████████████████████████████████
████████████████████████████████████████████████

███ ███████████████████████████████ *See* **Ex. AA**: *Webster's Ninth New Collegiate Dictionary* 897 (1988) (defining "place" as "physical environment : SPACE").

FILED UNDER SEAL IN ACCORDANCE WITH PROTECTIVE ORDER

discs, processors, and other hardware that store and deliver data to people in the District.[57]

*Second*, Google admits that the facilities where the servers are housed are places: "[T]he locations where they are stored are the places." Mtn. at 9. Without question, Google stores data in and delivers data from "places" in this District.

> **b. The places are places *of business*.**
>
> > **i. Google delivers information to people in this District from GGC servers in the District, and it receives revenue from doing so.**

Google contends the servers are not places *of business* because they are pieces of equipment. Mtn. at 10–11. Google ignores that its mission is "to organize the world's information and make it universally accessible" and that GGC servers play an important role in helping Google achieve that mission.



FILED UNDER SEAL IN ACCORDANCE WITH PROTECTIVE ORDER



The GGC servers and the locations where they are housed are places of *business*.

### ii. Under the *Cray* standard, storage and delivery facilities are places of business.

Google does not deny that warehouses can be places of business for establishing venue. On the contrary, it cites *Cray* to support its contention that distribution centers can be places of

---



*see also* **Ex. R**: Axelrod at 5 ("When content is served from the node [the] end user experiences improved performance."); *id.* at 3 ("Serving content from the edge of the network closer to the user improves performance [and] user happiness.").

*See* **Ex. CC**: Shonah Ghosh, *Google has never revealed YouTube's revenue—but one analyst who thinks that's about to change says it's a $15 billion business*, Business Insider (Feb. 16, 2018), http://www.businessinsider.com/google-youtube-revenues-mystery-analyst-change-2018-2; **Ex. DD**: Associated Press, *Google parent Alphabet rakes in profit, and YouTube is one of its rising stars*, Los Angeles Times (Oct. 27, 2016), http://www.latimes.com/business/technology/la-fi-tn-google-youtube-20161027-story.html.

FILED UNDER SEAL IN ACCORDANCE WITH PROTECTIVE ORDER

business. *See* Mtn. at 6 ("The Federal Circuit provided examples of physical locations such as . . . a '*distribution center, storing inventory* that the employees then directly took to [] clients . . . .") (quoting *Cray*, 871 F.3d at 1362) (emphasis added). The only relevant difference between a warehouse that stores a company's tangible products and Google's GGC servers is the nature of the products being stored—physical merchandise versus digital content. Regardless of what the products may be, if the physical structure that stores them is "a physical, geographical location in the district from which the business of the defendant is carried out," that structure is a place of business under § 1400(b). *See Cray*, 871 F.3d at 1362.

Courts have long recognized that warehousing products in a district is enough to establish venue. In *Federal Electric Products Co. v. Frank Adam Electric Co.*, 100 F. Supp. 8 (S.D.N.Y. 1951), for example, the court held that a Missouri corporation had a regular and established place of business in New York City because it owned a building there that it used to stockpile products for more expeditious shipment along the Atlantic seaboard. *Id.* at *10–11. Although sales were technically invoiced in St. Louis, orders were filled directly from the New York warehouse. *Id.*[66]

The only difference between the brick-and-mortar warehouses at issue in the older cases and Google's GGC servers is the nature of the products being stored in them—the brick-and-mortar warehouses held tangible commodities, whereas Google's servers store digital content. But as Google itself has argued, that distinction is meaningless because data are "things" and the servers on which data reside are "places."

---

[66]    *See also, e.g.*, *OMI Int'l Corp. v. MacDermid, Inc.*, 648 F. Supp. 1012, 1016 (M.D.N.C. 1986); *Noble Linear Irr., Inc. v. Valmont Indus., Inc.*, No. 81-1210, 1982 WL 51054, at *2 (D. Idaho May 26, 1982); *Faberge, Inc. v. Schick Elec., Inc.*, 312 F. Supp. 559, 562 (D. Del. 1970); *Am. Cyanamid Co. v. Nopco Chem. Co.*, 268 F. Supp. 506, 510 (W.D. Va. 1967), *aff'd*, 388 F.2d 818 (4th Cir. 1968).

FILED UNDER SEAL IN ACCORDANCE WITH PROTECTIVE ORDER

*In re Search Warrant No. 16-960-M-1 to Google* was a case in which the United States

Department of Justice issued search warrants to Google in accordance with § 2703 of the Stored

Communications Act (SCA). The warrants required Google to disclose information to the FBI

that was related to certain Google accounts. Google objected, arguing that the warrants required

it to produce data stored on servers outside the United States, which, according to Google, would

be an unlawful extraterritorial application of the SCA. Specifically, Google equated its servers to

"places" and its data to "things":

> The government seeks . . . the equivalent of requiring a bank to search, seize, and
> retrieve to the United States documents its customer has stored in a safe deposit
> box in a foreign branch or requiring a hotel chain to search, seize, and retrieve to
> the United States luggage or correspondence a customer has stored in a room in a
> foreign hotel. . . . [A] warrant cannot require a search of a foreign **place** and the
> seizure of **things** stored therein.[67]

Google equates the intangible data stored on its servers with documents stored in safe

deposit boxes and luggage held in hotel valet closets. Indeed, it refers to the data as "things" and

says those things are stored in "places." As Google argued in *In re Search Warrant*, the content

stored in Google's GGC servers in this District are "things" stored in "places." Google cannot

claim that data and servers are things and places in some instances, but not for venue purposes.

The nature of those things may be different than physical commodities stored in brick-and-

mortar warehouses, but they are no less products being held for distribution as part of Google's

business.

---

[67]    **Ex. EE**: Br. of Google Inc. in Support of Objections to Magistrate Judge's Order Granting
the Government's Motions to Compel at 9–10, *In re Search Warrant No. 16-960-M-1 to Google*,
No. 2:16-mj-00960-JS (E.D. Penn. Mar. 10. 2017), ECF No. 53 (emphases added; internal
citations omitted).

FILED UNDER SEAL IN ACCORDANCE WITH PROTECTIVE ORDER

### iii. The cases cited by Google are easily distinguished.

The cases Google cites to support its position on this issue are inapposite. In *Magee v. Coca-Cola Refreshments USA, Inc.*, the Fifth Circuit was asked to determine whether a Coke machine is a "place of public accommodation" as that term is used in Title III of the Americans with Disabilities Act (ADA). *See* 833 F.3d 530, 532–35 (5th Cir. 2016) (construing 42 U.S.C. § 12182). The court's ruling that a vending machine is not a *place of public accommodation* under the ADA has no bearing on what constitutes a *place of business* under the Patent Act.

*Home Bingo Network, Inc. v. Chayevsky*, 428 F. Supp. 2d 1232 (S.D. Ala. 2006), is equally distinguishable. Besides construing § 1400(b) with regard to individuals rather than corporations, the case was decided without the benefit of the Federal Circuit's guidance in *Cray. See id.* at 1249. Further, the facts at issue in *Home Bingo* were very different from the facts here. The alleged places of business in *Home Bingo*, for example, were slot machines, not GGC servers. And unlike this case, there was no evidence in *Home Bingo* that the defendant leased the space where the slot machines were located or that it exercised control over them after they were put in place.

Although *Personal Audio, LLC v. Google, Inc.*, 280 F. Supp. 3d 922 (E.D. Tex. 2017) is closer to the facts at issue here, this Court now has evidence that was not available to the *Personal Audio* court. That evidence includes, for example, deposition testimony from after the *Personal Audio* decision and ███████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ███████████████████████████████████████████ ▪ The first point contradicts

▪ ████████████████████████████ Likewise, the *Personal Audio* court did not see Google's arguments in the search-warrant case, in which Google referred to the data stored in its

FILED UNDER SEAL IN ACCORDANCE WITH PROTECTIVE ORDER

the *Personal Audio* court's assumption that the GGC servers are places in the "cloud," as opposed to actual, physical spaces.[69] ████████████████████████

██████████████████████████████████████████████

████████

Further, the court in *Personal Audio* held the *plaintiff* failed to meet its burden of showing venue was *proper*. *Id.* at 924 (holding plaintiffs bears the burden on venue); *id.* at 936 ("With the burden of proof on Personal Audio, the evidence is insufficient to conclude that the Google employees working in this District demonstrate a 'regular and established place of business.'"). But as this Court held in *Intellectual Ventures*, the defendant "bear[s] the burden to explain why its venue privilege is jeopardized in a particular case." *Intellectual Ventures*, 2017 WL 5630023, at *4. Google has not met its burden of showing venue is improper.

### 2. Google's business in this District is regular and established.

With regard to the second venue requirement—"a *regular and established* place of business"—the Federal Circuit held that "[a] business may be regular . . . if it operates in a steady, uniform, orderly, and, methodical manner." *Cray*, 871 F.3d at 1362 (alteration and quotation marks omitted). And in considering whether a place of business is established, stability, as opposed to transience or sporadic activity, is key. *See id.* ("[T]he doing of a single act pertaining to a particular business will not be considered engaging in or carrying on the business; yet a series of such acts would be so considered." (alteration and quotation marks omitted)).

---

servers as "things" located in "places."

[69]    *See Personal Audio*, 280 F. Supp. 3d at 934 ("Perhaps . . . in the context of virtual reality or virtual space, servers might be loosely referred to as a 'place,' or perhaps as the 'location' of the 'cloud.'"). Tellingly, Google does not make this argument, no doubt because it understands servers are actual physical things that occupy real, not virtual, space.

**FILED UNDER SEAL IN ACCORDANCE WITH PROTECTIVE ORDER**

Google argues that its business is not regular and established ████████



Further, Axelrod states that the GGC servers provide a "scalable *long term* solution for edge content distribution."[72]

There is no question that Google's GGC servers steadily, uniformly, and methodically provide content to residents of this District, and that they have been doing so for years. Google's business in the District is regular and established.

---



[72]  **Ex. R**: Axelrod at 10 (emphasis added).

FILED UNDER SEAL IN ACCORDANCE WITH PROTECTIVE ORDER

**3. Google's GGC servers in this District—and the spaces where they are housed—are places "of Google."**

"[T]he third requirement when determining venue is that 'the regular and established place of business' must be 'the place of the defendant.'" *Cray*, 871 F.3d at 1363. According to Google, its servers are not located at "a place of Google" because third-party ISPs own the rooms where they are housed. Mtn. at 11–12. But Google admits that it owns the actual servers, that the servers are physical objects that occupy space, and that the space within them holds ███

███████████████████████████████████████████████████████████████

██████████████ ■ The servers themselves are therefore places "of Google."

In addition, Google wrongly assumes that Google must *own* the facilities that house the servers. But "ownership" of the facilities is not the only test for determining whether the business is located in a place "of Google." As *Cray* held, "[r]elevant considerations include whether [Google] [i] *owns* or [ii] *leases* the place, or [iii] *exercises attributes of possession or control over the place.*" *See Cray*, 871 F.3d at 1363 (emphasis added). Google leases the spaces where the servers are housed, *and* it exercises attributes of possession and control over those spaces.

**a. Google leases the rack spaces that house its GGC servers.**

Under Google's Global Cache Agreements, ████████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████■████████ "[A] lease is '[a] contract by which a rightful possessor of real property conveys the right to use and occupy that property in exchange



FILED UNDER SEAL IN ACCORDANCE WITH PROTECTIVE ORDER

for consideration.'" *In re Stoltz*, 315 F.3d 80, 89–90 (2d Cir. 2002) (quoting *Black's Law Dictionary* 898 (7th ed. 1999)[77]; *see also Beitner v. Becker*, 824 N.Y.S.2d 155, 156 (2006) ("All contracts must be supported by consideration, consisting of *a benefit to the promisor* or a detriment to the promisee.") (emphasis added).



Thus, much like a national company that leases space in local shopping malls to bring its products closer to consumers, ████████████████████████████████████████ ████████████████████████████████████

---

[77]    *See also* N.Y. U.C.C. Law § 2-A-103(1)(j) ("'Lease' means a transfer of the right to possession and use of goods for a term in return for consideration . . . .").

■ ████████████████████████████████

■ ████████████████████

■ ██████████████████████████ **Ex. R**: Axelrod at 10 (GGC "saves BW and money for ISPs that serve YouTube"); *id.* at 5 ("When content is served from the node end user experiences improved performance and the service provider does not incur the expense of carrying the request and service traffic across their peering and/or transit links.").

■ █████████████████████████ *see also* **Ex. R**: Axelrod at 3 ("Serving content from the edge of the network closer to the user improves performance, user happiness and reduces service provider's demands for the long haul BW."); ██████████████████ ████████████████████████

FILED UNDER SEAL IN ACCORDANCE WITH PROTECTIVE ORDER

b. **Google controls its GGC servers and the spaces where they are housed.**



Filed Under Seal in Accordance With Protective Order



Google unquestionably exercises possession and control over the GGC servers and the

spaces in which they are located.

**c. Google has ratified Tyler and Sherman, Texas, as places where it conducts business.**

Finally, Google has "establish[ed] or ratif[ied] the place[s] of business" in Tyler and

Sherman by listing them on its website. *See Cray*, 871 F.3d at 1363. Google has a series of web



### Filed Under Seal in Accordance With Protective Order

pages devoted to explaining its network infrastructure. The page devoted to GGC servers has a

"map of metros where at least one Edge node (GGC) is present." As shown below, the map

displays Tyler and Sherman as two of those metros (arrows pointing to the Edge servers

added).[94]



In sum, Google's GGC servers in this District satisfy the Federal Circuit's regular-and-

established-place-of-business standard. They are located in physical, geographical locations in the

District; Google regularly and continuously uses them to conduct the business of storing and

delivering its products to residents of the District; Google receives revenue from doing so; the

servers are "settled certainly" in their locations; Google leases the rack space in which they are

housed; Google exercises attributes of possession and control over them; and Google has ratified

them as places of its business. Google's GGC servers in this District are therefore regular and

established places of business that establish venue under § 1400(b).

### B. Acts of Infringement

#### 1. SEVEN's First Amended Complaint alleges that Google infringes each of the patents-in-suit in this District.

SEVEN's First Amended Complaint alleges with specificity that Google has infringed at

---

[94]    **Ex. M**: *Our Infrastructure.*

FILED UNDER SEAL IN ACCORDANCE WITH PROTECTIVE ORDER

least one claim of each patent-in-suit in this District. The allegations include, among other things, the following:

- **¶ 47**: "Google infringes at least claim 10 of the '158 Patent under at least 35 U.S.C. § 271(a). Google, for example, practices every step of at least claim 10 in the United States, including steps that it practices in this District.";

- **¶ 51**: "Google infringes at least claim 26 of the '952 Patent under 35 U.S.C. § 271(a), (b), and (c). Google makes, uses, sells, offers to sell, or imports into the United States products, such as the Pixel, that meet every limitation of at least claim 26. At least some of that infringing activity takes place in this District.";

- **¶ 58**: "Google infringes at least claim 1 of the '019 Patent under at least 35 U.S.C. § 271(a), (b) and (c). Google makes, uses, sells, offers to sell, or imports into the United States products, such as the Pixel, that meet every limitation of at least claim 1. At least some of that infringing activity takes place in this District.";

- **¶ 65**: "Google infringes at least claim 7 of the '600 Patent under at least 35 U.S.C. § 271(a), (b) and (c). Google makes, uses, sells, offers to sell, or imports into the United States products, such as the Pixel, that meet every limitation of at least claim 7. At least some of that infringing activity takes place in this District.";

- **¶ 72**: "Google infringes at least claim 1 of the '254 Patent under at least 35 U.S.C. § 271(a), (b), and (c). Google makes, uses, sells, offers to sell, or imports into the United States products, such as the Pixel, that meet every limitation of at least claim 1. At least some of that infringing activity takes place in this District.";

- **¶ 79**: "Google infringes at least claims 1 and 16 of the '433 Patent under at least 35 U.S.C. § 271(a) and (b). Google makes, uses, sells, offers to sell, or imports into the United States the Google Play store which meets every limitation of at least claim 1. Further, Google, for example, practices every step of claim 16 in the United States, including steps that it practices in this District.";

- **¶ 86**: "Google infringes at least claims 1 and 10 of the '812 Patent under at least 35 U.S.C. § 271(a) and (b). Google, for example, practices every step of at least claim 1 in the United States, including steps that it practices in this District. Further, Google makes, uses, sells, offers to sell, or imports into the United States servers that meet every limitation of at least claim 10.";

- **¶ 93**: "Google infringes at least claim 10 of the '127 Patent under at least 35 U.S.C. § 271(a), (b) and (c). Google makes, uses, sells, offers to sell, or imports into the United States products, such as its Pixel, that meet every limitation of at least claim 10. At least some of that infringing activity takes place in this District.";

- **¶ 100**: "Google infringes at least claim 1 of the '129 Patent at least under 35 U.S.C. § 271(a), (b), and (c). Google makes, uses, sells, offers to sell, or imports into the United States products, such as the Pixel, that meet every limitation of at

FILED UNDER SEAL IN ACCORDANCE WITH PROTECTIVE ORDER

least claim 1. At least some of that infringing activity takes place in this District.";
and

- **¶ 107**: "Google infringes at least claim 9 of the '816 Patent under at least 35
  U.S.C. § 271(a), (b), and (c). Google makes, uses, sells, offers to sell, or imports
  into the United States products, such as the Pixel, that meet every limitation of at
  least claim 9. At least some of that infringing activity takes place in this District."

These allegations are sufficient to support the "acts-of-infringement" prong of § 1400(b).

*See, e.g.*, *Raytheon*, 258 F. Supp. 3d at 788 ("[A]n allegation of infringement is itself sufficient to

establish venue and the plaintiff is not required to demonstrate actual infringement by the

defendant.").

### 2. Google has not shown that SEVEN's allegations are insufficient to establish venue.

Google claims SEVEN's infringement allegations are insufficient because they do not

allege: (i) a nexus between the acts of infringement and Google's regular and established place of

business in the District; (ii) for the method claims, that *all* of the method steps occur in the

District; and (iii) for certain indirect-infringement claims, that Google had notice of the patents

before the suit was filed. Google is wrong on all counts.

### a. Google's acts of infringement in this District do not need be tied to its regular and established place of business in the District.

As explained above, this Court has stated that it agrees with the majority view that there is

no nexus requirement. *Raytheon*, 258 F. Supp. 3d at 791. The plain language of the statute

supports this position. Section 1400(b) provides that venue is proper "where a defendant has

committed acts of infringement *and* has a regular and established place of business." 28 U.S.C.

§ 1400(b) (emphasis added). It does not state that the defendant must have committed acts of

infringement "arising from" a regular and established place of business in the district. As long as

the two requirements are satisfied in a particular district—i.e., as long as the defendant has

FILED UNDER SEAL IN ACCORDANCE WITH PROTECTIVE ORDER

committed acts of infringement in the district and has a regular and established place of business in that same district—venue is proper. Google's "re-writing of the statute, plain on its face, is an example of lawmaking as distinguished from statutory interpretation that is beyond the power of the courts." *See Gaddis*, 449 F.2d at 1319 (reversing dismissal for improper venue where the defendant had a regular and established place of business in the district unrelated to the alleged infringement); *see also, e.g.*, *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 135 S. Ct. 2028, 2033 (2015) ("The problem with this approach is the one that inheres in most incorrect interpretations of statutes: It asks us to add words to the law to produce what is thought to be a desirable result. That is Congress's province.").

### b. Google committed acts of infringement in this District by performing at least one step of each of the asserted method claims in the District.

Google contends that SEVEN did not "sufficiently allege that Google has committed acts of infringement in this District with respect to [the '158, '433, and '812 Patents]." Mtn. at 18–19. The claims at issue are method claims. SEVEN explicitly alleged that at least one step of each of the claims is performed in this District. Citing *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1317–18 (Fed. Cir. 2005), Google argues that a method claim cannot be infringed in this District unless *all* of its steps are performed here. Google reads too much into *NTP*.

In *NTP*, the Federal Circuit held there was *no act of infringement* under 35 U.S.C. § 271(a) because at least one of the method steps at issue was performed outside the United States. *Id.* at 1318; *see* 35 U.S.C. § 271(a) ("[W]hoever without authority . . . uses . . . any patented invention, *within the United States* . . . infringes the patent." (emphasis added). The issue, in other words, concerned the court's subject-matter jurisdiction over the claims. In stark contrast, the issue here concerns venue. There is no question that all the steps are performed within the United States

– 27 –

FILED UNDER SEAL IN ACCORDANCE WITH PROTECTIVE ORDER

and that SEVEN has therefore pled acts of infringement within the United States. Google does not deny this. Instead, Google tries to stretch *NTP* to stand for the proposition that infringement of a method occurs only in a district in which all the steps are carried out. That is not a fair reading of *NTP*.

The Federal Circuit did not hold, and has never held, that when a defendant carries out the steps of a method claim in multiple districts, there can be no act of infringement in any of them. Such a ruling would be nonsensical, as it would mean that an act of infringement could occur within the United States without taking place in any district in the United States. Based on the allegations in the First Amended Complaint, at least some of the method steps are performed in this District. Even if other steps might be performed in other districts, the result in each case is an act of infringement. That the infringement occurred across multiple districts does not mean, as Google claims, that it occurred in none of them. On the contrary, it must mean that acts of infringement occurred in all of them. It necessarily follows that if Google has performed at least one infringing step of a method claim in this District, it has committed an act of infringement here.[95]

---

[95]    If the Court determines that SEVEN did not plead acts of infringement in the District for the '158, '433, and '812 Patents, it may nonetheless exercise "pendent venue" over SEVEN's claims that Google infringes those patents. *See, e.g.*, *McNeary-Calloway v. JP Morgan Chase Bank, N.A.*, 863 F. Supp. 2d 928, 964–65 (N.D. Cal. 2012) ("[I]f venue is proper on one claim, the court may find pendent venue for claims that are closely related. The decision to apply pendent venue to closely related claims is a discretionary decision. A court may consider the principles of judicial economy, convenience, avoidance of piecemeal litigation, and fairness to the litigants in making its decision."(internal citations omitted)); *Hsin Ten Enter. USA, Inc. v. Clark Enters.*, 138 F. Supp. 2d 449, 464 (S.D.N.Y. 2000) ("[P]endent venue is permitted over patent claims where the claim that is properly venued in the forum is a substantial or primary claim, and the exercise of pendent venue would result in judicial efficiency, convenience to the parties, and would avoid piecemeal litigation.").

**FILED UNDER SEAL IN ACCORDANCE WITH PROTECTIVE ORDER**

**c. SEVEN's indirect-infringement claims are not limited to Google's post-suit infringement.**

Google further contends SEVEN has not sufficiently alleged infringement in this District with respect to system claims in the '433 and '812 Patents. For those claims, SEVEN alleges that Google induces infringement by encouraging users of the Google Play Store, including users in this District, to put the systems into use. According to Google, those allegations do not support venue because SEVEN allegedly claimed only post-filing indirect infringement. Mtn. at 19. Google is mistaken.

In each case, SEVEN alleged that "Google has had notice of the ['433/'812] Patent and its infringement since *at least* as early as the filing of this lawsuit." First Amended Complaint ¶¶ 85, 92 (emphasis added). "At least as early as" does not mean "on," as Google contends. It means "on or before." *See, e.g.*, *U.S. v. Alvarado-Guzman*, 927 F.2d 610 (Fed. Cir. 1991) (holding that an indictment charging a conspiracy "beginning 'at least as early as August 1986'" included "a conspiracy beginning before August 1986"). Further, Google never states that it learned about the patents only when the suit was filed—and in fact, Google made them available to the public well before that.[96] Attorney argument alone, which is all Google offers on this point, cannot defeat SEVEN's assertion of venue. *See, e.g.*, *Braspetro*, 240 F. App'x at 615 ("[T]he court must accept as true all allegations in the complaint."); *Clasen*, 2015 WL 9489507, at *3 ("[A] defendant must present facts that will defeat a plaintiff's assertion of venue.").

Accordingly, for each of the asserted patents, SEVEN's First Amended Complaint alleges

---

[96]    *See* **Ex. GG**: Declaration of Max Ciccarelli (Oct. 11, 2017) ¶¶ 2–4 (describing how quickly after issue Google makes patents, including the patents-in-suit available on the Google Patents website); ████████████████████████████████████████████

████████████████████████████████████████████████

**FILED UNDER SEAL IN ACCORDANCE WITH PROTECTIVE ORDER**

that Google has committed an act of infringement in this District.

## C. If the case must be transferred, it should be to the Northern District of Texas.

Although Google contends the case should be transferred to the Northern District of California if the Court determines venue is improper in this District, venue is also proper in the Northern District of Texas, which is: (i) much closer to SEVEN's business, employees, and records in Marshall; (ii) where Google conducts business in an office in Addison, Texas[97]; and (iii) where SEVEN has asserted claims against ZTE Corp. in a case currently pending before Judge Lynn, that involves seven of the patents-in-suit here.[98] This case, therefore, could have been brought in the Northern District of Texas, and the Court can transfer it there, where it could be consolidated with SEVEN's related case against ZTE.[99] *See* 28 U.S.C. § 1406(a).

### CONCLUSION

SEVEN's First Amended Complaint alleges, and the undisputed facts show, that Google has committed acts of infringement in this District and that Google has a regular and established business in this District. Google has not met its burden to show otherwise. Venue is proper.

Accordingly SEVEN respectfully requests that the Court deny Google's motion to dismiss.

---

[97]    *See* Mtn. at 7 n.9 ("Google's Dallas office is located in Addison, Texas.").

[98]    *See* SEVEN Networks, LLC v. ZTE (USA), Inc. and ZTE Corp., No. 3:17-cv-1495-M (N.D. Tex.).

[99]    In fact, this Court is already coordinating *Markman* proceedings with Judge Lynn. *See* Order on Concurrent *Markman Hearing* (Mar. 22, 2018) (ECF 138).

**FILED UNDER SEAL IN ACCORDANCE WITH PROTECTIVE ORDER**

Dated: April 27, 2018

Respectfully submitted,

*/s/ Max Ciccarelli*

**Bruce S. Sostek**
  State Bar No. 18855700
  Bruce.Sostek@tklaw.com
**Max Ciccarelli**
  State Bar No. 00787242
  Max.Ciccarelli@tklaw.com
**Herbert J. Hammond**
  State Bar No. 08858500
  Herbert.Hammond@tklaw.com
**Richard L. Wynne Jr.**
  State Bar No. 24003214
  Richard.Wynne@tklaw.com
**J. Michael Heinlen**
  State Bar No. 24032287
  Michael.Heinlen@tklaw.com
**Adrienne E. Dominguez**
  State Bar No. 00793630
  Adrienne.Dominguez@tklaw.com
**Vishal Patel**
  State Bar No. 24065885
  Vishal.Patel@tklaw.com
**Nadia E. Haghighatian**
  State Bar No. 24087652
  Nadia.Haghighatian@tklaw.com
**Austin Teng**
  State Bar No. 24093247
  Austin.Teng@tklaw.com
**Matthew Cornelia**
  State Bar No. 24097534
  Matt.Cornelia@tklaw.com

**THOMPSON & KNIGHT LLP**
One Arts Plaza
1722 Routh St., Suite 1500
Dallas, Texas 75201
214.969.1700
214.969.1751 (Fax)

**Samuel F. Baxter**
  Texas State Bar No. 01938000
  sbaxter@mckoolsmith.com

**MCKOOL SMITH, P.C.**
104 E. Houston Street, Suite 300
Marshall, Texas 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

**Theodore Stevenson, III**
  Texas State Bar No. 19196650
  tstevenson@mckoolsmith.com
**Eric S. Hansen**
  Texas State Bar No. 24062763
  ehansen@mckoolsmith.com

**MCKOOL SMITH, P.C.**
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone: (214) 978-4000
Telecopier: (214) 978-4044

**ATTORNEYS FOR PLAINTIFF**
**SEVEN NETWORKS LLC**

**FILED UNDER SEAL IN ACCORDANCE WITH PROTECTIVE ORDER**

## CERTIFICATE OF AUTHORITY TO FILE UNDER SEAL

I certify that the foregoing document and all supporting exhibits are being filed under seal in accordance with the Protective Order governing this case (ECF 88).

*/s/ Max Ciccarelli*
Max Ciccarelli

## CERTIFICATE OF SERVICE

I certify that on April 27, 2018, the foregoing document and supporting exhibits were served to Google's outside counsel of record by electronic mail.

*/s/ J. Michael Heinlen*
J. Michael Heinlen