FILED UNDER SEAL IN ACCORDANCE WITH PROTECTIVE ORDER

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| SEVEN NETWORKS, LLC,<br><br>          Plaintiff,<br><br>v.<br><br>GOOGLE LLC,<br><br>          Defendant. | CIVIL ACTION NO. 2:17-CV-442-JRG<br>LEAD CASE<br><br>PATENT CASE<br><br>JURY TRIAL DEMANDED |
| v.<br><br>SAMSUNG ELECTRONICS AMERICA, INC. AND<br>SAMSUNG ELECTRONICS CO., LTD.,<br><br>          Defendants. | CIVIL ACTION NO. 2:17-CV-441-JRG<br>CONSOLIDATED CASE |

# SEVEN'S RESPONSE TO GOOGLE'S RENEWED MOTION TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF CALIFORNIA (ECF NO. 126)

FILED UNDER SEAL IN ACCORDANCE WITH PROTECTIVE ORDER

## TABLE OF CONTENTS

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

SEVEN Is at Home in This District . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Legal Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Arguments and Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.  Every private-interest factor weighs against transfer.. . . . . . . . . . . . . . . . . . 3

       1.  This District provides easier access to sources of proof. . . . . . . . . . . . . . . 3

          a.  SEVEN's documents and evidence are located in
             this District. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

          b.  Google has not identified a single relevant
             document in California. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

       2.  Transfer to California would deprive SEVEN of
         compulsory process; Google has not made the same
         showing of remaining in Marshall. . . . . . . . . . . . . . . . . . . . . . . . . . . 6

          a.  Third-party witnesses who live in this District are
             likely to testify at trial.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

          b.  Google has not identified any likely third-party trial
             witnesses who live in California. . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

             i.  Google has not shown that any third-party
                inventors who live in California are likely to
                testify at trial. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

             ii.  Google has not shown that SEVEN's founders
                or funders are likely to testify at trial. . . . . . . . . . . . . . . . . . . . . 9

             iii.  Google has not shown that any "prior artists"
                who live in California are likely to testify at trial. . . . . . . . . . . . . . . 10

       3.  Transferring this case to the Northern District of
         California would burden third-party witnesses and
         SEVEN's employee witnesses. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

          a.  Transferring the case to the Northern District of
             California would burden third-party witnesses who
             live and work in this District. . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

          b.  Transferring the case to the Northern District of
             California would burden SEVEN's employees who
             live and work in this District. . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

       4.  Judicial economy would be served by keeping the case
         here along with the *Samsung* case. . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**FILED UNDER SEAL IN ACCORDANCE WITH PROTECTIVE ORDER**

B.  On balance, the public-interest factors weigh against
transfer. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

    1.  The time to trial is shorter in this District than in the
Northern District of California. . . . . . . . . . . . . . . . . . .   14

    2.  This Court has a strong interest in protecting SEVEN's
intellectual-property rights. . . . . . . . . . . . . . . . . . . . . .   15

    3.  The remaining public-interest factors are neutral. . . . . . . . . . . . . . . . . .   15

Conclusion  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

Certificate of Authority to File Under Seal . . . . . . . . . . . . . . . . . . . . . . .   17

Certificate of Service  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17

FILED UNDER SEAL IN ACCORDANCE WITH PROTECTIVE ORDER

## TABLE OF AUTHORITIES

*Allergan Sales, LLC v. UCB, Inc.*,
   No. 2:15-cv-01001-JRG-RSP, 2016 WL 8201783 (E.D. Tex. Nov. 2, 2016) . . . . . . . . . . 9

*Eolas Techs., Inc. v. Adobe Sys., Inc.*,
   No. 6:09-CV-446, 2010 WL 3835762 (E.D. Tex. Sept. 28, 2010) . . . . . . . . . . . . . 3, 13

*Frederick v. Advanced Fin. Sols., Inc.*,
   558 F. Supp. 2d 699 (E.D. Tex. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Google LLC v. SEVEN Networks, LLC*,
   No. 17-cv-4600 (N.D. Cal.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*In re EMC Corp.*,
   501 F. App'x 973 (Fed. Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*In re Radmax, Ltd.*,
   720 F.3d 285 (5th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*In re Toyota Motor Corp.*,
   747 F.3d 1338 (Fed. Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*In re Volkswagen of Am., Inc.*,
   545 F.3d 304, 315 (5th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*In re Volkswagen of Am., Inc.*,
   566 F.3d 1349 (Fed. Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*J2 Global Commc'ns, Inc. v. Protus IP Sols., Inc.*,
   No. 6:08-cv-211, 2009 WL 440525 (E.D. Tex. Feb. 20, 2009) . . . . . . . . . . . . . . . 6

*Jones v. Total Transp. of Miss., LLC*,
   No. 2:12-cv-38-JRG, 2013 WL 1003447 (E.D. Tex. Mar. 13, 2013) . . . . . . . . . . . . 13

*Kranos IP Corp. v. Riddell, Inc.*,
   No. 2:17-CV-443-JRG, 2017 WL 3704762 (E.D. Tex. Aug. 28, 2017) . . . . . . . . . . . 3, 5

*Realtime Data LLC v. Dropbox, Inc.*,
   No. 6:15-cv-465-RWS-JDL, 2016 WL 153860 (E.D. Tex. Jan 12, 2016) . . . . . . . . . . . 9

*Realtime Data, LLC v. Rackspace US, Inc.*,
   No. 6:16-cv-00961 RWS-JDL, 2017 WL 772653 (E.D. Tex. Feb. 28, 2017) . . . . . . . . . 11

*Rembrandt Patent Innovations, LLC v. Apple, Inc.*,
   No. 2:14-CV-0015-JRG, 2014 WL 3835421 (E.D. Tex. Aug. 1, 2014) . . . . . . . . . . . 3, 7

*SEVEN Networks, LLC v. Samsung Elecs. Am. Inc.*,
   No. 2:17-cv-00441-JRG (E.D. Tex. May 17, 2017) . . . . . . . . . . . . . . . . . . . 14

*SEVEN Networks, LLC v. ZTE (USA) Inc.*,
   No. 17-cv-01495 (N.D. Tex.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**FILED UNDER SEAL IN ACCORDANCE WITH PROTECTIVE ORDER**

*Uniloc USA, Inc. v. Google, Inc.*,
 No. 2:16-cv-00566-JRG (E.D. Tex. May 15, 2017) . . . . . . . . . . . . . . . 2, 3, 5, 6, 11, 12, 15

**FILED UNDER SEAL IN ACCORDANCE WITH PROTECTIVE ORDER**

Google has not met its "significant burden" to show that the Northern District of California is a "clearly more convenient" forum for this case. So instead, it relies on misleading characterizations of irrelevant facts. But because the relevant factors confirm that SEVEN's home District is the "clearly more convenient" forum for this case, SEVEN asks the Court to exercise its discretion to deny Google's motion to transfer.

## SEVEN IS AT HOME IN THIS DISTRICT

Though SEVEN's predecessor, Seven Networks, Inc., was founded in Silicon Valley, SEVEN moved to Marshall in 2015.[1] SEVEN did so for several reasons, including the relatively low cost of doing business here, and the increasing difficulty in recruiting and keeping employees in Silicon Valley in light of the intense competition for engineers. Texas was an attractive option because of its many technology schools, and SEVEN's previous successful experiences with Texas engineering resources. Ultimately, influenced strongly by recruiting efforts of the Marshall Economic Development Corporation (MEDCO), SEVEN chose Marshall as its new home.

Since relocating to Marshall, SEVEN has established itself as a valued member of the local community. SEVEN works with MEDCO to attract people with high-tech skills to settle and work in Marshall and to recruit businesses to move here. SEVEN also works with Texas State Technical College (TSTC) to develop courses that provide students the skills required to work in high-tech industries. In fact, SEVEN's President and CEO was TSTC's 2016 commencement speaker, and has accepted TSTC's invitation to speak at its graduation ceremonies this April as well.[2] SEVEN has provided internships and jobs for TSTC students and graduates.

---

[1]   **Ex. A**: First Bott Decl. ¶¶ 5–13. Unless otherwise noted, ¶¶ 5–13 support each statement in this and the next two paragraphs.

[2]   **Ex. B**: Bott Dep. at 128:21–24.

**FILED UNDER SEAL IN ACCORDANCE WITH PROTECTIVE ORDER**

Indeed, SEVEN is committed to hiring locally, employing ten individuals in Marshall.[3]

SEVEN's commitment to its employees and to the community have been recognized, as it was

selected as the regional nominee for the Texas Small Employer of the Year Award in 2017.

SEVEN is an established, productive, respected resident of the Eastern District of Texas.

## LEGAL STANDARD

The Court should deny Google's motion to transfer venue unless it is convinced that the

Northern District of California is "clearly more convenient" than SEVEN's chosen venue in its

home District. *See Uniloc USA, Inc. v. Google, Inc.*, No. 2:16-cv-00566-JRG (E.D. Tex. May 15,

2017), ECF No. 75 at 2 (*Uniloc*) (denying Google's motion to transfer to N.D. Cal.). The Court

must "give some weight to [SEVEN's] choice of forum," a "venue privilege" that

"contribut[es] to [Google's] elevated burden of proving that [N.D. Cal.] is clearly more

convenient than [this District.]" *Uniloc* at 3–4 (citations and internal quotation marks omitted).

The Fifth Circuit's non-exclusive lists of private- and public-interest factors provide a

helpful framework for making this determination. *See In re Volkswagen of Am., Inc.*, 545 F.3d 304,

315 (5th Cir. 2008) (*Volkswagen II*). In assessing the parties' interests, courts ask which forum:

(i) provides easier access to sources of proof; (ii) would not deprive litigants of necessary

compulsory process; (iii) minimizes the cost for willing witnesses; and (iv) makes trial easiest,

most efficient, and least expensive. *Id.* To evaluate each venue's interests, courts analyze:

(i) which district is less congested; (ii) which local community has the greater interest in the case;

(iii) which district is more familiar with the governing law; and (iv) whether potential conflict-of-

law issues can be avoided in one forum over another. *Id.* Even if every factor were neutral,

---

[3]   **Ex. C**: Second Bott Decl. ¶ 5.

**FILED UNDER SEAL IN ACCORDANCE WITH PROTECTIVE ORDER**

transfer still would be improper. *See Rembrandt Patent Innovations, LLC v. Apple, Inc.*, No. 2:14-CV-0015-JRG, 2014 WL 3835421, at *3 (E.D. Tex. Aug. 1, 2014). Here, however, the majority of these factors weigh against transfer.

## ARGUMENTS AND AUTHORITIES

### A. Every private-interest factor weighs against transfer.

#### 1. This District provides easier access to sources of proof.

"When considering the relative ease of access to sources of proof, a court looks to where documentary evidence, such as *documents and physical evidence*, are stored." *Uniloc* at 4 (emphasis added). "Courts analyze this factor in light of the distance that documents, or other evidence, must be transported from their existing location to the trial venue." *Eolas Techs., Inc. v. Adobe Sys., Inc.*, No. 6:09-CV-446, 2010 WL 3835762, at *3 (E.D. Tex. Sept. 28, 2010), *aff'd In re Google, Inc.*, 412 F. App'x 295 (Fed. Cir. 2011). Witnesses are not relevant to this factor, as they are considered "under the factors that focus on the availability of compulsory process and the cost of attendance for willing witnesses." *See Kranos IP Corp. v. Riddell, Inc.*, No. 2:17-CV-443-JRG, 2017 WL 3704762, at *10 n.10 (E.D. Tex. Aug. 28, 2017).

SEVEN's hard-copy and electronic documents are stored in SEVEN's Marshall office.[4] By contrast, Google's sources of proof include: (i) electronic documents stored outside of California that are accessible from anywhere, and (ii) unidentified documents that may or may not exist.

#### a. SEVEN's documents and evidence are located in this District.

SEVEN's documents—both hard copy and electronic—are located in this District. As SEVEN's President and CEO earlier explained, SEVEN stores its physical documents—249 bankers boxes of company records including, among other things, patents and prosecution-

---

[4]   **Ex. A**: First Bott Decl. ¶ 14.

**FILED UNDER SEAL IN ACCORDANCE WITH PROTECTIVE ORDER**

related information—at its Marshall headquarters.[5] Among these documents are prosecution-related files, certified copies of some of the older patents-in-suit, and customer contracts related to SEVEN's products. Google certainly cannot dispute these documents' relevance.[6]

SEVEN also maintains its electronic records at its headquarters in Marshall.[7] Technical documentation related to the design, development, and operation of SEVEN's products—including those that practice the asserted patents[8]—such as source code, analytics, debugging information, and support data reside on SEVEN's servers in Marshall. SEVEN's servers in Marshall also handle email traffic and store electronic records related to SEVEN's operation, finances, sales, human resources, engineering, intellectual property, corporate facilities, marketing, operations, product management, and legal activities. And evidence related to the conception, reduction to practice, and diligence regarding the inventions claimed by the patents-in-suit is located in Marshall as well. Of course, these sources of proof are much more easily accessible in this District, where they are currently located.

### b.   Google has not identified a single relevant document in California.

By contrast, Google has not shown that its sources of proof would be easier to access in California than in this District. For this factor, Google relies primarily on the location of its

---

[5]    **Ex. A**: First Bott Decl. ¶¶ 14, 15.

[6]    Google's self-serving attorney declaration—describing some document categories the boxes "included" as irrelevant—is misleading, at best. *See* ECF No. 126-17 ¶¶ 3, 5 (Clutter Decl.). In fact, after Google's counsel inspected SEVEN's physical records in Marshall, Google identified a number of boxes and folders for copying. And in its brief, Google ignores that the declaration itself identifies accounting records from the relevant time period. *See id.* ¶ 3.

[7]    **Ex. A**: First Bott Decl. ¶¶ 15, 16 (supporting each of the facts stated in this paragraph, unless otherwise noted).

[8]    *See, e.g.*, **Ex. D**: SEVEN's Response to Google's Interrogatory No. 4 ("SEVEN's AdClear product . . . and associated infrastructure can perform the methods disclosed by claims 16, 12, 25, and 29 of the '433 patent.").

**FILED UNDER SEAL IN ACCORDANCE WITH PROTECTIVE ORDER**

electronic records, ███████████████████████████████████████████████

███████████████████████████████████████ Mtn. at 6 (emphasis added). It adds

that ████████████████████████████████████████████████████████████

████████████████████████████████ Mtn. at 6–7. But

Google's data centers are located outside the Northern District of California too.[9] And the

documents on Google's secure servers ███████████████████████████████████

███████████████████████████████ That servers hosting Google's records and

documents █████████████████████████████████ *See Uniloc* at 4–

5 ("[I]t is not enough to assert that documents are . . . 'managed' in the desired forum.").

Google further contends that this factor favors transfer because SEVEN's CEO and CTO

"have information that is relevant to the litigation and reside in NDCA." Mtn. at 10. But that

they reside in California does not mean the evidence is also located there. Google repeats this

logical fallacy elsewhere. *See, e.g.*, Mtn. at 7 (stating, without pointing to evidence, that NVIDIA

"possesses relevant prior art and is headquartered in NDCA.").[11] And to the extent Google

intends "information" to refer to the knowledge of these potential witnesses, that is irrelevant to

---

[9]    *See* ECF No. 89-19 (Google Data Center Locations) (listing U.S. data-center locations as South Carolina, Iowa, Georgia, Alabama, North Carolina, Oklahoma, Tennessee, and Oregon). Notably, "with the exception of one data center located in . . . Oregon, every other Google data center in the United States is located closer to the Eastern District of Texas." *Uniloc* at 4.

██    ████████████████████████████████████████

[11]    Google also states that Johan Rydell, developer of alleged prior art system PortWise, "has already provided documents and source code to Google . . . from his office in San Francisco." Mtn at 8. This is at least partially untrue. After Google filed this motion, counsel for Google told counsel for SEVEN: "We have not yet been able to locate source code for PortWise." **Ex. E**: Mar. 13, 2018 Email from G. Snyder to V. Patel. And even if Mr. Rydell did provide Google some documents, they may ultimately prove useless to Google—PortWise is the subject of Google's opposed motion to amend its invalidity contentions. *See* ECF No. 128.

FILED UNDER SEAL IN ACCORDANCE WITH PROTECTIVE ORDER

this factor. *See Kranos*, 2017 WL 3704762, at *10 n.10 ("Although witnesses are 'sources of proof' in a sense," they are not analyzed under this factor.).

All of Google's remaining alleged sources of proof are speculative. For example, Google imagines that ███████████████████████████████████████████████ ████████████████████████████ Mtn. at 6 (emphasis added). And it suggests that inventors in the Northern District of California "*may*" have "information regarding claim interpretation, infringement, and the validity of the asserted patents." Mtn. at 10 (emphasis added); *see also id.* at 8 ("VASCO *likely* has relevant documents . . . ."). That evidence *may* or *might* exist is not enough, especially since Google fails to identify any specific documents. *See J2 Global Commc'ns, Inc. v. Protus IP Sols., Inc.*, No. 6:08-cv-211, 2009 WL 440525, at *2 (E.D. Tex. Feb. 20, 2009) ("A movant must identify sources of proof with enough specificity that a court can determine whether transfer will increase the convenience of the parties.").

"Google must present evidence of documentary evidence physically located within or close to the desired forum." *Uniloc* at 5. It has not. And "[t]ransferring the case would impose a significant and unnecessary burden on [SEVEN] to transport documents from [Marshall] to the Northern District of California." *Uniloc* at 6. This factor weighs strongly against transfer.

## 2. Transfer to California would deprive SEVEN of compulsory process; Google has not made the same showing of remaining in Marshall.

"This factor instructs the Court to consider the availability of compulsory process to secure the attendance of witnesses, particularly *non-party* witnesses whose attendance may need to be secured by a court order." *Uniloc* at 6 (emphasis added). Because "Rule 45 . . . makes compulsory process for deposition effectively nationwide," the focus of this factor is on third-party witnesses for whom compulsory process to attend trial might be necessary. *Rembrandt*,

FILED UNDER SEAL IN ACCORDANCE WITH PROTECTIVE ORDER

2014 WL 3835421, at *2 ("[P]arty witnesses do not require compulsory process for trial and are not given much weight in this factor."). SEVEN has identified two likely third-party trial witnesses who are outside of the Northern District of California's subpoena power; Google has identified no likely third-party trial witnesses who are outside of this Court's subpoena power.

**a. Third-party witnesses who live in this District are likely to testify at trial.**

SEVEN expects that the following third-party witnesses who live and work in this District will testify at trial.

- <u>Donna Maisel</u>: Ms. Maisel is MEDCO's Executive Director. She will testify that MEDCO has worked closely with SEVEN since July 2015, and that SEVEN has established a viable presence in Marshall. Further, she will testify that SEVEN has benefited Marshall by establishing and maintaining partnerships with local colleges and universities, retaining people skilled in mathematics and technology, and working with MEDCO to recruit more tech companies to Marshall.[12]
- <u>Barton Day</u>: Mr. Day is Provost of Texas State Technical College (TSTC), Marshall. Mr. Day will testify that, together, SEVEN and TSTC have benefited the community by developing curricula, and through SEVEN's provision of internships and post-graduation jobs to TSTC students.[13]

Google challenges this testimony as having "no relevance to the infringement, invalidity, and damages questions" that it contends "are the only issues in this litigation." Mtn. at 12 n.5. But Google has made SEVEN's connection to Marshall an "issue[] in this litigation" by attempting to create an unfavorable impression about SEVEN's business. *See, e.g.*, Mtn. at 1, 2–4, 11. While Google's narrative may have no bearing on "infringement, invalidity, [or] damages questions" (or venue, for that matter), Google nevertheless found it sufficiently relevant to detail extensively. To that end, the testimonies of these third-party witnesses are indispensable to

---

[12]   *See* **Ex. F**: Donna Maisel Decl. Rusty Howell, now deceased, also played a vital role in SEVEN's move to Marshall, as reflected in his earlier submitted testimony. *See* **Ex. G**: Howell Decl.

[13]   *See* **Ex. H**: Day Decl.

**FILED UNDER SEAL IN ACCORDANCE WITH PROTECTIVE ORDER**

SEVEN's ability to rebut Google's negative portrayal, whether Google offers it in Texas or California. Further, SEVEN is entitled to tell its story at trial, wherever trial is.

Because the Northern District of California lacks subpoena power over these witnesses, this factor weighs against transfer—it would be inequitable indeed for Google to transfer the case to its preferred forum, disparage SEVEN there, and leave SEVEN without a procedural mechanism for calling witnesses in its defense.

### b. Google has not identified any likely third-party trial witnesses who live in California.

Google asserts that three classes of third-party witnesses who live in California have relevant information: (i) inventors of the patents-in-suit; (ii) SEVEN's founders and funders; and (iii) alleged "prior artists." Google does not, however, say that any are likely to testify at trial. For this reason and others, Google has not shown that this factor favors transfer.

### i. Google has not shown that any third-party inventors who live in California are likely to testify at trial.

Of the twenty-four inventors of the patents-in-suit, Google identifies six as employees of either SEVEN or Google. *See* Mtn. at 5. While Google belabors its representation that at least nine of the remaining eighteen third-party inventors reside in California, it never mentions why those specific witnesses are important apart from the fact that they allegedly live in California. According to Google, inventors generally—but not any inventor in particular—are "potentially relevant witnesses." Mtn. at 7. But whether a general category of witnesses may be "potentially relevant" is not at issue. Rather, "for the Court to meaningfully assess the weight that should be attached to a third-party witness, *it is incumbent upon the advancing party to demonstrate the likelihood of that witness actually testifying at trial.*" *Realtime Data LLC v. Dropbox, Inc.*, No. 6:15-cv-465-RWS-JDL, 2016 WL 153860, at *3 (E.D. Tex. Jan. 12, 2016) (emphasis added). Google

has not demonstrated any likelihood of these inventors being called to testify at trial.

Further, as Google observes, SEVEN has previously provided declarations from three of the nine inventors on Google's list (and another who lives in Oregon) agreeing to attend trial in Marshall if necessary.[14] Mtn. at 12 n.4. And Ari Backholm, a party witness and inventor, will also attend trial. With those five inventors willing to appear at trial in this District, there is at least one inventor from each of the patents-in-suit who can attend trial here without implicating any compulsory process concerns. While Google complains that "SEVEN cannot unilaterally choose which inventors are needed for trial," *id.*, Google has not even attempted to show why any particular inventor might be more important than another.[15] And even if Google determines that specific inventors have particularly relevant testimony, it "has not specifically addressed how it would be prejudiced by presenting testimony from [the inventors'] deposition[s] in lieu of live testimony." *See Allergan Sales, LLC v. UCB, Inc.*, No. 2:15-cv-01001-JRG-RSP, 2016 WL 8201783, at *4 (E.D. Tex. Nov. 2, 2016). Alleged lack of inventor testimony cannot justify transferring this case.

### ii. Google has not shown that SEVEN's founders or funders are likely to testify at trial.

Google next says that "SEVEN's founders, Bill Nguyen and Trevor Fiatal, . . . are located in NDCA," and that "SEVEN's owners at Fortress are also located in NDCA, as are SEVEN's other funders." Mtn. at 12. And that is all that Google says about them with regard to this factor. Here again, Google fails to state the likelihood that either will testify at trial, how Google would

---

[14]  *See* **Ex. I**: Petersen Dec.; **Ex. J**: Fiatal Dec.; **Ex. K**: Luna Dec.; **Ex. L**: Merriwether Dec.

[15]  And in fact, Google appears to agree with SEVEN—three of the five inventors it has subpoenaed are among those who have stated their willingness to attend trial in Marshall. *See* **Ex. M**: Google's Subpoena to T. Fiatal; **Ex. N**: Google's Subpoena to M. Luna; **Ex. O**: Google's Subpoena to D. Merriwether.

**FILED UNDER SEAL IN ACCORDANCE WITH PROTECTIVE ORDER**

be prejudiced by presenting the testimony by deposition, or what the subject of these non-parties'

testimonies might be. Indeed, Messrs. Nguyen and Fiatal left SEVEN more than five and seven

years ago, respectively,[16] so it is unclear what testimony they could offer that would have any

bearing on any questions at issue in this case. And Google does not even attempt to explain how

SEVEN's  funders' investments are relevant, likely because any potentially relevant valuation

information they might possess would be presented by Google's damage's expert. There is thus

no basis for transferring the case based on an alleged lack of the founders' or funders' testimony.

### iii. Google has not shown that any "prior artists" who live in California are likely to testify at trial.

Finally, Google contends that certain "prior art systems implicate witnesses . . . residing in

Northern California, and Google currently expects that these prior artists will be potential trial

witnesses." Mtn. at 7. This empty assertion cannot support transfer.

Specifically, Google lists seven alleged prior art references and systems, but names

inventors or developers for only two: NVIDIA and PortWise. Mtn. at 7–8. NVIDIA is the owner

of a patent that Google alleges is prior art. Google cherry picks three of the patent's nine listed

inventors—Liangchuan Mi, Shial Dave, and Karthik Samynathan—whose LinkedIn profiles

represent that they "reside in NDCA," and says that they "likely have relevant knowledge

regarding th[e] invention." Mtn. at 7.[17] But as with the inventors of the patents-in-suit, Google

identifies no other reason for selecting these particular individuals as "potential" (but not likely)

---

[16]   **Ex. A**: First Bott Decl. ¶ 17. And again, Mr. Fiatal has agreed to attend trial in Marshall if necessary. *See* n.16 above, and accompanying text.

[17]   *See* ECF Nos. 61-57–61-59. Notably, the patent identifies China as the location of four of the listed inventors. *See* ECF No. 61-56. Google does not point to these, however, presumably because "witnesses . . . outside both forums do[] not factor into the transfer analysis." Mtn. at 13 (citing *In re Toyota Motor Corp.*, 747 F.3d 1338, 1340 (Fed. Cir. 2014)).

**FILED UNDER SEAL IN ACCORDANCE WITH PROTECTIVE ORDER**

NVIDIA prior art witnesses, apart from their alleged California residences. And for PortWise, Google identifies Johan Rydell as the developer, but does not represent that he will testify at trial. Mtn. at 8. Of course, Google cannot make that representation, since PortWise is the subject of Google's opposed motion to amend its invalidity contentions. *See* ECF No. 128. Mr. Rydell is not a "likely trial witness"; rather, PortWise is an unlikely prior art reference.

Prior-art witnesses are "entitled to little, if any, weight in [the § 1404] analysis" because they "rarely, if ever, actually testify at trial." *See Realtime Data, LLC v. Rackspace US, Inc.*, No. 6:16-cv-00961 RWS-JDL, 2017 WL 772653, at *8 (E.D. Tex. Feb. 28, 2017) (citation and quotation marks omitted). Google's unsupported statement that some prior artists *potentially* might testify is insufficient to entitle them to any weight in the transfer analysis. There is thus no basis for transferring the case based on alleged lack of prior-art testimony.

### 3. Transferring this case to the Northern District of California would burden third-party witnesses and SEVEN's employee witnesses.

The third private-interest factor—the cost of attendance for willing witnesses—also focuses on third-party witnesses. As this Court has noted, "[t]he convenience of *party* witnesses is given little weight." *Uniloc* at 10 (emphasis in original) (citing *Frederick v. Advanced Fin. Sols., Inc.*, 558 F. Supp. 2d 699, 704 (E.D. Tex. 2007) ("The availability and convenience of party-witnesses is generally insignificant because a transfer based on this factor only shifts the inconvenience from movant to nonmovant.")). This factor, too, weighs against transfer.

### a. Transferring the case to the Northern District of California would burden third-party witnesses who live and work in this District.

SEVEN has identified at least two third-party witnesses who it expects to call live at trial, and who would be significantly burdened if the case were transferred to California. Google, on the other hand, relies on its arguments regarding the second factor—availability of compulsory

**FILED UNDER SEAL IN ACCORDANCE WITH PROTECTIVE ORDER**

process—to support its claim that trial in California would be more convenient for third-party witnesses: "As described with respect to the prior factor, Google has identified numerous third party witnesses in NDCA, including at least nine inventors, the original founders, funders, and prior artists." Mtn. at 13. But as set forth above, Google has not shown that any of those third parties is likely to testify at trial. Accordingly, this factor weighs against transfer.

### b.  Transferring the case to the Northern District of California would burden SEVEN's employees who live and work in this District.

Although "the convenience of party witnesses is given little weight," *Uniloc* at 10, if the Court considers it, this too weighs against transfer. Specifically, the following ten employees work for SEVEN in this District: Colby Adams, Sofiya Glazova, Dustin Morgan, and Christian Sandlin (Software Engineers); Chastity Rhodes (Customer Support Engineer); Keyvan Shahrdar (Director of Product Management); Nathan Cowart and Konnor Timmons (interns); Andy Liu (Data Scientist); and Fontange Paxton (Quality Assurance Engineer).[18] Each of these ten individuals has material, relevant information, making it likely that SEVEN will call some, if not all, of them to testify at trial. Specifically, these employees all work on AdClear,[19] which incorporates one or more of the technologies disclosed in the patents-in-suit. Their varied duties include design, development, operation, testing, and analysis of the product, thereby positioning them to testify about these topics.[20] More generally, as explained above with regard to SEVEN's

---

[18]   **Ex. C**: Second Bott Decl. ¶ 5; *see also* **Ex. P**: Adams Decl.; **Ex. Q**: Glazova Decl.; **Ex. R**: Morgan Decl.; **Ex. S**: Sandlin Decl.; **Ex. T**: Rhodes Decl.; **Ex. U**: Shahrdar Decl.; **Ex. V**: Cowart Decl.; **Ex. W**: Timmons Decl.; **Ex. X**: Liu Decl.; **Ex. Y**: Paxton Decl.

[19]   *See* **Ex. C**: Second Bott Decl. ¶¶ 6–15.

[20]   *See* **Ex. C**: Second Bott Decl. ¶¶ 6–15. Google has already deemed such testimony relevant through its discovery requests. *See* **Ex. Z**: Google Document-Request Letter, No. 8 (requesting "[a]ll documents concerning the research, design, development, or testing of the subject matter described or claimed in the asserted patents."). That these witnesses will not offer

**FILED UNDER SEAL IN ACCORDANCE WITH PROTECTIVE ORDER**

third-party witnesses, Google has also made these witnesses' testimonies about their work on

SEVEN's products relevant to rebut Google's negative depiction of SEVEN's business model.

Google should not be permitted to imply that SEVEN is not a practicing entity, while depriving

SEVEN of the opportunity to show otherwise.

Google, on the other hand, identifies only seven individual employees who allegedly work

and live in the Northern District of California and have "knowledge of the accused

functionality" or Google's marketing. Mtn. at 6.[21] Without explanation, Google then concludes:

"NDCA is . . . more convenient for likely party witnesses . . . ." Mtn. at 13. But even accepting,

for the sake of argument, that seven Google employees are likely witnesses, when contrasted

against the ten employees of SEVEN, this factor weighs against transfer.

### 4. Judicial economy would be served by keeping the case here along with the *Samsung* case.

The final private-interest factor considers "all other practical problems that make trial of a

case easy, expeditious and inexpensive." *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013).

"Practical problems include those that are rationally based on judicial economy. Particularly, the

existence of duplicative suits involving the same or similar issues may create practical difficulties

that will weigh heavily in favor or against transfer." *Eolas Techs.*, 2010 WL 3835762, at *6  The

Federal Circuit has held that "the existence of multiple lawsuits involving the same issues is *a*

*paramount consideration* when determining whether a transfer is in the interest of justice." *In re*

---

technical opinions about how the practicing products meet the limitations of the asserted claims
does not make their testimony irrelevant. *Contra* Mtn. at 4, 11 (calling the relevance "unclear").

[21]   Google also contends that an unidentified ███████████████████████████
████████████████████████████████ Mtn. at 6. It does not, however, allege that a
finance witness is likely to testify. Further, naming a class of employees, rather than a specific
individual within the class, does not support transfer. *See Jones v. Total Transp. of Miss., LLC*,
No. 2:12-cv-38-JRG, 2013 WL 1003447, at *2 (E.D. Tex. Mar. 13, 2013).

FILED UNDER SEAL IN ACCORDANCE WITH PROTECTIVE ORDER

*Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009) (emphasis added).

As Google acknowledges, a similar case is pending before this Court. Specifically, SEVEN is asserting seven of the ten patents at issue here against Samsung. *See SEVEN Networks, LLC v. Samsung Elecs. Am. Inc.*, No. 2:17-cv-00441-JRG (E.D. Tex. May 17, 2017). Since "there will be significant overlap[,] and a familiarity with the patents could preserve time and resources[, . . . .] judicial economy is served by having the same district court try the cases involving the same patents." *In re Volkswagen of Am., Inc.*, 566 F.3d at 1351.

Ignoring this, Google points to two co-pending cases outside this District—both filed after this case was instituted—as allegedly supporting transfer. *See* Mtn. at 14 (citing *SEVEN Networks, LLC v. ZTE (USA) Inc.*, No. 17-cv-01495 (N.D. Tex.) & *Google LLC v. SEVEN Networks, LLC*, No. 17-cv-4600 (N.D. Cal.)). But as Google acknowledges, this factor is evaluated based on "the situation which existed when suit was instituted." Mtn. at 13 (citation and quotation marks omitted). These cases, therefore, are not part of the analysis.[22] Accordingly, judicial economy weighs against transfer.

In sum, each of the four private-interest factors favors keeping this case in Marshall.

**B. On balance, the public-interest factors weigh against transfer.**

**1. The time to trial is shorter in this District than in the Northern District of California.**

Although Google acknowledges that "time to trial is shorter in this District," it nonetheless contends this factor is neutral. Mtn. at 15. But as this Court has held, the shorter time to trial in

---

[22] And in any event, they do not support transfer. The Court recently ordered sua sponte that it would hold a concurrent *Markman* with the ZTE case, "in the interest of judicial efficiency." *See* ECF No. 138. Further, venue is not more convenient in California simply because Google filed a declaratory-judgment action there for non-infringement of the patents at issue in this lawsuit. *See In re EMC Corp.*, 501 F. App'x 973, 976 (Fed. Cir. 2013).

**FILED UNDER SEAL IN ACCORDANCE WITH PROTECTIVE ORDER**

this District weighs against transfer. *See Uniloc* at 14.

### 2. This Court has a strong interest in protecting SEVEN's intellectual-property rights.

Google discounts SEVEN's presence in this District as "limited" and contends the Northern District of California has a greater interest in this case. Mtn. at 15. But as shown, SEVEN's presence in this District is far from limited. On the contrary, SEVEN is headquartered in Marshall; it employs ten people here; its records are stored and maintained here; and substantial work related to its products—at least one of which practices one or more of the asserted patents—is carried out here. SEVEN actively cooperates with local educators and leaders to enrich the community and grow its economy. Indeed, this "District has a significant interest in protecting the intellectual property rights of its residents," like SEVEN. *See Uniloc* at 14. In view of Google's ties to California, "both this District and the Northern District of California have localized interests in this case[; accordingly,] this factor is neutral." *Id.*

### 3. The remaining public-interest factors are neutral.

There are no conflict-of-law issues, and both courts are equally familiar with patent law.

In sum, one of the public-interest factors weighs against transfer, and the other three are neutral. As a whole, these factors, like the private-interest factors, weigh against transfer.

### CONCLUSION

Here, as in *Uniloc*, "Google has not satisfied its 'significant burden' to show that the [Northern District of California] is clearly more convenient" than this District. *Uniloc* at 15. SEVEN therefore respectfully requests that the Court deny Google's motion. SEVEN also requests any further relief to which it may be entitled.

**FILED UNDER SEAL IN ACCORDANCE WITH PROTECTIVE ORDER**

Dated: March 27, 2018

Respectfully submitted,

*/s/ Max Ciccarelli*

**Bruce S. Sostek**
  State Bar No. 18855700
  Bruce.Sostek@tklaw.com
**Max Ciccarelli**
  State Bar No. 00787242
  Max.Ciccarelli@tklaw.com
**Herbert J. Hammond**
  State Bar No. 08858500
  Herbert.Hammond@tklaw.com
**Richard L. Wynne Jr.**
  State Bar No. 24003214
  Richard.Wynne@tklaw.com
**Adrienne E. Dominguez**
  State Bar No. 00793630
  Adrienne.Dominguez@tklaw.com
**Vishal Patel**
  State Bar No. 24065885
  Vishal.Patel@tklaw.com
**Nadia E. Haghighatian**
  State Bar No. 24087652
  Nadia.Haghighatian@tklaw.com
**Austin Teng**
  State Bar No. 24093247
  Austin.Teng@tklaw.com
**Matthew Cornelia**
  State Bar No. 24097534
  Matt.Cornelia@tklaw.com
**THOMPSON & KNIGHT LLP**
One Arts Plaza
1722 Routh St., Suite 1500
Dallas, Texas 75201
214.969.1700
214.969.1751 (Fax)

**ATTORNEYS FOR PLAINTIFF
SEVEN NETWORKS, LLC.**

**Samuel F. Baxter**
  Texas State Bar No. 01938000
  sbaxter@mckoolsmith.com
**MCKOOL SMITH, P.C.**
104 E. Houston Street, Suite 300
Marshall, Texas 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

**Theodore Stevenson, III**
  Texas State Bar No. 19196650
  tstevenson@mckoolsmith.com
**Eric S. Hansen**
  Texas State Bar No. 24062763
  ehansen@mckoolsmith.com
**MCKOOL SMITH, P.C.**
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone: (214) 978-4000
Telecopier: (214) 978-4044

**ATTORNEYS FOR PLAINTIFF
SEVEN NETWORKS, LLC.**

**FILED UNDER SEAL IN ACCORDANCE WITH PROTECTIVE ORDER**

### CERTIFICATE OF AUTHORITY TO FILE UNDER SEAL

I certify that the foregoing document and all supporting exhibits are being filed under seal in accordance with the Protective Order governing this case (ECF 88).

*/s/ Max Ciccarelli*
Max Ciccarelli

### CERTIFICATE OF SERVICE

I certify that on March 27, 2018, I served foregoing document and accompanying exhibits by email on Google's outside counsel of record.

*/s/ Natalie M. Cooley*
Natalie M. Cooley