# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| **SEVEN NETWORKS, LLC,** | |
| Plaintiff, | Civil Action No. 2:17-cv-00442-JRG |
| v. | LEAD CASE |
| **GOOGLE LLC,** | FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER |
| Defendant. | |
| **SEVEN NETWORKS, LLC,** | |
| Plaintiff, | Civil Action No. 2:17-cv-00441-JRG |
| v. | CONSOLIDATED CASE |
| **SAMSUNG ELECTRONICS CO., LTD. AND SAMSUNG ELECTRONICS AMERICA, INC.** | |
| Defendants. | |

**DEFENDANT GOOGLE LLC'S REPLY IN SUPPORT OF SECOND RENEWED MOTION TO DISMISS OR, IN THE ALTERNATIVE, TRANSFER UNDER 28 U.S.C. § 1406 FOR IMPROPER VENUE**

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**TABLE OF CONTENTS**

                                                              **Page**

I.    THERE IS NO "REGULAR AND ESTABLISHED PLACE OF BUSINESS"................1

      A.    GGC Servers Do Not Establish Venue In This District...........................................1

      B.    The ISPs' Locations Do Not Establish Venue In This District ...............................5

II.   GOOGLE HAS NOT COMMITTED ANY ACTS OF INFRINGEMENT HERE ............9

III.  SEVEN'S REQUEST FOR TRANSFER TO N.D. TEX. SHOULD BE REJECTED ......................................................................................................................10

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

## TABLE OF AUTHORITIES

**Page**

### Cases

*Akamai Techs., Inc v. Limelight Networks, Inc.*,
   797 F.3d 1020 (Fed. Cir. 2015) .................................................................................... 9

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................................. 10

*In re Cray*,
   871 F.3d 1355 (Fed. Cir. Sept. 21, 2017) ........................................................... passim

*Davis v. Dinkins*,
   206 A.D.2d 365 (2d Dept. 1994) ................................................................................ 7

*Feder v. Caliguira*,
   171 N.E.2d 316 (N.Y. 1960) .................................................................................. 7, 8

*Federal Elec. Products Co. v. Frank Adam Elec. Co.*,
   100 F. Supp. 8 (S.D.N.Y. 1951) ................................................................................. 4

*Hoover Grp. Inc. v. Custom Metalcraft, Inc.*,
   84 F.3d 1408 (Fed. Cir. 1996) .................................................................................. 10

*Land & Bay Gauging, L.L.C. v. Shor*,
   623 F. App'x 674 (5th Cir. 2015) ............................................................................... 5

*Manville Sales Corp. v. Paramount Systems, Inc.*,
   917 F.2d 544 (Fed. Cir. 1990) .................................................................................. 10

*Muniauction, Inc. v. Thomson Corp.*,
   532 F.3d 1318 (Fed. Cir. 2008) .................................................................................. 9

*NTP, Inc. v. Research in Motion, Ltd.*,
   418 F.3d 1282 .................................................................................................... 9, 10

*Personal Audio, LLC v. Google, Inc.*,
   280 F.Supp.3d 922 (E.D. Tex. Dec. 1, 2017) ......................................................... 2, 3

*Shure, Inc. v. ClearOne, Inc.*,
   No. 17-cv-3078, Dkt. 280 (N.D. Ill. Mar. 16, 2018) ................................................ 10

*In re Stoltz*,
   315 F.3d 80 (2d Cir. 2002) ..................................................................................... 6, 7

*Van Dusen v. Barrack*,
   376 U.S. 612 (1964) .................................................................................................. 10

### Statutory Authorities

28 U.S.C. § 1694 ............................................................................................................... 6

N.Y. REAL PROP. ACTIONS & PROCEEDINGS LAW § 111 (McKinney) ........................................ 7

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

SEVEN has abandoned all but one of its venue allegations; it now relies solely on the existence of Google Global Cache ("GGC") servers in this District. A server, however, is not a regular and established place of business. *Cray* defines a "place" as a "building or a part of a building," or "quarters" from which business is conducted. 871 F.3d 1355, 1362 (Fed. Cir. 2017). The servers in this District are neither. SEVEN asks the Court to ignore Supreme Court and Federal Circuit precedent to read out the requirement of a "place" from Section 1400(b) and instead extend venue to any company that has "any objects that enclose space" or "physical things that occupy space" in the District. (Opp. 12.) This is impermissible under *Cray*. SEVEN fails to cite a single case where a "server" or other object has been sufficient to establish venue. Courts, in fact, have uniformly rejected this argument.

SEVEN also argues that the space on a server rack (*i.e.,* "rack space") that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

SEVEN also does not dispute that it has not alleged performance of all method steps by Google in this District, creating a second reason why venue here is improper. Finally, SEVEN's request for transfer to the Northern District of Texas should be rejected as entirely unsupported.

**I.   THERE IS NO "REGULAR AND ESTABLISHED PLACE OF BUSINESS"[1]**

    **A.   GGC Servers Do Not Establish Venue In This District**

---

[1] SEVEN argues that the defendant bears the burden (Opp. 9), even though it previously admitted that this has not been resolved (Dkt. 76, 5-7). While the vast majority of courts reject SEVEN's position (*see* Mot. 5), venue is improper no matter who bears the burden.

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

>The Federal Circuit has been clear and unambiguous that venue requires a "place":
>
>The statute requires a "place," *i.e.,* a **building or a part of a building** set apart for any purpose or **quarters** of any kind from which business is conducted. The statute thus **cannot be read to refer merely to a virtual space or to electronic communications** from one person to another.

*Cray*, 871 F.3d at 1362 (internal citations omitted)[2]. "[T]here must still be ***a physical, geographical location*** in the district from which the business of the defendant is carried out." *Id*. SEVEN does not even attempt to argue that a server is a "building or part of building" or "quarters of any kind"—clearly, a server is not. Instead, SEVEN ignores *Cray* and **redefines** "place" to mean "any objects that enclose space" or "physical things that occupy space." (Opp. 12.) Contrary to SEVEN's allegation that "a physical, geographical location" can be broader than a building or quarter (Opp. 12), all three "locations" identified in *Cray* were buildings or quarters: employees' home offices, distribution centers, and a building occupied by the secretarial service. *Id.* Under SEVEN's broad read of Section 1400(b), parties would be subject to venue in any district where they had objects or things. SEVEN theory would transform every corporate smartphone, computer, and tablet into a "place" of business. Even people (employees) are physical objects that enclose space, which alone cannot establish venue. *Cray*, 871 F.3d at 1363, 1365. SEVEN's definition directly contradicts Section 1400(b) and *Cray*, both of which require a "place" to establish venue, not objects or physical things.

GGC servers are not places and they do not conduct business. SEVEN fails to cite a single instance where a court has found that objects, like servers, establish venue. Rather, all of the courts to consider the question have rejected SEVEN's position. (Mot. 9.) SEVEN does not even attempt to distinguish *BMC* and tries to discredit the holding in *Personal Audio* by suggesting that Judge Clark failed to understand that servers are physical hardware and lacked

---

[2]   Emphasis has been added to quotations in this brief unless otherwise noted.

the additional discovery from this case. (Opp. 17-18.)  Both arguments are incorrect.  First, Judge Clark expressly recognized that "[s]ervers are 'hardware,' the physical electronic equipment used to operate the internet or an intranet" and because of that "[t]hey are not a building or physical quarters of any kind."  280 F.Supp.3d 922, 934 (E.D. Tex. Dec. 1, 2017).  Second, the new discovery cited by SEVEN ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ is irrelevant, as explained below.  SEVEN also attempts to distinguish *Magee* and *Home Bingo*, but does not dispute that those cases held that vending and slot machines were not "places."

SEVEN also alleges that Google has (unsuccessfully) argued, in the criminal context in *In re Search Warrant No. 16-960-M-1 to Google*, that servers are "places." (Opp. 16.)  But, Google did not argue there that a server is a "place," much less a physical place of business under Section 1400(b).  Rather, Google's position was that "a warrant cannot require the search of a ***foreign place*** and the seizure of things stored therein." (Opp. Ex. EE, 10.)  Google pointed to foreign places, like a "foreign branch" of a bank and a "foreign hotel." (Opp. Ex. EE, 9–10.)[3]  This is entirely consistent with the Federal Circuit's examples of actual places in *Cray*.

**GGC Servers Are Not Warehouses.**  SEVEN argues that servers are "places" because they are "storage and delivery facilities" like "warehouses." (Opp. 14-15.)  SEVEN claims that the "only relevant difference" between a server and a warehouse is "the nature of the products being stored—physical merchandise versus digital content." (Opp. 15.)  But SEVEN ignores the most significant difference—a warehouse is a building (*i.e.,* a "place") and a server is not.  The Federal Circuit has already rejected the argument that a server may be a "virtual place" in the

---

[3]  SEVEN also fails to mention that the court in *In re Search Warrant No. 16-960-M-1 to Google* ultimately rejected Google's analogy and held that "[u]nlike paper documents, which have a tangible physical existence and location, electronic 'documents' are literally intangible and their location on a computer server in a foreign country is, in important ways, merely virtual." (Reply Ex. 1, 23 n. 16.)  This is consistent with the Federal Circuit's rejection of "virtual spaces" and "electronic communications" as "places" in *Cray*.

sense that it stores "digital content." *Cray*, 871 F.3d at 1362 (the "statute thus cannot be read to refer merely to a virtual space"). SEVEN does not dispute that ███████████████ ████████████████████████ and Section 1400(b) also "cannot be read to refer merely . . . to electronic communications from one person to another." *Cray*, 871 F.3d at 1362. The Federal Circuit acknowledged that today's businesses deal with data—as SEVEN accuses Google of doing—but held that this does not change the requirements of Section 1400(b):

> In this new era, not all corporations operate under a brick-and-mortar model. Business can be conducted virtually. . . . ***But, notwithstanding these changes*** . . . ***we must focus on the full and unchanged language of the statute.***

*Id.* at 1359. SEVEN also relies on *Federal Electric*, but, there, venue was based on a building that the defendant owned and advertised as its office, including in a local directory. 100 F. Supp. 8, 11 (S.D.N.Y. 1951). *Federal Electric* holds that venue requires a building, not a server.

**SEVEN's Irrelevant Distractions Should Be Disregarded.** The question of whether a server is a regular and established place of business is straightforward under *Cray*—a GGC server is not a place of business. Yet SEVEN devotes the majority of its brief, an expert declaration, and multiple exhibits to discussing ████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████ But no amount of attorney argument, expert opinion,[4] or source code will change the fact that a server is not "[a] building or a part of a building set apart for any purpose" or "quarters of any kind" and thus, not a "place." *Cray*, 871 F.3d at 1362.

████████████████████████████████████████████████████████

---

[4]  SEVEN failed to produce Dr. Goodrich's expert declaration, or even provide notice that Dr. Goodrich would be submitting a report, before the Court's deadline for venue discovery. Google objects to the belated expert opinion and disagrees with the statements made therein. Nevertheless, the opinions, even if taken as true, are irrelevant for the reasons stated herein.

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

███  But venue considers only the servers *in this District*, and there is no evidence showing that "a location within the Eastern District of Texas [is] important to the business performed." *Cray*, 871 F.3d at 1365.  To the contrary, the unrebutted testimony of Google's Rule 30(b)(6) witness establishes ████████

████████████████████████

████████████████████████

████████████  ████████  ████████

████████████████████████

████████████████████████

████████████████████████████. *See Land & Bay Gauging, L.L.C. v. Shor,* 623 F. App'x 674, 681 (5th Cir. 2015) (plaintiff's "labels and conclusions" are insufficient to survive a motion to dismiss).

**B.   The ISPs' Locations Do Not Establish Venue In This District**

SEVEN admits that the ████████████████████

████████████████████████

████████████████████  It is undisputed however that (1) Google and the ISPs are separate entities; ████████████████

████████████████████████

████████████████████████

████████████████████████

████████████████████████

5

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

███████████████████████████████████████

Grasping at straws, SEVEN resorts to arguing that the "rack space" that holds a GGC server is a "place" and that Google "leases" or "exercises attributes of possession and control" over these "rack spaces." (Opp. 20.) First, rack space is not a place of business. Rack space is literally the space in an ISP's server rack that holds computers. ███████████████ ███████████████████████████████████████ ███████████████████████████████████████ ███████████████. ISPs' rack space in this District is not, itself, a place of business—much less Google's place of business. There is no one to, for example, accept orders, make business decisions, or solicit new clients at a rack space. ███████████████████████ ███████████████████████████████. Indeed, "rack space" lacks at least one of the basic characteristics of a "place of business" in patent cases—an agent to accept service. *See* 28 U.S.C. § 1694 ("In a patent infringement action commenced in a district where the defendant . . . has a regular and established place of business, service of process. . . may be made upon his agent or agents conducting such business").

Second, Google does not "lease" or "control" the ISPs' rack space. ███████████ ██████████████████ but SEVEN's "lease" theory rests on a misapplication of New York law. SEVEN cites to *In re Stoltz* for the proposition that "a lease is a contract by which a rightful possessor of ***real property*** conveys the right to use and occupy that property in exchange for consideration." 315 F.3d 80, 89–90 (2d Cir. 2002) (internal citations omitted). *In re Stoltz* addresses "real property," not personal property. Neither a server rack nor

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

its rack space are real property. *See*, N.Y. REAL PROP. ACTIONS & PROCEEDINGS LAW § 111 (McKinney) ("real property" is "co-extensive in meaning with lands, tenements and hereditaments"). Even if rack space were real property—it is not—SEVEN ignores other necessary requirements for a lease. Under New York law, "[t]he central distinguishing characteristic of a lease is ***the surrender of absolute possession and control of property*** to another party for ***an agreed-upon rental***." *Davis v. Dinkins*, 206 A.D.2d 365, 366 (2d Dept. 1994). ▮

▮

Similar requirements apply to leases of personal property, defining such a lease as "the transfer of ***absolute control and possession*** of property at an agreed ***rental*** which differentiates a lease from other arrangements dealing with property rights." *Feder v. Caliguira*, 171 N.E.2d 316, 318 (N.Y. 1960) (holding that a restaurateur did not lease a jukebox even though the contract required the restaurateur to install the jukebox in his restaurant, supply its power, and ensure its "readiness for operation"). ▮

▮ *Feder*, 171 N.E.2d at 318–19 ("Of high significance is the fact that

▮

the defendant proprietor pays no rent for the juke box. . . . Were this a lease of the machine, the defendant would be required to pay rent for its use instead of deriving profit therefrom").

██████████████████████████████████████████████████

████████████████████████████ ██████ ██████████████

██████████████████████████████████████████████████

███████████████████████████████████████ but the server is not the rack space and falls outside the definition of "place" set forth in *Cray*. (Supra § I.A.)

Even if Google leased or controlled the rack spaces—it does not—these rack spaces do not satisfy the other *Cray* factors. ████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████) SEVEN points to the map available at peering.google.com, but the "dots" on that map correspond to the airport nearest to ████████████████ ███████ and *not* to any specific ISP's facility. (Opp. Ex. O, 34:20-24; Reply Ex. 3.) Viewing "the nature and activity of the alleged place of business of the defendant in the district *in comparison with* that of other places of business of" Google further demonstrates that rack space is not a Google place of business. *Cray,* 871 F.3d at 1363-64. Google's headquarters in California have offices (*i.e.*, "buildings") where tens of thousands of employees work and Google's name is prominently displayed. (Dkt. 63 (King Decl.) ¶ 8.) Google's website announces its office locations around the world. (Reply Ex. 4.) By contrast, SEVEN points to a

██████████████████████████████████████████████████

██████████████████████████████████████████████████

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

## II.   GOOGLE HAS NOT COMMITTED ANY ACTS OF INFRINGEMENT HERE

SEVEN concedes that (1) it did not plead a connection between any acts of infringement and any alleged "place of business" here and (2) it only alleged that *some* steps of the asserted method claims are performed in this District. (Opp. 24-29.)   SEVEN only disputes the application of controlling case law to these facts.  But Google provided significant legal authority on both points in its Motion (*see* Mot. 17-20) and it "is axiomatic that a method claim is directly infringed only if each step of the claimed method is performed." *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1329 (Fed. Cir. 2008).  Thus, SEVEN's allegations do not establish that Google has committed acts of infringement in this District.[6]

SEVEN fails to cite any case to support its proposition that acts of infringement are committed in a district where "at least one step" of a method claim is performed. (Opp. 11.) SEVEN calls the application of *NTP* "nonsensical," but SEVEN's speculative arguments do not overrule the clear directive of *NTP*:  no act of infringement occurs in the United States or in a district when the steps of infringement are performed outside. (Mot. 18.)  This does not eviscerate the venue statute as venue would still be proper in the district where the defendant resides.  SEVEN also argues that *NTP* dealt only with "the court's subject-matter jurisdiction over [method] claims." (Opp. 27.)  *NTP* has nothing to do with subject matter jurisdiction, but rather the effect of geographic location on the act of infringement.  418 F.3d 1282, 1317-18.

With respect to the '433 and '812 patents, SEVEN also fails to adequately plead indirect

---

[6]   For at least the '158 and '812 patents SEVEN also alleges that certain steps are only performed by third parties within the District, not Google. *See e.g.,* Dkt. 34 ¶¶ 49 (pointing to a user's "mobile device in this District"), 89 ("queries in this District" to users).  This allegedly infringing conduct is performed by someone other than Google, thus further demonstrating that the "acts of infringement requirement" is not met. Such allegations also constitute divided infringement for which Google is ultimately not liable. *See Akamai Techs., Inc v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015).

9

infringement. SEVEN has advanced no set of facts suggesting Google has pre-suit knowledge of these patents. Because venue is determined at the time of filing the complaint, post-filing indirect infringement cannot serve as the basis of any "acts of infringement." *Hoover Grp. Inc. v. Custom Metalcraft, Inc.*, 84 F.3d 1408, 1410 (Fed. Cir. 1996). SEVEN's conclusory reliance on knowledge "at least" as early as the filing of the complaint is similarly defective. SEVEN must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

Regardless of who bears the burden of proof on venue, SEVEN unjustifiably attempts to shift the burden on to Google to demonstrate *a lack* of pre-suit knowledge. (Opp. 29.) Federal Circuit law is clear that it is SEVEN's burden to plead and prove pre-suit knowledge. *See Manville Sales Corp. v. Paramount Systems, Inc.*, 917 F.2d 544, 553 (Fed. Cir. 1990). Finally, SEVEN requests in a footnote that the Court "exercise 'pendent venue,'" citing *McNeary-Calloway* and *Hsin*, neither of which address venue in patent cases after *TC Heartland.* Post-*TC Heartland* decisions have soundly rejected the idea that pendent venue exists for separate patent claims. *See Shure, Inc. v. ClearOne, Inc.,* No. 17-cv-3078, Dkt. 280 (N.D. Ill. Mar. 16, 2018).

### III.     SEVEN'S REQUEST FOR TRANSFER TO N.D. TEX. SHOULD BE REJECTED

SEVEN does not argue that transfer to the Northern District of California (NDCA) would be inappropriate and only offers only a few sentences in support of transfer to the Northern District of Texas. (Opp. 30.) But SEVEN does not claim that there are any sources of evidence there. SEVEN alleges that "Google conducts business in an office in Addison, Texas" (*id.*), but Google's relevant witnesses and evidence are located in the NDCA. (Opp. 21.) SEVEN also points to the *ZTE* case; but the transfer analysis proceeds on an "individualized, case-by-case" basis. *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964). Having failed to rebut Google's showing on transfer to the NDCA (Opp. 20-25), SEVEN cannot do so in sur-reply.

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

Dated: April 4, 2018                           Respectfully submitted,

/s/ Sean S. Pak
Charles K. Verhoeven
charlesverhoeven@quinnemanuel.com
Sean S. Pak
seanpak@quinnemanuel.com
Brian E. Mack
brianmack@quinnemanuel.com
Jonathan Tse
jonathantse@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel: 415-875-6600
Fax: 415-875-6700

Patrick D. Curran
patrickcurran@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Tel: 212-849-7000
Fax: 212-849-7100

Lance L. Yang
lanceyang@quinnemanuel.com
Miles D. Freeman
milesfreeman@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: 213-443-3000
Fax: 213-443-3100

Michael E. Jones
State Bar No. 10929400
mikejones@potterminton.com
POTTER MINTON LLP
110 N. College Avenue, Suite 500
Tyler, TX 75702
Telephone: (903) 597-8311
Facsimile: (903) 593-0846

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

*Attorneys for Google LLC*

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who have consented to electronic service are being served with a copy of this document via electronic mail on April 4, 2018.

*/s/ Miles D. Freeman*
Miles D. Freeman

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that the foregoing document and all supporting declarations and exhibits thereto are being filed under seal pursuant to the terms of the Protective Order (Dkt. 88).

*/s/ Miles D. Freeman*
Miles D. Freeman