# UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | |
|---|---|
| SEVEN NETWORKS, LLC,<br><br>                Plaintiff,<br><br>v.<br><br>GOOGLE LLC,<br><br>                Defendant. | CIVIL ACTION NO. 2:17-CV-442-JRG<br>LEAD CASE<br><br>PATENT CASE<br><br>JURY TRIAL DEMANDED |

## GOOGLE LLC'S RESPONSE TO SEVEN'S MOTION TO COMPEL GOOGLE TO PRODUCE SOURCE CODE

The issue before the Court is whether Google should be required to produce additional highly confidential, proprietary source code that has no relevance to SEVEN's infringement contentions. To be clear, Google has not refused to produce the relevant source code in this case, and has gone to great lengths to investigate SEVEN's requests for additional code and often produced source code despite Google's objections regarding the relevance and proportionality of SEVEN's requests. For example, beginning on November 15, 2017, Google has produced all accused versions of the Android operating system code, each of which contains millions of lines of code, as well as ███████████████████████████████████ tied to functionality accused in SEVEN's contentions. SEVEN did not raise any allegations of missing code until April 2018. Since then, Google has continued to produce additional code on the occasions when SEVEN has made coherent requests, even when it was unclear how the code was relevant. Where Google could not understand SEVEN's requests for additional code because they were vague or incoherent, Google made requests for more information, many of which SEVEN simply ignored.

Suddenly, in late June, SEVEN pivoted from asking for specific portions of code that its experts alleged they needed, to broadly asking for "the entirety" of source codebases, regardless of the fact that these codebases are massive and include large amounts of code that is irrelevant. Then, on July 16, 2018, SEVEN for the first time requested "the entire device-side code for the Nexus and Pixel products," which would include *every application* on *every accused device*. But, SEVEN's infringement contentions only identify a handful of applications, for which Google has already produced the source code. SEVEN itself admits that "[t]he patents at issue are directed to conserving battery power on mobile devices, customizing mobile applications to the specifications of a user's device, [and] providing network services to mobile devices."

Clearly, not every feature and function that exists on a phone or tablet is relevant, and SEVEN has no legitimate need to look at the source code for *each and every application* that is loaded on each phone or tablet. SEVEN's only purported justification for its undisputably overbroad demands is that "the close of discovery [is] rapidly approaching," but SEVEN's own failure to inspect and request code in a timely manner does not justify the extraordinary relief of forcing Google to produce entire collections of proprietary code that have no relevance to this case. "[T]he scope of discovery" is properly limited to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," thus, Google respectfully requests that the Court deny SEVEN's Motion. Fed. R. Civ. P. 26(b)(1).

## I.   BACKGROUND

### A.   Leading up to SEVEN's Motion, Google Had Already Produced or Otherwise Responded to SEVEN's Specific Requests.

SEVEN's allegations that it has requested code "close to half a dozen times" and its suggestion that Google has somehow delayed in producing code is belied by the record. (Mot. at 2-3.) Google initially produced source code on November 15, 2017. (Decl. Yang at ¶ 2.) SEVEN did not review that code for over three months, until February 28, 2018 (Decl. Yang at ¶ 3), and waited until April 2018 before making any requests for additional code. (Decl. Yang at ¶ 4.) On several occasions, Google asked SEVEN to supplement its overbroad and vague requests with sufficient detail to allow Google to be able to meaningfully investigate SEVEN's requests. For example, Google sent a letter on May 11, 2018 asking for information to help Google respond to SEVEN's requests. (Decl. Yang at ¶ 5.) SEVEN did not respond. (*Id.*)

Not until June 15, after over another month of silence from SEVEN regarding source code, SEVEN produced a 10-page table with a litany of source code requests. (Decl. Yang at ¶ 6.) This was the first time SEVEN had provided source code requests with at least some level of

specificity (*e.g.*, file names). Google diligently investigated and responded to each request on June 25, 2018. (*Id.*) In many cases, where Google could understand what SEVEN was requesting, Google produced the code despite its objections to relevance. Google identified other requests that were problematic because they were incoherent or requested code that appeared beyond SEVEN's contentions, and offered to meet-and-confer to see if it could better understand those requests so those issues could be resolved. The parties then met-and-conferred the next day on June 26, 2018. (Decl. Yang at ¶ 7.) During that meet-and-confer, rather than trying to resolve these specific issues, SEVEN instead indicated that it did not want to discuss the specific code requests that it had made on June 15. Rather, SEVEN took the extreme position that it was going to move to compel Google to produce "the entirety" of certain codebases—as defined solely by SEVEN—regardless of whether Google was able to resolve the outstanding issues with SEVEN's June 15th requests. (*Id.*) Increasing the size and scope of its demands even further, on July 16, 2018, SEVEN for the first time requested "the entire device-side code for the Nexus and Pixel products" because it would allegedly be the "more efficient approach." (Ex. 1.)

Around 11 pm on July 26, 2018 (less than a week before SEVEN filed its Motion), SEVEN returned to making specific requests for source code. (Ex. 2.) Google produced this requested code the very next day, further demonstrating its willingness to respond to reasonable source code discovery requests. (*Id.*) Thus, prior to filing its Motion, SEVEN has only made requests for specific portions of code that Google could decipher on two occasions (on June 15 and July 26), which Google diligently provided or otherwise followed-up on with SEVEN.

      **B.**      **Google Has Already Produced or Offered to Produce the Majority of Source Code Requested by SEVEN's Motion.**

With respect to SEVEN's request for the "server code for . . . the Google Play Console"

3

(Mot. at 1), Google had already produced the server code for the Google Play Console on the review computer. (Decl. Yang at ¶ 10.) During the parties' meet-and-confer on August 3, SEVEN committed to checking with its expert to confirm what it contended was still at issue. (Decl. Yang at ¶ 11.) Therefore, SEVEN's request regarding the Google Play Console is not ripe for consideration.

With respect to SEVEN's request for the "server code for Gmail" (Mot. at 1), since SEVEN filed its Motion, Google has continued to try to meet and confer with SEVEN, and in an attempt to resolve this issue without burdening the Court, offered to produce ▇▇▇▇▇▇ ▇▇▇▇▇▇ for Gmail (▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇) and the Google Play Store (▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇), despite the fact that this code is not relevant to SEVEN's contentions. Because ▇▇▇▇▇▇▇▇ is large and complex, to the extent that any unanticipated ▇▇▇▇▇▇▇▇▇▇ are not included in ▇▇▇▇▇▇▇▇▇▇ for Gmail, Google has also offered to investigate, and will not unreasonably withhold producing, any such ▇▇▇▇▇▇▇▇ that are specifically identified by SEVEN in good faith as necessary for its case.

With respect to SEVEN's request for all "device-side code for accused Nexus and Pixel products," this would include the source code for the entirety of the accused versions of the Android operating system, the third-party drivers for hardware components on each device, as well as the code for *every* application that comes on a device. Google has already produced all of the source code for the accused versions of the Android operating system. Google has offered to produce the source code for the Play Movies & TV, Play Music, and Play Books applications to resolve this request. Although SEVEN had made overbroad requests for the code for all applications on the accused devices in the past, SEVEN identified these specific applications for the first time in its Motion. (Mot. at 2, n. 1.) In response, Google has offered to provide this

4

code to resolve this dispute.

**II.    ARGUMENT**

    **A.    The Majority of SEVEN's Motion Should Be Denied As Moot.**

The majority of SEVEN's Motion should be denied because it is moot. Google has already produced the server code for the Google Play Console, and offered to produce ████ ████ for Gmail and the Google Play Store, rendering all those issues moot.

Regarding the alleged missing files identified by SEVEN in footnote 1 of the Motion, to the extent that Google can understand these requests, Google either has already produced or has offered to produce this code. Google has already offered to produce the application code for "Play Movies & TV, Play Music, [and] Play Books." (Decl. Yang at ¶ 12.)

Beyond these specific code requests, SEVEN also appears to be moving for production of every version of every line of code that Google has produced. This request is overly broad, unduly burdensome, and disproportionate to the needs of this case. For example, a sizable portion of the code includes large libraries that are under continuous development. In order to resolve this issue, Google has been working in good faith to negotiate a stipulation that would identify particular versions of code that SEVEN could treat as representative of all the others for purposes of this case, which would obviate the need for production of all versions of code. Thus, SEVEN's request is not ripe and requiring Google to produce all versions of code would be premature and extremely burdensome.

    **B.    SEVEN's Remaining Requests Should Be Denied as Overly Broad, Irrelevant, and Not Proportional to the Needs of the Case.**

SEVEN's remaining requests for all "device-side code for the accused Nexus and Pixel products" and the "application code for Google Drive, Google Maps, and Google+" are overly broad, not reasonably tethered to its infringement contentions, and should be denied.

SEVEN's request for *all* "device-side code for the accused Nexus and Pixel products," encompasses the source code for the entirety of the Android operating system, the third-party drivers for hardware components on each device, as well as the code for *every* application that comes on a device. Such a sweeping request, demanding *all* source code without even attempting to tailor the request to the accused functionalities that are properly at issue in the case, is clearly improper and not required by this Court's Local Rules. *See* L.R. CV-26(d).

To be clear, Google is not withholding the device-side code that is called out in SEVEN's contentions. For example, Google has already produced all accused versions of the Android operating system code, each of which is millions of lines of code. (Decl. Yang at ¶ 13.) Google has also produced additional proprietary device-side code that could potentially be relevant to SEVEN's contentions, including for example, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. (*Id.*) Google has also made available the device-side code for the applications that are identified in SEVEN's contentions, including the Google Play Store and Hangouts applications. Moreover, Google has already offered to produce the Play Movies & TV, Play Music, and Play Books applications, which SEVEN specifically requested for the first time in its Motion.

But SEVEN improperly demands more. SEVEN's request for *all* device-side code, improperly sweeps in additional code that has no relevance to this case. For example, SEVEN's asserted patents do not involve hardware drivers and SEVEN has not accused any driver functionality of being at issue in this case. Moreover, Google's devices come with a host of applications, the vast majority of which are not mentioned in SEVEN's contentions. Requiring Google to produce code for every application and driver that exists on a product, across multiple products and versions, is overbroad, improper, and not proportional to the needs of the case.

Nor does SEVEN provide any legitimate justification for its sweepingly overbroad

demand for the source code for every application and driver that comes on every accused device. The best it can muster is a conclusory statement that "SEVEN has explicitly accused Nexus and Pixel products of infringing seven of the ten asserted patents. But, SEVEN admits elsewhere that its asserted patents only target a few specific technologies: "[t]he patents at issue are directed to conserving battery power on mobile devices, customizing mobile applications to the specifications of a user's device, [and] providing network services to mobile devices." (Mot. at 2.) The fact that SEVEN accused specific, narrow functionality within a phone or tablet does not entitle SEVEN to all of the source code for the entire product. *See*, *e.g*., *CooperVision, Inc. v. Ciba Vision Corp.*, No. 2:06-cv-149, 2007 WL 2264848, at *3 (E.D. Tex. Aug. 6, 2007) (denying motion to compel information that was not connected to plaintiff's infringement contentions); *Uniloc USA, Inc. et al v. Apple Inc*., 4-18-cv-00362, Order at 6 (CAND April 30, 2018) (rejecting plaintiff's broad request for source code and rejecting its "demand that Apple produce all of its iOS and watchOS source code.'")

The Court should also deny SEVEN's requests for the "application code for Google Drive, Google Maps, and Google+," because these applications are not accused in its contentions. Although SEVEN asserts in its Motion that these applications are "[r]elevant to infringement of at least the '952, '812, '127, and '600 patents" and that "these apps use the accused functionalities" (Mot. at 5), Google Drive, Google Maps, and Google+ are not mentioned anywhere in its contentions for the '952, '127, and '600 patents. SEVEN makes only a single citation to its contentions to support its position (*see* Ex. A cited in fn. 3 of the Motion), but that citation refers to SEVEN's contentions for the '812 patent, ***which SEVEN has dropped***.

7

| | |
|---|---|
| Dated: August 7, 2018 | Respectfully submitted by:<br><br>*/s/ Charles K. Verhoeven, with permission by, Michael E. Jones*<br>Charles K. Verhoeven<br>charlesverhoeven@quinnemanuel.com<br>Sean S. Pak<br>seanpak@quinnemanuel.com<br>Brian E. Mack brianmack@quinnemanuel.com<br>Jonathan Tse jonathantse@quinnemanuel.com<br>QUINN EMANUEL URQUHART & SULLIVAN, LLP 50 California Street, 22nd Floor San Francisco, CA 94111 Tel: 415-875-6600 Fax: 415-875-6700<br><br>Patrick D. Curran<br>patrickcurran@quinnemanuel.com<br>QUINN EMANUEL URQUHART & SULLIVAN, LLP<br>51 Madison Avenue, 22nd Floor<br>New York, NY 10010<br>Tel: 212-849-7000<br>Fax: 212-849-7100<br><br>Lance Yang<br>lanceyang@quinnemanuel.com<br>Miles D. Freeman<br>milesfreeman@quinnemanuel.com<br>QUINN EMANUEL URQUHART & SULLIVAN, LLP<br>865 S. Figueroa Street, 10th Floor<br>Los Angeles, CA 90017<br>Tel: 213-443-3000<br>Fax: 213-443-3100<br><br>Michael E. Jones<br>State Bar No. 10929400<br>mikejones@potterminton.com<br>Patrick C. Clutter<br>Patrickclutter@potterminton.com<br>POTTER MINTON LLP<br>110 N. College Avenue, Suite 500<br>Tyler, TX 75702<br>Telephone: (903) 597-8311<br>Facsimile: (903) 593-0846<br><br>*Attorneys for Google LLC* |

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via electronic mail on August 7, 2018.

I also hereby certify that all counsel of record who have consented to electronic service are being served with a notice of filing of this document, under seal, pursuant to L.R. CV-5(a)(7) on August 7, 2018.

*/s/ Michael E. Jones*

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I certify that the foregoing document is authorized to be filed under seal pursuant to the Protective Order entered in this case.

*/s/ Michael E. Jones*