**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| SEVEN NETWORKS, LLC, | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO.  2:17-CV-00442-JRG |
| | § | |
| | § | LEAD CASE |
| v. | § | |
| | § | |
| GOOGLE LLC, | § | |
| | § | |
| Defendant. | § | |
| | | |
| SEVEN NETWORKS, LLC, | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO.  2:17-CV-00441-JRG |
| | § | |
| | § | CONSOLIDATED MEMBER CASE |
| v. | § | |
| | § | |
| SAMSUNG ELECTRONICS CO., LTD., | § | |
| SAMSUNG ELECTRONICS AMERICA, | § | |
| INC., | § | |
| | § | |
| Defendants. | § | |

<u>**ORDER DENYING DEFENDANTS' MOTIONS TO TRANSFER VENUE**</u>
<u>**PURSUANT TO 28 U.S.C. § 1404**</u>

Before the Court are two motions to transfer venue to the Northern District of California

pursuant to 28 U.S.C. § 1404(a) filed by Defendants in the above-captioned cases.  (2:17-cv-

00442, Dkt. No. 126; 2:17-cv-00441, Dkt. No. 45) (collectively, "the Motions").  The Court heard

argument on the Motions on June 1, 2018, wherein the Parties addressed the commonalities and

identified for the Court any points of difference between the Motions.  (2:17-cv-00442, Dkt. No.

192).  Having considered the Motions, the Court is of the opinion that each Motion should be

**DENIED** for the reasons set forth herein.  Given the commonality spanning these Motions, the Court first addresses the -442 Motion (Dkt. No. 126) in its entirety, then addresses the points of difference in the -441 Motion, none of which warrant reaching a different ultimate conclusion.

## I.  LEGAL STANDARD

If venue in the district in which the case is originally filed is proper, the court may nonetheless transfer a case based on "the convenience of parties and witnesses" to another district where the case could have been brought. 28 U.S.C. § 1404(a).  Parties seeking a change of venue should act with "reasonable promptness" in bringing such a motion.  *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989).  The first inquiry when analyzing eligibility for § 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed."  *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*").  "Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b) (2012); *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1519 (2017) ("§ 1400(b) 'is the sole and exclusive provision controlling venue in patent infringement actions.'" (quoting *Fourco Glass Co. v. Transmirra Prods. Corp.*, 353 U.S. 222, 229 (1957))).  For purposes of § 1400(b), a domestic corporation resides only in its state of incorporation. *TC Heartland*, 137 S. Ct. at 1521.

Once the initial threshold of proving the proposed transferee district is one where the suit might have properly been brought is met, courts analyze both public and private factors relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the case.  *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009).  The private factors are: (1) the relative

ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Volkswagen I*, 371 F.3d at 203 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)).  The public factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Id.*  These factors are to be decided based on "the situation which existed when suit was instituted." *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960). Though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314–15 (5th Cir. 2008) ("*Volkswagen II*").

While a plaintiff's choice of venue is not an express factor in this analysis, the appropriate deference afforded to the plaintiff's choice is reflected by the defendant's elevated burden of proof. *Id.* at 315. In order to support its claim for a transfer under § 1404(a), the moving defendant must demonstrate that the transferee venue is "clearly more convenient" than the venue chosen by the plaintiff. *Id.*; *accord In re Apple Inc.*, 456 F. App'x 907, 909 (Fed. Cir. 2012) (a movant must "meet its burden of demonstrating [] that the transferee venue is 'clearly more convenient.'"); *id.* at 908 (transfer under § 1404 is mandated where venue is "far more convenient and fair.").  Absent such a showing, however, the plaintiff's choice is to be respected. *Volkswagen II*, 545 F.3d at 314–15.

## II.  DISCUSSION (-442 MOTION)

Google LLC ("Google") objected to the propriety of venue in this District, (2:17-cv-00442, Dkt. No. 125); Samsung Electronics Co., Ltd., and Samsung Electronics America, Inc., (collectively, "Samsung" or "the Samsung Defendants") did not (2:17-cv-441, Dkt. No 27 at ¶ 7 ("Samsung does not contest, solely for the purposes of the present action, whether venue over them properly lies in this District, but Samsung denies that venue in this District is convenient.")).  The Court denied Google's Motion Dismiss or, in the Alternative, Transfer under 28 U.S.C. § 1406 for Improper Venue, holding that venue was proper in this District as to Google.  (Dkt. No. 235).

Google submits that it is subject to suit in the Northern District of California, (Dkt. No. 126 at 9), and SEVEN Networks, LLC, ("SEVEN") does not disagree.  (*See generally* Dkt. No. 142).  The Court finds that this action could have been brought in the Northern District of California.   Having determined that this case could have been brought in the proposed transferee district, the Court proceeds to the analysis of the private and public factors considered in analyzing the interests of justice under § 1404.  As noted above, the Court first analyzes the relevant § 1404 factors as to Google and then proceeds to address identified differences as to the Samsung Defendants.[1]

### A.  Private Factors

i.    *Relative Ease of Access to Sources of Proof*

In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored. *Volkswagen II*, 545 F.3d at 316. For this factor to weigh in favor of transfer, Google must show that transfer to the Northern District of

---

[1] Accordingly, succeeding docket citations are to the 2:17-cv-442 docket unless otherwise noted.

California will result in more convenient access to sources of proof. *See Diem LLC v. BigCommerce, Inc.*, No. 6:17-cv-186, 2017 WL 6729907, at *2 (E.D. Tex. Dec. 28, 2017).

Google argues that "much of the evidence relating to the Accused Products is located in or maintained by Google's Northern California offices." (Dkt. No. 126 at 10).  However, "the vast majority" of Google's electronic records "are hosted in secure servers *managed from* its Northern California offices," not *stored in* its Northern California offices. (*Id.* at 6).  Indeed, Google's data storage centers are located in South Carolina, Iowa, Georgia, Alabama, North Carolina, Oklahoma, Tennessee, and Oregon—with the exception of the single data storage center in Oregon, every other Google data storage center in the United States is located closer to the Eastern District of Texas. (Dkt. No. 89-19 (listing data center locations)).  Google does not address this issue in its reply (or during the hearing on this Motion)[2] beyond a single citation *In re Google Inc.*, No. 2017-107, 2017 WL 977038, at *3 (Fed. Cir. Feb. 23, 2017), which Google characterizes as having "similar facts" in that "Google employees who worked on the accused products and had knowledge of the marketing and financials of these products were located in the NDCA, the vast majority of Google's relevant documents were hosted on servers managed from there, and prior art witnesses were there." (Dkt. No. 149 at 1).  This is unavailing.

---

[2] (Dkt. No. 192 at 22:8–14 ([MR. VERHOVEN]: "Moving forward, relative ease of access to sources of proof. And here we're talking about documents. . . . I'm going to pass by the parties' documents and just talk about -- well, I'm going to pass by Google's documents and not -- not present argument beyond our briefs on where Google's documents are located.").  Google did state that it had "provided" source code in the Northern District and that "inspections have all been in the Northern District." (*Id.* at 22:20–24).  This does not constitute a source of proof under the first private factor.  As this Court recently noted in addressing a motion to transfer pursuant to § 1404(a), source code which resided in Sweden but was produced in Texas was not properly considered to be "in Texas" for purposes of the analysis: "Just as shuffling of resources pre-suit in an attempt to alter venue is disapproved of, so to, then, must post-filing litigation conveniences be ignored in the venue analysis.  This conclusion is necessitated by the requirement that 'whether transfer is appropriate is determined at the time of filing.'" *Intellectual Ventures I v. T-Mobile USA, Inc., et al.*, 2:17-cv-577-JRG, Dkt. No. 108 at 6–7 (citations omitted).  Here, the production of the source code has been in the Northern District, however, the source code assuredly resides elsewhere as demonstrated by SEVEN and not rebutted by Google.

In that case,[3] the Federal Circuit addressed *only* a comparison of Google's employees "in particular those responsible for projects relating to the accused products" and Eolas's "single employee currently residing in the Eastern District of Texas." *In re Google*, 2017 WL 977038, at *3. There was **no discussion** of Google's *remote* access and management of its data storage servers in the Federal Circuit's grant of mandamus. Accordingly, it is improper for Google to assert that the Federal Circuit's consideration of that case included considering Google's relevant documents hosted on data storage servers that are *only managed* from the Northern District of California. Indeed, Google's petition for writ of mandamus in that case, which Google cites in its Reply, clearly demonstrates its data storage centers' failure to meet the requirements of the Fifth Circuit's first *Volkswagen* factor, mirroring its briefing in this case: "the vast majority of Google's documents related to its accused products are hosted in secure servers **ultimately managed** from its Mountain View offices." *In re Google Inc.*, No. 17-107, Dkt. 2-1 at 6-8 (Fed. Cir. Dec. 7, 2016).

"Despite technological advances in transportation of electronic documents, physical accessibility to sources of proof continues to be a private interest factor to be considered." *Implicit v. Trend Micro*, No. 6:16-cv-00080-JRG, 2016 U.S. Dist. LEXIS 191571, at *5 (E.D. Tex. Sep. 1, 2016) (citing *Volkswagen II*, 545 F.3d at 316); *In re TS Tech United States Corp.*, 551 F.3d 1315, 1321 (Fed. Cir. 2008) ("[A]s the Fifth Circuit explained in *Volkswagen II*, the fact 'that access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments does not render this factor superfluous.'"). Accordingly, the physical location of sources of proof is properly considered by this Court.[4]

---

[3] The Court notes the conduct of Google which appears to mischaracterize and misconstrue applicable case law in its briefing on this Motion. Such conduct may be considered an attempt to mislead the Court and may contribute to a subsequent finding of exceptionality as improper litigation conduct.

[4] As this Court has previously noted, venue analysis is concerned *only* with the presentation of evidence *at and during*

Google points to various employee witnesses as sources of proof.  As this Court has explained before, witnesses are not sources of proof; sources of proof are sources of "document[ary] and physical evidence."  *Volkswagen II*, 545 F.3d at 316 ("That access to some sources of proof presents a lesser inconvenience now than it might have absent recent developments does not render this factor superfluous. **All of the documents and physical evidence relating to the accident are located in the Dallas Division, as is the collision site.**") (emphasis added); *see In re TS Tech USA Corp.*, 551 F.3d 1315, 1321 (Fed. Cir. 2008) (considering only "physical and documentary evidence" in analyzing the first factor under Fifth Circuit precedent); *Implicit, LLC v. Palo Alto Networks, Inc.*, No. 6:17-CV-00336-JRG, 2018 WL 1942411, at *3 (E.D. Tex. Feb. 20, 2018) ("Implicit argues that PAN has conceded that the relevant documents and source code maintained on its servers are equally accessible regardless of location. However, as discussed, it is not the accessibility of the documents but their actual physical location (here, where the servers are located).  That is the focus of this inquiry.") (citing *In re TS Tech*, 551 F.3d at 1321) (internal quotations omitted); *Spencer v. Allstate Ins. Co.*, No. 2:16-CV-605-JRG, 2016 WL 6879598, at *2 (E.D. Tex. Nov. 22, 2016). ("Despite technological advances in transportation of electronic documents, physical accessibility to sources of proof continues to be a private interest factor to be considered.") (citing *Volkswagen II*, 545 F.3d at 316, and *In re TS Tech*, 551 F.3d at 1320–21).  Accordingly, Google's identified witnesses are properly considered under the second or third private factor, but not here.

---

*trial. AGIS Software Dev. LLC v. Huawei Device USA Inc.*, No. 2:17-cv-00513-JRG, 2018 WL 2329752, at *3 (E.D. Tex. May 23, 2018) ("[T]he inquiry regarding access to sources of proof correlates to production and presentation to the jury at trial." (citing *Volkswagen II*, 545 F.3d at 316)); *accord Leroy v. Great W. United Corp.*, 443 U.S. 173, 183–84, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979) ("In most instances, the purpose of statutorily specified venue is to protect the defendant against the risk that a plaintiff will select an unfair or inconvenient *place of trial*.") (emphasis added). The same principle holds true for consideration of documentary evidence under the first factor, i.e., bringing physical materials to the Court for exhibition before the factfinder. *See In re TS Tech USA Corp.*, 551 F.3d 1315, 1321 (Fed. Cir. 2008) (considering only "physical and documentary evidence" in analyzing the first factor).

Next, Google argues that "[g]iven that most of the employees with relevant knowledge of the Accused Products are based in [the] NDCA, any hard copies of documents and employee notebooks that might exist would likely be located there." (Dkt. No. 126 at 6).  This is the kind of documentary evidence which may be considered a source of proof and is properly analyzed under this factor.  SEVEN Networks LLC ("SEVEN") argues that this alleged source of proof is speculative, placing the emphasis on Google's admission that "any hard copies of documents and employee notebooks *that might exist* *would likely be located* [in the Northern District of California]." (*Id*. (emphasis added); Dkt. No. 142 at 6 (citing Dkt. No. 126 at 6)).  That evidence may or might exist is not enough, especially since Google fails to identify any specific documents. *See J2 Global Commc'ns, Inc. v. Protus IP Sols., Inc.*, No. 6:08-cv-211, 2009 WL 440525, at *2 (E.D. Tex. Feb. 20, 2009) ("A movant must identify sources of proof with enough specificity that a court can determine whether transfer will increase the convenience of the parties.").

Finally, Google submits that "[m]any of the inventors [of the patents-in-suit], as well as SEVEN's original founders, are located in [the] NDCA," placing "information relating to the conception and reduction to practice of the claimed inventions" in the Northern District of California, and that "[t]hese inventors may also have critical information regarding claim interpretation, infringement, and the validity of the asserted patents." (Dkt. No. 126 at 10).  Google also argues that "[k]ey documentary evidence regarding prior art is also located in [the] NDCA, including evidence relating to NVIDIA prior art, VASCO prior art, and Rydell's PortWise system and prior art systems at HP, Faith West, and Symantec are also located in [the] NDCA." (*Id*.) SEVEN argues "that inventors in the Northern District of California 'may' have 'information regarding claim interpretation, infringement, and the validity of the asserted patents,'" is unduly speculative.  (Dkt. No. 142 at 6).  However, Google points out that "[t]he inventors, Fortress, and

prior artists Rydell, Nokia, and Redhat, all in [the] NDCA, have already produced documents. And SEVEN lists the inventors on its Initial Disclosures." (Dkt. No. 149 at 3).  SEVEN responds that while "these individuals reside in California[, that] does not mean the evidence is also located there" and notes that Google had "one Nokia entity" "produce documents in Dallas." (Dkt. No. 156 at 4).

In general, this series of arguments typifies the need for of specificity in support of motions to transfer under § 1404(a).  Parties must *specifically identify* the relevant sources of proof (and why they are relevant), and *specifically identify* the physical location of those sources of proof. Without doing so, no court is able to make an informed inquiry into the true convenience of the parties.  *Utterback v. Trustmark Nat'l Bank*, 716 F. App'x. 241, 245 n.10 (5th Cir. 2017), *cert. denied* 138 S. Ct. 1699 (2018) ("Utterback fails to identify with any specificity which witnesses and what evidence would be inaccessible in Mississippi but readily available in Florida. Without more, we cannot credit such vague and conclusional assertions.").  Google's speculative identification of employee documentary evidence which "might exist" and speculation that the inventors "may" have "information" about various topics does not assist the Court in this inquiry, especially given the extensive time that Google has had to develop such specificity—namely the additional month of specifically designated venue discovery coinciding with normal discovery. Further, Google's identification of third-party sources of proof as residing in the Northern District of California while their documentary production is occurring in a district which neighbors this District is troublesome and prevents the Court from understanding whether Google's identification of locations are the locations of third party sources of proof or the locations of the owner of the source of proof—two very different propositions.  (*See* Dkt. No. 156 at 4).

Even so, the Court finds that Google has demonstrated a likelihood that *some* documentary evidence is likely to be found in the Northern District of California, and the Court will not ignore that likelihood.  As in prior similar situations, the Court finds that "[w]hile greater specificity would certainly strengthen [Google's] position, they have made a relevant showing which the Court considers, at some level, to be probative."  *Oyster Optics, LLC v. Coriant Am. Inc.*, No. 2:16-cv-1302, 2017 WL 4225202, at *6 (E.D. Tex. Sept. 22, 2017).

Turning now to SEVEN's identified sources of proof,[5] "SEVEN's documents—both hard copy and electronic—are located in this District," comprising "249 bankers boxes of company records including, among other things" "prosecution-related files, certified copies of some of the older patents-in-suit, and customer contracts related to SEVEN's products." (Dkt. No. 142 at 3–4).  "SEVEN also maintains its electronic records at its headquarters in Marshall." (*Id*. at 4)  This documentation includes "[t]echnical documentation related to the design, development, and operation of SEVEN's products—including those that practice the asserted patents—such as source code, analytics, debugging information, and support data reside on SEVEN's servers in Marshall." (*Id*.)  "SEVEN's servers in Marshall also handle email traffic and store electronic records related to SEVEN's operation, finances, sales, human resources, engineering, intellectual property, corporate facilities, marketing, operations, product management, and legal activities," and "evidence related to the conception, reduction to practice, and diligence regarding the inventions claimed by the patents-in-suit is located in Marshall as well." (*Id*.)

Google states that SEVEN's "source code, analytics, debugging information, and support data" has not been produced by SEVEN.  The Court supposes this statement is intended to demonstrate irrelevance.  (Dkt. No. 149 at 2).  This argument is neither clear nor persuasive.

---

[5] Google attempts to address SEVEN's employees under this factor—they are more properly addressed under either the second or third factor, as explained *supra*.

Google also argues that SEVEN's contention that transfer would impose a significant and unnecessary burden on SEVEN to transport documents from Marshall to the Northern District of California should be disregarded as SEVEN's Rule 30(b)(6) witness "admitted that it would not cost much." (Dkt. No. 149 at 2). This is an ironic position to take by a party for whom the vast majority of its documentary evidence is, as discussed above, merely "managed" from its home district. Further, in reality, Google's entirely digital repository of documentary evidence is far more easily transported than are SEVEN's 249 boxes of documents. The Court repeats: this is not the test. In order to ensure that the requirements of current precedent are faithfully followed and the first private interest factor of the § 1404(a) analysis is not rendered superfluous by advances in digital information technology, the Court *must* consider the location of the evidentiary sources of proof. *See supra* at 6–7.

While Google notes that "SEVEN has also not identified why these boxes even need to be in [the] NDCA," (Dkt. No. 149 at 2), that is not SEVEN's burden; it is Google who bears the significant burden to show that the asserted transferee district is "clearly more convenient." *In re Apple Inc.*, 456 F. App'x at 909. SEVEN has identified a relevant evidentiary source of proof and Google has stopped short of demonstrating that this source of proof is not relevant.[6] This is sufficient to permit the Court to consider it in the evaluation of this factor.

---

[6] Google presented an affidavit in support of its Motion which discusses Google's inspection of the boxes and appears to argue that the volume of documents in SEVEN's 249 bankers boxes is due to non-relevant information being included in the document repository. (Dkt. No. 126-17 at ¶ 5 ("[T]he volume of these documents was the result of records such as these described above being included. Such records do not appear to be relevant to infringement issues or invalidity issues concerning the patents-in-suit.")). It is certainly possible that not all of the records are relevant— in the Court's experience, rarely is every document in every identified source of proof relevant to the case at hand. However, Google does not state unequivocally that there are no relevant documents; rather than doing so, Google seems to focus only on those documents which are not relevant in an attempt to make it seem as though there are no relevant documents in the source of proof. (*Id*. at ¶ 3 ("we noted, that the documents produced *included* the following . . . .") (emphasis added)). Regardless of whether there are some, or even many, irrelevant documents in the source of proof, SEVEN has provided affidavits supporting a finding of relevance and Google has not disproven the inclusion of facially relevant documentation within the documents stored in this District. (*See* Dkt. No. 142-1 ("These records include information about SEVEN's corporate structure, accounts and finances, taxes, human resources, payroll, presentations to the board of directors, patent prosecution, patents, customer and vendor

Google also argues that this evidentiary source of proof should be disregarded because "these boxes were moved a mere 71 days prior to the filing of this lawsuit."  (Dkt. No. 126 at 11; Dkt. No. 126-4).  "Section 1404(a) 'should be construed to prevent parties who are opposed to a change of venue from defeating a transfer which, but for their own deliberate acts or omissions, would be proper, convenient and just.'  A plaintiff's attempts to manipulate venue in anticipation of litigation or a motion to transfer falls squarely within these prohibited activities."  *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1337 (Fed. Cir. 2009) (citation omitted).

While the Court takes allegations of venue manipulation seriously, the situation here, however, defies characterization as manipulation—if anything, the record reflects the opposite. The Federal Circuit cautions that where a plaintiff's "presence in Texas appears to be recent, ephemeral, and an artifact of litigation," courts should not be misled.  *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1381 (Fed. Cir. 2010); *In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011) ("We further explained that, similar to Allvoice's offices here, the offices in *Zimmer* staffed no employees, were recent, ephemeral, and a construct for litigation and appeared to exist for no other purpose than to manipulate venue.").  The facts here are as disparate as they are supportive of finding a local interest in this litigation, addressed *infra* at Part II.A.iv.  It is undisputed that SEVEN maintains its global corporate headquarters in Marshall, Texas, and that headquarters has resided in Marshall, Texas, for years.  (Dkt. No. 142-1 at ¶ 5).  SEVEN has no other offices in the United States.[7]  SEVEN has nine employees in its Marshall office.  (*Id*. at ¶ 19).  The Court does find the timing of the arrival of the documents from "the West Coast" to be worthy of questioning,[8]

---

agreements, software licenses, legal matters, and other records regarding SEVEN's operations. Evidence related to the conception, reduction to practice, and diligence regarding the inventions claimed by the patents-in-suit is also located in Marshall.")).

[7] SEVEN's corporate website indicates additional offices in China, Finland, and Ireland.  *Available at* https://www.seven.com/contact.php.

[8] (Dkt. No. 126-5, Keyvan Shahrdar (Director of Product Management for SEVEN) Depo. Tr. at 76:20–21).

but timing alone in the face of movement of corporate documents to the only American corporate office is not sufficient to establish venue manipulation.  At most, the Court would simply not consider the documents in its analysis.[9]  The Court declines to do so for the reasons provided above.

Even if the bankers boxes were not considered, Google does not present persuasive argument as to why SEVEN's other primary source of documentary evidence, its electronic document repository, should be similarly disregarded.[10]  "SEVEN [] maintains its electronic records at its headquarters in Marshall."  (Dkt. No. 142-1 at 16).  Indeed, Google does not meaningfully address SEVEN's assertion that its electronic records contain "[t]echnical documentation related to the design, development, and operation of SEVEN's products, . . . email traffic and [] electronic records related to SEVEN's operation, finances, sales, human resources, engineering, intellectual property, corporate facilities, marketing, operations, product management, and legal activities," and this information "reside[s] on SEVEN's servers in Marshall."  (*Id.* at ¶ 16; Dkt. No. 142-1 at ¶ 14 ("SEVEN's records and documents are stored and maintained in this District, either in hard copy at SEVEN's Marshall office or electronically on

---

[9] Nor does Google have any support for its speculation that these documents were moved for purposes of venue manipulation beyond the circumstantial temporal record.  (Dkt. No. 192, Hr'g Tr. 25:17–26:7 ("THE COURT: Are you telling me that this shipment was for the sole purpose of impacting the venue decision?
MR. VERHOEVEN: It certainly looks that way, Your Honor.
THE COURT: Do you have any proof of that, or is that just speculation?
MR. VERHOEVEN: Other than the factual record I just gave you, circumstantial --
THE COURT: So beyond the facts of the dates that were shipped, you don't have any evidence or admissions or state of mind evidence to indicate a purpose or a reason behind the shipment and whether or not that had any intended impact on the venue issue?
MR. VERHOEVEN: I don't have an admission of scienter at a deposition. All I have is the circumstantial evidence which I cited to Your Honor.").

[10] Indeed, one of Google's complaints about the contents of the boxes seems to be the staleness of the evidence.  (*See* Dkt. No. 126-17 at ¶ 4 ("During my preliminary inspection of the boxes made available by SEVEN, I do not recall viewing any documents that post-dated December 2015, which is when SEVEN claims that it moved to Marshall, Texas.")).  Therefore, the more recent documentary evidence SEVEN has in its electronic document repository is likely a better evidentiary source given this consideration.

servers in the same office.")).  Such electronic records are relevant and constitute primary sources of proof within this District.

While the Court notes the generally heavier evidentiary burden with which defendants carry in patent infringement lawsuits,[11] when taking into account the location of primary sources of proof of a named plaintiff within this District compared with the probative, but speculative, sources of proof identified by Google, the Court finds that this factor weighs against transfer.

### ii.   *Availability of Compulsory Process*

This factor instructs the Court to consider the availability of compulsory process to secure the attendance of witnesses, particularly non-party witnesses whose attendance may need to be secured by a court order. *Volkswagen II*, 545 F.3d at 316.  A district court's subpoena power is governed by Federal Rule of Civil Procedure 45. For purposes of § 1404(a), there are three important parts to Rule 45. *See VirtualAgility, Inc. v. Salesforce.com, Inc.*, No. 2:13-cv-00011-JRG, 2014 WL 459719, at *4 (E.D. Tex. Jan. 31, 2014) (explaining 2013 amendments to Rule 45). First, a district court has subpoena power over witnesses that live or work within 100 miles of the courthouse. Fed. R. Civ. P. 45(c)(1)(A). Second, a district court has subpoena power over residents of the state in which the district court sits—a party or a party's officer that lives or works in the state can be compelled to attend trial, and non-party residents can be similarly compelled as long as their attendance would not result in "substantial expense." Fed. R. Civ. P. 45(c)(1)(B)(i)–(ii). Third, a district court has nationwide subpoena power to compel a non-party witness's attendance at a deposition within 100 miles of where the witness lives or works. Fed. R. Civ. P. 45(a)(2), 45(c)(1).

---

[11] "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (internal citation omitted).

Google argues that the availability of compulsory process in the Northern District of California heavily favors transfer.  (Dkt. No. 126 at 11).  Specifically, Google points to "many non-party witnesses" in that District including "at least nine third party inventors that no longer work at SEVEN and remain in Northern California," and "SEVEN's founders [who] no longer work at SEVEN but are located in [the] NDCA."  (*Id.* at 11–12).  "These witnesses would be subject to a trial subpoena from [the] NDCA, but not from this Court."  (*Id.*)

SEVEN responds that mere identification of individuals is insufficient; the analysis requires demonstration of relevancy and a likelihood of testifying at trial.  (Dkt. No. 142 at 8 ("Google does not, however, say that any [third party witnesses] are likely to testify at trial.")).  Google replies that "the Federal Circuit has already rejected SEVEN's attempt to hold Google 'to a higher standard than required by the law,' finding that where 'infringement and invalidity might be issues at trial,' defendants only needed to 'have identified witnesses relevant to those issues.'" (Dkt. No. 149 at 3 (citing *In re Genentech*, 566 F.3d at 1343)).

The Court inquired about this issue at the hearing on the Motion, principally to ensure that only unwilling third party witnesses are considered under this factor.[12]  (Dkt. No. 192, Hr'g Tr. at 10:6–10 ([THE COURT]: " . . . . it's important for the Court to know which one of these are employees of the parties and which one are third parties. It's important for the Court to know which ones are willing to come on their own, as opposed to being required to come by subpoena

---

[12] If a witness is willing, the convenience of the witness is what is important, not a court's compulsory subpoena power (as no coercion to appear is necessary).  Similarly the convenience of compelled witnesses is not considered—if a witness is within a court's subpoena power, it is always, to some extent, convenient, and where it is not, the substantial expense of a party compelled to testify is compensable. *See* Fed. R. Civ. P. 45(a)(2), 45(c)(1).  It is common to see parties attempt to have this Court double- or triple-count witnesses for purposes of evaluating the convenience of a forum.  However, "[a]ccess to witnesses *for presentation at trial*, which is the purpose of the venue transfer analysis, is properly considered under either the second factor, relating to the Court's subpoena power to compel testimony at trial, or the third factor, which relates to the cost of attendance for willing witnesses. These factors do not permit a single source of proof or witness to be 'double counted' or unduly influence the analysis." *AGIS Software Dev. LLC v. Huawei Device USA Inc.*, No. 2:17-CV-00513-JRG, 2018 WL 2329752, at *3 (E.D. Tex. May 23, 2018).

power.")).  Mr. Michael Luna was identified as willing third party witnesses and is thus properly

considered under the third factor.[13]

"A district court should assess the relevance and materiality of the information the witness

may provide" and where a party has "identified witnesses relevant to [the] issues [present in a

case], [] the identification of those witnesses weighs in favor of [the identifying party]."  *In re*

*Genentech*, 566 F.3d at 1343.  Of course, specifically identifying witnesses and demonstrating the

likelihood of their testimony at trial can only help the Court in evaluating the proper weight to

accord to a specific witness. *Oyster Optics, LLC v. Coriant Am. Inc.*, No. 2:16-cv-1302, 2017 WL

4225202, at *6 (E.D. Tex. Sept. 22, 2017) (where a defendant has "identified an established pool

of likely third party witnesses as to whom the Northern District clearly exercises compulsory

process," even though "greater specificity would certainly strengthen [Defendant's] position, they

have made a relevant showing which the Court considers . . . to be probative.").

For example, while Google had, apparently, informed SEVEN "that Mr. Rydell will be

coming to trial," that his testimony would be "powerful evidence" and support their presentation

of a "working prior art system at trial" which would be further "powerful evidence for the jury,"

(Dkt. No. 192, Hr'g Tr. at 85:7; 69:9–10; 69:7–8), similar representations regarding the other nine

listed third party artists are not present.  Nor are there representations about the expected testimony

from the nine listed third party inventors or the SEVEN-related third parties.  To be clear, the Court

finds that Google has identified relevant witnesses over whom the Northern District enjoys plenary

subpoena power; however, the Court simply notes that this finding, while weighing in favor of

---

[13] Mr. Johan Rydell was also identified as a willing third party witness.  However, the Court denied Google's Motion to Supplement its invalidity contentions with the PortWise Systems prior art, the art as to which Mr. Rydell would provide testimony.  As Google agreed during the hearing on that motion, denial of the motion rendered Mr. Rydell irrelevant as to the venue analysis. (Dkt. No. 192, Hr'g Tr. at 84:15–18 ("THE COURT: And if the PortWise system doesn't make it past this juncture, then he's not relevant for the venue analysis because he wouldn't be coming otherwise.  MS. COOPER: That's true.").  Accordingly, the Court does not consider Mr. Rydell in the venue analysis.

transfer, cannot and should not be reduced to a simple counting exercise wherein parties in a transfer motion name every possible witness without regard to the likelihood of their testifying at trial or the importance of their testimony in the case.  Such a dilution of the factor would undermine the fact-intensive nature of the venue transfer inquiry[14] and reduce it to a ministerial (but meaningless) counting of witnesses.  This is not proper.  *See, e.g., In re Acer Am. Corp.*, 626 F.3d 1252, 1255 (Fed. Cir. 2010) (discounting the presence of potential witnesses from Dell following consideration of the fact that "the allegation of infringement against Dell is largely based on integrated software of other defendants with headquarters outside of Texas.");  *In re BBC Int'l*, MISCELLANEOUS DOCKET NOS. 484, 485, 1996 U.S. App. LEXIS 27318, at *6 (Fed. Cir. Oct. 4, 1996) (presenting with approval the district court's assertion that "the mere listing of a large number of witnesses by a party is not a persuasive reason for granting a change of venue without some evidence as to their necessity."); *see also Sec. & Exch. Comm'n v. Golconda Mining Co.*, 246 F. Supp. 54, 56 (S.D.N.Y. 1965) ("[M]ore is required of the movant than the mere assertion that it may call a designated number of witnesses at the trial. Of greater importance to a judge in determining a motion [under § 1404] is the materiality of the matter to which these witnesses will testify.  As to this aspect of the matter, the court is required to make a qualitative and comparative assessment of the anticipated proofs. **This is something more than a judicial numbers game of simply counting the prospective witnesses on each side**.") (collecting cases).

Indeed, this exact type of inquiry is one which Google attempts to demand of SEVEN while asserting that requiring demonstration of relevance or likelihood of appearance of Google's witnesses constitutes holding Google to a higher standard.  (*Compare* Dkt. No. 149 at 3 (arguing

---

[14] *In re Microsoft Corp.*, 630 F.3d 1361, 1363 (Fed. Cir. 2011) ("A motion to transfer under § 1404(a) calls upon the trial court to weigh a number of case-specific factors relating to the convenience of the parties and witnesses, and the proper administration of justice, based on the individualized facts on record.") (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).

that Google does not need to show likelihood of testifying at trial where it shows a witness has a facial relevance to an issue in the case) *with id*. at 4 (arguing that because "this Court routinely excludes irrelevant background testimony at trial," SEVEN's witnesses will not testify and should not be given weight in the analysis)).  SEVEN's identified third party witnesses are Donna Maisel, Executive Director of the Marshall Economic Development Corporation, and Barton Day, Provost of Texas State Technical College.  Google argues that the testimony of these witnesses has "no relevance to the infringement, invalidity, and damages questions" that it contends "are the only issues in this litigation."  (Dkt. No. 126 at 12 n.5).  As SEVEN points out, however, Google "has made SEVEN's connection to Marshall an 'issue in this litigation' by attempting to create an unfavorable impression about SEVEN's business."  (Dkt. No. 142 at 7).  It is inappropriate for this Court to prejudge the strength or relevance of a Parties' witnesses, especially where, as here, a defendant has already begun to attempt to cast the plaintiff as a patent monetization entity and an interloper in the Marshall community.  (Dkt. No. 126 at 2 ("SEVEN was acquired by an entity named CF SVN.  CF SVN was created by Fortress, also a resident of Northern California, for the purpose of monetizing SEVEN's patent portfolio")).  The Court cannot ignore the possibility that these witnesses may be relevant at trial, especially since, due to the front-loaded nature of the venue inquiry, the scope of the case and testimony to be presented is far from settled.  Resolution of dispositive motions, motions to exclude or strike, and motions *in limine* remain far in the future. For now, witnesses relevant to issues which have presented themselves in the case have been identified, and the Court will not prejudge either Google's or SEVEN's witnesses as to their strength or relevance beyond the facial burden which has been met.  *Videojet Sys. Int'l, Inc. v. Eagle Inks, Inc.*, No. 91 C 6285, 1991 U.S. Dist. LEXIS 19651, at *5 (N.D. Ill. Dec. 17, 1991) (In a § 1404(a) context, "Videojet counters that these witnesses are unlikely to have anything relevant

to say regarding the misappropriation claims in this suit. This Court will not prejudge the strength of a party's witnesses . . . .").

Accordingly, the parties have identified and the Court finds that there are facially relevant third party witnesses in both this District and the proposed transferee district, the Northern District of California.  The Court notes the speculative nature of this inquiry at this early stage, especially given the nature of Google's presentation of third party witnesses.  Google has produced a numerically impressive list of witnesses but provides the Court with very little information as to how much weight the Court should give to Google's position.  This dilemma is reinforced by SEVEN's challenge to Google to specifically identify which witnesses, if any, Google believed would testify at trial; in response, Google refused to be specific.  (Dkt. No. 142 at 8–9 ("Google has not demonstrated any likelihood of these inventors being called to testify at trial."); Dkt. No. 149 at 3–4 (Google arguing that "defendants only needed to have identified witnesses relevant to" issues at trial, not that they be identified as likely to testify)).  Even so, the Court finds that the large pool of identified third party witnesses residing within the compulsory subpoena power of the Northern District of California outweighs the presence of SEVEN's identified third party witnesses in this District.

Accordingly, the Court finds this factor weighs in favor of transfer.

   iii.   *Cost of Attendance for Willing Witnesses*

The third private interest factor focuses on the cost of attendance for willing witnesses. When considering this factor, the court should consider all potential material and relevant witnesses. *See Alacritech Inc. v. CenturyLink, Inc.*, No. 2:16-cv-693, 2017 WL 4155236, at *5 (E.D. Tex. Sept. 19, 2017). "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses

increases in direct relationship to the additional distance to be travelled." *Id.* at 1343 (citing *Volkswagen II*, 545 F.3d at 317). However, as other courts applying Fifth Circuit venue law have noted, the convenience of party witnesses is given little weight. *See ADS Sec. L.P. v. Advanced Detection Sec. Servs., Inc.*, No. A-09-CA-773-LY, 2010 WL 1170976, at *4 (W.D. Tex. Mar. 23, 2010), report and recommendation adopted in A-09-CA-773-LY (Dkt. No. 20) (Apr. 14, 2010) ("[I]t is unclear whether Defendant is contending that the transfer would be more convenient for non-party witnesses or merely for their own employee witnesses. If the Defendant is referring to employee witnesses, then their convenience would be entitled to little weight."); *see also Frederick v. Advanced Fin. Sols., Inc.*, 558 F. Supp. 699, 704 (E.D. Tex. 2007) ("The availability and convenience of party-witnesses is generally insignificant because a transfer based on this factor would only shift the inconvenience from movant to nonmovant.").

Google improperly argues that the convenience of third party witnesses who are not identified as willing witnesses should be considered under this factor. (Dkt. No. 126 at 13 ("As described with respect to the prior factor, Google has identified numerous third party witnesses in [the] NDCA, including at least nine inventors, the original founders, funders, and prior artists.")). Given that this Court has already considered those unwilling third party witnesses in its consideration of the second factor, it would be improper to include them in consideration of the third private interest factor: "the cost of attendance for *willing* witnesses." *Volkswagen I*, 371 F.3d at 203 (emphasis added) (citation omitted).

Google has identified one willing third party witness, Mr. Michael Luna. (Dkt. No. 192 at 10:15–18).[15]  Mr. Luna may be properly considered under this factor.

---

[15] ("MR. VERHOEVEN: I -- I believe we know that Mr. Luna, Witness No. 4 on Slide 8, has said that he's willing to come. I do not have information that any of the others are willing to come.").  Google later identified Mr. Rydell as an additional willing third party witness, but, as discussed *supra* n.13, Mr. Rydell is not considered in this analysis.

SEVEN also improperly argues that the convenience of third party witnesses who are not identified as willing witnesses should be considered under this factor.  (Dkt. No. 142 at 11).  SEVEN has not identified any willing third party witnesses.  Accordingly, there are no third party witnesses properly identified by SEVEN for consideration under this factor.

In addition to this single third party witness, both Parties point to their employees as willing witnesses to be considered under this factor.  As noted above, "[t]his factor [] primarily concerns the convenience of nonparty witnesses." *USPG Portfolio Two, LLC v. John Hancock Real Estate Fin., Inc.*, Civil Action No. 3:10-CV-2466-D, 2011 U.S. Dist. LEXIS 31625, at *11 (N.D. Tex. Mar. 25, 2011) (citing *Sargent v. Sun Trust Bank*, N.A., 2004 U.S. Dist. LEXIS 16163, 2004 WL 1630081, at *3 (N.D. Tex. July 20, 2004) (Fitzwater, J.)).

Google argues that the "NDCA is [] more convenient for likely party witnesses, including [Google's employee witnesses who] are all based in [the] NDCA," such as "six likely engineering and product management witnesses with knowledge of the accused functionality" and "employees with knowledge of the marketing of the accused products."  (Dkt. No. 126 at 13, 6).  Specifically, Google points to

> Ilya Firman (a Software Engineer and manager on the Google Play infrastructure team), Diana Smetters (a Senior Staff Software Engineer and the engineering technical lead for Google's 2-Step Verification functionality), Dianne Hackborn (a Distinguished Software Engineer and a manager responsible for certain power management functionality within Android), Chris Sadler (a software engineer and manager on the Android Gmail team), Benjamin Poiesz (a Group Product Manager on the Android Platform team), [] Paolo Bezoari (a Software Engineer on the Google Play Platform team) . . . and Charlotte Will (Senior Product Marketing Manager on the Android team), [each of whom] Google [] currently intends to call at trial.

(*Id*. at 6.)  Such specificity is persuasive.  While SEVEN argues that Google has identified "only seven individual employees who allegedly work and live in the Northern District of California and have 'knowledge of the accused functionality' or Google's Marketing," (Dkt. No. 142 at 13), the

identification, explanation, and representations that Google has made are precisely the sort which this Court expects in a § 1404(a) motion and finds them credible and a proper basis for consideration.

>SEVEN also identifies employee witnesses.  SEVEN argues that

>the following ten employees work for SEVEN in this District: Colby Adams, Sofiya Glazova, Dustin Morgan, and Christian Sandlin (Software Engineers); Chastity Rhodes (Customer Support Engineer); Keyvan Shahrdar (Director of Product Management); Nathan Cowart and Konnor Timmons (interns); Andy Liu (Data Scientist); and Fontagne Paxton (Quality Assurance Engineer).  Each of these ten individuals has material, relevant information, making it likely that SEVEN will call some, if not all, of them to testify at trial. Specifically, these employees all work on AdClear,[16] which incorporates one or more of the technologies disclosed in the patents-in-suit. Their varied duties include design, development, operation, testing, and analysis of the product, thereby positioning them to testify about these topics. More generally, as explained above with regard to SEVEN's third-party witnesses, Google has also made these witnesses' testimonies about their work on SEVEN's products relevant to rebut Google's negative depiction of SEVEN's business model.

(Dkt. No. 142 at 12–13) (citations omitted).   Like Google, these are the kinds of specific identifications of witnesses which the Court would expect in support of a § 1404(a) motion. Google's argument against these identified witnesses is that "SEVEN cannot dispute that there are more party witnesses with knowledge of infringement, invalidity, and damages who will be inconvenienced if the case is not transferred," and that "SEVEN does not dispute that it has no party witness in this District with knowledge relevant to the claims in this case."  (Dkt. No. 149 at 4–5).  Google also argues that SEVEN must explain "how any of its 10 Marshall employees could rebut [facts surrounding SEVEN's business model and timing in its relocation to Marshall] or why its CEO and CTO—who both reside in [the] NDCA and have better knowledge of SEVEN's

---

[16] At the hearing on this Motion, Google argued, and SEVEN agreed, that SEVEN is "not going to call these -- these local employees to talk about how this AdClear product practices any of the claims of the patents."  (Dkt. No. 192, Hr'g Tr. at 20:23–25).  SEVEN stated that "these people are not the people that are going to show patent infringement or how our products – how SEVEN's products practice the patent. That's what the experts do." (*Id*. at 35:23–36:1).

business—could not provide this testimony." (*Id*. at 5).   Google's argument is both odd and unpersuasive.

A party does not need to demonstrate why any specific witness is necessary to provide specific testimony which a party believes necessary to elicit at trial.   There are many reasons why a party may choose to have different witnesses present different aspects of their case to a jury including, at the least, credibility, presentation, likeability, or even to just vary the tempo of a trial and keep the jury from hearing everything from a single witness.   Just as Google does not need to identify why Ilya Firman (a Software Engineer and manager on the Google Play infrastructure team) could not provide the testimony which Paolo Bezoari (a Software Engineer on the Google Play Platform team) Google expects him to provide, neither is SEVEN required to make the same showing as to its identified witnesses.

In sum, the Court has identified and considered the following in evaluating this factor: a single inventor of the nine third party inventors identified by Google, various party witnesses identified by Google to address various aspects of the case, and various party witnesses identified by SEVEN to address various aspects of the case.

"While the Court must consider the convenience of both the party and non-party witnesses, it is the convenience of non-party witnesses that is the more important factor and is accorded greater weight in a transfer of venue analysis." *Godo Kaisha IP Bridge 1 v. Broadcom Ltd.*, No. 2:16-cv-0134-JRG-RSP, 2017 U.S. Dist. LEXIS 26755, at *17 (E.D. Tex. Feb. 27, 2017) (citations omitted); *see also Frito-Lay N. Am., Inc. v. Medallion Foods*, *Inc.*, 867 F. Supp. 2d 859, 870–71 (E.D. Tex. 2012) ("[I]t is the convenience of non-party witnesses, rather than of party witnesses, that is more important and accorded greater weight in a transfer of venue analysis.") (citation omitted).

The Court finds that the inconvenience experienced by the Texas and California based party witnesses are of little weight and generally cancel each other out, although, on balance it is likely that slight weight towards transfer exists due to the varied topics which the Google party witnesses are expected to address.  Mr. Luna's non-party status and the inconvenience he would face attending trial in this District when compared to the Northern District of California weighs heavily in the analysis.  Ultimately, the Court determines that this factor weighs slightly in favor of transfer.

   *iv.* *All Other Practical Problems*

"Practical problems include those that are rationally based on judicial economy. Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer." *Eolas Techs.*, 2010 WL 3835762, at *6.

Google argues that "there are no practical problems with transferring this case."  (Dkt. No. 126 at 13).  Google argues that the existence of a co-pending suit in this District, the -441 case (addressed *infra*), should be given "little, if any weight" and points to "already co-pending cases outside of this District."  (*Id.* (citing *SEVEN Networks, LLC v. ZTE (USA) Inc.*, No. 17-cv-01495 (N.D. Tex.) and the declaratory judgment action Google filed following institution of this suit, *Google LLC v. SEVEN Networks, LLC*, No. 17-cv-4600 (N.D. Cal.)[17])).

SEVEN argues this Court should consider the existence of the co-pending case, citing *In re Vistaprint Ltd.*, 628 F.3d 1342, 1347 (Fed. Cir. 2010), and *Volkswagen II*, 566 F.3d at 1355. However, the Federal Circuit has *explicitly rejected* giving co-pending cases such substantial weight.  Indeed, this Court has explicitly explained that "certain cases warn against giving

---

[17] The Court notes that this reliance on follow-on declaratory judgment actions hints at the same kind of attempted venue manipulation which Google accuses SEVEN of committing.

excessive weight" to consideration of co-pending cases in evaluating judicial economy under § 1404.  *Oyster Optics, LLC v. Coriant Am., Inc.*, No. 2:16-cv-1302, 2017 U.S. Dist. LEXIS 155586, at *22 (E.D. Tex. Sep. 22, 2017) (citing *In re Google, Inc.*, No. 2017-107, 2017 U.S. App. LEXIS 4848 (Fed. Cir. Feb. 23, 2017)); *see also In re Google*, 2017 WL 977038, at *3 ("[W]e observe that it is improper for a district court to weigh the judicial economy factor in a plaintiff's favor solely based on the existence of multiple co-pending suits, while the remaining defendants have similar transfer motions pending seeking transfer to a common transferee district.").

Accordingly, the Court finds that under these circumstances, it cannot consider the presence of the -441 case in evaluating this factor.

However, a unique circumstance present in this case does have bearing on the consideration of this factor: the currently scheduled Joint Claim Construction proceeding this Court has ordered in conjunction with the Northern District of Texas to commence in September, 2018, "in the interest of judicial efficiency and to reduce the risk of inconsistent or conflicting constructions," regarding the patents asserted in both this case and the companion litigation pending in its sister district.  (Dkt. No. 138).  This intended and forthcoming judicial efficiency is one unaffected by the co-pending case in this District—indeed, the efficiency is significant due to the coordination of two *separate* courts who have undertaken to engage in precisely the kind of comity amongst the judiciary which should result in appreciable benefits to judicial efficiency, preventing superfluous litigation, and achieving finality and uniformity amongst co-pending cases narrowing issues for the appellate court.  The Court is particularly attentive to the Federal Circuit's longstanding intention that "[n]o litigant deserves an opportunity to go over the same ground twice, hoping that the passage of time or changes in the composition of the court will provide a more favorable result the second time." *Cent. Soya Co. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1580 (Fed. Cir. 1983)

(citing *United States v. Turtle Mountain Band of Chippewa Indians*, 222 Ct. Cl. 1, 612 F.2d 517, 520 (1979)).  Essentially, this coordination permits multiple districts to develop complementary *Markman* opinions, establishing what amounts to law of the case *across* cases.  *Cent. Soya Co.*, 723 F.2d at 1580 ("[T]he law of the case doctrine, [] 'expresses the practice of courts generally to refuse to reopen what has been decided . . . .'") (citing *Messenger v. Anderson*, 225 U.S. 436, 444 (1912)); *Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 900 (Fed. Cir. 1984) ("Its elementary logic is matched by elementary fairness -- a litigant given one good bite at the apple should not have a second."); *see also In re Vicor Corp.*, 493 F. App'x 59, 61 (Fed. Cir. 2012) ("Judicial economy may be served even when 'two related cases before the same court may not involve the same defendants and accused products.'") (citing *In re Vistaprint*, 628 F.3d at 1344)).

If this case were to be transferred from this District, this efficiency would almost surely be lost.  Indeed, the actions of the Parties in this case have already threatened such efficiency as this Court was required to take extraordinary steps in putting this case back on track to continue to work towards the just, speedy, and inexpensive determination of the issues present in this litigation. (*See* Dkt. No. 234).  Accordingly, the Court finds that retention of this case in this District avoids heretofore avoided practical problems that transfer to the Northern District of California would reintroduce.  Therefore, the Court finds this factor clearly weighs against transfer.

### B.  Public Factors

#### i.  *Administrative Difficulties Flowing From Court Congestion*

Pursuant to Federal Circuit precedent, the relevant inquiry under this factor is "[t]he speed with which a case can come to trial and be resolved[.]" *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009).  Google argues that both this District and the Northern District of California "have comparable times for resolving cases from filing to disposition," while acknowledging that

"time to trial is shorter in this District." (Dkt. No. 126 at 15). Even so, Google argues, this District's shorter time to trial "should be accorded little weight given the speculative nature of this factor." (*Id.*) However, the U.S. District Court statistics for the 12-month period ending December 31, 2017 are clear and unequivocal. They indicate that the median time for cases to from filing to trial in the Northern District of California is 22.7 months, compared to 19.9 months for the Eastern District of Texas. Table C-5—U.S. District Courts–Civil Statistical Tables For The Federal Judiciary (December 31, 2017), http://www.uscourts.gov/statistics/table/c-5/statistical-tables-federal-judiciary/2017/12/31. Accordingly, this factor weighs against transfer, and would weigh stronger were this Court to consider the effect transfer would have on the current trial setting in this case, currently January 7, 2019.

### ii.   *Local Interest in Having Localized Interests Decided at Home*

There is little doubt that this District has a local interest in the disposition of any case involving a resident corporate party. Given SEVEN's domestic principal place of business in this District, it is a resident. *In re BigCommerce, Inc.*, No. 2018-120, 2018 WL 2207265, at *5 (Fed. Cir. May 15, 2018) (holding that "the judicial district where the principal place of business is located" is the district in which it "resides" for venue purposes in a multi-district state). Similarly, there can be no question that the Northern District of California has a similar local interest in this case. Google's arguments that the Northern District has a stronger local interest are not persuasive. Google argues SEVEN has a "limited local presence" without specificity; against the clear community interests SEVEN has argued. As the Court noted, above, this argument is without merit. Additionally, this Court has previously questioned the appropriateness of this sort of "strength" inquiry between two competing domestic corporations in respective districts. *AGIS Software Dev. LLC v. Apple, Inc.*, No. 2:17-CV-00516-JRG, 2018 WL 2721826, at *8 (E.D. Tex.

June 6, 2018).  "If followed to its conclusion, smaller businesses and individual plaintiffs will always be disfavored by this factor, as the interest their communities may have is small when compared to the interest a distant community may have in its hometown corporate pillar. This does not accord with foundational principles of justice."  *Id.* (citing Fifth Circuit Pattern Jury Instructions (Civil Cases) § 2.16 ("A corporation and all other persons are equal before the law and must be treated as equals in a court of justice."); *Deadwood Canyon Ranch, LLP v. Fid. Expl. & Prod. Co.*, No. 4:10-CV-081, 2014 WL 11531554, at *16 (D.N.D. July 16, 2014) ("All persons are equal before the law and companies or corporations, big or small, are entitled to the same fair consideration . . . .").

Accordingly, because both this District and the Northern District of California have localized interests in this case, this factor is neutral.

### iii.    *Familiarity of the Forum with Governing Law*

The Parties agree that this factor is neutral.  (Dkt. No. 123 at 15; Dkt. No. 142 at 15).  The Court agrees and finds this factor to be neutral.

### iv.    *Avoidance of Unnecessary Conflicts of Law*

The Parties agree that this factor is neutral.  (Dkt. No. 123 at 15; Dkt. No. 142 at 15).  The Court agrees and finds this factor to be neutral.

## C.  Conclusion

Having considered the relevant factors,[18] the Court is of the opinion that Google has not met its significant burden to show that the asserted transferee district is "clearly more convenient."  *In*

---

[18] Summary of factor holdings: (i) access to proof: "weighs against transfer"; (ii) availability of compulsory process: "in favor of transfer"; (iii) cost and attendance for willing witnesses: "slightly in favor of transfer"; (iv) practical problems: "clearly against transfer"; (v) court congestion: "weighs against transfer"; (vi) local interest: "neutral"; (vii) familiarity with the law: (agreed) neutral; (viii) conflict of laws: (agreed) neutral.

*re Apple Inc.*, 456 F. App'x at 909.  For the reasons stated above, the Court hereby **DENIES** Defendants' Motion to Transfer Venue (Dkt. No. 126).

### III. DISCUSSION (-441 MOTION)

The Court now turns to analysis of the 2:17-cv-00441 Motion to Transfer Venue, (2:17-cv-441, Dkt. No. 45).[19]  During the hearing on this Motion, the Court inquired as to the differences between the various cases such that they were deserving of specific consideration beyond that conducted in the -442 case.[20]

Samsung Electronics Co., Ltd., and Samsung Electronics America, Inc., (collectively, "Samsung" or "the Samsung Defendants") admit that venue is proper as to the Samsung Defendants in the Northern District of California, and this is not disputed, meeting the first requirement of the transfer analysis.  (Dkt. No. 45 at 7).

Samsung argues that the first private interest factor, relative ease of access to sources of proof, weighs in favor of transfer, arguing primarily to "[b]ecause Samsung is not permitted to modify many aspects of the accused, Google-supplied technology, evidence regarding those the accused features resides with Google in the NDCA," and that "most of the technical evidence relating to the various accused functionalities of the Android OS and Gmail is with Google in the NDCA."  First, as the Court noted *supra* at Part II.A.i, the Google's documentary evidence is *not*

---

[19] Further docket citations will be with respect to the 2:17-cv-411 case, except in the case of citations to the hearing transcript (Hr'g Tr.) which was filed in the lead case, 2:17-cv-442.

[20] (Dkt. No. 192, Hr'g Tr. at 41:12–42:4 ("THE COURT: Let me ask you this question, counsel.  Understanding the posture of Samsung as you've articulated it, if the Court were to find that this is a proper venue for Google, would you agree that Samsung should stay here, as well, or if Google were here, would you still contend that Samsung needed to be transferred to the Northern District of California for different handling before a different Court with a different judge at a different time?  MR. GRAUBART: I think many of the factors would still support transfer even if Google remains in this Court, but it's certainly our position that the case for transfer is much stronger, much more important if Google is transferred for the point at least that Your Honor just raised, that it would multiplying proceedings before additional courts, and -- and that's obviously disfavored.  And the flip side of that being that we think if Google is transferred, those judicial economy factors very strongly support transfer, as well.")).

in the Northern District of California.[21]  Samsung also points to similar sources of proof as Google

did, each of which the Court addressed *supra* Part II.A.i.  Samsung has Samsung specific

documentation located in "California, New Jersey, Texas, or one of its other offices."  (Dkt. No.

45 at 10).  The Court notes that Samsung does not identify what documentation is where or how

such documentation is relevant to the case.  (*Id.*)  As before, the Court notes that "fail[ing] to

identify with any specificity" evidence under this factor prevents this court from "credit[ing] such

vague and conclusional assertions," "without more."  *Utterback*, 716 Fed. App'x. at 245 n.10.

Samsung sums its argument as "party documents are located in California, New Jersey,

and Texas" and "nearly all of the third-party documents and information are in the NDCA," in its

assertion that "this factor weighs strongly in favor of transfer."  (Dkt. No. 45 at 10).  The Court

incorporates and reaffirms its analysis from Part II.A.i as to all of the party and non-party

documentation and finds that Samsung has not identified any additional sources of proof to add to

the analysis of this factor and, while Google's position has changed from party to third party in the

-441 analysis, the lack of Google's documentary evidence in the Northern District of California,

discussed *supra* at Part II.A.i., remains the same.  Accordingly the Court finds the first private

interest factor weighs against transfer.

Samsung argues that the second private interest factor, the availability of compulsory

process to secure the attendance of witnesses "should be given particular weight given the nature

of the infringement allegations" as Samsung "will need to subpoena Google's witnesses in the

NDCA to obtain the technical testimony at trial" relating to its defenses.  (Dkt. No. 45 at 13).

Samsung has not indicated any willingness for the Google witnesses to appear absent a subpoena,

and Samsung has characterized the witnesses as third party witnesses, the Court properly considers

---

[21] With the speculative exception of employee notebooks.  *See supra* at 8.

the Google witnesses under this factor.  (*Id*. at 13 ("[T]he majority of the important technical witnesses are third-party Google witnesses")).  Essentially, in addition to the Court's analysis in Part II.A.ii., all of the formerly party witnesses of Google are now properly considered third-party witnesses under this factor; the analysis remains the same but is now reinforced by the presence of the third party Google witnesses.  Accordingly, this factor weighs strongly in favor of transfer.

Samsung misstates the third private interest factor, which is the cost of attendance for willing witnesses.[22]  Unlike the analysis under Google, there are no party witnesses properly considered under this factor for Samsung and the Google employees which were considered under this factor *supra* at Part II.A.iii. now already been considered under the second factor.  Samsung identifies only that "SEA has employees in California, New Jersey, and Texas."  (*Id*. at 12).  There is no specific identification of who these employees are or why they would be relevant or if they are going to be, or even potentially going to be, called at trial.[23]  Accordingly, there are no Samsung party witnesses to consider under this factor.  Repeating the analysis undertaken previously in Part II.A.iii. but without any opposing party witnesses to balance SEVEN's party witnesses, the Court finds this factor weighs against transfer.

The Court finds that its analysis of the fourth private interest factor, *supra* at Part II.A.iv. applies equally to Samsung's Motion and, accordingly, this factor weighs strongly against transfer. The Court notes the irony in Samsung's argument that "if the Court transfers Google's case to the NDCA, [the fourth private interest factor weighs] strongly in favor of transfer" but that if this Court does not transfer this case to California, "this factor is neutral."  (Dkt. No. 48 at 1).  Of

---

[22] Samsung lists it as "The convenience of parties and witnesses and cost of attendance for willing witnesses."  (Dkt. No. 45 at 11).

[23] While Samsung also points to SEVEN's CEO and CTO residing in the Northern District of California, no party on either side has demonstrated the relevance of these witnesses or indicated their likelihood of being called for trial, either willingly or adversely.  Accordingly, their location within the Northern District of California is not considered under this factor.  Nor was their location considered in the Court's analysis in Part II.A.iii.

course, as this Court has noted before and *supra* at 25, it may not and does not consider the co-pendency of the -442 case in this analysis for this exact reason.

The Court also finds that the local interest analysis it conducted in Part II.B.i. applies to Samsung with equal force.  "SEA has offices and employees in Texas, California, and New Jersey" (Dkt. No. 45 at 15).  While Samsung argues that Google's presence in California impacts this analysis, since, Samsung argues, this litigation impacts "the work and reputation of Google and its California-based employees," (*id.*), the Court has not been directed to any authority permitting the Court to consider non-party interests under this factor.  Additionally, assuming such consideration to be proper, SEA's local interest in the Northern District would then be much diminished as the focus would shift to Google.  Either way the Court's analysis of Part II.B.i holds true: both this District and the Northern District of California have localized interests in this case given the presence of resident corporations in the litigation.  Accordingly, this factor is neutral.

The remaining public interest factor analysis remains the same as in the -442 case.  As to court congestion, this factor weighs against transfer, and would weigh stronger were this Court to consider the effect transfer would have on the current trial setting in this case, currently January 7, 2019.  The Parties agree the remaining factors—the avoidance of unnecessary conflicts of laws and the familiarity of the forum with the governing law—are neutral.  (Dkt. No. 45 at 15; Dkt. No. 47 at 15.)

On balance and having considered all of the factors in the -441 case independently, the Court does not find that Samsung has met its significant burden to show that the asserted transferee district is "clearly more convenient."  *In re Apple Inc.*, 456 F. App'x at 909.  For the reasons identified above, and in conjunction with the findings detailed as to the -442 case, the Court hereby **DENIES** Defendants' Motion to Transfer Venue (2:17-cv-00441, Dkt. No. 45).

## IV.   FINAL CONCLUSION

Having addressed herein all Motions before the Court regarding the transfer of venue in

these consolidated cases, both Motions are hereby **DENIED**.

**So ORDERED and SIGNED this 14th day of August, 2018.**


_____
RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE