# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| SEVEN NETWORKS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> GOOGLE LLC, <br><br> Defendant. | CIVIL ACTION NO. 2:17-CV-442-JRG <br> LEAD CASE <br><br> PATENT CASE <br><br> JURY TRIAL DEMANDED |
| v. <br><br> SAMSUNG ELECTRONICS AMERICA, INC. AND SAMSUNG ELECTRONICS CO., LTD., <br><br> Defendants. | CIVIL ACTION NO. 2:17-CV-441-JRG <br> CONSOLIDATED CASE |

**SEVEN'S OPPOSITION TO GOOGLE'S MOTION TO EXCLUDE
THE TESTIMONY OF BRIAN W. NAPPER (ECF NO. 359)**

██████████████████████████████████████████████████

TABLE OF CONTENTS

Introduction ........................................................................................................................ 1

Background ........................................................................................................................ 1

Arguments and Authorities ................................................................................................ 3

    A.  Legal Standard ....................................................................................................... 3

    B.  Mr. Napper's reasonable-royalty calculations depend on the admissible results of Dr. Goodrich's testing and Dr. Stewart's survey. ................................................................................................ 4

        1.  Google bears the risk of any alleged inability to apportion caused by Google's product design. ............................................ 4

        2.  Dr. Stewart's willingness-to-pay survey assessed the value of one hour of extended battery life. ................................................ 5

    C.  ████████████████ was not only reliable, but the best available evidence for Mr. Napper's reasonable-royalty calculation. .......................................................................................................... 8

    D.  Google, not SEVEN, bears the burden to prove the availability of acceptable non-infringing alternatives. ......................................... 11

    E.  Mr. Napper offers opinions on each Doze patent individually and in combination with other Doze patents. ................................ 12

Conclusion ........................................................................................................................ 13

## Exhibit List

| | |
|---|---|
| **Exhibit A** | Report of Michael T. Goodrich, Ph.D. Regarding Google's Infringement of the '019, '600, '127, and '129 Patents (provided on flash drive after close of briefing) |
| **Exhibit B** | Expert Report of Dr. David Stewart (provided on flash drive after close of briefing) |
| **Exhibit C** | Expert Report of Brian W. Napper (provided on flash drive after close of briefing) |
| **Exhibit D** | Excerpts from October 10, 2018 Deposition of Brian Napper |
| **Exhibit E** | Excerpts from October 15, 2018 Deposition of David Stewart |
| **Exhibit F** | November 6, 2018 Declaration of David Stewart |
| **Exhibit G** | Rebuttal Expert Report of Mr. Christopher Bakewell |
| **Exhibit H** | November 7, 2018 Declaration of Dr. Michael Goodrich |

██████████████████████████████████████████

## INTRODUCTION

SEVEN's damages expert, Mr. Brian Napper, relied on the admissible opinions of SEVEN's technical and survey experts to inform his reasonable-royalty opinions. He then used ██████████████████████████████████████—the best financial evidence available to him in view of Google's deficient production—to apportion those amounts further to give Google credit for the costs it incurred in bringing the accused devices to market. Mr. Napper supported his calculations with sufficient facts and data, and properly refused to assume Google's burden to prove the availability of acceptable non-infringing alternatives. Mr. Napper's damages opinions are admissible.

In seeking to exclude Mr. Napper's opinions, Google asks the Court to step into the role of factfinder and resolve debates about their accuracy. But because *Daubert* assigns to the jury the "'role as the arbiter of disputes between conflicting opinions,'" SEVEN asks the Court to admit Mr. Napper's testimony, and deny Google's motion. *See United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996) (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)).

## BACKGROUND

SEVEN has accused Google mobile devices (cell phones and tablets) of infringing SEVEN's patents. Generally speaking, the Doze, Battery Saver, and App Standby features in the accused mobile devices aid in battery conservation in various ways, for example, by restricting applications from communicating with the network, thereby reducing battery drain.

Relevant here are the opinions of three experts SEVEN retained to evaluate infringement and damages for the asserted patents: Dr. Michael Goodrich, who determined the benefit offered by the patented inventions embodied in the Accused Devices; Dr. David Stewart, who conducted

surveys to determine the value consumers assign to that benefit; and Mr. Brian Napper—whose opinions are the subject of this response—who offered damages opinions that are based in part on the conclusions of Drs. Goodrich and Stewart.

Specifically, Dr. Goodrich found that Doze and Battery Saver can each independently "extend battery life in the Accused Products, on average, by at least 1 hour between daily charges by limiting network activity for applications that a consumer may not be actively using."[1] He further concluded that because the patents at issue cover many critical elements of Doze and Battery Saver, use of the patented inventions "can extend battery life in the Accused Products by, on average, at least 1 hour between daily charges by limiting network activity for applications that a consumer may not be actively using."[2] Dr. Stewart then constructed a survey designed to value Dr. Goodrich's "one-hour extended battery life," and found that consumers would be willing to pay ▅▅▅ for one-hour extended battery life in smartphones, and ▅▅▅ for one-hour extended battery life in tablets.[3]

Mr. Napper used those values to calculate a reasonable royalty. After deducting all costs Google incurred in bringing the devices to market (e.g., research and development, marketing, administrative expenses, etc.) from the consumers' willingness-to-pay amounts, Mr. Napper concluded that the Parties would have agreed upon a royalty rate of ▅▅▅ per smartphone and

---

[1] See **Ex. A**: Expert Report of Michael T. Goodrich, Ph.D. Regarding Google's Infringement of the '019, '600, '127, and '129 Patents (Goodrich Rpt.) ¶ 939a–b. Consistent with the requirements in the Docket Control Order, all expert reports and accompanying exhibits will be submitted on a flash drive as soon as briefing has completed. *See* ECF No. 337.

[2] See **Ex. A**: Goodrich Rpt. ¶¶ 932, 938, 939c.

[3] See **Ex. B**: Expert Report of Dr. David Stewart (Stewart Rpt.) ¶ 21.

▉▉▉ per tablet.[4] Applying those rates to the sales of Battery Saver and Doze Accused Products during the relevant time frames, Mr. Napper concluded that SEVEN is entitled to total damages of ▉▉▉ for Accused Doze Products and ▉▉▉ for Accused Battery Saver Products.[5]

Mr. Napper's reasonable royalty opinions are reliable, based on sufficient data, and tied to the facts of this case.

## Arguments and Authorities

### A. Legal Standard

In exercising its gatekeeping role, a court may exclude evidence only if it is "based upon unreliable principles or methods, legally insufficient facts and data, or where the reasoning or methodology is not sufficiently tied to the facts of the case." *See Summit 6, LLC v. Samsung Elecs. Co., Ltd.*, 802 F.3d 1283, 1295 (Fed. Cir. 2015). But the Court is not the arbiter of correctness; on the contrary, "the question of whether the expert is credible or the opinion is correct is generally a question for the fact finder, not the court." *See id.* at 1296. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993). "When the methodology is sound, and the evidence relied upon sufficiently related to the case at hand, disputes about the degree of relevance or accuracy (above this minimum threshold) may go to the testimony's weight, but not its admissibility." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 852 (Fed. Cir. 2010), *aff'd*, 564

---

[4] *See* **Ex. C**: Expert Report of Brian W. Napper (Napper Rpt.) at 81.

[5] *See* **Ex. C**: Napper Rpt. at 81 & Exs. 11 & 12.

U.S. 91 (2011) (citing *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 351 (5th Cir. 2007); *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc)).

Here, Mr. Napper's opinions far exceed *Daubert*'s admissibility threshold. Google's contrary arguments are directed to weight.

**B. Mr. Napper's reasonable-royalty calculations depend on the admissible results of Dr. Goodrich's testing and Dr. Stewart's survey.**

Based on his detailed analysis of available documents, deposition testimony, and independent testing, Dr. Goodrich opined that the claimed inventions provide at least one hour of extended battery life.[6] Dr. Stewart, in turn, surveyed consumers to determine their willingness to pay for that benefit.[7] Google has separately moved to exclude Dr. Goodrich's and Dr. Stewart's opinions. *See* ECF Nos. 367 (Goodrich motion), 363 (Stewart motion). But as explained more fully in SEVEN's responses to those motions, the opinions of Drs. Goodrich and Stewart pass *Daubert*. *See* ECF Nos. 411 (Goodrich response), 412 (Stewart response). And as explained below, so do Mr. Napper's opinions depending on them.

**1. Google bears the risk of any alleged inability to apportion caused by Google's product design.**

Google challenges Mr. Napper's reliance on Dr. Goodrich's conclusion that the accused Doze and Battery Saver features can each, independently, extend battery life by one hour by using the patented inventions. *See* Mtn. at 5–6. The crux of Google's argument is that Dr. Goodrich failed to account for the fact that Doze and Battery Saver each have more features than what the Patents-in-Suit cover. *See id.* So, Google says, "the battery savings may come from non-accused functionality." *See id.* at 1.

---

[6] *See* **Ex. A**: Goodrich Rpt. ¶ 939a–c.

[7] *See* **Ex. B**: Stewart Rpt. ¶ 21.

4

At best, Google's argument about Dr. Goodrich's one-hour-extended-battery-life opinions (and, by extension, Mr. Napper's dependent damages opinions) is that he did not review sufficient facts. But that goes to weight, not admissibility. *See Joseph v. Signal Int'l L.L.C.*, No. 1:13-cv-324, 2015 WL 12766134, at *17 (E.D. Tex. Feb. 12, 2015) ("[A]n argument that an expert did not review sufficient facts and data goes to the weight of [its] opinion, to be brought out in cross-examination and resolved by the jury." (quotation marks omitted)). Further, that Dr. Goodrich did not isolate every feature of Doze and Battery Saver is a result of Google's design, not Dr. Goodrich's method. Indeed, Dr. Goodrich could not test individual Doze or Battery Saver features because Google did not design its Doze or Battery Saver functionalities to permit users to customize which features are active when a device is in either mode.[8] As a result, Google bears the risk of any purported prejudice it would allegedly suffer if Dr. Goodrich presented his opinion to the jury; SEVEN should not suffer the penalty of its exclusion. *See Nickson Indus., Inc. v. Rol Mfg. Co.*, 847 F.2d 795, 799 (Fed. Cir. 1988) ("[W]here it is impossible to make a mathematical or approximate apportionment between infringing and noninfringing items, the infringer must bear the burden and the entire risk.").

Google has failed to demonstrate that Dr. Goodrich's opinions are inadmissible; accordingly, they are a reliable basis for Mr. Napper's.

2. **Dr. Stewart's willingness-to-pay survey assessed the value of one hour of extended battery life.**

After Dr. Goodrich determined that the accused functionalities offer at least one hour of extended battery life by using the patented inventions, Dr. Stewart constructed a survey to

---

[8] *See* **Ex. H**: Goodrich Dec. ¶ 5.

determine how much consumers would be willing to pay for that extra hour.[9] Google argues that while Dr. Goodrich tested the benefit of an extra hour of screen-off time, Dr. Stewart measured consumers' willingness to pay for an extra hour of screen-on time. *See* Mtn. at 6–7. And since, in Google's opinion, Dr. Stewart's survey allegedly did not value the benefit of the claimed invention, Mr. Napper's per-device royalty opinions depending on Dr. Stewart's survey should be excluded.

Google's arguments ignore the survey's plain language, which inquired about precisely the functionality Dr. Goodrich tested. Specifically, Dr. Goodrich opined that "use of one or more of the inventions claimed in the Patents-in-Suit can extend battery life in the Accused Products by, on average, at least 1 hour between daily charges by limiting network activity for applications that a consumer may not be actively using."[10] Dr. Stewart's survey, in turn, defined "One-hour Extended Battery Life" as follows: "Battery life can be extended by one hour between charges by limiting network activity on inactive apps, while preserving regular network activity for high priority apps like emails, instant messages and calls, and other active apps."[11] As Dr. Stewart

---

[9] Google characterizes the ▮▮▮ and ▮▮▮ willingness-to-pay amounts as "total revenue earned by Google from the purported benefit of the inventions." *See* Mtn. at 3–4. That is inaccurate. As Dr. Stewart explained in his report, "'consumers positively value the One-hour Extended Battery Life feature and . . . their WTP for this feature is ▮▮▮ for smartphone users and ▮▮▮ for tablet users.'" *See* **Ex. C**: Napper Rpt. at 74 (quoting **Ex. B**: Stewart Rpt. ¶¶ 21 and 85 & Exs. 9A and 9B). These figures thus represent the implied market value of the benefits of the footprint of the invention, not the total revenue earned by Google. *See* **Ex. D**: Oct. 10, 2018 Deposition of B. Napper (Napper Dep.) at 46:10–47:4. In other words, "[t]he combination of the technical experts' work to identify the estimated enhanced battery life stemming from use of the various functionalities covered by the Asserted Patents with the results of Dr. Stewart's survey appropriately identifies the value of the footprint of the invention covered by the Asserted Patents." **Ex. C**: Napper Rpt. at 76.

[10] *See* **Ex. A**: Goodrich Rpt. ¶ 939c.

[11] *See* **Ex. B**: Stewart Rpt. ¶ 54.

testified, survey respondents would have understood this definition to mean that one hour of extended battery life is one hour in which their phones are available for use.

> Q: So based on your understanding of consumers, you would expect that respondents of your survey to have understood that the definition of one hour of extended battery life was an additional one hour being active on their phones?
> . . .
> A: *Of being able to use their phone in an active fashion*.[12]

In other words, Dr. Goodrich determined that Google's use of SEVEN's patented technologies allows consumers to use their devices for at least one additional hour. And Dr. Stewart asked consumers to value the ability to use their devices for one additional hour.[13] Google's screen-on versus screen-off arguments are distractions that elevate semantics over the actual benefit tested.[14] Dr. Stewart surveyed the benefit Dr. Goodrich tested, and Mr. Napper may relay on that survey. *See also* ECF No. 412.

Although Google purports to challenge *Mr. Napper's* alleged failure to apportion, Google's arguments are in fact directed only to the alleged apportionment failures of Drs. Goodrich and Stewart. *See, e.g.*, Mtn. at 5 ("*Dr. Goodrich* did not apportion the incremental value of the patented invention." (emphasis added)); *id.* at 6. ("*Dr. Stewart* did not apportion the incremental value of the patented invention." (emphasis added)). Google does not challenge Mr. Napper's independent analysis. And as explained above, because these experts properly apportioned, so did Mr. Napper. *Cf. Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1321 (Fed. Cir. 2014) ("Experts routinely rely upon other experts hired by the party they represent for expertise

---

[12] *See* **Ex. E**: Oct. 15, 2018 Deposition of D. Stewart at 82:15–23.

[13] *See* **Ex. F**: Nov. 6 2018 Declaration of D. Stewart ¶¶ 3–4.

[14] *See* **Ex. F**: Nov. 6 2018 Declaration of D. Stewart ¶ 10.

███████████████████████████████████████████

outside of their field."), *rev'd on other grounds by Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015).

**C. ████████████████████████ was not only reliable, but the best available evidence for Mr. Napper's reasonable-royalty calculation.**

After determining how much consumers were willing to pay for one hour of extended battery life, Mr. Napper recognized the need to account for Google's contributions to Accused Product sales, including its manufacturing, marketing, and infrastructure costs.[15] To do so, he considered ███████████████████████████████████ as representative of Google's costs contributing to mobile device sales.[16] Applying that percentage to the ██████ (smartphone) and ██████ (tablet) willingness-to-pay values, Mr. Napper calculated a reasonable royalty of ██████ for smartphones and ██████ for tablets.[17]

Google criticizes Mr. Napper for applying Google's "cost contributing to a sale of a mobile device" (i.e., ████████████████████████████████) to Dr. Stewart's willingness-to-pay figures to calculate a per-device royalty. *See* Mtn. at 8–11. In particular, Google complains that the ████████████████████████████████ was an "unreliable proxy" for

---

[15] *See* **Ex. D**: Napper Dep. at 51:19–53:3; *see also* **Ex. C**: Napper. Rpt. at 75 ("In addition to the technical contribution analyses described in the above paragraphs, I have also considered, in my determination of a reasonable royalty rate, the contributions of Google to the Accused Product. As described more fully below in *Georgia-Pacific* Factor 15, I have used the Cost Approach to valuing these contributions by Google by identifying their direct cost of goods sold (e.g., their manufacturing processes) as well as costs for marketing and selling the Accused Product and other costs needed to contribute an infrastructure to support the Accused Products sales."); *id.* at 77–78.

[16] Because Mr. Napper used ████████████████████████████████████ as a proxy for deducting Google's costs, he refers to that number as "Google cost contributing to a sale of a mobile device." *See* **Ex. D**: Napper Dep. at 53:4–54:12.

[17] *See* **Ex. D**: Napper Dep. at 51:2–54:15; *see also* **Ex. C**: Napper Rpt. at 77–78 & Exs. 10 (summarizing ██████████████████████████); 7 & 9 (reflecting Doze and Battery Saver accused units sold); 11 & 12 (calculating damages for Doze and Battery Saver).

8

determining a reasonable royalty because ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ (ii) Google offers more products than just the Accused Products; and (iii) Google produced costs and revenues for the Accused Products that would have been a better proxy for the calculation. *See id.* As a preliminary matter, that Google doesn't like the data Mr. Napper used is an issue of weight, not admissibility. *See 14.38 Acres of Land*, 80 F.3d at 1077 ("'[Q]uestions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration.'" (quoting *Viterbo*, 826 F.2d at 422)). But Google also ignores its own role in providing financial evidence for Mr. Napper to consider.

At Mr. Napper's deposition, Google's counsel asked Mr. Napper why he used "revenues and costs and expenses for the company as a whole."[18] Mr. Napper answered: "Because that's the only information that Google produced for all the costs associated and detail on the costs associated with the accused products."[19] The colloquy continued:

> Q. So you've assumed that the percentage for Google as a whole would be the same as the percentage operating profit for the accused mobile devices?
>
> A. In the absence of better information, I have—I have determined that's a reasonable estimate. *If Google has other information they'd like to produce to—to identify whether that's a reasonable estimate, happy to look at it. But that was the best available information I had.*[20]

---

[18] *See* **Ex. D**: Napper Dep. at 58:7–13.

[19] *See* **Ex. D**: Napper Dep. at 58:8–17.

[20] *See* **Ex. D**: Napper Dep. at 59:7–17 (emphasis added). Google suggests that Mr. Napper allegedly "conceded that he 'was not able to determine with any kind of reliability' the 'specific quantifiable tie' between ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ and the asserted patents." *See* Mtn. at 10. That is untrue. What Mr. Napper was actually unable to "determine with any kind of reliability" related to information that was the subject of SEVEN's then-outstanding (and recently granted) motion to compel, not Mr. Napper's application of Google's operating profit margin to Dr.

9

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Any risk occasioned by Google's failure to produce damages evidence that Google finds more reliable is Google's to bear. *Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1572 (Fed. Cir. 1996) ("[I]f actual damages can not be ascertained with precision because the evidence available from the infringer is inadequate, damages may be estimated on the best available evidence, taking cognizance of the reason for the inadequacy of proof and resolving doubt against the infringer."); *see also Lottotron, Inc. v. Telepublicidad, S.A.*, No. 10–337 (SRC), 2013 WL 6050009, at *4 (D.N.J. Nov. 14, 2013) ("[I]n the absence of additional financial discovery or more precise revenue information, [plaintiff's expert's] royalty calculation method provides a sufficient framework for the Court to ascertain a reasonable royalty.").

Further, Mr. Napper "had cogent reasons for choosing not to review certain sources." *Joseph v. Signal Int'l LLC.*, No. 1:13-CV-324, 2015 WL 12766134, at *18 (E.D. Tex. Feb. 12, 2015). While Mr. Napper considered Accused Product revenues, he found those numbers unreliable since Google ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓[21] He also found the revenues unreliable because Google was new to the mobile device business and its ▓▓▓▓▓▓▓▓▓▓ were likely not representative of the products' long-term performance—or if they were, other economic reasons likely justified the ▓▓▓.[22]

---

Stewart's willingness-to-pay figures. *See* **Ex. D**: Napper Dep. at 163:12–164:21; *see also* ECF No. 402 (granting SEVEN's motion to compel).

[21] *See* **Ex. D**: Napper Dep. at 65:14–19 (explaining that Google produced gross margins for the accused products, but "didn't produce anything . . . 'below the line' in terms of the other types of costs'"); *see also id.* at 66:1–5 ("Q. Do you understand that the operating profit for the accused devices is lower than the operating profit for Google as a whole? A. I have no idea because Google didn't produce operating profit for the accused products.").

[22] *See* **Ex. D**: Napper Dep. at 62:3–18.

10

Google may disagree with Mr. Napper's choice to use ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ in his calculations, but Mr. Napper's opinions may not be excluded for that reason. Rather, "[t]o the extent that [Google] wish[es] to challenge the bases for [Mr. Napper's opinions], [it] can do so on cross-examination." *See Joseph*, 2015 WL 12766134, at *5.[23]

### D. Google, not SEVEN, bears the burden to prove the availability of acceptable non-infringing alternatives.

Google next criticizes Mr. Napper for allegedly failing to consider non-infringing alternatives (NIAs). *See* Mtn. at 11–13. This criticism improperly attempts to shift to SEVEN the burden of proving the availability of acceptable non-infringing alternatives.

"Whether the accused infringer had acceptable non-infringing alternatives available to it at the time of the hypothetical negotiation may be probative of a reasonable royalty for the patented technology." *LaserDynamics, Inc. v. Quanta Computer, Inc.*, No. 2:06-cv-348, 2011 WL 197869, at *2 (E.D. Tex. Jan. 20, 2011) (citing *Georgia–Pac. Corp. v. U.S. Plywood Corp.*, 318 F.Supp. 1116, 1120 (S.D.N.Y. 1970)). But "the burden of proving availability of a non-infringing alternative falls on the infringer." *DataTreasury Corp. v. Wells Fargo & Co.*, No. 2:06-cv-72 DF, 2011 WL 8810604, at *9 (E.D. Tex. Aug. 2, 2011).

Since Google bears the burden to prove the availability of non-infringing alternatives, Mr. Napper was not required to assume that any exist. Carried to its logical conclusion, Google's suggestion that Mr. Napper was obligated to consider every possible non-infringing alternative—

---

[23] Notably, even Google's damages expert, Christopher Bakewell, does not ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* **Ex. G**: Bakewell Rpt. ¶¶ 381–462. Instead, he ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See id.* at Ex. 6.1. In other words, this is not even a battle of the experts; instead, it is a battle between SEVEN's expert and Google's lawyers. But of course, whether an accused infringer's attorneys disagree with a patentee's expert's damages calculation is not the inquiry—if it were, no damages opinions would ever be presented to juries.

individually and in combination—would impose upon patentees the burden to test every possible (but unproven) NIA both alone and in combination with every other possible (but unproven) NIA, and separately to assess the impact of each potential substitute and combination of substitutes on the reasonable royalty. That is not, and cannot be, the law. Further, even if Mr. Napper "never addressed the impact of non-infringing alternatives . . . . [s]uch concerns are more properly viewed as addressing the weight of [Mr. Napper's] anticipated testimony rather than its admissibility." *See Nordock Inc. v. Systems Inc.*, No. 11–C–118, 2013 WL 989864, at *7 (E.D. Wisc. Mar. 13, 2013).

That SEVEN's expert did not carry Google's burden on non-infringing alternatives does not render his opinions unreliable.

### E. Mr. Napper offers opinions on each Doze patent individually and in combination with other Doze patents.

Finally, Google complains that "Mr. Napper does not provide any damages calculation for alleged infringement of any single Doze patent or any combination of Doze patents," and therefore "should not be permitted to offer such conclusions at trial." *See* Mtn. at 13. But Mr. Napper's testimony reveals just the opposite:

> Q. And with respect to the Doze accused products, you did not separately calculate damages for each of the asserted patents, correct?
>
> A. *Incorrect.* What I've done, based upon my understanding of the technical interconnectivity of these patents as well as Dr. Goodrich's opinion that because of that and his review, *each individual Doze patent and in combination with other Doze asserted patents creates the at least one hour of battery life benefits* and, therefore, it would—f*or either one or all five of the Doze patents, it would be the same contribution, if you will, or benefit.*
>
> Q. So regardless of whether Google is found to infringe one or five of the accused—of the Doze patents, your opinion is for the Doze accused products, the damages would be ▮▮▮▮?

12

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

    A. *Correct.*[24]

Mr. Napper therefore should be permitted to offer a Doze-related damages opinion regardless of which (or all) Doze patents are found infringed.

## Conclusion

Google asks the Court to evaluate the correctness of Mr. Napper's opinions; *Daubert* requires the Court to determine only their admissibility. That assessment must neither "replace the adversarial system," nor "supplant trial on the merits." *See Joseph*, 2015 WL 12766134, at *3. Mr. Napper's opinions rest on reliable bases and sufficient facts. SEVEN therefore asks the Court to admit Mr. Napper's testimony, and allow the jury to resolve debates about the accuracy of his opinions.

---

[24] *See* **Ex. D**: Napper Dep. at 106:24–107:15 (emphases added).

Dated: November 7, 2018

Respectfully submitted,

*/s/ Max Ciccarelli*
**Bruce S. Sostek**
   State Bar No. 18855700
   Bruce.Sostek@tklaw.com
**Max Ciccarelli**
   State Bar No. 00787242
   Max.Ciccarelli@tklaw.com
**Herbert J. Hammond**
   State Bar No. 08858500
   Herbert.Hammond@tklaw.com
**Richard L. Wynne Jr.**
   State Bar No. 24003214
   Richard.Wynne@tklaw.com
**J. Michael Heinlen**
   State Bar No. 24032287
   Michael.Heinlen@tklaw.com
**Adrienne E. Dominguez**
   State Bar No. 00793630
   Adrienne.Dominguez@tklaw.com
**Justin Cohen**
   State Bar No. 24078356
   Justin.Cohen@tklaw.com
**Vishal Patel**
   State Bar No. 24065885
   Vishal.Patel@tklaw.com
**Nadia E. Haghighatian**
   State Bar No. 24087652
   Nadia.Haghighatian@tklaw.com
**Austin Teng**
   State Bar No. 24093247
   Austin.Teng@tklaw.com
**Natalie M. Cooley**
   State Bar No. 24079912
   Natalie.Cooley@tklaw.com
**Matthew Cornelia**
   State Bar No. 24097534
   Matt.Cornelia@tklaw.com

**THOMPSON & KNIGHT LLP**
One Arts Plaza
1722 Routh St., Suite 1500
Dallas, Texas 75201
214.969.1700
214.969.1751 (Fax)

**Samuel F. Baxter**
   Texas State Bar No. 01938000
   sbaxter@mckoolsmith.com

**MCKOOL SMITH, P.C.**
104 E. Houston Street, Suite 300
Marshall, Texas 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

**Theodore Stevenson, III**
   Texas State Bar No. 19196650
   tstevenson@mckoolsmith.com
**Eric S. Hansen**
   Texas State Bar No. 24062763
   ehansen@mckoolsmith.com

**MCKOOL SMITH, P.C.**
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone: (214) 978-4000
Telecopier: (214) 978-4044

**ATTORNEYS FOR PLAINTIFF
SEVEN NETWORKS LLC**

## CERTIFICATE OF SERVICE

I certify that on November 7, 2018, a true and correct copy of the foregoing document was served on all counsel of record via email.

*/s/ Max Ciccarelli*
Max Ciccarelli

## CERTIFICATE OF AUTHORITY TO FILE UNDER SEAL

I certify that I have authority to file this document under seal under this Court's Local Rules and the Protective Order in this case.

*/s/ Max Ciccarelli*
Max Ciccarelli
