UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| SEVEN NETWORKS, LLC,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>GOOGLE LLC,<br><br>　　　　　Defendant. | CIVIL ACTION NO. 2:17-CV-442-JRG<br>LEAD CASE<br><br>PATENT CASE<br><br>JURY TRIAL DEMANDED |
| v.<br><br>SAMSUNG ELECTRONICS AMERICA, INC. AND SAMSUNG ELECTRONICS CO., LTD.,<br><br>　　　　　Defendants. | CIVIL ACTION NO. 2:17-CV-441-JRG<br>CONSOLIDATED CASE |

**SEVEN'S OPPOSITION TO SAMSUNG'S MOTION TO EXCLUDE
THE TESTIMONY OF BRIAN W. NAPPER (ECF NO. 351)**

██████████████████████████████████████

# TABLE OF CONTENTS

Introduction ........................................................................................................................... 1

Background ........................................................................................................................... 1

Arguments and Authorities ................................................................................................... 3

    A.  Legal Standard ........................................................................................................ 3

    B.  Mr. Napper's reasonable-royalty calculations depend on the admissible results of Dr. Goodrich's testing and Dr. Stewart's survey. ................................................................................................... 4

        1.  Samsung bears the risk of any alleged inability to apportion caused by Samsung's product design. ......................................................... 4

        2.  Dr. Stewart's willingness-to-pay survey assessed the value of one hour of extended battery life. ................................................. 6

        3.  Dr. Stewart's methodology is well established. ......................................... 7

    C.  Mr. Napper carefully apportioned SEVEN's damages to the footprint of the claimed inventions. .............................................................. 8

    D.  The Parties have reached an agreement that moots Samsung's arguments about licenses. ............................................................... 11

Conclusion ........................................................................................................................ 12

███████████████████████████████████

# Exhibit List

| | |
|---|---|
| **Exhibit A** | Expert Report of Michael T. Goodrich, Ph.D. Regarding Samsung's Infringement of the '019, '600, '127, and '129 Patents (provided on flash drive after close of briefing) |
| **Exhibit B** | Expert Report of Dr. David Stewart (provided on flash drive after close of briefing) |
| **Exhibit C** | Expert Report of Brian W. Napper (provided on flash drive after close of briefing) |
| **Exhibit D** | Excerpts from October 9, 2018 Deposition of Brian W. Napper |
| **Exhibit E** | Excerpts from October 15, 2018 Deposition of David Stewart |
| **Exhibit F** | November 6, 2018 Declaration of David Stewart |
| **Exhibit G** | November 7, 2018 e-mails between N. Graubart and A. Dominguez |
| **Exhibit H** | November 7, 2018 Declaration of Dr. Michael Goodrich |

## INTRODUCTION

Samsung raises two related challenges to the opinions of SEVEN's damages expert, Mr. Brian Napper: (i) that his opinions are unreliable because they depend on the allegedly flawed opinions of SEVEN's technical and survey experts, Drs. Goodrich and Stewart, and (ii) that he applied an improper rule-of-thumb damages theory.[1] Neither argument has merit. The opinions of Drs. Goodrich and Stewart are reliable, and so are Mr. Napper's dependent opinions. And Mr. Napper closely tied his reasonable-royalty calculations to the footprint of the inventions in the marketplace, applying a two-tiered apportionment approach. Because Mr. Napper's damages opinions easily meet *Daubert*'s admissibility threshold, SEVEN asks the Court to admit his testimony and deny Samsung's motion.

## BACKGROUND

SEVEN has accused Samsung mobile devices (cell phones and tablets) of infringing SEVEN's patents. Generally speaking, the Doze, Power Saver, and App Standby features in the accused mobile devices aid in battery conservation in various ways, for example, by restricting applications from communicating with the network, thereby reducing battery drain.

Relevant here are the opinions of three experts SEVEN retained to evaluate infringement and damages for the asserted patents: Dr. Michael Goodrich, who determined the benefit offered by the patented inventions embodied in the Accused Devices; Dr. David Stewart, who conducted surveys to determine the value consumers assign to that benefit; and Mr. Brian Napper—whose

---

[1] Samsung also complained of SEVEN's reliance on certain license agreements as evidence of the structure of the hypothetical license. *See* Mtn. at 10–12. But as discussed below, the Parties have reached an agreement that moots these challenges. *See* discussion below at 12.

1

opinions are the subject of this response—who offered damages opinions based on the conclusions of Drs. Goodrich and Stewart.

Specifically, Dr. Goodrich found that Doze and Power Saver can each independently "extend battery life in the Accused Products, on average, by at least 1 hour between daily charges by limiting network activity for applications that a consumer may not be actively using."[2] He further concluded that because the patents at issue cover critical elements of Doze and Power Saver, use of the patented inventions "can extend battery life in the Accused Products by, on average, at least 1 hour between daily charges by limiting network activity for applications that a consumer may not be actively using."[3] Dr. Stewart then constructed a survey designed to value Dr. Goodrich's "at least one hour of extended battery life," and found that consumers would be willing to pay ▮▮▮▮ for one-hour extended battery life in smartphones, and ▮▮▮▮ for one-hour extended battery life in tablets.[4]

Dr. Stewart's willingness-to-pay amounts—the first level of apportionment—identified the implied market value of the inventions.[5] Mr. Napper then applied a second level of apportionment to those values to deduct Samsung's contributions to the products and credit it with costs incurred in bringing the accused devices to market.[6] After removing those costs, Mr.

---

[2] *See* **Ex. A**: Expert Report of Michael T. Goodrich, Ph.D. Regarding Samsung's Infringement of the '019, '600, '127, and '129 Patents (Goodrich Rpt.) ¶ 941a–b. Consistent with the requirements in the Docket Control Order, all expert reports and accompanying exhibits will be submitted on a flash drive as soon as briefing has completed. *See* ECF No. 337.

[3] *See* **Ex. A**: Goodrich Rpt. ¶¶ 934, 939–941, 1032.

[4] *See* **Ex. B**: Expert Report of Dr. David Stewart (Stewart Rpt.) ¶ 21.

[5] *See* **Ex. C**: Expert Report of Brian W. Napper (Napper Rpt.) at 85–86; **Ex. D**: Oct. 9, 2018 Deposition of B. Napper (Napper Dep.) at 187:18–20.

[6] *See* **Ex. C**: Napper Rpt. at 87–89; **Ex. D**: Napper Dep. at 187:25–188:18.

Napper concluded that the Parties to the hypothetical negotiation would have agreed upon a royalty rate of ▇▇▇ per smartphone and ▇▇▇ per tablet.[7]

Mr. Napper's two-tiered apportionment approach is based on reliable expert opinions and sound methodology, which is closely tied to this case's facts.

## ARGUMENTS AND AUTHORITIES

### A. Legal Standard

In exercising its gatekeeping role, a court may exclude evidence only if it is "based upon unreliable principles or methods, legally insufficient facts and data, or where the reasoning or methodology is not sufficiently tied to the facts of the case." *See Summit 6, LLC v. Samsung Elecs. Co., Ltd.*, 802 F.3d 1283, 1295 (Fed. Cir. 2015). But "the question of whether the expert is credible or the opinion is correct is generally a question for the fact finder, not the court." *Id.* at 1296. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993). "When the methodology is sound, and the evidence relied upon sufficiently related to the case at hand, disputes about the degree of relevance or accuracy (above this minimum threshold) may go to the testimony's weight, but not its admissibility." *See i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 852 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011) (citing *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 351 (5th Cir. 2007); *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc)).

---

[7] *See* **Ex. C**: Napper Rpt. at 89.

In calculating damages, a patentee must "apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features." *Garretson v. Clark*, 111 U.S. 120, 121 (1884). A patentee meets its apportionment obligation where it "carefully tie[s] proof of damages to the claimed invention's footprint in the market place." *See ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010). Here, Mr. Napper's opinions are properly apportioned.

### B. Mr. Napper's reasonable-royalty calculations depend on the admissible results of Dr. Goodrich's testing and Dr. Stewart's survey.

Samsung complains that three alleged flaws in the opinions of Drs. Goodrich and Stewart[8] compromise Mr. Napper's opinions: (i) Dr. Goodrich's purported failure "to analyze how much of the accused features' alleged benefits flow from the claimed inventions as opposed to the non-patented technology"; (ii) Dr. Stewart's survey of a supposedly different benefit than what Dr. Goodrich tested; and (iii) Dr. Stewart's allegedly unsound methodology. *See* Mtn. at 12–14. Samsung separately moves to exclude Dr. Stewart's and Dr. Goodrich's opinions on these bases. *See* ECF Nos. 363 (Stewart motion); 367 (Goodrich motion); 357 (Samsung's notice of joinder in Goodrich motion). But as explained more fully in SEVEN's responses to those motions, the opinions of Drs. Goodrich and Stewart pass *Daubert*. *See* ECF Nos. 411 (Goodrich response), 412 (Stewart response). And as explained below, so do Mr. Napper's opinions depending on them.

#### 1. Samsung bears the risk of any alleged inability to apportion caused by Samsung's product design.

Samsung challenges Mr. Napper's reliance on Dr. Goodrich's conclusion that "use of one or more of the inventions claimed in the Patents-in-Suit can extend battery life in the Accused

---

[8] Although Samsung frames this argument as a challenge to Dr. Stewart only, Samsung in fact challenges Dr. Goodrich's opinions as well. *See* Mtn. at 12–14.

4

Products by, on average, at least 1 hour . . . ." *See* Mtn. at 13. The crux of Samsung's argument is that Dr. Goodrich failed to account for the fact that the accused functionalities have more features than what the Patents-in-Suit cover. *See id.*

At best, Samsung's argument about Dr. Goodrich's one-hour-extended-battery-life opinions (and, by extension, Mr. Napper's dependent damages opinions) is that he did not review sufficient facts. But that goes to weight, not admissibility. *See Joseph v. Signal Int'l L.L.C.*, No. 1:13-cv-324, 2015 WL 12766134, at *17 (E.D. Tex. Feb. 12, 2015) ("[A]n argument that an expert did not review sufficient facts and data goes to the weight of [its] opinion, to be brought out in cross-examination and resolved by the jury." (quotation marks omitted)). Further, that Dr. Goodrich did not isolate every feature of Doze is a result of Samsung's design, not Dr. Goodrich's method. Indeed, Dr. Goodrich could not test individual Doze features, because Samsung did not design its Doze functionalities to permit users to customize which features are active when a device is in Doze mode.[9] As a result, Samsung bears the risk of any purported prejudice it would allegedly suffer if Dr. Goodrich presented his opinion to the jury; SEVEN should not suffer the penalty of its exclusion. *See Nickson Indus., Inc. v. Rol Mfg. Co.*, 847 F.2d 795, 799 (Fed. Cir. 1988) ("[W]here it is impossible to make a mathematical or approximate apportionment between infringing and noninfringing items, the infringer must bear the burden and the entire risk.").

Samsung has failed to demonstrate that Dr. Goodrich's opinions are inadmissible; accordingly, they are a reliable basis for Mr. Napper's.

---

[9] *See* **Ex. H**: Goodrich Dec. ¶ 5. Samsung's Power Saver mode is customizable, however, and Dr. Goodrich explicitly concluded that the infringing feature of Samsung's Power Saver provides at least one hour of extended battery life for an average user. *See* Goodrich Rpt. ¶¶ 939–940, 1032.

### 2. Dr. Stewart's willingness-to-pay survey assessed the value of one hour of extended battery life.

After Dr. Goodrich determined that the accused functionalities offer at least one hour of extended battery life by making use of the patented inventions, Dr. Stewart constructed a survey to determine how much consumers would be willing to pay for that extra hour. Samsung argues that while Dr. Goodrich tested the benefit of an extra hour of screen-off time, Dr. Stewart measured consumers' willingness to pay for an extra hour of screen-on time. *See* Mtn. at 12–13. And since, in Samsung's opinion, Dr. Stewart's survey allegedly did not value the benefit of the claimed invention, Mr. Napper's per-device royalty opinions depending on Dr. Stewart's survey should be excluded.

Samsung's arguments ignore the survey's plain language, which inquired about precisely the functionality Dr. Goodrich tested. Specifically, Dr. Goodrich opined that "use of one or more of the inventions claimed in the Patents-in-Suit can extend battery life in the Accused Products by, on average, at least 1 hour between daily charges by limiting network activity for applications that a consumer may not be actively using."[10] Dr. Stewart's survey, in turn, defined "One-hour Extended Battery Life" as follows: "Battery life can be extended by one hour between charges by limiting network activity on inactive apps, while preserving regular network activity for high priority apps like emails, instant messages and calls, and other active apps."[11] As Dr. Stewart testified, survey respondents would have understood this definition to mean that one hour of extended battery life is one hour in which their phones are available for use.

---

[10] *See* **Ex. A**: Goodrich Rpt. ¶ 941c.

[11] *See* **Ex. B**: Stewart Rpt. ¶ 54.

6

> Q: So based on your understanding of consumers, you would expect that respondents of your survey to have understood that the definition of one hour of extended battery life was an additional one hour being active on their phones?
>
> . . .
>
> A: *Of being able to use their phone in an active fashion.*[12]

In other words, Dr. Goodrich determined that Samsung's use of SEVEN's patented technologies allows consumers to use their devices for at least one additional hour. And Dr. Stewart asked consumers to value the ability to use their devices for one additional hour.[13] Samsung's screen-on versus screen-off arguments are distractions that elevate semantics over the actual benefit tested.[14]

Dr. Stewart surveyed the benefit Dr. Goodrich tested, and Mr. Napper may rely on that survey.

### 3. Dr. Stewart's methodology is well established.

Finally, Samsung challenges Dr. Stewart's methodology because he allegedly "was unable to point to a single academic paper, treatise, or litigation in which his combination of consumer ratings and external prices was used." *See* Mtn. at 14. Samsung's attack is misleading and baseless. As more fully explained in SEVEN's response to Defendants' motion to strike Dr. Stewart's opinions, *see* ECF No. 412, both steps of Dr. Stewart's analysis are well established and widely used in marketing, business, and social sciences.[15] That Dr. Stewart was not aware of a case where his methodology was used to determine willingness to pay in the context of patent litigation does not make his approach unreliable. "[T]he test for admission of expert opinion is

---

[12] *See* **Ex. E**: Oct. 15, 2018 Deposition of D. Stewart at 82:15–23.

[13] *See* **Ex. F**: Nov. 6, 2018 Declaration of D. Stewart (Stewart Dec.) ¶¶ 3–4.

[14] *See* **Ex. F**: Stewart Dec. ¶ 10.

[15] *See, e.g.*, **Ex. B**: Stewart Rpt. Technical App'x ¶¶ 3–4; **Ex. F**: Stewart Dec. ¶¶ 14–17.

7

not whether a court has admitted such an opinion in a previous case. Rather, *Daubert* and its progeny explicitly contemplate the admission of expert opinions in new fields, as long as such opinions are rooted in a methodology generally accepted in the scientific field at issue." *Apple, Inc. v. Samsung Elecs. Co.*, No. 12-cv-630, 2014 WL 794328, at *15 (N.D. Cal. Feb. 25, 2014) (citing *Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579, 594 (1993)). Dr. Stewart's method easily meets this standard.

Because none of Samsung's challenges to Dr. Goodrich's or Dr. Stewart's opinions has merit, those opinions serve as a reliable basis for Mr. Napper's damages opinions. *Cf. Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1321 (Fed. Cir. 2014) ("Experts routinely rely upon other experts hired by the party they represent for expertise outside of their field."), *rev'd on other grounds by Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015).

### C. Mr. Napper carefully apportioned SEVEN's damages to the footprint of the claimed inventions.

Samsung also complains that "Mr. Napper has failed to justify his opinion that a reasonable royalty rate would have been 100% of Samsung's profits attributable to the purported benefits of the Asserted Patents." Mtn. at 1. If Mr. Napper failed to justify such an opinion, it is because that is not his opinion.

Indeed, rather than fail to apportion as Samsung alleges, Mr. Napper actually applied two tiers of apportionment to determine a reasonable-royalty rate. First, he considered Dr. Stewart's ▮▮▮▮ (smartphone) and ▮▮▮▮ (tablet) willingness-to-pay figures, which represent the implied market value of the footprint of the inventions.[16] Then, "as called out for in *Georgia-Pacific* 13," Mr. Napper further apportioned Dr. Stewart's willingness-to-pay figures to deduct from the

---

[16] *See* **Ex. D**: Napper Dep. at 146:15–147:10.

implied market value the cost Samsung incurred in bringing the products to market, thus giving Samsung credit for everything it contributed to the phones.[17] To calculate this second step, Mr. Napper used the operating profit percentage of Samsung's IM Division[18] for each relevant year as the measure of Samsung's contribution to Accused Product sales (through, among other things, marketing, manufacturing, research and development), and applied those percentages to the willingness-to-pay amounts.[19] Mr. Napper's reasonable royalty opinion thus does not include any claim for any profit resulting from Samsung's contributions to the manufacture, sale, and support of the accused products. The resulting rates after removing costs associated with Samsung's contributions ranged from ▊▊▊▊ for smartphones, and ▊▊▊▊ for tablets.[20] After factoring out Samsung's contributions, the resulting amount of ▊▊▊▊ for smartphones and ▊▊▊▊ for tablets represents the amount attributable to only the asserted benefits of the patented inventions—i.e., the amount associated with SEVEN's contributions. Upon "[c]onsidering [his] analysis of the *Georgia-Pacific* factors extensively discussed [in his report]," Mr. Napper concluded that royalty rates adequate to compensate SEVEN for Samsung's infringement of the Asserted Patents would be at least ▊0 for smartphones and ▊ for tablets for rights to the Doze and Power Saver Patents.[21]

---

[17] *See* **Ex. D**: Napper Dep. at 147:11–148:3. Samsung's arguments that Mr. Napper failed to tie any of the *Georgia-Pacific* factors to his proposed royalty rate and that he merely "recited" the factors are facially invalid. *See* Mtn. at 9–10. as illustrated by this, and additional examples below. Indeed, Mr. Napper performed a thorough analysis of each of the *Georgia-Pacific* factors, discussed in detail in nearly 70 pages of his expert report.

[18] ▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊. *See* **Ex. C**: Napper Rpt. at 87.

[19] *See* **Ex. C**: Napper Rpt. at 88–89; **Ex. D**: Napper Dep. at 185:23–186:12.

[20] *See* **Ex. C**: Napper Rpt. at 89 & Exs. 14 & 15.

[21] *See* **Ex. C**: Napper Rpt. at 89.

In other words, Mr. Napper apportioned not to the entire accused tablets and smartphones, not to all the software on the devices, not to the Android operating systems, and not even just to the power management functionalities. Rather, Mr. Napper properly apportioned all the way to the specific accused functionalities, Doze and Power Saver. The below graphic depicts Mr. Napper's approach:



That Mr. Napper properly "tie[d] proof of damages to the claimed invention's footprint in the market place" cannot reasonably be disputed. *See ResQNet.com*, 594 F.3d at 869 (Fed. Cir. 2010).

Mr. Napper clarified in his deposition that Samsung's characterization of his opinion as claiming "100% of Samsung's purported profit" is inaccurate:

> Q. So is it accurate to say that, then, it's your opinion that Samsung and SEVEN would agree—would have agreed to . . . Samsung giving SEVEN 100 percent of the market value of the accused product after you stripped away the costs from Samsung's own contributions?
>
> A. Yeah. *That's not the way to look at it. That's not what I did.*[22]

When asked why that was incorrect, Mr. Napper reiterated:

---

[22] *See* **Ex. D**: Napper Dep. at 187:8–15.

> Because, again, what I've done is I've taken the implied market value as evidenced in the ███████, *that's the first apportionment*. That relates to the benefits of the invention as reflected in one hour of extended battery life. So that's the income approach, if you will, or even a market approach really to that footprint. Then I'm saying, okay, I need to look for what Samsung contributes, and one of our guides is GP 13 . . . . So I look to their costs, all costs, not just incremental costs that go up with the sale of another device but all costs, including research and development, general G&A, et cetera, to identify those costs. That's my analysis of Samsung's contribution. So the leftover, if you will, is essentially to be paid over from Samsung to SEVEN. *It's not a profit split or anything like that*. It's just literally using income market approach and a cost approach.[23]

Mr. Napper thus properly (i) relied on Drs. Goodrich and Stewart to isolate the value of the patented features and separate them from the value of the unpatented features; (ii) subtracted costs attributable to Samsung to give Samsung the benefit of what it contributed; (iii) and used the *Georgia-Pacific* factors to inform the terms of the hypothetical license. Samsung's attempt to fit Mr. Napper's approach within the parameters of an impermissible rule of thumb is belied by Mr. Napper's report and his testimony.

Because the computation of damages is imprecise, "it will be enough if the evidence show the extent of the damages as a matter of just and reasonable inference, although the result be only approximate." *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 563 (1931). Mr. Napper has done more than enough.

### D. The Parties have reached an agreement that moots Samsung's arguments about licenses.

Finally, Samsung moved to prevent Mr. Napper from relying on Samsung's license agreements with ███████████████. SEVEN and Samsung have since agreed that "neither side nor their experts will offer testimony or opinions or otherwise reference at trial"

---

[23] *See* **Ex. D**: Napper Dep. at 187:18–188:2, 188:8–18 (emphases added).

11

either the ███████████████████████████████████████████

███.[24] Samsung's arguments about licenses are therefore moot.[25]

## Conclusion

"A [district] judge must be cautious not to overstep its gatekeeping role and weigh facts, evaluate the correctness of conclusions, impose its own preferred methodology, or judge credibility, including the credibility of one expert over another." *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1314 (Fed. Cir. 2014). But to "overstep its gatekeeping role" and "impose [Samsung's] preferred methodology" is precisely what Samsung asks the Court to do here. Mr. Napper's opinions rest on reliable bases, sound methodology, and sufficient facts. SEVEN therefore asks the Court to admit Mr. Napper's testimony, and deny Samsung's motion.

---

[24] *See* **Ex. G**: Nov. 7, 2018 e-mails between N. Graubart and A. Dominguez.

[25] In passing, Samsung also complains that Mr. Napper allegedly "failed to consider" certain evidence. *See* Mtn. at 3. These arguments go to weight, and therefore are irrelevant to the Court's *Daubert* analysis. *See Joseph*, 2015 WL 12766134, at *17 ("[A]n argument that an expert did not review sufficient facts and data goes to the weight of [its] opinion, to be brought out in cross-examination and resolved by the jury." (quotation marks omitted)).

Dated: November 7, 2018

Respectfully submitted,

*/s/ Max Ciccarelli*
**Bruce S. Sostek**
  State Bar No. 18855700
  Bruce.Sostek@tklaw.com
**Max Ciccarelli**
  State Bar No. 00787242
  Max.Ciccarelli@tklaw.com
**Herbert J. Hammond**
  State Bar No. 08858500
  Herbert.Hammond@tklaw.com
**Richard L. Wynne Jr.**
  State Bar No. 24003214
  Richard.Wynne@tklaw.com
**J. Michael Heinlen**
  State Bar No. 24032287
  Michael.Heinlen@tklaw.com
**Adrienne E. Dominguez**
  State Bar No. 00793630
  Adrienne.Dominguez@tklaw.com
**Justin Cohen**
  State Bar No. 24078356
  Justin.Cohen@tklaw.com
**Vishal Patel**
  State Bar No. 24065885
  Vishal.Patel@tklaw.com
**Nadia E. Haghighatian**
  State Bar No. 24087652
  Nadia.Haghighatian@tklaw.com
**Austin Teng**
  State Bar No. 24093247
  Austin.Teng@tklaw.com
**Natalie M. Cooley**
  State Bar No. 24079912
  Natalie.Cooley@tklaw.com
**Matthew Cornelia**
  State Bar No. 24097534
  Matt.Cornelia@tklaw.com

**THOMPSON & KNIGHT LLP**
One Arts Plaza
1722 Routh St., Suite 1500
Dallas, Texas 75201
214.969.1700
214.969.1751 (Fax)

**Samuel F. Baxter**
  Texas State Bar No. 01938000
  sbaxter@mckoolsmith.com

**MCKOOL SMITH, P.C.**
104 E. Houston Street, Suite 300
Marshall, Texas 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

**Theodore Stevenson, III**
  Texas State Bar No. 19196650
  tstevenson@mckoolsmith.com
**Eric S. Hansen**
  Texas State Bar No. 24062763
  ehansen@mckoolsmith.com

**MCKOOL SMITH, P.C.**
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone: (214) 978-4000
Telecopier: (214) 978-4044

**ATTORNEYS FOR PLAINTIFF
SEVEN NETWORKS LLC**

## CERTIFICATE OF SERVICE

I certify that on November 7, 2018, a true and correct copy of the foregoing document was served on all counsel of record via email.

<i>/s/ Max Ciccarelli</i><br>
Max Ciccarelli

## CERTIFICATE OF AUTHORITY TO FILE UNDER SEAL

I certify that I have authority to file this document under seal under this Court's Local Rules and the Protective Order in this case.

<i>/s/ Max Ciccarelli</i><br>
Max Ciccarelli